IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| MEIER JASON BROWN | : | CIVIL ACTION NO. |
| Petitioner, | : | No. 4-07-CV-85(BAE)(GRS) |
| | : | |
| vs. | : | CRIMINAL ACTION NO. |
| | : | 4:03-CR-00001-BAE-1 |
| UNITED STATES OF AMERICA | : | |
| Respondent. | : | CAPITAL HABEAS CORPUS |
| | : | |

MOTION FOR LEAVE TO CONDUCT DISCOVERY
AND MEMORANDUM IN SUPPORT

Comes now, MEIER JASON BROWN, Petitioner in the above-styled

action, by and through undersigned counsel and hereby moves for Leave to

Conduct Discovery.  In support of this Motion, Mr. Brown shows as follows:

(1)

On January 6, 2003, a Grand Jury sitting in the Southern District of Georgia

retuned a three count indictment charging Mr. Brown with: "unlawfully kill[ing]

Sallie Louise Gaglia [with malice aforethought]... in the knowing and willful

perpetration of a robbery" in violation of 18 U.S.C. 7(3) and 1111 (a) and (b)

(Count I); with malice aforethought ... killing Sallie Louise Gaglia, ... an employee

of the United States ... while she was engaged in the performance of her official

duties"  in violation of 18 U.S.C. 1114 and 1111(a) (Count II); and assault on

"Sallie Louise Gaglia, a person having lawful charge, custody and control of the United States Mail matter ..." in violation of 18 U.S.C. 2114(a) (Count III).  Also contained in the Indictment were certain Special Findings that made the case capital.

(2)

Approximately 11 months, on November 6, 2003 after the Indictment was returned, Mr. Brown was tried, convicted and sentenced to death after a three day trial.

(3)

Thereafter, on April 15, 2004, trial counsel, William Bell and Richard Darden were permitted to withdraw and undersigned counsel along with Donald Samuel were appointed to represent Petitioner on direct appeal.

(4)

On March 13, 2006, the Eleventh Circuit affirmed Mr. Brown's convictions and sentences.  *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006).

(5)

A timely filed Motion for Rehearing and Suggestion for Rehearing *En Banc* was denied on May 19, 2006.  *United States v. Brown,* 180 Fed.Appx. 147 (11th Cir. 2006).

2

(6)

A timely filed Petition for Writ of Certiorari was denied on January 22, 2007. *Brown v. United States*, 127 S.Ct. 1149 (2007), and a Petition for Rehearing was denied on March 19, 2007. *Brown v. United States*, 127 S.Ct. 1870 (2007).

(7)

On January 22, 2008, Mr. Brown timely filed a Motion to Vacate or Set Aside Made Pursuant to 28 U.S.C. §2255.

(8)

On February 11, 2008, Petitioner filed a MOTION for Leave to File Memorandum of Authorities in Support of Motion to Vacate or Set Aside Made Pursuant to 28 U.S.C. 2255, to File Other Pleadings, and Request for Scheduling Order.

(9)

This Court granted in part and denied in part said Motion and directed the Government to file its 2252 Rule 5(b) Response on or before March 12, 2008, and that Mr. Brown should submit his "comprehensive brief" and "any motions" (specifically mentioned by the Court were Motion for Discovery and Motion for Evidentiary Hearing) by May 12, 2008.

(10)

On March 12, 2008, the Government filed its Response and conceded Mr. Brown's Motion to Vacate or Set Aside was timely filed, but raised a number of defenses, both procedural and on the merits, to each of the Constitutional violations alleged in Mr. Brown's Motion to Vacate or Set Aside.

(11)

Pursuant to this Court's Order of February 12, 2008, Mr. Brown herein respectfully requests that this Court conduct an evidentiary hearing on the contested issues presented in his Motion to Vacate or Set Aside Made Pursuant to 28 U.S.C. §2255.

(12)

This request for leave to conduct discovery, including requests for the production of records and evidence, and depositions, is necessary for the presentation of the constitutional claims raised in Mr. Brown's 28 U.S.C. §2255 motion. Discovery is authorized by Rule 6 of the Rules Governing 28 U.S.C. § 2255 Procedures. The requested discovery as set forth in more detail below is essential to guarantee Mr. Brown a full and fair opportunity to amend his §2255 motion as well as to ensure that this Court reviews and resolves his constitutional claims for relief with the benefit of a fully developed factual record. Mr. Brown

requests that any evidentiary hearing be continued until the completion of the

requested discovery.

## ARGUMENT AND AUTHORITY

Rule 6 of theRulesGoverning Section 2255 Proceedings for the United

States District Courts gives this Court express authority to order discovery:

> A party may invoke the processes of discovery available
> under the Federal Rules of Criminal Procedure or the
> Federal Rules of Criminal Procedure[1] or elsewhere in the
> usages and principles of law if, and to the extent that, the
> judge in the exercise of his discretion and for good cause
> shown grants leave to do so, but not otherwise.

Rule 6(a) incorporates the United States Supreme Court's directive that a federal

habeas corpus petitioner is "'entitled to careful consideration and plenary

processing of [his claims,] including full opportunity for presentation of the

relevant facts.'" *Harris v. Nelson*, 394 U.S. 286, 298 (1969); *see also Blackledge v.*

*Allison*, 431 U.S. 63, 82-83 (1977); *Cf.* Rules Governing Section 2254

Cases in the United States District Courts, Advisory Committee Note to Rule 6

("Subdivision (a) is consistent with *Harris v. Nelson*").[2]

---

[1] Rule 6 for §2255 proceedings differs from the corresponding discovery rule under the §2254 rules in that it includes the processes of discovery available under the Federal Rules of Criminal Procedure as well as the civil.

[2] The Advisory Committee Notes to the Rules Governing Section 2254 Cases in the United States District Courts are "fully applicable to discovery under [the

**A.  Good Cause**

This Court may grant leave to conduct discovery when "good cause" for doing so is shown.  Under guiding principles of the United States Supreme Court, such "good cause" for discovery in habeas proceedings is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997).[3] *See also Holley v. Smith*,  792 F.2d 1046 (11th Cir.1986)(the rules governing discovery in ordinary civil cases are applicable to petitions for the writ of habeas corpus to the extent authorized by the court for good cause shown).

A petitioner who has (1) made specific allegations warranting relief, (2) shown why the requested information is essential to the adequate factual development of his claims, and (3) demonstrated that the requested information is likely in the hands of the party from whom discovery is sought and cannot be obtained through other means, has established "good cause" under *Bracy* and Rule

analogous Rule] for Section 2255 motions."  Advisory Committee Notes to Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts.

[3] By contrast, the Supreme Court has indicated that such good cause is absent when the petitioner's allegations are patently frivolous (*i.e.*, the product of "fantasy which has its basis in the paranoia of prison rather than fact."  *Harris*, 394 U.S. at 300).

6. *See, e.g., Willis v. Newsome*, 771 F.2d 1445 (11th Cir. 1985)(in federal habeas corpus actions, where specific allegations before the court show reasons to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry); *Willis v. Zant*, 720 F.2d 1212 (11th Cir. 1983)(petitioner's claim that young adults were underrepresented in the jury pool remanded to the district court for an evidentiary hearing, and, if necessary, discovery); *Horton v. Zant*, 687 F. Supp. 594 (M.D. GA.1988)(discovery ordered "to permit petitioner's counsel to ascertain the facts" to support his *Swain v. Alabama* claim). *See also Murphy v. Johnson*, 205 F.3d 809, 813-814 (5th Cir. 2000) ("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he [is] entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry"); *East v. Scott*, 55 F.3d 996 (5th Cir. 1995) (although a "district court generally has discretion to grant or deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts"). So long as the information before the court "support[s] the inferences" of constitutional deprivation alleged by the petitioner, "good cause"

exists and discovery is mandated if "[t]he information requested by the petitioner would tend to prove or disprove the validity of such inferences and is relevant to petitioner's claim." *Rice v. Black*, 112 F.R.D. 620, 626 (D. Neb. 1986).

It should also be noted that in a §2255 case, like all civil cases, discovery necessarily precedes resolution of claims on summary judgment. To be entitled to discovery, Mr. Brown need not conclusively establish his entitlement to relief on the merits of his claims. *Payne v. Bell*, 89 F.Supp.2d 967, 971 (W.D. Tenn. 2000)(good cause to grant discovery is not as high as the standard for granting relief or even that for granting an evidentiary hearing).

A federal habeas petitioner must include in his initial petition "what petitioner knows or could discover upon reasonable investigation. . . ." *Id.* Otherwise, he will not later be able to present his claims. Having "obtained a sufficient basis to allege" his claims, Mr. Brown now seeks to make a "reasonable investigation" into all such claims and to "pursue the matter through the habeas process" of discovery under Rule 6. Because habeas petitioner's have an affirmative duty to raise all claims in their initial petition, *see McCleskey v. Zant*, 499 U.S 467 (1991). There is a concomitant duty upon the federal courts to provide petitioners with the necessary tools to meet this obligation, including discovery and services necessary for counsel to effectively utilize these discovery

devices.  Because this is Mr. Brown's first §2255 motion and he sets forth below a sufficient basis for alleging possible deprivations of his constitutional rights, he is entitled to discover evidence which could prove that he is entitled to relief.

### B.  Discovery Is Especially Warranted in a Capital Case

The policies favoring discovery are even stronger in capital cases than in noncapital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland, v. Scott,* 512 U.S. 849, 855 (1994).

Because this is a death penalty case, broad discovery is necessary to ensure that extra measure of process which is demanded in capital cases.  "[I]f death is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims." *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987).  In fact, the capital petitioner who fails to request full discovery in his initial habeas petition may lose his life because he failed to investigate his case earlier. *Tucker v. Kemp*, 819 F.2d 978, 981 (11th Cir. 1987)(on eve of execution, court  found abuse of the writ and denied relief, where capital petitioner failed to seek discovery during first habeas proceeding).  Given the

gravity of this capital case, Mr. Brown requests this Court's leave to conduct discovery which will enable him to fully investigate, develop, and present any and all relevant constitutional claims for relief in his initial capital §2255 motion.

## DISCOVERY REQUESTS

Mr. Brown requests the process of this Court to secure the following evidence in support of his 28 U.S.C. §2255 claims:

### A. Documents and Records

#### 1. Records from the Department of Justice

Mr. Brown requests this Court order the Government to produce any and all relevant records including but not limited to, a formal report, typed memos and/or handwritten notes, related to the administration and/selection procedures in authorizing the death penalty in federal cases; including:

1. All correspondence (including e-mails and internal memorandum regarding phone calls or verbal conversations) from the United States Attorney's Office regarding the decision to seek the death penalty against the defendant, including but not limited to:

2. the "Death Penalty Prosecution Memorandum" as described at § 73 of the

Department of Justice Criminal Resource Manual;[4]

      a. the "Death Penalty Evaluation Form for Homicides under Title 18" and all attached memoranda as described at §§74-77 of the Department of Justice Criminal Resource Manual;

      b. the "Non-decisional Case Identifying Information" form identifying the race and gender of defendants and victims as described at §§74-77 of the Department of Justice Criminal Resource Manual;

      3. Captions and case numbers of all potential capital prosecutions submitted to the Capital Case Review Committee of the Department of Justice in the United States between June 6, 2001 and the present date, with a description of the offense(s) charged and the ultimate disposition of the case and the race or ethnic background and gender of the defendants and victims;

      4. All standards, policies, practices, or criteria employed by the Department of Justice to guard against the influence of racial, political, gender or other arbitrary or invidious factors in the selection of cases and defendants for capital prosecution;

      5. For each of the cases identified in item B above, the following

---

[4] Available at
http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/crm00073.htm

information:

   a.  the "Death Penalty Prosecution Memorandum" as described at §

73 of the Department of Justice Criminal Resource Manual;

   b.  the "Death Penalty Evaluation Form for Homicides under Title18"

and all attached memoranda as described at §§74-77 of the Department of Justice

Criminal Resource Manual;

   c.  the "Non-decisional Case Identifying Information" form

identifying the race or ethnic background and gender of defendants and victims as

described at §§74-77 of the Department of Justice Criminal Resource Manual;

   d.  the Presentence Investigation Report.

   6. Any correspondence (including e-mails and internal memorandum

documenting phone calls or verbal conversations) from the Department of Justice

to United States Attorneys and their respective staffs between June 6, 2001 and the

present regarding federal death penalty policies, procedures, and selection criteria,

or identifying cases to be considered for capital prosecution under federal law;

   7. All policies or practice manuals used by the United States Attorney in the

Southern District of Georgia regarding the factors used to determine whether to

charge defendants under Georgia or federal law or whether or when to seek the

death penalty.

8. A list of all death-eligible indictments originating in the Southern District of Georgia since June 6, 2001, the race and gender of the defendant, the race and gender of the victim(s) and the ultimate disposition of the cases.

9. A list of all non-negligent homicide cases in the Southern District of Georgia known to the Justice Department or to the FBI in which one or more defendants was arrested and charged by state or federal law enforcement authorities, including all those in which the facts would have rendered the offenders eligible for the death penalty under federal law.

Petitioner also alleges in Claim VIII that there is a direct correlation between the amount of funds provided to the defense effort for indigent defendants charged with capital crimes and whether the death penalty is imposed, i.e., the less money that is provided, the more likely it is that the death penalty will be imposed. As such the death penalty is arbitrary, in violation of the Fifth and Eighth Amendments. Petitioner seeks the following discovery:

1. A breakdown of the total amount of money provided for the defense in this case;

2. A breakdown of the total amount of money provided for the defense in any murder case in the Southern District of Georgia since 1996.

**Good Cause**. The documents requested will allow Mr. Brown to

more fully investigate a critical issue raised in his Motion to Vacate.  In order further to document that the Federal Death Penalty Act operating in an unconstitutional manner In Claim VIII of his Motion to Vacate, Petitioner has proffered evidence to demonstrate that the federal death penalty is imposed disproportionately on African-American males and upon persons convicted of killing white females.  *See* Claim VIII, Petitioner's Comprehensive Brief, filed this date; *see* also Appendices 9 and 10, Motion for Evidentiary Hearing and/or Motion to Expand the Record.  This is arbitrary and discriminatory, and violates the Fifth and Eighth Amendments. *Furman v. Georgia*, 408 U.S. 238 (1972).    He has also pled that the less funding received for the defense in a capital case, the more likely a death sentence which is arbitrary.  *Id*

Further, the documents and records sought are not otherwise available to Petitioner.

### 2.  Records Pertaining to the Jury Pool from Which Mr. Brown's Jury  was Selected

In Claim IX of his Motion to Vacate, Petitioner alleges that  Counsel failed to adequately protect Petitioner's constitutional rights during all stages of Petitioner's trial including, but not limited to, Petitioner's rights under the Confrontation Clause .  In his Brief, Mr. Brown outlines at least one way in which

trial counsel performed deficiently in this regard, "[t]he record in this case is devoid of the information needed to determine if the prosecution utilized their peremptory challenges in a racially or gender motivated manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986) or *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127 (1994)." Indeed, a review of the record reveals that no where is there an account of the race or gender of the jurors who were in the initial jury pool and who were subsequently struck for cause or peremptorily. Thus, in order to pursue this aspect of his ineffective assistance of counsel claim Mr. Brown requests the following be provided by the Clerk of the Court for the United States District Court for the Southern District of Georgia, Savannah Division:

1. A list of the name, race and gender for each juror summoned in the case of *United States of America v. Meier Jason Brown*, 4:03-CR-00001 (BAE).

**Good Cause**. Whether Petitioner received constitutionally effective assistance of counsel is a claim that is properly before this Court on the merits. In order to ascertain whether trial counsel rendered effective assistance in the selection of the jury, Mr. Brown must determine if there was a basis for a motion under *Batson v. Kentucky*, 476 U.S. 79 (1986) or *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127 (1994). Current counsel has searched the file in Mr. Brown's case, has obtained the files from both trial counsel, and obtained what is purported to be

a complete file from the Department of Justice.  In none of the documents counsel has been able to obtain is there any document indicating the name, race and gender of each juror.

### 3.    Records from the Bureau of Prisons

In Claim XV, Mr. Brown asserts that the method of execution - - lethal injection - - constitutes cruel and unusual punishment.  Recently, the United States Supreme Court decided *Baze v. Rees*, __ U.S.__, 128 S.Ct. 1520 (2008) finding the Kentucky protocols for implementing lethal injection passed constitutional muster.  In finding the Kentucy procedure constitutional, the Court noted a series of safeguards precluding a substantial risk of harm that were  present within the Kentucky system.  Thus, in order to pass constitutional muster, the federal protocols must have similar safeguards to preclude a substantial risk of harm.  Mr. Brown seeks discovery to determine the method by which the Bureau of Prisons will administer lethal injection in his case.  Thus, Mr. Brown requests that this Court order the Department of Justice and/or the Bureau of Prisons to disclose:

Any and all written procedures and protocols by which execution by lethal injection is to be carried out.

### B.    Depositions

In Claim VIII of his Motion to Vacate, Petitioner has proffered evidence to

demonstrate that the federal death penalty is imposed disproportionately on African-American males and upon persons convicted of killing white females. *See* Claim VIII, Petitioner's Comprehensive Brief, filed this date; *see* also Appendices 9 and 10, Motion for Evidentiary Hearing and/or Motion to Expand the Record. This is arbitrary and discriminatory, and violates the Fifth and Eighth Amendments. *Furman v. Georgia*, 408 U.S. 238 (1972).

Under the analysis outlined in *McClesky v. Kemp*, 481 U.S. 279 (1987), in order to make out an Equal Protection Claim that a death sentence was unconstitutionally imposed based on race, general statistical information, even demonstrating the strong connections that have been shown between race, sex, and economic characteristics of the accused and the victim as bearing upon the likelihood that a death sentence would be imposed, may not be enough. The Court has previously held that that in order to succeed on such a claim Petitioner must demonstrate either that the decision makers in his case acted with discriminatory purpose, or that the decision makers possessed racial biases that created "an 'unacceptable risk' that racial bias affected the sentencing decision." *See McClesky v. Kemp*, 481 U.S. 279, 282 (1987).

Petitioner seeks leave of this Court to depose then Attorney General John Ashcroft to determine the reasons he authorized the death penalty in this case,

especially in light of the fact that the local prosecutors (both state and federal), along with members of the victim's family, had all expressed their willingness to allow Mr. Brown to plead guilty and be sentenced to life without parole.  Mr. Brown seeks to depose Mr. Ashcroft because he was the ultimate decision-maker in Mr. Brown's case.

Mr. Brown also seeks the names of the individuals who sat on the Attorney General's capital review board and who heard the presentation by the United States Attorney for the Southern District of Georgia and the presentation by trial counsel.  These individuals, upon hearing what each side had to offer, made a recommendation to the Attorney General.  Mr. Brown seeks the names of these individuals and upon discovery of their identity, seeks permission to depose them as to the *McCleskey* claim contained in his Motion to Vacate.

## CONCLUSION

Given the gravity of this capital case, Mr. Brown requests leave to conduct the requested discovery, including production of records and evidence, and depositions, which will enable him to fully investigate, develop, and present any and all relevant constitutional claims including.  There is "good cause" for discovery.

This Court should also allow Mr. Brown to issue subpoenas to the relevant

authorities for the production of the requested evidence and to allow depositions of the requested witnesses.  If the government alleges that any of the information Mr. Brown seeks via discovery is privileged and/or constitutes attorney work product, he requests the Court to require the government to produce such information for *in camera* inspection and review by the Court.  If the government submits any such material, Mr. Brown further requests the Court to copy that material and maintain it in the record under seal for purposes of any subsequent appeal in this proceeding.

Mr. Brown also requests that any evidentiary hearing be delayed until the completion of the requested discovery.  He also requests leave to seek additional discovery as development of the issues may warrant.

Dated, this the 12th day of May, 2008.

Respectfully submitted,

*s/Jeffrey L. Ertel*
JEFFREY L. ERTEL
State Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
100 Peachtree Street, Suite 1700
Atlanta, Georgia 30303
(404) 688-7530
jeff_ertel@fd.org

ATTORNEY FOR MR. BROWN

19

CERTIFICATE OF SERVICE

I, hereby certify that this pleading has been electronically filed and served upon counsel for the Government and in addition, a true and correct copy of the foregoing has been served upon counsel for the Government by placing a copy of same in the United States Mail, first class postage prepaid and addressed as follows:

> Amy Lee Copeland, Esq.
> Assistant United States Attorney
> P.O. Box 8970
> Savannah, Georgia 31412

Dated, this the 12th day of May, 2008.

*s/Jeffrey L. Ertel*