UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

**UNITED STATES OF AMERICA**

v.                403CR001
                   407CV085

**MEIER JASON BROWN**

## ORDER

### I. BACKGROUND

After convicting Meier Jason Brown of robbing and murdering a federal employee within federal jurisdiction, a jury (and thus this Court) sentenced him to death. Doc. # 276, *aff'd, U.S. v. Brown*, 441 F.3d 1330 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 1149 (2007). Brown, who is indigent, successfully moved this Court for appointment of counsel to assist him in filing a 28 U.S.C. § 2255 motion. 403CR001, doc. ## 327, 328.

Counsel then filed Brown's § 2255 motion. 407CV085. Doc. # 8. It cites an affidavit from the trial jury's foreman, Bruce Little. *See, e.g., id.* at 10 n. 2; doc. # 9-2 at 16. Little relates his belief that, had he been provided certain information, he would have voted for a life sentence for Brown. Doc. # 9-2 at (docket screen page) 21. He attests that he voluntarily agreed to meet and speak with Brown's representatives. *Id.* Little also evidently provided them with the notes he made during trial. Doc. # 8 at 95 n. 32; doc. # 9-9 at 44; *see also* 403CR001, doc. # 271 at 5 (note-taking by the jury is permitted at trial in this district).

That, in turn, compelled the Court to question whether counsel violated S.D.GA.LOC.CIV.R. 83.8, which in pertinent part states:

> No party, attorney, or other person shall, *without Court approval*, make or attempt any communication relating to any feature of the trial of any case with any regular or alternate juror who has served in such case, whether or not the case was concluded by verdict.

(Emphasis added).

The rule is part of this Court's local *civil* rules, but the preamble to the Court's local *criminal* rules reminds that "[t]hese Local Rules for the Administration of Criminal Cases are supplemental in nature, and are to be construed consistently with the generally applicable Local [Civil] Rules...." *See* online "Local Rules for the Administration of Criminal Cases" at 1. http://www.gas.uscourts.gov/lr/lcrimr1.htm (site as of 7/21/08). Such linkage is reinforced by Local *Civil* Rule 83.6(c), which imposes specific duties on attorneys appearing in *criminal* cases. S.D.GA.LOC.CIV.R. 83.6(c) ("Each attorney retained by defendants in criminal cases shall, within three (3) days after being retained....").

Local Civil Rule 83.8 is designed to, among other things, ensure jurors' postverdict privacy, if not safety. *See U.S. v. Giraldi*, 858 F. Supp. 85, 86 (S.D. Tex. 1994), cited in *Com. v. Silva*, 864 N.E.2d 1, 5 (Mass. 2007), and in D. Weinstein, *Protecting a Juror's Right to Privacy: Constitutional Constraints and Policy Options*, 70 TEMP.L.REV. 1, 39 n. 274 (Spring 1997). As one encyclopedic source summarizes:

> Jurors have postverdict privacy rights. The court bears the burden of preventing substantial threats to the administration of justice and preserving jurors' entitlement to privacy and protection against harassment even *after* trial, and its power to prevent harassment of jurors does not end upon the termination of the case. It may protect jurors against harassment, not only from journalists, but also from those interested in the criminal network from which the convictions emanated. The court has the power to withhold the names of jurors from the press

and public even postverdict.

50A C.J.S. JURIES § 511 (*Matters subsequent to trial or discharge of jury*) (June 2008) (footnotes omitted; emphasis added).

Of course, it matters not that a given juror here did not mind being contacted, though several say they did. 2/22/08 FBI Report at 1 (relating juror's claim that such contact "upset him greatly"); *id.* at 4 ("it was quite emotional having to answer these questions after what they had gone through with the [trial]"); *id.* (yet another juror complained that "this questioning made him angry," that "all of this was upsetting and brought back emotions that he had tried to forget"). What matters is that jurors in this case were contacted *at all* without Court approval.

Brown's counsel, admitted *pro hac vice* (407CV085, doc. # 7) is charged with knowledge of this Court's rules. 4/14/08 Ertel Dep. Exh. 4 (his signed, *Pro Hac Vice* form certifying that he "read, is familiar with, and will comply with the Local Rules of the Southern District of Georgia"). Thus if attorney Jeffrey L. Ertel willfully violated Local Civil Rule 83.8, then he is subject to criminal contempt. *See, e.g., U.S. v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir. 2001) (criminal contempt of a court order); *infra* at 3 (a local rule equates to a court order).

The Court therefore referred this matter to the U.S. Attorney for a criminal investigation/prosecution purposes, specifically for disobeying Local Civil Rule 83.8 and thus obstructing the administration of justice (*i.e.*, as word of such casual contact possibilities spreads, this likely will add to some jurors' fear of postverdict contact and thus augment their reluctance to serve; that, in turn, would further burden the Court's efforts to ensure juror service-compliance). 407CV085, doc. # 20; *U.S. v. Brown*, 2008 WL 544614 (S.D.Ga. 2/4/08) (unpublished) (citing *U.S. v. Warlick*, 742 F.2d 113, 117 (4th Cir. 1984) (contempt sanctions arising from pretrial contact with jurors); *U.S. v. Kozel*, 908 F.2d 205, 208 (7th Cir. 1990) (Government prosecuted attorney for criminal contempt arising from violation of local court rule authorizing contempt finding against person who exercised the privileges of a member of the bar of the court prior to admission; upholding the conviction, the Seventh Circuit noted that the rule was sufficiently specific to inform a reasonable person that entering an appearance without having joined the district bar was conduct covered and forbidden by the rule)).

In so doing, the Court cited both 18 U.S.C. § 401(3) and § 402, *Brown*, 2008 WL 544614 at * 1, but, as will be discussed below, now concludes that only § 401(3) applies.

## II. ANALYSIS

### A. Contempt Statutes

18 U.S.C. § 401 provides in its entirety that

[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as--

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, *rule*, decree, or command.

(Emphasis added). "A local rule is the equivalent of a standing order of the district court, *Jones v. Central Bank*, 161 F.3d 311, 313 (5th Cir.1998); and a standing order is an order for § 401(3) purposes. *Seymour v. United States*, 373 F.2d 629, 631 (5th Cir.1967)." *U.S. v. Herrera*, 2001 WL 422627 at * 3 (5th Cir. 2001) (unpublished); *U.S. v. Payne*, 2004 WL 1879993 at * 5 (N.D.Ill. 8/12/04) (unpublished) ("Findings of contempt have also been issued for violations of local rules") (collecting cases); *see also id.* (finding attorney guilty of § 401(3) criminal contempt for making false assertions to the court in violation of Local Rules), *cited in* FED. CRIM. RULES HANDBOOK FCRP 57 n. 9 (*District Court Rules*) (2007 ed.).

18 U.S.C. § 402 contemplates contempt equatable to "a criminal offense under any statute of the United States or under the laws of any State in which the act was committed," *id.*, and § 402 is not to be "construed to relate to contempts committed in the presence of the court, or ... in disobedience of any lawful writ, process, order, rule," *id.*, so § 401, not § 402, is the applicable statute here.

### B. Government's Response

In response to this Court's referral order, the U.S. Attorney (thus, the FBI) investigated. An FBI report and Ertel's voluntary deposition supply probable cause to believe that Ertel at the very least recklessly disregarded Local Rule 83.8 by directly and indirectly (via his agents) contacting jurors without first obtaining this Court's permission. A show-cause, criminal-contempt proceeding is thus warranted.

### C. Non-summary Criminal Contempt

Non-summary criminal contempt is handled by a prosecutor. *In re U.S.*, 398 F.3d 615, 618 (7th Cir. 2005) ("In the rare situations when a prima facie case of criminal contempt has been made out, and the contempt is not committed in the judge's presence (and thus amenable to summary disposition), the judge *must* turn the matter over to a prosecutor rather than assume an inquisitorial role inappropriate to the Judicial Branch") (emphasis added); *accord Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1242 (11th Cir. 2007) (Federal court may punish contemptuous conduct that occurs outside its presence only after giving notice of essential facts constituting the charged criminal contempt, requesting that the contempt be prosecuted by attorney for government, and affording other procedural protections).

Here the U.S. Attorney recommends that the matter be pursued through a show-cause hearing. 7/8/08 Booth Ltr. at 7-8.[1]

### D. Criminal Contempt -- Procedure

#### 1. *General Procedure*

Providing a procedural framework through which district courts may validate their inherent powers, *see Byrne v. Nezhat*, 261 F.3d 1075, 1132 n. 110 (11th Cir. 2001), F.R.Cr.P. 42 in its entirety states:

**(a) Disposition After Notice.** Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

**(1) Notice.** The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:

**(A)** state the time and place of the trial;

---

[1] This is not being filed in the record. *See In re U.S.*, 398 F.3d at 618 (Federal judges may not insist that prosecutors reveal deliberative or pre-decisional materials).

3

**(B)** allow the defendant a reasonable time to prepare a defense; and

**(C)** state the essential facts constituting the charged criminal contempt and describe it as such.

**(2) Appointing a Prosecutor**. The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.

**(3) Trial and Disposition**. A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

**(b) Summary Disposition**. Notwithstanding any other provision of these rules, the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies; a magistrate judge may summarily punish a person as provided in 28 U.S.C. § 636(e). The contempt order must recite the facts, be signed by the judge, and be filed with the clerk.

F.R.Cr.P. 42.

Ertel's conduct occurred outside the Court's presence, so Rule 42(a) applies, not Rule 42(b).[2] Note that Rule 42 is a *procedural* rule, while the substantive offense of criminal contempt in this context is governed by 18 U.S.C. § 401. *See, e.g., U.S. v. Ortlieb*, 274 F.3d 871, 874 (5th Cir. 2001). Under Rule 42(a)(2), the Court appoints the U.S. Attorney (who may delegate to an Assistant U.S. Attorney) to prosecute this case.

### 2. *Notice*

As for notice, an indictment or information is not required: "Even though criminal contempt may subject the contemnor to imprisonment exceeding one year, it is not an 'infamous crime' within the Fifth Amendment requiring indictment, information or presentment." RUTTER GROUP PRAC. GUIDE FED. CIV. TRIALS & EV. Ch. 13-E (*Contempt Proceedings*) (2008); *U.S. v. Marthaler*, 571 F.2d 1104, 1105 (9th Cir. 1978). The U.S. Attorney shall arrange, with Ertel and the Court's Deputy Clerk, a show-cause hearing date that provides Ertel with a reasonable time within which to prepare his defense.

### 3. *Evidentiary Standards*

The Government's 18 U.S.C. § 401 evidence must meet the "reasonable doubt" standard. *See generally* 49 A.L.R. 975 (*Degree of proof*

---

[2] "Because the summary contempt sanction is not subject to the usual requirements of a jury trial or notice and opportunity to be heard, summary contempt is a rule of necessity, reserved for exceptional circumstances and a 'narrow category' of contempt." *U.S. v. Marshall*, 371 F.3d 42, 45 (2nd Cir. 2004) (quotes and cites omitted); *see also* 17 AM.JUR.2D *Contempt* § 191 (May 2008) ("[T]he misbehavior that permits summary action must in addition present an imminent threat to the administration of justice; it must immediately imperil the judge in the performance of his or her judicial duty or constitute an actual obstruction of justice") (footnotes omitted).

*necessary in contempt proceedings*) ("Where the proceeding is regarded as criminal in character, it is well settled that the guilt of the accused must be proved beyond a reasonable doubt") (1927); *U.S. v. Straub*, 508 F.3d 1003, 1008 (11th Cir. 2007). As the Eleventh Circuit explained, in a court-order-violation case:

> To support a § 401(3) conviction, the government must prove: (1) that the court entered a lawful order of reasonable specificity; (2) the order was violated; and (3) the violation was willful.

*Bernardine*, 237 F.3d at 1282 (quotes and cite omitted).

Again, a local rule is tantamount to a court order, and "[w]illfulness is a deliberate or intended violation rather than one that is accidental, inadvertent or negligent." *Id.* at 1282 n. 2 (quotes, cite and punctuation omitted). It "is ... a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *Payne*, 2004 WL 1879993 at * 4 (quotes and cite omitted). And, it "can be inferred from facts and circumstances." *Id.*

Finally, the intent element can be shown by demonstrating recklessness:

> [T]he criminal contempt power is to be reserved for conduct that bespeaks a criminal mens rea (*i.e.*, intentional or reckless conduct) and has been proven beyond a reasonable doubt, whereas non-contempt sanctions normally suffice in circumstances involving less culpable states of mind.

*U.S. v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir.1999), *quoted in Byrne,* 261 F.3d at 1132 n. 112, *and in* 1 FED. JURY PRAC. & INSTR. § 5:20 (*Control of Counsel*) (6th ed. 2008); *see generally* 21 AM.JUR.2D Criminal Law (*Recklessness*) § 127 (May 2008).[3]

### 4. *Defenses*

Those facing contempt raise a variety of defenses. *See, e.g., Zal v. Steppe*, 968 F.2d 924, 929 (9th Cir. 1992) (First Amendment does not shield efforts by zealous counsel to flout trial judge's authority to preserve decorum in courtroom in order to permit reasoned resolution of issues); *Mezibov v. Allen*, 411 F.3d 712, 720 (6th Cir. 2005); *Seymour v. U.S.*, 373 F.2d 629, 631 (5th Cir.1967); 1 SMOLLA & NIMMER ON FREEDOM OF SPEECH § 8:32.50 (Apr. 2008).

Good faith is perhaps the most common. *See* RUTTER Ch. 13-E ("[A] person should not be held in criminal contempt if his or her actions appear to be based on a good faith and reasonable interpretation of the court's order")

---

[3] As that encyclopedist explained:

> The establishment of recklessness in a criminal law context requires a subjective inquiry into a defendant's mental state. Liability cannot be predicated solely on an objective consideration of what a defendant "should have known." However, whether an act is reckless may depend on both what the defendant knew and how a reasonable person would have acted knowing these facts.

*Id.* (footnotes omitted); *see also Safeco Ins. Co. of America v. Burr*, 127 S.Ct. 2201, 2208 (2007) (Liability for "willfully" failing to comply with Fair Credit Reporting Act (FCRA) extends not only to acts known to violate FCRA, but also to reckless disregard of statutory duty). Ertel admits that he was aware of this Court's Local Rules but chose to read only its Local Criminal Rules. He deposes that he failed to note their preamble -- which otherwise alerts lawyers to consult the local *civil* rules, and thus S.D.GA.LOC.CIV.R. 83.8. Ertel Dep. at 14-18; *see also* 28-31, 44-47; 47 ("I thought I read the rules sufficiently. You know, I just didn't see it").

5

(quotes, bracketed material and cites omitted).

That defense bears some subtle nuances. For example, "[i]gnorance of the law generally is not a defense to a criminal charge." 17 AM.JUR. 2D Contempt § 185 (*Defenses*) (May 2008). And "[a] good faith belief in the accuracy of an attorney's argument, ignorance of the law, or the absence of contemptuous intent is not justification for acts of contempt." *Id.*

Hence, "[a]n alleged contemnor may not rely on its own inadvertence or misunderstanding to avoid a finding of contempt." 17 C.J.S. CONTEMPT § 39 (*Defenses*) (June 2008). But it also has been said that

> [a] finding of direct contempt will be reversed upon review if the attorney can show that the conduct complained of was a good-faith attempt to represent the client without hindering the trial court's functions or dignity. Additionally, the fact that counsel pursues a method at variance with that which the court deems correct, with no intended disrespect to the court, should not subject counsel to a penalty for contempt.

*Id.* (footnote omitted); *see also U.S. v. Simmons*, 215 F.3d 737, 741 (7th Cir. 2000) (because good faith effort to comply with court order negates willfulness, an element of criminal contempt that must be proven beyond reasonable doubt, defendant may present evidence of his good faith as a defense to criminal contempt charge); 17 C.J.S. CONTEMPT § 39 ("A criminal contempt conviction requires more than the attorney's violation of an ethical duty").

### 5. *Jury Trial Rights*

Because (by this Order) the Court is limiting any sanction to no more than imprisonment for six months, Ertel is not entitled to a jury trial in this proceeding. *Marshall*, 371 F.3d at 48-49 (Defendant has a Sixth Amendment right to a jury trial before being sentenced to a prison term of more than six months for criminal contempt); 1 FED. JURY PRAC. & INSTR. § 5:20 (*Control of counsel*) (6th ed. 2008) ("A sentence for contempt cannot exceed six months unless the right to a jury trial is afforded"); *see also* RUTTER Ch. 13-E ("Although § 401 limits punishment for criminal contempt to either a fine or imprisonment, imprisonment under § 401 does not prevent the court from awarding sanctions for the same contemptuous conduct under some other authority (*e.g.*, 28 USC § 1927)").[4]

### 6. *Pre-hearing Matters*

Both the Government and Ertel must move this Court for leave to subpoena any Ertel-contacted *Brown* jurors for this proceeding. Since it is undisputed that Ertel contacted them, the Court will look askance at such a request. And given the offense charged (*i.e.*, juror *contact* in violation of a local rule), a given juror's "feelings" about such contact is irrelevant. So subpoenaing them merely to prove that Ertel contacted them, or to demonstrate the emotional impact upon them, would be gratuitous.

---

[4] Thus, a fine is also an option. *See Kouri-Perez*, 187 F.3d at 7 n. 2 (criminal contempt proceedings address a completed crime, so the fine imposed is a criminal sentence, as the contemnor lacks the unilateral option to avoid the fine by future compliance with the court order); *U.S. v. Time*, 21 F.3d 635, 642 (5th Cir. 1994) (defendants charged with criminal contempt for violating court order were not entitled to jury trial, where actual fines imposed did not exceed $5,000 statutory definition of petty crimes for which no right to trial by jury existed), *cited in* 50A CJS JURIES § 142 (*Seriousness of offense--Factors considered in general*) (2008); *but see* Rutter, Ch. 13-E ("[T]he line between 'petty' and 'serious' fines is uncertain...."). Also, "Criminal contempt may be punished by a fine or imprisonment, *but not both*." Rutter, Ch. 13-E.

6

Meanwhile, any pretrial motions must be filed by no later than 20 days before the hearing date. The "reply brief" rule set forth in *Brown v. U.S.*, 2008 WL 544622 at * 2 (S.D.Ga. 2/12/08) (unpublished), continues to apply here.

Finally, there is the issue of defensive pleading:

> Generally, the respondent should file a responsive pleading either admitting or denying the accusations. Failure to file a responsive pleading either admitting or denying the accusations may result in a finding that the applicant's averments are uncontested as a matter of law.

RUTTER Ch. 13-E. Ertel is free, but is not required to, file a response to this Order. His non-response shall not prejudice him, and will simply be construed as a denial of the criminal contempt charge set forth herein.

## III. CONCLUSION

Having found probable cause to believe that attorney Jeffrey L. Ertel willfully violated S.D.GA.LOC.CIV.R. 83.8, he shall show cause -- in a hearing to be held before this Court in accordance with the directives set forth above -- why he should not be held in criminal contempt of this Court under 18 U.S.C. § 401(3).

Finally, the Clerk is directed to file the aforementioned FBI report and Ertel deposition into the record of this case. However, the Court finds good cause (protecting juror privacy) to seal the FBI report,[5] so the Clerk shall mail a copy to Ertel, who is ordered not to disclose it to anyone beyond his own counsel. Also, the Clerk shall redact the juror's name appearing on lines 16 and 19 on page 18 of the Ertel deposition.

This  21  day of July, 2008.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[5] This Court must find good cause to seal court records. *See U.S. v. Bradley*, 2007 WL 1464058 at * 10 (S.D.Ga. 5/17/07) (unpublished), *unsealing objections overruled*, *U.S. v. Bradley*, 2007 WL 1703232 (S.D.Ga. 6/11/07) (unpublished); *Snethen v. Board of Public Educ. for the City of Savannah and the County of Chatham*, 2007 WL 2345247 at * 1 (S.D.Ga. 8/15/07) (unpublished).