**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

**MEIER JASON BROWN**

v.                    407CV085
                      403CR001

**UNITED STATES OF AMERICA**

## ORDER

After convicting Meier Jason Brown of robbing and murdering a federal employee within federal jurisdiction, a jury (and thus this Court) sentenced him to death.  Doc. # 276, *aff'd*, *U.S. v. Brown*, 441 F.3d 1330 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 1149 (2007). Brown now moves, over the Government's opposition, for 28 U.S.C. § 2255 relief. 407CV085, doc. ## 8, 50, 54.  He also moves for discovery and for an evidentiary hearing. Doc. # 52, *as supplemented*, # 66; # 53, *as supplemented*, # 67.  The Government opposes those motions, too.  Doc. ## 55, 56.

A collateral matter, however, has arisen within these collateral proceedings.  In *U.S. v. Brown*, 2008 WL 2811890 (S.D.Ga. 7/21/08) (unpublished), the Court appointed the U.S. Attorney to prosecute Brown's attorney[1] for criminal contempt for violating S.D.GA.LOC.CIV.R. 83.8 (bars attorneys from post-verdict contact with jurors without first obtaining the Court's consent) when he sought to show (via juror affidavits) prejudice from various trial-based errors.

In response, that attorney -- Jeffrey L. Ertel -- has moved the Court for leave to withdraw from representing Brown.   Doc. # 68.   The Government "defers to the Court as to this motion." Doc. # 71.  Ertel insists that he

has the ethical responsibility to investigate whether the Government violated Petitioner's federal constitutional rights in the prosecution of the criminal case against Petitioner and whether other trial court errors tainted the conviction. Upon discovering any such violations, undersigned counsel has the ethical responsibility zealously to present such claims for relief. In so doing, undersigned counsel would be required to accuse the United States Attorney's Office of wrongful acts or omissions during the prosecution of Petitioner and to point out errors committed by the trial court in the proceedings that led to his conviction.

Doc. # 68 at 1-2. So, "by accusing the Government and/or this Court of any wrongful acts or omissions occurring during the prosecution of Petitioner[, Ertel insists that he] is acting directly contrary to his *own* personal and professional interests vis-a-vis the contempt proceedings that have been initiated in this Court. *See United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987)."   *Id.* at 2 (emphasis added). Thus, Ertel concludes, "it is necessary that he move to withdraw as [Brown's] counsel...." *Id.*

"In the alternative," Ertel argues, "this Court could hold further proceedings in this case in abeyance until the contempt issue is resolved." *Id.* at 3 n.1.

*McClain*, which has been partly abrogated on other grounds, *see U.S. v. Watson*, 866 F.2d 381, 385 n. 3 (11th Cir.1989), establishes that *trial* counsel proceeds with an impermissible conflict[2] if, whatever the government may be doing to him at the time, there is a reasonable

---

[1]  *See* doc. # 2 at 6 (prior order denying request for appointment of two lawyers to represent Brown).

[2]  Case law has illuminated various types of conflict: *per se*, actual, etc. *See, e.g., Cruz v. U.S.*, 188 Fed.Appx. 908, 913 (11th Cir. 2006); *Armienti v. U.S.*, 234 F.3d 825, 822-23 (2d Cir. 2000); 9 Wright & Miller, FED. PROC., L. ED. § 22:594 (*Conflicts of Interest*) (Sept. 2008).

possibility that such will adversely affect the advice or service that he provides to his client. 823 F.2d at 1463; *see also Armienti v. U.S.* 234 F.3d 820, 825 (2nd Cir. 2000), *appeal after remand*, 313 F.3d 807 (2d Cir. 2002); 1 CRIM. PRAC. MANUAL § 7:13 (*Attorneys accused of misconduct--Attorney under investigation*) (Sept. 2008).

Even were such a reasonable possibility shown here, this is a *collateral* (as opposed to direct) criminal proceeding. Hence, there is no constitutional, but only a statutory, right to counsel. *See U.S. v. Berger*, 375 F.3d 1223, 1225 (11th Cir. 2004) (Defendants have Sixth Amendment right to counsel on direct appeal, but not when they collaterally attack their sentences); *Jeffers v. Lewis*, 68 F.3d 299, 300 (9th Cir. 1995) (Prisoner does not have constitutional right to counsel in collateral proceeding, to challenge adequacy of trial counsel, even though that proceeding is first place such challenge could have been presented); doc. # 2 (applying federal statute to appoint Ertel). Accordingly, the Court will apply the more exacting standard (as further detailed *infra*) set forth in *U.S. v. Montana*, 199 F.3d 947, 949 (7th Cir.1999).

First, however, some basic collateral-proceeding realities must be acknowledged: *Every* postconviction lawyer will pretty much accuse "The System" of dealing his client a bad hand (denial of due process, etc.). That's part of such counsel's *job*. So by "accusing" the Government or this Court of violating his client's rights, Ertel is simply not in conflict with his own personal need to oppose the contempt proceedings against him.

If anything, it is *consistent* for Ertel to argue that (a) he was entitled if not obligated to sift for due process failings; and (b) it was the norm for him to contact jurors in the postconviction phase of this case, *see* doc. # 64 at 27 (it is something he has routinely done in state death penalty cases).

Insisting, then, that he cannot be held in contempt because this Court's anti-contact local rule is (for example) in some way unenforceable (*e.g.*, that it violates First Amendment free associational rights or is somehow trumped by Brown's due process right to pursue the very collateral remedy that Congress has authorized), therefore poses no conflict with Brown's interest, which is to exploit any flaws in the process due him. Nor is it inconsistent to contend, for example, that Ertel was merely negligent (as opposed to contemptuously willful or reckless) in reading this Court's local rules (many a lawyer overlooks something while representing clients before this Court; that has never sufficed as grounds for disqualification).

It is, of course, difficult to imagine a greater conflict than an attorney's concern over incurring prosecutorial wrath while vigorously representing his client. Acknowledging this, the Seventh Circuit cited

> a line of cases which hold that a lawyer who is under investigation by the Department of Justice has a conflict of interest in representing a person whom the Department is prosecuting *if* the lawyer is afraid of retaliation should he press his client's defense too vigorously. *Thompkins v. Cohen*, 965 F.2d 330, 332 (7th Cir.1992); *cf. United States v. Levy*, 25 F.3d 146, 156 (2d Cir.1994); *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir.1984).

*Montana*, 199 F.3d at 949 (emphasis added); *see also* Ann., *Circumstances giving rise to prejudicial conflict of interests between criminal defendant and defense counsel—federal cases*, 53 A.L.R. Fed. 140 (2008 Supp.).

2

But whether the fear merely seems probable, *McLain*, 823 F.2d at 1464, or is actual, *Montana*, 199 F.3d at 949, this Court holds that in the collateral-representation context counsel must be shown to be actually pulling his punches to protect himself. *Cf. Montana*, 199 F.3d at 949 (Defendant did not show ineffective assistance of counsel on theory that his lawyer's discovery that he had been the unwitting instrument for conveying a bribe demand from defense witness to defendant's mother might have intimidated him into providing less than vigorous representation, fearing that if he were too effective the government would retaliate; this was pure speculation, as there was no indication that the lawyer pulled his punches and no hint that anyone suspected him of having read the note before transmitting it to defendant's mother, though it was inappropriate for lawyer to carry a note from a jailhouse inmate); *Reyes-Vejerano v. U.S*, 276 F.2d 94, 99 (1st Cir. 2002) ("the defendant must show some causal relationship between the lawyer's awareness of the investigation and the alleged deficiency in representation"); *Armienti,* 234 F.3d at 824-25 (defendant made a sufficient, actual-conflict showing to warrant a § 2255 evidentiary hearing where the record showed that counsel was being investigated by the same U.S. Attorney's office that was prosecuting defendant. "A lawyer in these circumstances, while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best interest of the lawyer's client"), *appeal after remand*, 313 F.3d at 811 (Defendant failed to establish actual conflict of interest on part of his trial attorney based upon counsel's alleged unwillingness, due to his purported connections with well-known crime family, to pursue plea negotiations that were dependent upon defendant's cooperation in

testifying against family, or based on fact that counsel was himself under criminal investigation that distracted him in his representation of defendant and prevented him from commanding prosecutor's respect and effectively negotiating plea, where defendant failed to show that attorney, in fact, had any connections with this crime family, or that it was attorney's refusal to negotiate, and not his own adamant opposition to any plea agreement, that prevented bargain from being struck, and where attorney's representation was characterized by vigorous advocacy in hiring private investigator to collect information, locating evidence to discredit witnesses, and comprehensively reviewing impeachment material provided by government prior to trial).

Here Ertel does not claim that he is pulling any punches, but simply points to the contempt proceedings against him and cites *direct*-criminal proceeding precedent that involved a Sixth Amendment right (*McLain*) to show an actionable conflict. He thus at most *implies* that he does not want to further aggravate the same prosecutor who seeks his client's execution and thus, that he may unconsciously pull some punches here.

But given the rights in balance here (statutory, as opposed to constitutional right to counsel; society's interest in finality; consumption of court resources, etc.), more is required than mere implication. Instead, counsel must cite facts showing that, objectively speaking, a *collateral*-phase appointed counsel in a capital case -- where courts routinely waive page-limits[3] entertain energetically creative claims, and hear

---

[3] *See, e.g., Blankenship v. Terry*, 2007 WL 4404972 at * 2 (S.D.Ga. 12/13/07) (unpublished) ("This Court granted Blankenship leave to proceed in forma pauperis, appointed him counsel pursuant to 21 U.S.C. § 848(q)(4)(B), waived its page-limitation requirements and illuminated its liberal reply brief policy (unlimited), then directed the parties to say everything they have to say in comprehensive briefs").

eve-of-execution stay motions from thickened-hide, "Death Penalty Lawyers" -- would toss down his boxing gloves and shout: "No Mas."

Ertel has not made that factual showing here. Accordingly, attorney Jeffrey L. Ertel's motion to withdraw (doc. # 68) is *DENIED*.

This __15__ day of September, 2008.


B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA