IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA    .

.

vs.    .  CR 403-001

.

MEIER JASON BROWN    .  Savannah, Georgia

.  November 3, 2003

VOLUME I of V

TRANSCRIPT OF JURY TRIAL

BEFORE THE HONORABLE B. AVANT EDENFIELD

UNITED STATES DISTRICT JUDGE

Court Reporter:    Lora H. Carter
Official Court Reporter
United States District Court
P. O. Box 8552
Savannah, Georgia 31412
Tel.  912-650-4065

*Proceedings reported by stenotype; transcript produced by computer-aided transcription.*

A P P E A R A N C E S:


FOR THE GOVERNMENT:

      WILL FRENTZEN
      JOSEPH NEWMAN
      P. O. Box 8970
      Savannah, GA  31412



FOR DEFENDANT:

      RICHARD DARDEN
      219 W. York Street
      Savannah, GA 31412


      WILLIAM BELL
      420 W. Broughton St.
      Savannah, GA 31401

*[NOTE:  The Court meets with counsel commencing at 9:00 A.M. on Monday, November 3, 2003, as follows:]*

THE COURT:  Good morning, ladies and gentlemen.

MR. NEWMAN:  Good morning, Your Honor.

THE COURT:  Mr. Clerk, you gave to the lawyers copies of the jury questionnaire on Friday at 9:30.

CLERK:  Friday at 9:30.

THE COURT:  Does the government have any response to those?  Anything you want to talk about.

MR. FRENTZEN:  We do, Your Honor.  We have a list we think likely for cause challenges.

THE COURT:  Do you wish to assert those now?

MR. FRENTZEN:  Yes, we can.  It is fairly lengthy, Your Honor.

THE COURT:  How many are there?

MR. FRENTZEN:  34, I believe, Your Honor.

THE COURT:  Well, let me pass around and see what Mr. Darden and Mr. Bell have.

MR. DARDEN:  Judge, we have a rather lengthy list as well, probably 15 or 20.

THE COURT:  Okay.  What are yours concerned about, Mr. Frentzen?

MR. FRENTZEN:  The majority of them, Your Honor, would have difficulty imposing the death penalty.

THE COURT:  What does your relate to, Mr. Darden, generally.

MR. DARDEN:  Individuals who stated absolutely that they are a strong proponent of the death penalty.

THE COURT:  That is no --

MR. DARDEN:  I understand that.  But they would not consider mitigation, they would automatically impose a sentence of death.

THE COURT:  Well, let me say in both of these instances.  Isn't it part of the individual voir dire to see if those jurors would not be rehabilitated, those who say under no circumstances would they consider imposing the death sentence.

Under **Witherspoon**, do I not have an obligation, does not the Court have an obligation to probe their feelings so that they understand the circumstances might alter their views?

MR. FRENTZEN:  I think that may be accurate, Your Honor.  Some of these may be able to be rehabilitated.  We did not want to be waive our initial reaction.

THE COURT:  Okay, I understand that.  The same goes with you, Mr. Darden.

MR. DARDEN:  I agree with the Court.  We would like a chance to rehabilitate those that indicated they are opposed to the death penalty.

THE COURT:  Of course, I noticed -- now, I did not look at all of the questionnaires, but I looked at a representative selection.  Perhaps the questions were not artful or the vocabulary of the people was somewhat limited.  But there were contradiction when they said I would impose the death sentence, but I will consider mitigating evidence.

Well, that is the obvious conflict.  The purpose of this voir dire later today is to ensure that they understand, and we understand their answers.  Then, of course, the Court would make the appropriate ruling.

Now, Mr. Frentzen, would you identify those jurors by number and name that you consider are disqualified at this point?

MR. FRENTZEN:  Yes, Your Honor.

THE COURT:  Mr. Darden, you and Mr. Bell might want to listen, get his numbers.  And then, of course, I am going to come to you and ask you the same question.

My law clerks and the clerk hopefully will identify these.  We'll look at them sometime this morning.

Go ahead, Mr. Frentzen.

MR. FRENTZEN:  Thank you, Your Honor.  Juror No. 2, Annie cannon.  No. 5, Helle Lee.  No. 11, Mary Jones; No. 22, Julie Vann; No. 24, Janine Neal; No. 25, Barbara Ann Hunter; No. 47, Steven Skinner; No. 78, Mary Ann Lynah; 98 Paula Swart; 99, Gracie Williford; 101, Bobby Washington;

110, Demetra Williams; 115, Catherine Wilson; 118, Takia Martin; 126, Louis Nobles; 133 Valerie Holland; 145, Barbara Brown; 147, Nicole Blount; 168, Orlando Montoya.

THE COURT:  Go a little slower.

MR. FRENTZEN:  Sorry, Your Honor.

THE COURT:  Do you have a list of those that you could give to the Court?

MR. FRENTZEN:  I do, Your Honor.

THE COURT:  All right.  But still put them in the record.  Would you hand them to the clerk?

MR. FRENTZEN:  Yes, sir.

THE COURT:  Proceed, Mr. Frentzen.

MR. FRENTZEN:  Thank you.  184, Rondall Newsome; 186, Barbara Brown, 191 --

CLERK:  You've got two Barbara Browns.

MR. NEWMAN:  Both of them.

THE COURT:  Yes.  There were two Barbara Browns in the panel.

MR. FRENTZEN:  That's correct.  191, Betty Mikell; No. 201, Sherry Bennett; No. 203, Charles Miller; No. 206, Kenneth Lamar; No. 209, Victoria Barnwell; No. 212, Kathy Stokes; 214, Manuel Maez; No. 225, Samuel Watkins; No. 227, Tamara Brewer Sherman, or Shuman; No. 235, Glynis Williams.

MR. BELL:  What was that number?

MR. FRENTZEN:  235.

MR. BELL:  Thank you.

MR. FRENTZEN:  236, Ruth Mayo; 247, Kristin Fahey; 249, Thomas Brown.

THE COURT:  Mr. Darden, would you please identify those that you feel are disqualified, or Mr. Bell, from the questionnaires you have received?

MR. DARDEN:  Yes, sir.

MR. BELL:  Judge, No. 14, Benjamin Hilderbrandt; No. 15, George Boechetter; No. 17, Charles Capers; No. 20, Paul Tindol; No. 28, Ginger Becton; No. 44, Shirley Middleton; No. 47, Steven Skinner; No. 82, Shannon Mastoupoulos; No. 90, Robert Sims; No. 112, James Fielding.

And then Mr. Darden has some others.

THE COURT:  Okay.  Mr. Darden.

MR. BELL:  And No. 54, Kitchell.

MR. DARDEN:  No. 144, Leah Cox; No. 158, Allen Boutwell; No. 168, Orlando Montoya; No. 174, Tara Avinger; No. 175, Tracy Amick.

THE COURT:  Do you have a list?

MR. DARDEN:  We will bring a list.

THE COURT:  That is not the question.  All these lawyers never answer a question.  Do you have a list?

MR. DARDEN:  No, sir.

THE COURT:  All right.

MR. DARDEN:  We will make a list, Your Honor.

Thank you.

No. 192, Barbara Sweat; No. 196, Tracy Burgess; 199, David Washington; 210, Donald Devegter.

THE COURT:  Are all these people who simply said that they could impose the death penalty?

MR. DARDEN:  These are people that said they would automatically.

THE COURT:  Okay.

MR. DARDEN:  No. 212, Kathy Stokes.  214 --

THE COURT:  I thought he identified Stokes also.

MR. DARDEN:  Manuel Maez, 214; 218, Richardine Stephens; 225, Samuel Watkins.

THE COURT:  Mr. Clerk, are there people that both of them identified?

CLERK:  Yes, sir, there are.

THE COURT:  Pull those that they cross identified out.

Now, keep in mind, even if you agree that they are disqualified, under the current law as promulgated by the Supreme Court, is citizen has a right to serve.  So, it is not your decision, but I would agree under certain circumstances it would be a waste of time to proceed further.

That is the whole underpinning of **Batson**, and its progeny, the right of the citizen to serve.

CLERK:  There are four that appear on both list.

THE COURT:  Okay.  The clerk says there are four that appear on both lists.  Would you identify those, Mr. Clerk?

CLERK:  No. 214, Manuel Maez, and No. 225, Samuel Watkins; No. 212, Kathy Stokes; and No. 168, Orlando Montoya.

MR. FRENTZEN:  Judge, I believe there may be one other.

THE COURT:  Okay.

MR. FRENTZEN:  I thought I heard that No. 47, Steven Skinner, was on both lists, unless I was mistaken.

MR. BELL:  That's what we have, Judge.

THE COURT:  Okay.

CLERK:  And 47.

MR. BELL:  We shouldn't have called 47.  That is just on theirs.  We listed him as fine.

THE COURT:  What did you say?

MR. BELL:  If we called out No. 47, that was an error.  He's just one of theirs.

THE COURT:  Yes.  I would think it would be highly unlikely that the defendant wanted to get rid of juror.  If he adheres to the views in here, of course, he is disqualified.  But that remains to be seen.

That is Steven L. Skinner.

Juror 212 says she opposes the death penalty, and she explains.

Why would the defendant wish to have her removed?

CLERK:  That is Kathy Stokes.

MR. BELL:  That must have been called in error.

MR. DARDEN:  I think we marked some in anticipation of what the government was going to do.

THE COURT:  Okay.  Likewise, Manuel R. Maez.  He says he strongly opposes the death penalty.  Is that another one of that stripe?

MR. DARDEN:  Yes, sir.

THE COURT:  And Samuel William Watkins seems to be of the same opinion.  I assume the defendant, anticipating the government, is reason --

MR. DARDEN:  We did, Your Honor.

THE COURT:  Well, I don't see any of these that disqualify themselves from anything said here.

Now, did you receive the Court order this morning ruling on the motion that was brought by the defendant?

MR. FRENTZEN:  We did, Your Honor.

THE COURT:  Now, as far as I know, all motions have been addressed.  Does the government have any outstanding motions?

MR. FRENTZEN:  I don't believe we do.

THE COURT:  Does the defendant have any

outstanding motions?

MR. DARDEN:  I don't believe we do, Your Honor.

THE COURT:  All right.  What I propose to do, I'm not going to disqualify any based on what I see.

I want to preserve the random choice.  So, I'm going to ask in the presence of the attorneys and the defendant the clerk to randomly -- we have 150 qualified.  He will randomly call those people.  The first 75 will be brought into this courtroom.  The marshals will seat them.  The other 75 will be housed somewhere else.

Marshal, we can use all of those jury chairs, all of these here.  Then all counsel and the defendant, and court personnel that are essentially to the selection, to the voir dire process, we will meet in designated areas in the jury room, which is immediately behind the bench.  I have had the clerk to designate where you will sit.

Of course, I have to make some accommodations for the media, if they wish to attend.

So, after we finish this, I want you to just glance it, Mr. Frentzen, and Mr. Darden, et al.  The marshal will have the defendant in there.

The court reporter will be able to record.

We will proceed in that fashion at 12:30.

But, Mr. Clerk, will you randomly now select?

CLERK:  Yes, sir.  You have disqualified no one.

THE COURT:  I have disqualified no one.

CLERK:  Everybody goes in.

THE COURT:  Right.

CLERK:  No. 2, Annie Dean Cannon.

No. 29, Victoria Barnwell.

No. 211, Amber Cobb.

No. 89, Kenneth Joseph.

No. 118, Takia Martin.

No. 115, Catherine Wilson.

No. 3, Michael Rendiero.

No. 62, June Archer.

No. 17, Charles Capers.

No. 25, Barbara Ann Hunter.

No. 73, Frederick Middleton.

No. 24, Janine Neal.

No. 49, Paul Larry Rigo, R-i-g-o.

No. 107, Kathleen Pellicano.

No. 43, Katsom Patel.

No. 28, Ginger Becton.

No. 207, Joy Byrd Marshall.

No. 172, Cheryl B. Hill.

No. 244, Richard, Klenke, K-l-e-n-k-e.

No. 11, Mary Jones.

No. 1, Linda Cota.

No. 235, Glynis Stewart Williams.

No. 185, Heather Ferguson.

No. 14, Benjamin Hilderbrandt.

No. 246, Ann S. Smith.

No. 228, Jackie C. Alexander.

No. 170, Patricia Ann Colson.

No. 117, Helen Mac Clinton.

No. 221, Crystal Lakeisha Snipe.

No. 5, Helle B. Lee.

No. 67, Eugene Weith, W-e-i-t-h.

No. 177, Gwendolyn Gillis.

No. 176, Darrell Shields.

No. 247, Kristin Elizabeth Fahey.

No. 165, Sylvia R. Perry.

No. 98, Paula D. Swart.

No. 7, Randall C. Miller.

No. 61, Pamela Metts.

No. 236, Ruth Mayo.

No. 203, Charles B. Miller.

No. 215, Maria S. Barnes.

No. 200, Rose Mary Taylor.

No. 164, Paul T. Cooper.

No. 30, Patricia Carol Taylor.

No. 226, Christina Miles, M-i-l-e-s.

No. 147, Nicole Blount, B-l-o-u-n-t.

No. 47, Steven L. Skinner.

No. 111, Pamela Denise Jenkins.

No. 44, Leah Marie Cox.

No. 77, Jesse Mae Hills.

No. 76, June Elizabeth Fogle.

No. 112, James Ashley Fielding.

No. 45, Mark Allen Wolfe.

No. 218, Richardine Stevens.

No. 21, Diane Croy.

No. 214, Manuel Maez.

No. 132, Mike Polese.

No. 210, Donald Devegter.

No. 150, Gloria McIvory.

No. 212, Kathy G. Stokes.

No. 146, Claudia Smalls.

No. 157, Patricia Payne, P-a-y-n-e.

No. 101, Bobby Washington.

No. 201, Sherry C. Bennett.

No. 22, Julie H. Vann, V-a-n-n.

No. 122, Thomas Roy Hill.

No. 237, Alethia Regean Foy, F-o-y.

No. 131, William C. Boswell.

No. 126, Louis Emanuel Nobles.

No. 233, Tim M. Stillwell.

No. 84, Donna Knight.

No. 35, William W. Jones.

No. 124, Bruce William Little.

No. 125, Ellen Gay Elze, E-l-z-e.

No. 105, Catherine Jervis, J-e-r-v-i-s.

No. 232, Donald J. Green.

No. 234, Brenda Joyce Gordon.

No. 10, Christopher Neal.

No. 68, Mary Ann Brock.

No. 52, Robert P. Beattie, B-e-a-t-t-i-e.

No. 136, Dorothy Rentz.

No. 186, Barbara A. Brown.

No. 154, Ann Marie Carver.

No. 19, Lamont Wilson.

No. 193, Leon Bryant, Jr.

No. 8, Kenneth Mitchell Bevill, B-e-v-i-l-l.

No. 227, Tamara Brewer.

No. 208, Michael Hyatt.

No. 202, Mary W. Shuman.

No. 196, Stacy Burgess.

No. 231, Gwendolyn Amanda Green.

No. 220, James J. Simmons.

No. 180, Joey Alvin Jonas.

No. 191, Betty T. Mikell.

No. 198, Lynette Waldhour.

No. 174, Tara Avinger, A-v-i-n-g-e-r.

No. 163, Kenneth Lee Hadwin, Jr.

No. 168, Orlando Montoya.

No. 56, James Wallace, Sr.

No. 216, Ann D. Reagin.

No. 78, Mary Ann Lynah.

No. 36, Florence Perry Stephens.

No. 217, George Boettcher, B-o-e-t-t-c-h-e-r.

No. 199, David Washington.

No. 206, Kenneth Lamar.

No. 18, Eugene Washington, Sr.

No. 142, William Markesteyn, Markesteyn, M-a-r-k-e-s-t-e-y-n.

No. 90, Robert D. Sims.

No. 145, Barbara J. Brown.

No. 184, Rondall U. Newsome.

No. 60, Paul E. Mims.

No. 224, Holly H. Keane, K-e-a-n-e.

No. 93, Julie L. Bolton.

No. 225, Samuel Watkins.

No. 29, Holly Ann Baker.

No. 249, Thomas Larry Brown.

No. 158, Allen R. Boutwell.

No. 44, Shirley W. Middleton.

No. 159, Kinh Dinh Tran.

No. 230, Donnie Gene Kusic, K-u-s-i-c.

No. 82, Shannon K. Mastoupoulos.

No. 195, Evelyn G. Kramer.

No. 103, Eva L. Sillers, S-i-l-l-e-r-s.

No. 54, John G. Kitchell, Jr.

No. 99, Gracey Tyson Williford.

No. 189, William C. Barber.

No. 241, Paulette P. Moore.

No. 31, Edwin G. Gaines, Jr.

No. 133, Valerie Moody.

No. 83, Linda B. Harris.

No. 20, Paul S. Tindol.

No. 123, John Ruffin Branham, Jr.

No. 245, Catherine L. Lurtz, L-u-r-t-z.

No. 188, Ernest Maxwell Shuman.

No. 166, Rebecca Dufrain, D-u-f-r-a-i-n.

No. 57, Nancy H. Sutton.

No. 79, Robert J. Peigler.

No. 110, Demetra Williams.

No. 187, Kevin Lofton Rutland.

No. 80, Forrest Trevor Williams.

No, 26, Dell G. Smith, III.

No. 104, Ronald A. Padrick, Jr.  Roland, I'm sorry.  Roland A. Padrick, Jr.

No. 137, Sheneta Z. Bunn, B-u-n-n.

No. 240, Angie C. Poythress.

No. 152, William C. McGee, Jr.

No. 140, Eric Shawn Knight.

No. 95, Larry C. Whitman.

No. 141, Rick A. Nichols.

No. 175, Tracy A. Amick.

No. 192, Barbara B. Sweat.

THE COURT:  That completes it.  All right.  Those will be the order.  The clerk will photostat that list, as soon as possible.

CLERK:  Yes, sir.

THE COURT:  Give that to the lawyers and the marshal.

Now, Mr. Darden, you and Mr. Bell, come up here to side bar, and let me ask you a question.

[NOTE:  Sidebar Conference with Defense Counsel only.]

THE COURT:  Knowing what you know now, what is your best estimate of how many individual voir dire is going to have to be conducted?

MR. DARDEN:  I don't think we'll -- I think we'll have a panel after we go through about 75.

THE COURT:  I would say 85.

MR. DARDEN:  I think that is pretty close, Judge.

THE COURT:  I will ask them the same question.

MR. DARDEN:  I think if we really get off the stick, we may get a panel by late this afternoon.

THE COURT:  Oh, I don't think so.

[NOTE:  Defense counsel leaves side bar.]

THE COURT:  Mr. Newman, you and Mr. Frentzen.

[NOTE:  Sidebar Conference with Government Counsel.]

THE COURT:  Good morning, Rick.  I thought you were going to be in New York.

MR. THOMPSON:  I thought so, too.

THE COURT:  Knowing what you know now, how many individuals voir dire do you think before we qualified 60?

MR. NEWMAN:  Judge, I have no idea.

THE COURT:  See, I knew he would say that.

Will, you are an old hand, you know how to make a decision.

MR. FRENTZEN:  Judge, we've got a lot for cause.

THE COURT:  I'm not going to hold you to it.

MR. FRENTZEN:  Eighty.

THE COURT:  Okay.  I would say 85.

Joe, are you going to disagree with him?

MR. NEWMAN:  No, sir.  The inconsistency in our position in about who we wanted to strike was if in the questionnaire if a juror answered a question the wrong way for us, we say we want them struck, but if they answered the wrong way for them, we say we want to get a chance to rehabilitate that juror.

THE COURT: Sure, I know that.

MR. NEWMAN: I don't how they are going to do once they get inside.

THE COURT: It will be my view, I mean, this is just a general view that those people who say, as I read a sampling, says *I'm against it,* I don't think they're going to be rehabilitated. I think there was a lot of contradictions on the other question about *I can impose it, I would always impose it, I would listen to mitigating evidence.*

Will Rogers or P.T. Barnum or somebody said you can never under estimate the intelligence. And I think as much as we worked on that questionnaire, I don't think they understood it. Some of them didn't understand it.

The ones that tend to say they oppose it are the ones who thought about it a long time. Nevertheless, under **Witherspoon**, et cetera, et cetera, I've got to make sure.

I think we have a lot of information on these people at this point. We culled out the obvious ones the other day. So, maybe it will go fast.

Richard says he thinks we will get it today, but I don't think that will happen.

MR. NEWMAN: Remember, Judge, we have witnesses for tomorrow.

THE COURT: I know. I would still be delighted

the morning off.  I could sleep late and not have to worry about a lawyer.  But I'm sure I will get some more motions.

[NOTE:  Sidebar Conference

Concluded.]

THE COURT:  Gentlemen, I know you want to make your last minute joint decisions and all.  So, I'm going to let you go in a moment.  But I do want you to go back there and look in the jury room where you will be seated.  We will try to make you as comfortable as we can.

The marshals are going to take this list, when we have it, and seat the first 85.  He says he can 85 in here comfortably by using the jury box and all of those chairs over there.

Marshal, you will need to take the defendant in there, and see where you will be seated and he will be seated.

If anybody has got any objections, we will look at the objections.  We will have the prospective juror kind of facing all of you.  The person will be immediately to my left.

The court reporter, and the clerk, and law clerks are going to be seated on my right, handing me the questionnaire.

You will need to arrange those now, at least arrange the first 80 or 85.  I will see you back at

12:30 a.m. after you have had your lunch.

Thank you.

MARSHAL:  All rise.

[NOTE: Whereupon, Court was opened at 12:30, as follows:]

THE COURT:  Ladies and gentlemen, thank you for being here.  I would like to tell you that this process will go fast, but I can't tell you that.

We have pulled your name out again at random, and have lined you up.  There's about 150 of you.  The ones that are the nearer the top will be seated up here.

The law requires that I ask each of you as an individual certain questions.  Don't be worrying about anything.  We're not trying to trip you, but I have to do it out of the presence of any other juror.  So I will be back here with the lawyers, and the defendant, the court reporter, the clerks.

We will call you, and I will ask all of the questions.  When I have finished with you, you may go home.  I will tell you when to return.

Now, we will seat this courtroom filled with people.  And then there will be some downstairs.

When everyone has arrived, I will have another announcement.  But remember this, there are no right answers, there are no wrong answers, there are only truthful

answers. And you all remain under oath during this entire process. That oath you took the other day is still binding.

Once again, I am mindful of your time. I am mindful of the fact that we cannot operate the court without you. So, if you will bear with us, we'll get through this difficult process as soon and as expeditiously as we can.

I know that sitting in a row like that is not something you would chose to do. But we have no televisions. We allow no newspapers.

Do not discuss anything about this case or your feelings regarding any issue. You may exchange certain pleasantries, but keep your voice down, because we will be in the rear trying to conduct the business.

So, Marshal, when the jurors comes, continue to seat them pursuant to the order. Then when we have that group listed in here, you will start filling the ones downstairs.

Meanwhile, I will ask all the lawyers and the court officials that are required to come with me into the jury room.

MARSHAL: All rise.

[Whereupon, Court retired to the jury room to commence individual voir dire.]

THE COURT: Ladies and gentlemen, we're on the record now. Let me remind you, the lawyers particularly, if

you want to address me, raise your hand.  And I will say who is speaking or you identify yourself.

There are two corrections.  The Court got a note this morning from some juror whose wife, apparently, was taken critically ill, and was on a life support system.  I can't remember who the person was.

CLERK:  Mr. Nobles, Your Honor.

THE COURT:  Mr. Nobles.  Do you know the number?

CLERK:  126.

THE COURT:  So, I deleted him.  And a few minutes ago another juror wanted to supplement the answer that they had given previously.  They had clarified that they had a kinsman who had been convicted of drugs.

Did you show that to them?

CLERK:  I did, Your Honor.

THE COURT:  Mr. Marshal, will you bring the first juror in.

MARSHAL:  Yes, Your Honor.

THE COURT:  Who is that?

CLERK:  Number 2.

THE COURT:  Annie Dean Cannon.  Ms. Cannon, will you have a seat there.  Ms. Cannon, if you will kind of look in that direction.

JUROR:  All right.

THE COURT:  The first thing is relax.  We're not

going be picking upon you.

JUROR: Okay.

THE COURT: You are under oath. Do you understand that the defendant is a black man and is charged with the murder of a U.S. postal employee, a white woman, during an alleged post office robbery and is subject to being punished by death. You understood that; did you not?

JUROR: Yes, sir.

THE COURT: Would the race of either the defendant or the race of the victim make any difference whatsoever to you?

JUROR: No.

THE COURT: Now, I will note, Ms. Cannon, you have a brother who is a detective in Valdosta, Georgia.

JUROR: Retired detective.

THE COURT: Retired detective.

On Page 7, gentlemen.

You state this: *My Christian ethical belief is that I would not take the life of a person. I believe in graded absolutetism. God will punish.*

Is that still your view?

JUROR: Yes.

THE COURT: Now, the juror has a choice in this case. They would have to consider aggravating circumstances. If the murder and all the attendant

circumstances were to indicate that it was vile and particularly reprehensible, they must be able to consider a death sentence.

At the same time, there might be mitigating factors that would allow them to consider mitigating circumstances.

Do you understand that?

JUROR:  Yes.

THE COURT:  Would you answer out?

JUROR:  Yes.  Okay.

THE COURT:  Now, I do not want to put words in your.  Are you of the opinion that under no circumstances would your beliefs allow you to vote for a death sentence?

JUROR:  I'm in theological seminary.

THE COURT:  Yes.

JUROR:  And I'm in Christian Ethical Studies now.

THE COURT:  Right.

JUROR:  And with the opinion that at my age now I cannot vote for a death sentence.

THE COURT:  You have a right to your belief.

JUROR:  Yes.

THE COURT:  But I've got to ask you these questions.

JUROR:  Right.

THE COURT:  Is that belief so fixed that --

JUROR:  Yeah.

THE COURT:  -- nothing would overcome it?

JUROR:  A death sentence?

THE COURT:  Yes.

JUROR:  It would be sort of difficult, but --

THE COURT:  Well, sort of difficult is not the same as never, never, never.

JUROR:  Okay.  I will not vote for a death sentence.  I will go another way.

THE COURT:  Regardless of what the evidence is, it is your belief that you could not vote for a death sentence. And just yes or no, if that is the answer.

JUROR:  I cannot vote for it.  No.

THE COURT:  Well, keep in mind, we're not trying to change your mind.

JUROR:  No, no.  I'm going to stay with where I am.

THE COURT:  That is, that even if I were to tell you that the law under certain circumstances a death sentence would be called for, you could not function as a juror and do that.  Is that correct?

JUROR:  Right.  Right.  I would not function as a juror.

THE COURT:  Ladies and gentlemen, I believe that the juror is disqualified.

That does not mean any moral stain on you.

JUROR: No. No.

THE COURT: I appreciate your honest and your candor. I want you go with him and stand out there just a minute while I talk to the lawyers.

JUROR: Thank you.

THE COURT: And if I don't see you again, thank you.

JUROR: And thank you.

THE COURT: I think you will be excused, but I'm willing to hear their arguments on it.

JUROR: Very well.

THE COURT: Thank you very much. And do not tell anybody what the questions were asked or your responses, or that you are excused.

JUROR: Thank you.

[Juror Left the Room.]

THE COURT: All right, Mr. Darden.

MR. DARDEN: Judge, the only comment I would make, and I probably -- and I do believe she is disqualified given her answers, because she seemed to be absolutely fixed. But I would request the Court perhaps to give some examples when the questions are asked. Perhaps if you could ask these types of jurors if they would consider the death penalty in the Timothy McVeigh case, or the World Trade Center with

bombers.

THE COURT:  I have thought about that.

MR. DARDEN:  I think that is entirely appropriate. Because the real question is:  Is there any case out there bad enough where you would consider it?  And if there is, then you are death penalty qualified.

THE COURT:  I will consider that, Mr. Darden.

Tell him to bring in the next one.  Of course, whisper to him that she may go.

CLERK:  Yes, sir.

THE COURT:  Who is the next one?

MARSHAL:  This is Ms. Cobb, Your Honor.  Number 29.

THE COURT:  Okay.  Ms. Cobb, how are you today?

JUROR:  Fine.

THE COURT:  This is a microphone.  And you will speak into it, we'll be grateful.

First of all, relax.  This is not a test.  You are going to pass regardless of what you do.  The only thing we want is to get your feelings.

JUROR:  Okay.

THE COURT:  Now, you understood, did you not, the other day that the defendant here is a black man.  He is charged with the murder of an U.S. Postal employee, who was a white female, and is subject to being punish by death.

You understood that; did you not?

JUROR: Yes, sir.

THE COURT: Now, would the race of either the defendant or the victim make the slightest particle of difference in deciding whether or not the defendant is guilty or the punishment that would be meted out?

JUROR: No, sir.

THE COURT: It would not make any difference.

JUROR: No, sir.

THE COURT: Now, as a member of jury, would you have two tasks to perform. First, you will have to determine by virtue of the law and the evidence whether the defendant is guilty of having been the person who committed a crime. And if you find him guilty with all of the other people on the jury, you will have decide his punishment. And one of the things that you would consider is the death sentence or the possibility of imprisonment for life without parole.

Could you do that?

JUROR: Yes, sir.

THE COURT: Now, in deciding the death sentence, you would look at whether or not there were aggravating circumstances that I would define for you that you must consider in determining whether or not he should be put to death.

JUROR: Uh-uh.

THE COURT: Then you would have to look at whether there were mitigating circumstances that one have to look at, whether they should spare his life and impose life without parole in prison.

Could you do both of those? Answer. That will not pick up your head nodding.

JUROR: Yes, sir.

THE COURT: Now, you could consider aggravating evidence and mitigating evidence. Is that correct?

JUROR: Yes, sir.

THE COURT: And you have no philosophical or moral repugnance or feeling against the death sentence. Is that correct?

JUROR: Yes, sir.

THE COURT: Now, I'm going to excuse you until 1:00 o'clock tomorrow. Do not discuss your feelings. Don't discuss any questions. Don't even tell people whether you have to come back. You are free to leave the courthouse. But you are still under oath. And for goodness sakes, what time are you going to be back tomorrow?

JUROR: 1:00 o'clock.

THE COURT: 1:00 o'clock. Now, I want you to give him your telephone number on your way out.

JUROR: Yes, sir.

THE COURT:  Because if there is any change, we'll try to call you.

MR. NEWMAN:  Excuse me, Your Honor.

THE COURT:  Yes.

MR. NEWMAN:  If we have an individual voir dire question that we would ask as those there were the final jury selection, will we have another opportunity to ask --

THE COURT:  No.  This is it.

MR. NEWMAN:  Can we ask a question unrelated to the areas the Court has gone into?

THE COURT:  Well, just tell me what it is.

MR. NEWMAN:  What is she studying in college?

THE COURT:  What are you studying in college?

JUROR:  Dental assistant.

THE COURT:  Dental assistant.

JUROR:  Yes, sir.

THE COURT:  All right.  Go with him and remember my instructions.

JUROR:  Yes, sir.

[Juror Left the Room.]

MARSHAL:  Kenneth Johnson, number 89, is the next one.

MR. DARDEN:  Judge, unless otherwise stated, we will assume they are qualified.  She certainly is qualified.

THE COURT:  Yes.

MR. DARDEN:  Yes, sir.  211 is qualified.

THE COURT:  Yes.  The last person is going to be on your final panel.

MR. DARDEN:  Number 2 was excused for cause.

THE COURT:  Have a seat, Mr. Johnson.

JUROR:  Thank you.

THE COURT:  Mr. Johnson, good to see you again.  Relax.  That is a microphone there.  Everything we do has to be recorded.

Now, you understand, do you not, that the defendant is a black male.  He is charged with the murder of a United States Postal employee, who, it is alleged, was a white female.  Would the race of the victim or the race of the defendant make any difference whatsoever to you, however slight?

JUROR:  I don't think so.

THE COURT:  Can you assure us that it would not?

JUROR:  It would not.

THE COURT:  All right.  Now, if you are selected to serve as a member of the jury, there are two things essentially you are asked to do.  The government has to prove the defendant's guilt beyond a reasonable doubt.  And you must apply the law to the facts as I will explain the law to you.  Any problem with that?

JUROR:  No, sir.

THE COURT:  If you find the defendant guilty beyond a reasonable doubt, you will have to decide the proper punishment, either the death penalty or life imprisonment without the possibility of parole.  Can you do that --

JUROR:  Yes, sir.

THE COURT:  -- according to the evidence and the law?

Now the laws says that if there are aggravating circumstances, the jury may consider those in making the decision whether or not to impose a death sentence or life without parole.  Could you do that?

JUROR:  Yes.  I wouldn't know what they are.

THE COURT:  Well, just theoretically.

JUROR:  Yes, sir.

THE COURT:  And if there are mitigating circumstances, if there's something about the defendant that he has done good or was disadvantaged that should be considered in whether to spare his life or whether or not to impose the death sentence, could you consider that evidence?

JUROR:  Yes, sir.

THE COURT:  I believe you study economics in college.

JUROR:  Yes.

THE COURT:  What has been your life's work

generally?

JUROR: I had a career with United Parcel Service for 31 years.

THE COURT: What was your position with UPS, as we call it?

JUROR: I had many positions with them.

THE COURT: Did you?

JUROR: Yes.

THE COURT: Let's say where did you begin and where did you end?

JUROR: Well, I started off in Cleveland -- excuse me. Cleveland, Ohio, as a sales and service representative. Then I became a driver for eight months for training. Then I was in Personnel and Human Resources and Labor Relation for, I guess, about 15 or 16 years. And the last ten years I was there, I was in finance in several different capacities.

THE COURT: You moved to Savannah how long ago?

JUROR: Fourteen years ago.

THE COURT: Fourteen years ago. You said you may have or you think you recall reading something about this incident in the Savannah newspaper.

JUROR: I just you put that down. I don't recall specifically reading. But I read the paper every day.

THE COURT: So, you don't recall any specific

recollections.

JUROR: No.

THE COURT: You have no moral scruples against the death penalty.

JUROR: No.

THE COURT: You could impose it if the laws and the facts required it.

JUROR: Yes.

THE COURT: At this time, you could vote for life imprisonment without possibility of parole, if you thought the facts warranted it.

JUROR: Yes.

THE COURT: And you would not automatically vote either way. You would listen to the evidence in making that decision.

JUROR: Yes, I would.

THE COURT: You feel that the death penalty is applied unfairly against minority.

JUROR: Yes, sir. I think that is the result of what has happened.

THE COURT: Yes. But that would not in a the particular case keep you from imposing it if you thought the facts warranted. Is that a fair statement?

JUROR: Yes, sir.

MR. NEWMAN: Just one follow-up question, if I

might.

THE COURT:  Yes.

MR. NEWMAN:  Mr. Johnson, from what you have just seen so far of these proceedings, the way the Judge is conducting the proceedings, or the defendant is being represented by the two gentlemen here, do you have the slightest sense that these proceedings are in any way unfair to the defendant?

JUROR:  No.

THE COURT:  Mr. Johnson, you are excused until tomorrow at 1:00 o'clock.

JUROR:  One o'clock.

THE COURT:  Yes.  Now, when you leave here, don't tell the people, anyone, what questions have been asked of you, or whether you have been approved or rejected.  You will be subject for jury selection hopefully tomorrow, if we complete this process.

JUROR:  Okay.

THE COURT:  Get his telephone number, so if we need anything that we can call him.

MARSHAL:  Yes, sir.

THE COURT:  Thank you.  Mr. Johnson.

JUROR:  Thank you.

[Juror left the room.]

MARSHAL:  Takiyah Martin will be next.

THE COURT: Ms. Martin, will you have a seat here. Ms. Martin, of course, you know you are on the jury that was called, and now we are required by law to ask you certain questions.

JUROR: Uh-uh.

THE COURT: Once again, I remind you that you are under oath. And these questions are not meant to embarrass you or to probe unduly into your personal affairs, but simply we are trying to get a group of people to decide this case that will do it based upon the law and the evidence.

It is sometime impossible for people to do that. You understand that.

JUROR: Uh-uh.

THE COURT: Answer out yes or no, because she is picking it up.

JUROR: Okay.

THE COURT: You understand that is what we're trying to do.

JUROR: Yes.

THE COURT: All right. Will you pronounce your first name for me?

JUROR: Takiyah.

THE COURT: Takiyah, okay. Now you're a bank teller. By whom are you employed?

JUROR: Wachovia.

THE COURT:  How long have you been so occupied?

JUROR:  Four months.

THE COURT:  Prior to that time, by whom were you employed or what kind of work were you doing?

JUROR:  I worked at a health food store, for Vitamin World.

THE COURT:  How long were you there?

JUROR:  About two years.

THE COURT:  You have two children.

JUROR:  Yes.

THE COURT:  Six, and fourteen months.

JUROR:  Yes.

THE COURT:  And you graduated from which high school?

JUROR:  Savannah High School.

THE COURT:  What year did you graduate?

JUROR:  1994.

THE COURT:  Okay.  And you have served on the jury previously, both in state court in civil cases.  Is that correct?

JUROR:  Right.

THE COURT:  And federal.  Now, do you understand that the defendant, of course, is a black man?  The victim of the robbery was a white female.

JUROR:  Uh-uh.  Yes.

THE COURT:  The defendant is presumed not to be guilty.  He is presumed innocence.  You understand that.

JUROR:  Yes.

THE COURT:  Now, would the race of the defendant or the race of the alleged victim make any difference to you, however slight?

JUROR:  No.

THE COURT:  Absolutely no difference at all.

JUROR:  No.

THE COURT:  You mean that it would not make any difference.

JUROR:  Right.

THE COURT:  Now, do you understand that the jury will be asked to make two critically important decisions?  First, the government would have to convince all of the jurors beyond a reasonable doubt that the defendant is the person who committed the crime.  You understand that.

JUROR:  Yes.

THE COURT:  Now, in doing that, you must judge the facts by the law that I will give you at the appropriate time.  Could you do that?

JUROR:  Yes.

THE COURT:  Then if you find him guilty, you have to decide the punishment, either the death penalty -- and the death penalty means he would be executed -- or the jury,

under certain circumstances, may impose the death sentence or the life sentence without parole.  Could you do that?

JUROR:  Could I decide?

THE COURT:  Yes.

JUROR:  Yes.

THE COURT:  Now, in deciding whether to impose the death sentence, there may be aggravating circumstances.  By aggravating, that there was something retched or vile about the killing that may result in the death sentence being appropriate.  Could you impose it if it were appropriate?

JUROR:  No, sir, I could not.

THE COURT:  Okay.  Now, is that your religious belief?

JUROR:  Yes, it is.

THE COURT:  Of course, the taking of human life is a very important -- in fact, it is the most important thing I suppose we ever do.

JUROR:  Yes.

THE COURT:  And we are not trying to convince that you are wrong.  You have a right to your belief.  And it may survive everything.  But I've got to ask you more questions regarding that.  Do you understand that?

JUROR:  Yes.

THE COURT:  Keep in mind, I'm not trying to talk you out of your position.  But I want to make sure that I

understand it. You say that could you not vote for a death sentence.

JUROR: Yes, sir.

THE COURT: You could not feel you were participating in the taking of a human life. Is that correct?

JUROR: Yes, that is.

THE COURT: Now, there are certain deaths and tragedies that everyone realizes is very, very bad. I mean, people do wicked and vile things. Is that correct?

JUROR: Yes.

THE COURT: In none of those cases, the worst case you can think about, would you vote for the death sentence?

JUROR: No, sir, I would not. I can't -- I really can't -- I can say no, I would not. But until it is brought to me, I can say no. I just don't believe in it.

THE COURT: There again, I'm not trying to change you. But you can think of some bad things that have happened in the world in the last ten years; can you not?

JUROR: Oh, yes. Yes, I can.

THE COURT: And in none of those instances could you have voted for the death sentence.

JUROR: Not me personally.

THE COURT: All right. Well, I'm not trying to talk you out of it. I just want to make sure. Because some

people can say generally I'm not for the death sentence, but under certain circumstances, I might be able to do that.

JUROR:  Uh-uh.

THE COURT:  But yours is a conviction that will not allow for any departure.  Is that correct?

JUROR:  Yes, sir.

THE COURT:  I want you to step out with him.  Then I'm going to talk to the lawyers.  And I will let you know or have him bring you right back.

JUROR:  Okay.

[Juror Left the Room.]

THE COURT:  The government, I assume, wants for cause?

MR. FRENTZEN:  That's correct.

THE COURT:  Mr. Darden.

MR. DARDEN:  Judge, you put her through the ringer, and she stood firm.

THE COURT:  I think so.

Tell him to bring her back.

Ms. Martin, we're going to excuse you.  I appreciate your candor, your honesty.  And do not tell anyone that you have been excused, nor do you tell anyone the questions I have asked of you or the answers you gave.

JUROR:  Yes, sir.

THE COURT:  Thank you for being here.  And thank

you for the disruption of your schedule.

JUROR:  All right.

[Juror Left the Room.]

MARSHAL:  Ms. Barnwell, No. 29 or 209, will be next.

THE COURT:  Is that the one we skipped over?

CLERK:  Yes, sir.

THE COURT:  Will you have a seat there, Ms. Barnwell.

JUROR:  Okay.

THE COURT:  Ms. Barnwell, I remind you again you are under oath.  Don't be intimidated by any of this.  This is a process the law calls for.  We have to do it.  I have to ask you these questions face to face, and individually.

JUROR:  Okay.

THE COURT:  Everything is being recorded by the court reporter.  I have your questionnaire.

You understand of course, that the defendant is a black male.

JUROR:  Yes.

THE COURT:  Did you understand from what I told you on the Thursday last that the victim, the alleged victim was a white female?

JUROR:  Yes.

THE COURT:  Would that make any difference in the

slightest degree with you?

JUROR: No, sir.

THE COURT: Now, do you understand that the jury is expected to perform or to decide two critical issues. The government has to convince the fair and impartial jury that the defendant committed the crime as charged in the indictment. And the proof must remove all reasonable doubt from the minds of this fair and impartial jury. You understood that.

JUROR: Yes, sir.

THE COURT: Then, if the jury should find the defendant guilty, you will have to decide his punishment, either the death penalty or life imprisonment without the possibility of parole. Do you understand that is the second big issue?

JUROR: Yes.

THE COURT: Now, I come to your answer, and I quote it: *I believe if a person is guilty, they serve the time. Am not God to decide if his live should be taken.*

Then you check *I strongly oppose the death penalty as a punishment.*

Is that a fair reading of what you have said?

JUROR: Yes.

THE COURT: Now, Ms. Barnwell, I'm not trying to talk you out of your position. You have as much as of a

constitutional right to believe that as someone has the right to believe differently. You understand that.

JUROR: Yes, sir.

THE COURT: But I just can't turn you loose on that. I've got to make sure that you understand, and that lawyers, and the defendant, and the government, and the Court understand what your position is.

Now, this is a religious belief.

JUROR: Right.

THE COURT: Or a moral, philosophy belief of yours, I assume.

JUROR: Yes.

THE COURT: Now, can you conceive under any circumstances that you could vote for the death sentence because of what someone did?

JUROR: No.

THE COURT: Now, Ms. Barnwell, there have been some bad things that have happened in this world in the last ten years, or well, ever since the world was created, I suppose. But within your lifetime, and since you've been an adult, you know of some bad things that have been occurred.

JUROR: Yes.

THE COURT: People have been charged with those. In any of those cases, if it were within your power as a juror, could you have voted for a death sentence, to take

the life of any of those people who are guilty?

JUROR:  No, sir.

THE COURT:  That is, you are unswerving in that belief.

JUROR:  Unswerving, unswerving.

THE COURT:  And nothing, no example I could give you would change that belief.

JUROR:  No, sir.

THE COURT:  I think that I am going to excuse you, Ms. Barnwell.  I appreciate your candor.

JUROR:  Okay.

THE COURT:  I assume the Court invokes the for cause.

MR. FRENTZEN:  Yes, sir.

THE COURT:  Do not, do not tell anyone that you are excused or anything any of the questions that I have asked of you or your responses.

JUROR:  Okay.

THE COURT:  Those are matters that remain with you.

JUROR:  Okay.

THE COURT:  Hopefully on some other occasion, I will have the privilege of serving with you.  But you are excused.

JUROR:  Okay.

THE COURT:  Does the defendant wish any private record on this?

MR. BELL:  No.

MR. DARDEN:  No, Your Honor.

THE COURT:  See her out and bring the next.

[Juror Left the Room.]

MARSHAL:  Katherine Wilson will be the next one.

THE COURT:  Ms. Wilson, will you have a seat there, and kind of face out down that way so they can see you.  I'm going to be the one that talks to you.  First of all, relax.  There are no good answers, bad answers, or anything.  We just want to talk with you a few minutes, because the law requires that I ask you certain questions.

This is a court reporter over here.  Everything that is being said is being recorded.  That is a microphone right in front of you.  If you will answer yes or no without shaking your head, because we have to get your answer.

You are Ms. Wilson, of course.

JUROR:  Right.

THE COURT:  Ms. Wilson, you live here in Savannah, and you've been here for a number of years.  As I read, that's 22 years.

JUROR:  Yes, sir.

THE COURT:  Approximately.  Ms. Wilson, you understand you are being questioned whether or not to place

you on the jury.  You understand that.

JUROR:  Yes, sir.

THE COURT:  Now, the defendant is that man sitting there.  He is a black male.

JUROR:  Right.

THE COURT:  It is alleged that the victim was a white female.  Would that race of either the defendant or the victim in this case make any difference whatsoever to you in deciding whether or not he is guilty?

JUROR:  No.  Huh-uh.

THE COURT:  Now, if the jury should find him guilty based upon the evidence that removes all reasonable doubt from the minds of the jury, the jury would have to decide the punishment.  Either the death penalty, that means he would be executed, or life imprisonment without the possibility of parole.

If the evidence warranted it, could you vote for the death sentence?

JUROR:  Yes, I could vote for it.

THE COURT:  And you wrote on your affidavit or responded to this question. If the defendant were found guilty and the evidence and aggravating factors convinces you that the death penalty is the appropriate sentence, could you vote for the death sentence.

And I read that to say no, you could not vote for

it.

JUROR:  I didn't want to put down -- it would be difficult to vote for it.

THE COURT:  Yes.

JUROR:  But I could vote for it.

THE COURT:  But you could vote for it.

JUROR:  Yes.

THE COURT:  Okay.  And you understand, if he is convicted, if the facts convinces you that he is guilty, you said you could vote for being guilty.

JUROR:  Yes.

THE COURT:  Then you would have to decide if there were particular aggravating circumstances -- and I can't tell you what those would be, because I have not heard the evidence either -- but something that I would define as particularly bad or aggravating, you could consider those in deciding whether or not to impose a death sentence.  Is that correct?

JUROR:  Yes.

THE COURT:  Now, if there was something good, or something that should be considered that would spare his life, could you decide in favor of a life without parole sentence?

JUROR:  Yes.

THE COURT:  Now, would you consider the

aggravating factors and not close your mind to the fact that you would not vote for a death sentence?  Did you understand the question?

JUROR:  No.

THE COURT:  It was not very well phrased.  You said that it would not be easy for you to vote for the death sentence, but that you could.

JUROR:  Yes.

THE COURT:  Now, if the proof, that is the evidence, showed that there was bad circumstances, aggravating circumstances, and you believe that to be true, could you and would you vote for the death sentence if you thought it was appropriate?

JUROR:  Yes, if it is appropriate, yes.

THE COURT:  All right.  So, here you said in Question No. 35, If the defendant were found guilty of a capital count, would you automatically vote for life imprisonment without the possibility of release or parole, regardless of the facts and the aggravating evidence?

Now, you have said here that you would automatically for life, and not accept the death penalty if you were given that choice.

JUROR:  If I was given that choice, yes.

THE COURT:  If you serve on this jury, Ms. Wilson, you could very well have that choice, whether or not to

impose death or life. And what I'm trying to -- I know that you don't want to impose a death sentence. But could you if the circumstances, in other words, aggravating circumstances, warranted it?

JUROR: Yes.

THE COURT: So, you would not then automatically vote for life imprisonment simply to avoid the death sentence. Is that correct?

JUROR: That's correct.

THE COURT: So, you would look at it, and if you thought the facts warranted it, you would vote for the death sentence.

JUROR: Yes.

MR. NEWMAN: May I, Your Honor?

THE COURT: Yes.

MR. NEWMAN: Ms. Wilson, what has changed since Thursday?

JUROR: Nothing.

MR. NEWMAN: Then why were your answers on the questionnaire so different than what you have given this Court and everybody here right now?

JUROR: Truthfully, I wouldn't even want to be in that position to have to be on a jury to vote for a person's death or even life imprisonment. Truthfully.

MR. NEWMAN: Well, the Judge has asked you a

series of questions --

JUROR: He asked me if I would vote -- if the circumstances were imposed that this guy was guilty, with the --

MR. NEWMAN: Aggravating circumstances.

JUROR: Aggravating circumstances, even with the evidence, would I vote for the right thing, and I said, yes.

MR. NEWMAN: But it seems from looking at your questionnaire that you filled out just three days ago, that you really -- then, if someone were to read your questionnaire, they would think that you could never consider voting for a death sentence. And today, you think you could consider it.

JUROR: Also on that questionnaire, it had a question stating that -- how was that phrased. Do you believe in the death penalty, and I said yes. It said would you vote for the death penalty or something, and I said -- and if you read the thing, I said also I have children of my own, and I would hate to even think of them being in this kind of circumstances. And that I did not want to be, personally, have to be put to the point where I have to vote for death.

MR. NEWMAN: If the jury were to decide that you should be the foreperson and preside over their deliberations --

JUROR:  Oh, my goodness.

MR. NEWMAN:  -- could you sign --

MR. DARDEN:  Judge, I don't think that is a proper question.

THE COURT:  I am let him finish it.  I don't know at this time.

MR. NEWMAN:  Could you sign your name to a punishment verdict which said we, the jury, fix the sentence at death?

JUROR:  Yes.  Because if we do that, apparently, we're all going to have the same agreement.

MR. NEWMAN:  Correct.

JUROR:  So, I would definitely have my name down; wouldn't I?

MR. NEWMAN:  And finally, Ms. Wilson, you said in response to Question 36 you said you feel the death penalty is applied unfairly against minority.  Would you say that is true in all cases, some cases, or many cases?

JUROR:  Well, in some cases, yes.  I can't say all.

MR. NEWMAN:  You also said in the questionnaire that the race of the victim would affect your opinion as to whether the defendant in court today would be guilty.  Can you explain that?

JUROR:  I think that's -- yes.  I think that's

what he meant by aggravating circumstances and whatever that may come up.

THE COURT:  Let me clarify that.  As I told you, the victim, that is the person who is dead, is alleged to be a white female.

JUROR:  Uh-uh.

THE COURT:  Would you excuse the defendant more likely --

JUROR:  No.

THE COURT:  -- because it was a white person than if the dead person were a black person?

JUROR:  No.

THE COURT:  Would that make any difference to you?

JUROR:  No.

THE COURT:  Ms. Wilson, you are on the jury list. Don't let anyone know the questions I have asked of you. You under silence.  You may go home.  You return back tomorrow at 1:00 o'clock.  Give the number where we can reach you to the marshal.

Thank you.

[Juror Left the Room.]

THE COURT:  The Court has determined that pursuant to current law that she is qualified.

MARSHAL:  This is Mr. Rendeiro.

THE COURT:  Good afternoon, Mr. Rendeiro.

JUROR:  Yes, sir.

THE COURT:  Mr. Rendeiro, we're here to try to select a jury in this case.  You are still under oath.  We are not trying in anyway to mislead you or trick you in any regard.  All we want are truthful answers.

The defendant is a black male.  The victim is alleged to have been a white female.  Would the race of either the victim or the defendant make any difference to you, however small?

JUROR:  No, Your Honor.

THE COURT:  All right.  If you are selected to serve on this jury, there are essentially two things that the jury will be asked to do.  You will have to determine whether the government's proof removes all reasonable doubt except the defendant's guilt.  In other words, we would have to prove him guilty beyond a reasonable doubt.  You understand that.

JUROR:  Yes, Your Honor.

THE COURT:  Could you make that decision?

JUROR:  Yes, I could, Your Honor.

THE COURT:  Then if you find him guilty, you will have to decide his punishment, either the death penalty or life imprisonment without the possibility of parole.  Could you make that decision based upon the evidence?

JUROR:  Yes, Your Honor.

THE COURT:  Now, under certain circumstances that are things what the law refers to as aggravating circumstances, something that was particularly vile and retched.  And there are mitigating circumstances.  Sometimes a person might not be competent -- I'm not saying that is the defense.

JUROR:  Yes.

THE COURT:  But that would be an illustration of a mitigating circumstance.  Would you automatically vote for the death sentence; or, would you consider the aggravating and mitigating circumstances?

JUROR:  I would have to know the circumstances behind it, Your Honor.

THE COURT:  Sure.  So, you would listen to the evidence and make your decision based upon the evidence.

JUROR:  Yes, Your Honor.

THE COURT:  Now, a few years ago you were shot in a robbery attempt.

JUROR:  Yes, Your Honor.

THE COURT:  Was that in here in Savannah?

JUROR:  Yes, Your Honor.

THE COURT:  Were you badly injured?

JUROR:  No, Your Honor.  I was shot in the leg.

THE COURT:  Do you know who the person was who shot?

JUROR: No, Your Honor, they never found out.

THE COURT: Do you know the race?

JUROR: Yes, Your Honor.

THE COURT: What was the race?

JUROR: He appeared to be a young adolescent black male.

THE COURT: All right.

JUROR: But it was -- I am confident that was the case. As far as the age, I don't know. It seemed like a kid. That's what I thought, more than --

THE COURT: Would that in any way affect your judgment since this defendant is black?

JUROR: No, Your Honor, it would not. I cannot condemn a group of people for what individuals does.

THE COURT: All right. In 33, I think you omitted that. But from what I understand --

JUROR: I'm sorry.

THE COURT: You would not automatically vote for the death penalty since he was guilty of the offense, you say.

JUROR: No. I would have to know the circumstances behind it.

THE COURT: All right. Mr. Rendeiro --

JUROR: Rendeiro. Yes, it doesn't translate very well.

THE COURT:  I've got one of those names also.  I'm going to accept you as qualified.  I'm going to have to ask that you come back tomorrow at 1:00 o'clock.  Do not allow anyone out there to know the questions that were asked of you or the responses you gave.  And tomorrow, hopefully the jury will be selected.

Once again, there's no other way for us to do it except this way.

JUROR:  I understand that.

THE COURT:  Thank you.

[Juror Left the Room.]

MARSHAL:  The next one will be 62, Ms. Archer.

THE COURT:  Good afternoon, Ms. Archer.

JUROR:  Hi.

THE COURT:  Ms. Archer, you are from Appling County.

JUROR:  Originally.

THE COURT:  That is Baxley.

JUROR:  Uh-uh.

THE COURT:  Do you know this woman over here?  She's also from Appling County.

JUROR:  It was a long time ago.

THE COURT:  It has been a long time since she was there.  You are from Richmond Hill, and have been living there fifteen years at least.

JUROR:  Uh-uh.

THE COURT:  You were at one time employed by a lawyer named Lloyd Murray.

JUROR:  Uh-uh.

THE COURT:  How long were you employed by Lloyd Murray?

JUROR:  Three and a half years.

THE COURT:  What kind of work did you do? Secretarial work?

JUROR:  Real estate closing.

THE COURT:  Real estate closing.  Did you ever go to court with him in any cases?

JUROR:  No.

THE COURT:  Did you ever work with him in any cases, investigating or typing for him on cases?

JUROR:  I did some typing occasionally.

THE COURT:  Did you?  Now, your father was on the Georgia State Patrol.

JUROR:  Uh-uh.

THE COURT:  And you had a uncle who was a sheriff at Baxley.

JUROR:  Yes.

THE COURT:  What was his name?

JUROR:  J. B. (Red) Carter.

THE COURT:  Red Carter.  Now, he had a little

problem with the federal government, as I recall.

JUROR: Yes, he did.

THE COURT: Did that lead you to any -- do you dislike federal law enforcement officials?

JUROR: No.

THE COURT: Do you think he was treated fairly?

JUROR: I'm not that close to him.

THE COURT: So, you don't know whether he got treated fairly or not. Is he still living?

JUROR: No. He just passed away a couple of months ago.

THE COURT: Did he? Now you heard something about -- did you hear -- no.

JUROR: No, I have not heard anything.

THE COURT: You have not heard anything about this case. Now, there are two things the jury would be called upon to do. That is -- first of all, the defendant is a black male. The victim in this case is alleged to have been a white female. Would that fact make any difference whatsoever to you?

JUROR: No.

THE COURT: Now, the other thing is the jury will be asked to do is to look at the evidence that the government will have to produce, and make a decision whether or not the government has proven the defendant guilty beyond

a reasonable doubt.  Could you do that?

JUROR:  Yes.

THE COURT:  The second thing is if you find the defendant guilty, the jury will have to decide the punishment; either the death penalty, which means he would be executed, or life imprisonment without the possibility of parole.  Could you make those decisions?

JUROR:  Yes.

THE COURT:  Now, while you say you support the death penalty, you would not automatically vote the death penalty in every case; would you?

JUROR:  Oh, no.

THE COURT:  Would you look at aggravating circumstances, which is bad things, in making the decision, and mitigating situations like the person has been a good citizen, or he is a little weak mentally, in making that decision whether or not to give him death or give him life without parole?

JUROR:  I would consider all of that.

THE COURT:  You would consider all of that.  Is there anything that you know of that we have not asked you that would in any way prevent you from being a fair and impartial juror in carrying out the duties of a juror in this case?

JUROR:  No.

MR. NEWMAN:  Just a brief inquiry, Your Honor.

THE COURT:  Yes.

MR. NEWMAN:  Ms. Archer, in the time that you have been working in Mr. Murray's office, has he had any capital cases that he was appointed on by the state courts down there.

JUROR:  I think there was one.  I'm not that familiar with it.  But I think, yes.

MR. NEWMAN:  Did you work in any way on that?

JUROR:  No.

MR. NEWMAN:  Has Mr. Murray ever talked with you about his view of whether there should be or should not be capital cases?

JUROR:  No.

MR. NEWMAN:  And your opinion is as expressed in the questionnaire?

JUROR:  Yes.

THE COURT:  Now, you are going to be on the final qualified panel.  I'm going to excuse you.  I ask you to be here back here tomorrow at 1:00 o'clock.  If there is any delay, leave your phone number so that we can call you this afternoon and tell you.  But make sure you do not tell anyone out there the questions that were asked of you or any response you gave or even the fact that you are qualified.

Will you do that?

JUROR:  Yes.

THE COURT:  You may leave.

[Juror Left the Room.]

MARSHAL:  No. 17, Charles Capers.

THE COURT:  Hey, Mr. Capers.

JUROR:  How are you, Judge?

THE COURT:  Fine.  Won't you have a seat. Mr. Capers, you've lived around Savannah for about 26 years.

JUROR:  Most all of my life.

THE COURT:  Most all of your life.

JUROR:  Yes.

THE COURT:  Now, listen very carefully to what I ask of you.  You are under oath, as you recall.

Mr. Capers, the defendant is a black male.  You see him.

JUROR:  Yes.

THE COURT:  The victim, that is the person who is dead, or killed, is alleged to have been a white female. You understand that.

JUROR:  Yes, sir.

THE COURT:  Would that fact alone make any difference to you whatsoever?

JUROR:  Not whatsoever.

THE COURT:  Mr. Capers, the jury has to decide two really important things.  The government would have to

convince the jury that the defendant committed the crime as charged in the indictment.  And the evidence must convince you beyond a reasonable doubt that he is the person who did it.  You understand that.

JUROR:  I understand that.

THE COURT:  Do you have any problem making that decision?

JUROR:  No, sir.

THE COURT:  Now, if you find the defendant guilty, the jury will have to make a decision.  They will have to decide his punishment, either putting him to death, executing him, or giving him life imprisonment without the possibility of parole.  You understand that.

JUROR:  I understand that.

THE COURT:  Could you do that?

JUROR:  Yes, I could.

THE COURT:  Now in deciding whether to put him to death or give life in prison without parole, the jury must look at all the circumstances.  There are certain times there are aggravating things, I mean, really bad things.

JUROR:  Yes.

THE COURT:  You've got to look at that.

JUROR:  Yes.

THE COURT:  Then there are certain things that kind of explain -- don't justify, but in some way something

that the person has got some redeeming qualities.  Could you look at that?

JUROR:  I could look at it.

THE COURT:  Do you have any problem with the death sentence?

JUROR:  No, I don't.

THE COURT:  Now, Mr. Capers, you understand, do you not, that not all people who are convicted of murder are put to death?

JUROR:  Yes, sir.

THE COURT:  That there might be circumstances that show that they should not be put to death.

JUROR:  Yes.

THE COURT:  Now, if you found him guilty, the defendant, would you automatically say well, if you're guilty, you've got to give up your life?  Would you automatically do that?

JUROR:  I could do that, sir.

THE COURT:  Would you do that?

JUROR:  Yes, I would.

THE COURT:  Now, you understand you wouldn't have to do that.  You could say well, he was a good son, and he hasn't done bad things or not much, therefore, we should spare his life.  Could you do that?

JUROR:  Yes, I could.

THE COURT:  Now, you don't know the defendant; do you?

JUROR:  No, I don't.

THE COURT:  Never heard of him.

JUROR:  Never heard of him.

THE COURT:  And didn't know anything about this case?

JUROR:  No.  The only thing I read in the paper.

THE COURT:  In the paper.  All right.  Do you think you know what happened from having read the paper?

JUROR:  At this moment, I don't have no judgment or anything.

THE COURT:  In other words, you don't know.  You would listen.

JUROR:  Yes.

THE COURT:  You would go in there and listen to the evidence.

JUROR:  Yes, I would.

THE COURT:  Mr. Capers, regardless of what you put in this questionnaire, could you give the defendant a fair trial?

JUROR:  I'm a fair man.  Yes, sir.

THE COURT:  Could you give the government a fair trial?

JUROR:  Yes, I could.

THE COURT:  And if the defendant needed not to be put to death, that he needed to be granted -- you found him guilty, and there was evidence you thought that justified not taking his life, could you vote for life without parole?

JUROR:  Yes, I could.

THE COURT:  Could you vote for the death sentence if you thought that it should be done?

JUROR:  Yes.  I would do whatever is right.

THE COURT:  All right.  How much education do you have, Mr. Capers?

JUROR:  High school, three years of Voc-Tech, and two years of Savannah State College.  I taught for seven years at CCI.  I taught basic carpentry.

THE COURT:  You taught at CCI.

JUROR:  Yes, I did.

THE COURT:  Chatham Correctional Institute.

JUROR:  I did.

THE COURT:  Now, look at Question 33. If the defendant were found guilty of a capital count, would you automatically vote for the death sentence?

You say yes.

JUROR:  Yes.

THE COURT:  But the word automatic, you've also told me that you would listen to the evidence.  You could can spare his life if you thought it needed sparing.

JUROR:  Yes, sir.

THE COURT:  So, that mean you would not automatically vote for it.

JUROR:  No, I sure wouldn't.

THE COURT:  All right.  You say -- you see, it is a conflict here.

JUROR:  Yes.  Yes.  I'm sorry about that.

THE COURT:  Do you mean to put no here.

JUROR:  No, no.  I will do what's right.

THE COURT:  And 34, you say If the defendant were found guilty of a capital count and the evidence and mitigating factors convinces you that life imprisonment without the possibility of parole or release is the appropriate sentence, could you vote for it?

And you said yes.

JUROR:  Yes.

THE COURT:  That is still your answer.  Is that right?

JUROR:  Yes, sir.

THE COURT:  Then, when you said if the defendant were found guilty, on Question 35, would you automatically vote for life imprisonment without the possibility of release or parole regardless of the facts and the aggravating circumstances.

You put yes.  You meant to put no there; did you

not.

JUROR:  I did, sir.  I'm sorry.  I'm sorry about that.

THE COURT:  Regardless of what is on here, I want to know what is here and here, [gesturing], in your heart and your head.

JUROR:  Okay.

THE COURT:  Look at me alone.  We're just two men talking here.

JUROR:  All right.

THE COURT:  Don't let me put words in your mouth, and don't agree with simply because you might want to.

JUROR:  All right.

THE COURT:  You said if the evidence was sufficient, you could find him guilty.

JUROR:  Yes.

THE COURT:  You said if you found him guilty, and then on the punishment, if there were particular bad things you could vote for a death penalty, but you would consider whether or not, based upon the evidence and the aggravating circumstances --

JUROR:  Always.

THE COURT:  -- and the mitigating circumstances, whether to impose a death sentence or give him life without parole.  Is that fair?  Could you do that?

JUROR:  Yes, I could, sir.

THE COURT:  You swear to God you could do it?

JUROR:  I swear.

THE COURT:  Okay.  Mr. Newman.

MR. NEWMAN:  No questions.

THE COURT:  Mr. Capers, I'm going to qualify you. Now, you've got to be back tomorrow at 1:00 o'clock.

JUROR:  All right, sir.

THE COURT:  Don't tell anybody any of the questions I have asked of you.  You are free to leave.

JUROR:  All right, sir.

THE COURT:  Don't discuss this case with anybody now.

JUROR:  I won't.

THE COURT:  So, when are you going to be back?

JUROR:  One o'clock tomorrow.

THE COURT:  That's right.  And you will have already eaten.

JUROR:  Yes, sir.

THE COURT:  Good enough.  Thank you.

[Juror Left the Room.]

MARSHAL:  No. 25, Ms. Hunter will be next.

THE COURT:  I am convinced he just --

MR. DARDEN:  Judge, they don't understand this questionnaire.  I see it all the time.  They don't

understand it.

Yes.

THE COURT:  Hi, Ms. Hunter.

JUROR:  How are you doing.

THE COURT:  Just relax.  We are not trying to trick you or anything.  You know that.

JUROR:  Uh-uh.

THE COURT:  Answer yes or no.  This is a microphone.  We have to record everything that is said here.

JUROR:  Okay.

THE COURT:  These lawyers are here.  But I will ask you almost everything, and probably everything, Ms. Hunter.

JUROR:  Yes, sir.

THE COURT:  You have lived here about 22 years or how long in Savannah?

JUROR:  Fifty-five years.

THE COURT:  55 years.  Okay.  Now, you understand in this case, Ms. Hunter, that the defendant is a black male.

JUROR:  Right.

THE COURT:  And the victim, that is the person who was killed is alleged to be a white female.  Would that make any difference whatsoever to you?

JUROR:  No.

THE COURT: Absolutely none.

JUROR: No.

THE COURT: You say that is right. Is that correct?

JUROR: Yes.

THE COURT: Now, Ms. Hunter, if you are selected to serve on the jury, there are two things that you will have to decide.

JUROR: Right.

THE COURT: The government will have to bring evidence in to convince you and all members of the jury that the defendant is guilty of this crime beyond a reasonable doubt. And if the government brings that proof, could you find him guilty?

JUROR: Yes.

THE COURT: Any problem with that?

JUROR: No.

THE COURT: Now, if you find him guilty, you've got another job to do. You will have to decide what is the appropriate sentence. You understand that.

JUROR: Right.

THE COURT: And that would either mean putting him to death.

JUROR: Right.

THE COURT: Could you do that?

JUROR: No.

THE COURT: Could you give him life without the possibility of parole?

JUROR: Yes.

THE COURT: Now I notice that you have on Page 4 Overcoming By Faith. Is that the name of your church?

JUROR: Yes.

THE COURT: Are you minister or an officer in the church.

JUROR: No.

THE COURT: How long have you been a member or the participant in that church?

JUROR: Ten years.

THE COURT: You have heard something about this case.

JUROR: Yes.

THE COURT: Do you recall what it was that you heard?

JUROR: Well, I saw it on television, you know, about the murder. I didn't know who it was.

THE COURT: Could you put all of that out of your mind and make your decision based upon the evidence or the insufficiency of the evidence here in the courtroom?

JUROR: Yes.

THE COURT: So, you didn't come to any real

opinion as to what occurred from the television.

JUROR: No.

THE COURT: All right. Now you say -- do you religiously oppose -- according to your faith, your belief, do you oppose the death penalty?

JUROR: No.

THE COURT: You do not. You could vote to put somebody to death, if you felt like the facts warranted it? We're not trying to change your mind. We just --

JUROR: Right.

THE COURT: You've taken an oath that you will answer these questions truthfully.

JUROR: Right.

THE COURT: They are not questions I want to put to you, but I've got to get the truth. You understand that.

JUROR: Right.

THE COURT: The whole thing depends upon you. Because now is the time, not when you get out there, because you would be violating your oath to God and this Court, and to these people.

JUROR: Right.

THE COURT: Could you vote for a death sentence?

JUROR: No.

THE COURT: Now, you have a right to believe that. And you have a right, in fact, many people could not do it.

But I've got to examine you further.

JUROR:  Okay.

THE COURT:  You listen very carefully.

JUROR:  Okay.

THE COURT:  The law says in certain circumstances human life may be taken by the law.  You understand that.

JUROR:  Right.

THE COURT:  Now, that still doesn't mean that you've got to change your view to that fact.

JUROR:  Right.

THE COURT:  But, Ms. Hunter, you are old enough to remember a lot of bad things happening; are you not?

JUROR:  Right.  Yes.

THE COURT:  You see and hear about these bad things that occur.  I will not go into detail.

JUROR:  Right.

THE COURT:  Now if you had to put some of these people to death because they did those bad things, are you saying you could not do that?

JUROR:  It is not if I could not do it.  I don't think I want -- I felt like just because someone killed someone or whatever, I feel like God is the Judge, you know. It is not for me to say to put this person to death.

THE COURT:  And you have every right to that belief.  So, if I get your opinion, even though you know

people do bad things --

JUROR:  Yes.

THE COURT:  -- you think it is God's will is to punish, and that is not your job.

JUROR:  Right.  I feel like -- I feel like a person will get punished more by, you know, being alive, you know, suffering from what they did.  Killing a person, they got.  They're not suffering for what they really did.

THE COURT:  And no one is trying to convince you otherwise.  But the law says that I have to ask you a number of questions about that.  So, in this case, regardless, you could find the defendant guilty if you were convinced.

JUROR:  Right.

THE COURT:  But regardless of what the circumstances are, are you saying you could not put him to death?

JUROR:  I wouldn't want to, no.

THE COURT:  Now, it is not whether you want to.

JUROR:  No, no.

THE COURT:  No one wants to.  I mean, we wouldn't have those people in here who wanted to.

JUROR:  Right.  Okay.

THE COURT:  But could you put him to death?

JUROR:  No.  Huh-uh.

THE COURT:  And you are absolutely certain of

that.

JUROR:  Right.

THE COURT:  And that would be regardless of what the facts were.  You, Barbara Ann Hunter, could not put him to death.

JUROR:  No.

THE COURT:  And there are no facts, no circumstances, aggravating or whatever, that would change your mind.

JUROR:  No, sir.

THE COURT:  In other words, you are inflexible. In other words, you won't yield or bend on that position.

JUROR:  No, sir.

THE COURT:  Have you answered me truthfully?

JUROR:  Yes, sir.

THE COURT:  And candidly.

JUROR:  Yes, sir.

THE COURT:  And I can't argue with you ask change your mind.

JUROR:  No, sir.

THE COURT:  All right.  I'm going to excuse you, Ms. Hunter.  I appreciate your honest.

JUROR:  Thank you.

THE COURT:  Now you don't have to come back.  But do not tell anybody out there the questions I have asked of

you or your responses.

JUROR:  Right.

THE COURT:  Thank you for your time.

JUROR:  All right.  Y'all have a nice day.

THE COURT:   You, too, Ms. Hunter.

[Juror Left the Room.]

MARSHAL:  No. 73, Frederick Middleton.

THE COURT:  Mr. Middleton.

JUROR:  Yes, sir.

THE COURT:  Have a seat.  Mr. Middleton, you understand you are still under oath.

JUROR:  Yes, sir.

THE COURT:  And you understood from my instructions that I have to ask you a number of questions in private.  I don't mean private really, because the defendant, all the lawyers and Court officials are here.

JUROR:  Okay.

THE COURT:  But I'm charged with getting a jury that is legally qualified.  And in order to legally qualify a jury, I have to ask you a number of questions about things that I normally would not ask a person about, nor would you normally be asked about those.

You are employed by whom now?

JUROR:  I'm employed with Sasseen Carson.

THE COURT:  Who now?

JUROR:  Sasseen Carson.  That's -- we're owned by L'Oreal, but it is a hair product company.

THE COURT:  Okay.  Where is that located?

JUROR:  Well, we have -- our distribution center is on Ross Road.  But I work at the distributor, which is in Pooler.

THE COURT:  How long have you been with the company?

JUROR:  Going on six years.

THE COURT:  You are a shipping clerk supervisor.

JUROR:  Right.

THE COURT:  Are you a competitor with Carson Products?

JUROR:  As a matter of fact, we're the same company.

THE COURT:  So, you are the successor.

JUROR:  Right.

THE COURT:  Okay.  Now, have you ever been in court with them on any of their lawsuits and litigation?

JUROR:  No, sir.  I sure haven't.

THE COURT:  All right.  You understand that the defendant is a black male.

JUROR:  Yes, sir.

THE COURT:  The alleged victim was a white female.

JUROR:  Yes, sir.

THE COURT:  Would that make one iota of difference to you in deciding the guilt or the punishment?

JUROR:  No, sir, it wouldn't.

THE COURT:  All right.  You understand that if you are serving on the jury you must answer a number of things.  One of them, if the government should convince you with proof beyond a reasonable doubt that the defendant is guilty of the crime, could you vote for his guilt?

JUROR:  Yes, sir.

THE COURT:  Now, if you find him guilty -- and of course, if the evidence does not support a verdict of guilty, could you vote him not guilty?

JUROR:  Yes, sir, I sure could.

THE COURT:  Now, if you were to find him guilty, you will have to decide his punishment, you and the jury.  I have said in this case it is for not for the judge.  It is for the jury.  You understand that.  Answer, if you would.

JUROR:  Oh, yes, sir.  I'm sorry.

THE COURT:  And the punishment would be either Putting him to death, executing him, or life imprisonment without the possibility of parole.  Could you make those choices?

JUROR:  Yes, sir, I think I could.

THE COURT:  The word think, you could do it; could you not.

JUROR:  Oh, yes, sir.  Sorry about that.

THE COURT:  All right.  Mr. Middleton, now you have some member of your family who is a member of a state police officer, a state patrolman, or the state police officer, I believe you said.

JUROR:  No, sir.  That was me.

THE COURT:  Oh, you served.

JUROR:  Yes, sir.

THE COURT:  Where did you serve?

JUROR:  I worked for Georgia Regional Hospital. They had their own police officer around there.

THE COURT:  That's right.  You're mother's house was broken into, and you have had a stolen car.

JUROR:  Yes, sir.

THE COURT:  Did you ever get the car back, or anybody --

JUROR:  Yes, sir, I sure did.

THE COURT:  Did you?

JUROR:  Yes, sir, I sure did.

THE COURT:  You are one of those few then.  Now, you heard some discussion by coworkers talking about this.

JUROR:  Yes, sir.

THE COURT:  This incident or crime.  Now have you formed or expressed any opinion as to the guilt or innocence of the accused?

JUROR: No, sir, I have not expressed any kind of opinion.

THE COURT: Can you put aside -- when was this discussion? Back when it happened and it was in the newspapers; or, has it been recent?

JUROR: It was back when it had just happened. And I guess some of the guys you know, they were in the break room. Normally, whenever something major happens, the guys talk about it.

THE COURT: You don't know the defendant.

JUROR: No.

THE COURT: And you didn't know the victim.

JUROR: No, I sure didn't, sir.

THE COURT: And you have not talked to anybody who said they were a witness.

JUROR: No.

THE COURT: All right. Now, you have no opinion about death penalty as a punishment.

JUROR: No, sir, I don't.

THE COURT: If you felt that the circumstances warranted it, that the crime was committed by the defendant, and it was a particularly aggravating case, could you vote for the death sentence?

JUROR: Yes, sir, I think I could. That word think, but yes.

THE COURT:  You could.

JUROR:  Yes, sir.

THE COURT:  Now, if you voted to find him guilty, because you thought he was guilty and the evidence supported the guilty verdict, but that there were circumstances that you thought, mitigating circumstances that would not require a death sentence, but sentence for life without possibility of parole, could you vote for that?

JUROR:  Yes.

THE COURT:  Would you do all of this according to the law and to the evidence?

JUROR:  Yes, sir.

THE COURT:  I'm going to ask you to step outside for just a minute.  If I tell the marshal to tell you to go, that means you don't go forever.  You are back tomorrow at 1:00 o'clock.  Don't let me anyone know the questions I have asked of you or the answers you gave me, or anything you have said in affidavit or questionnaire.  Just be back at 1:00 o'clock.  We will let you know within a minute.

So, go with him.

JUROR:  Yes, sir.

THE COURT:  Thank you, Mr. Middleton.

[Juror Left the Room.]

THE COURT:  He is qualified.

All right.

MARSHAL:  The next juror is Ms. Neal.

THE COURT:  Mr. Neal, how are you?  Ms. Neal, I am required by to ask you some questions.  I want to be relaxed.

JUROR:  Okay.

THE COURT:  This a microphone, everything that is being said has to be recorded.  I will be asking you essentially all of the questions.  These are lawyers, as you know.  You've seen them last week.  These are court officials here who assisted me.

We are not trying to embarrass you or scare you, or trick you.  We simply have to, pursuant to the law, ask some questions in private that we are not allowed to ask out in a group.

JUROR:  Okay.

THE COURT:  You are Janie?

JUROR:  Janine.

THE COURT:  Janine Neal.

JUROR:  Yes.

THE COURT:  And you were born in Zinya, Ohio.

JUROR:  Yes.

THE COURT:  You have lived here about eleven years, and you are Methodist.

JUROR:  Yes.

THE COURT:  And you are a teacher of early

childhood education and psychology.

JUROR:  Yes.

THE COURT:  You have been a victim of a crime. Your house was broken into, and your uncle and aunt were held at gunpoint while their car was stolen.

JUROR:  Uh-uh.

THE COURT:  You have not heard anything about this case other than what you have learned around this courtroom.

JUROR:  No.

THE COURT:  Now, you think the defendant is guilty.

JUROR:  I said perhaps guilty.

THE COURT:  Perhaps he is guilty.  Now, could you presume, could you think he was innocent?

JUROR:  Yes.

THE COURT:  The law says that a person is presumed to be innocent.  And he doesn't have to defend himself. Because the law says, if you go out there and do something bad, the law says you've got a right to a trial, if you want that trial.  You may go ahead and say I did.  But you are given a right to a trial.  And that trial starts off with your presumption of innocence.  And the government, either the state or federal, would have to convince a fair judge, or a fair and impartial judge and jury that you are guilty. You understand that.

JUROR:  Uh-uh.

THE COURT:  Answer yes or no.

JUROR:  Yes.

THE COURT:  Now, you say you feel he is guilty. Could you put aside that feeling?

JUROR:  For a trial.  Yes.

THE COURT:  Yes.  All right.  Now, coming to something else.  We are not trying to change your philosophy, your moral and religious belief.  But you have answered in 29, I think the death penalty is morally wrong. That is your conviction.

JUROR:  Yes.

THE COURT:  Now, I have told you, or I should have said that in the jury finds the guilty, then the jury must make the decision as to punishment.  One of those is death, putting him to death, executing him.  The other is life imprisonment without parole.  But the jury has got to look, and if it decides that he should be put to death, it has a right to put him to death, and should do it.  You understand that.

JUROR:  Yes.

THE COURT:  Could you do that?

JUROR:  No.

THE COURT:  You could not.

JUROR:  No.

THE COURT:  Now, you have written I strongly oppose the death penalty as a punishment.

JUROR:  Yes.

THE COURT:  That is the deep-seated feeling you have, I gather.

JUROR:  Yes.

THE COURT:  Now, you, Ms. Neal, are a mature adult.

JUROR:  Yes.

THE COURT:  And you have witnessed or know, as I do, there are many bad things that have occurred both in the country and aboard in the last ten years.

JUROR:  Yes.

THE COURT:  Many people have been killed.

JUROR:  Yes.

THE COURT:  Now, could Janine Neal put any of those people to death?

JUROR:  No.

THE COURT:  Regardless of what might have occurred, you still could not bring yourself to vote for the death penalty.

JUROR:  No.

THE COURT:  Regardless of anything I tell you or what the law says, could I change your mind?

JUROR:  No.

THE COURT: That is inflexible.

JUROR: Yes.

THE COURT: You are not going to yield on that point.

JUROR: No.

THE COURT: Well, I appreciate it. I am not trying to talk you into it. But if you said well, I wouldn't want to do it, but if I came to it, I could do it. But yours is I can't do it.

JUROR: Yes. I can't do it.

THE COURT: So, there is no need of me talking to you any longer. Is that right?

JUROR: That's right.

THE COURT: Ms. Neal, I appreciate your honesty, your candor. I'm going to excuse you. Now you may leave. We will send your compensation, but do not tell anybody what the questions were asked of you or any answer you made.

JUROR: Okay.

THE COURT: Hopefully, on some other time, we'll have something that you can help me decide.

JUROR: Okay. Thank you.

[Juror Left the Room.]

MARSHAL: The next is 49, Paul Rigo.

MR. DARDEN: Could I make a comment?

THE COURT: Sure.

MR. DARDEN:  And I know you misspoke, because you had not done it on any previous jurors, the comment was that if there were aggravating evidence that indicated that perhaps the death penalty should be imposed, if you find that, then you should vote for the death penalty.

THE COURT:  Yes.

MR. DARDEN:  And I'm not suggesting that you did that on purpose.  I think you misspoke, because it is the only person you said it on.  The fact of the matter is that no juror ever is required to give the death penalty under any circumstances, no matter how bad the evidence.

THE COURT:  Yes.  Thank you for correcting me on that.

MARSHAL:  Mr. Rigo.

THE COURT:  Mr. Rigo, will you have a seat here. Mr. Rigo, as I told you the other day, I have to ask you some questions in private.  The prosecutors, and the defendant, and his lawyers, and there are various court officials here.  Everything that we say is being recorded. That is a microphone immediately in front of you.

Try to relax.  We're not out here to trick you or to make you pass any examination.  We just want to help develop and make sure we understand what you have said.

JUROR:  Okay.

THE COURT:  You are still under oath, of course.

You have a GED, high school diploma.  And you are a shipping what now?

JUROR:  Shipping Operator I.  That's what they call me.

THE COURT:  Is that at the Georgia Ports Authority?

JUROR:  It is at International Paper.

THE COURT:  International Paper.  Are you employed out at what we call the Union Camp?

JUROR:  Yes, sir.

THE COURT:  All right.  Now, you understand, do you not, that the defendant a black male.

JUROR:  Yes, sir.

THE COURT:  And the victim, the alleged victim in the case was a white female.

JUROR:  Yes, sir.

THE COURT:  Would that fact make any difference to you in making any decision?

JUROR:  No, sir.

THE COURT:  Now, your uncle was killed in '75, self defense.

JUROR:  That is what it was ruled, self defense.

THE COURT:  You mean the person who killed him killed him in self defense.

JUROR:  Right.

THE COURT:  And a burglary in '92, you had somebody burglarized your house.

JUROR:  Yes, sir.

THE COURT:  All right.  Do you know who it was?

JUROR:  No, sir.  No one was ever caught.

THE COURT:  Right.  You had a brother who had a prescription that he shouldn't have filled, and filled it illegally.

JUROR:  Yes, sir.

THE COURT:  What is CUSA?

JUROR:  CUSA.  That's a child --

THE COURT:  That is a civilian --

MR. DARDEN:  A Child Advocate in juvenile court.

THE COURT:  Okay.  Now you say you have heard a little about this case.

JUROR:  Yes, sir.  After hearing everybody discussing it in the courtroom and everything, I remember seeing something on the news about it.

THE COURT:  Did you form any opinion as to the guilt of the defendant or what happened?

JUROR:  No, sir.  No, sir, I didn't even know anyone had been charged with it.

THE COURT:  So, you are completely impartial as we sit here today.

JUROR:  Yes, sir.

THE COURT:  Now, if you are selected for the jury, the jury will have to decide two important issues.  One is has the government produced sufficient proof to convince you beyond a reasonable doubt that it is this defendant who committed the crime.  You understand that.

JUROR:  Yes, sir.

THE COURT:  Are you prepared to do that?

JUROR:  Yes, sir.

THE COURT:  Now, if you should find the defendant guilty, then you must decide whether or not the facts warrant a death penalty or whether there are certain mitigating circumstances that make life imprisonment without parole as the more appropriate punishment.

Could you make that decision?

JUROR:  Yes, sir.

THE COURT:  Now, you have indicated in the questionnaire that you would consider aggravating circumstances to determine whether or not to take his life.

JUROR:  Yes, sir.

THE COURT:  And you would consider mitigating evidence whether or not to spare his life.

JUROR:  Yes.

THE COURT:  Is that still your opinion here today?

JUROR:  Yes, sir, it is.

THE COURT:  Is there anything that you feel like

these lawyers and the Court should know about you that we have not asked of you?

JUROR:  No, sir, I don't.

THE COURT:  Well, I'm going to ask you to come back tomorrow, hopefully for final jury selection.  Do not tell anyone -- you are free to go.  But do not tell anyone out there what I have asked of you or your response.  And don't discuss anything with anybody regarding what you think might be going on.

Have lunch before you get here.  Hopefully, we are going to be going with this quite a while.  Hopefully tomorrow at 1:00 o'clock we can start this case.

JUROR:  Okay.  So, I need to be back here at what time?

THE COURT:  At 1:00 o'clock tomorrow.  Leave with him your phone number, so that if we are delayed, we will call you.

JUROR:  Okay.

[Juror Left the Room.]

MARSHAL:  The next one is going to be 107.

THE COURT:  Good afternoon.

JUROR:  Good afternoon.

THE COURT:  Will you help me with your name?

JUROR:  I surely will.  Kathleen Pellicano.

THE COURT:  Ms. Pellicano.

JUROR: Yes.

THE COURT: These are the lawyers that you met the other day, the prosecutors and the defense team. And these are various court officials around here helping me.

The law says that I have ask you certain questions in private, meaning in the presence of the lawyers, but out the presence of the other prospective jurors.

This is a microphone. We'll record everything. If you will answer yes or no. And if you need to explain, if you will do that, I will be grateful.

You have a masters of liberal arts, multiculturalism, and --

JUROR: Linguistics.

THE COURT: -- linguistics. And you provide --

JUROR: I currently work for the State of Georgia as a Provider Relation Representative trying to teach physician offices trying to navigate the Medicaid program.

THE COURT: Okay. Well, they and I need it. Your spouse is a psychiatrist.

JUROR: He is.

THE COURT: Does he have the surname as you do?

JUROR: Yes, he does.

THE COURT: What is --

JUROR: Pellicano.

THE COURT: What is his first name?

JUROR:  Edward.  His middle initial is G.

THE COURT:  All right.  Now, you have had some vandalism, windows broken and had a person take money for a job and never returned.  And you swore out a warrant for him.

JUROR:  Yes, I did, sir.

THE COURT:  Good for you.  I have had that same thing to happen.  You know nothing about this case other than what you have learned here.

JUROR:  Absolutely nothing.

THE COURT:  Right.  And you have no opinion regarding the death penalty.

JUROR:  None that I can give you specifically.  I have tried lots of different scenarios on myself, and my best answer is it depends.

THE COURT:  Okay.  That is fair enough.  Now, you understand a jury would have what I refer to as two important decisions to make or decisions in two important areas.  Of course, the defendant begins the trial with the presumption of innocence.  The government must prove to a fair and impartial jury that he indeed committed the crimes as alleged in the indictment, and the proof must removed all reasonable doubt.

Now, if the government produces that proof, could you vote for guilty?

JUROR:  I could vote for guilty.

THE COURT:  And if it does not produce the proof that removes all reasonable doubt, but you kind of think maybe he did it, could you vote for not guilty?

JUROR:  I could vote for not guilty if they did not present their case according to your directions of what you tell us we have to look for.

THE COURT:  Right.  Sure.  And I would give you specific instructions and in written form.

Now, having made the decision, let's assume that you found that the defendant is guilty.  The jury then faces another important decision.  The law provides for a death penalty.  And it provides for life imprisonment without the possibility of parole.  If the facts warranted it, if there were aggravating circumstances, could you vote for the death penalty?

JUROR:  With aggravating circumstances, yes, I could.

THE COURT:  Yes.  And if you consider that there were mitigating circumstances, could you vote for life imprisonment without the possibility of parole?

JUROR:  Yes, I could.

THE COURT:  Was there any answer that you made the other day that you question, anything you want to recollect, change?

JUROR:  No, I really took the weekend to think over the questions a lot.  I almost had to stand up when you said could I find someone to be not guilty if they did not speak for themselves.  And for a few minutes I thought that when you Mirandised before you have representation that possibly you would, you know, at that time, you would be advised to be quiet.  But I thought if the defendant wanted to tell me that they were absolutely innocent, that they were not there, that I would really feel very strongly that I would want to hear it from their own mouth.  However, when I really thought it through, I thought that is a law.  He doesn't have to speak if his attorneys advise him not.  I could put that aside, my own personal preference for him to tell me in his own words.  And that I could find based on what just what I heard.

THE COURT:  So, in conclusion, you don't know of any reason why you could not serve as a juror, and based upon the evidence, and nothing else, make the determination of whether or not the government has proven him guilty.  You could do that?

JUROR:  I could do that.

THE COURT:  And then if you found him guilty, you would listen to the evidence and the instructions of the Court and consider whether there were aggravating circumstances that warranted the death penalty, and consider

whether or not to impose it.

JUROR:  Yes.

THE COURT:  Then you would consider mitigating circumstances and decide whether they were sufficient to warrant life without parole.

JUROR:  Yes.

MR. NEWMAN:  Ms. Pellicano?

JUROR:  Yes.

MR. NEWMAN:  Where did you go to college?

JUROR:  I went to school at State University School of New York, at Stoney Brook.

MR. NEWMAN:  And your master's degree.

JUROR:  Is at State University in New York at Stoney Brook.

MR. NEWMAN:  And you have a 26 year-old child.

JUROR:  Yes.

MR. NEWMAN:  That is son or a daughter.

JUROR:  It is a daughter.

MR. NEWMAN:  What does she do?

JUROR:  She's party events coordinator for Toy Smart.

MR. NEWMAN:  Right here in Savannah.

JUROR:  Right here in Savannah.

MR. NEWMAN:  Thank you.

JUROR:  You're welcome.

MR. DARDEN:  Judge, could you inquire into Question 34, please.  The juror underlined certain sections of that question.  I would like an explanation for the emphasis on that, the purpose of that.

THE COURT:    If the defendant were found guilty of a capital count, and the evidence and mitigating factors convince you that life imprisonment without the possibility of parole or release, is the appropriate answer, could you vote for it?

And you said yes.

JUROR:  Yes, I did.  But the -- and I've got to get my reading glasses.  Excuse me, Your Honor.

Okay, without the possibility of release, once, if I should find the person to be guilty, which I don't know that to be true at this moment, but if that should happen, I would want all assurances, if I chose for life imprisonment that was what was going to happen without "we have no more room here", and that I was -- that the prison system would not -- that some other ruling would overtake what I set out. And I feel responsibility not only to our defendant, but to the victim.

MR. DARDEN:  Yes, Ma'am.

JUROR:  So, whichever decision was made, I would want it to be assured that it was what we decided and is what would happen.

MR. DARDEN:  And it will.

THE COURT:  You are going to have to come back tomorrow at 1:00 o'clock.

JUROR:  Wonderful.

THE COURT:  Do not tell anyone the questions you have been asked here or your response, or even the fact that you've got to come back.  You have you may leave now, giving the marshal your telephone number in the event we are not able to get through enough people by that time that, of course, I might have to delay it.  But you will be brought back.

JUROR:  Return tomorrow at 1:00 o'clock.

THE COURT:  That's right.  And remember all of the instructions that I gave you the other day.

JUROR:  Yes, I do.  Thanks, Your Honor.

[Juror Left the Room.]

THE COURT:  The Court finds that she is legally qualified.

Good afternoon, Ms. Patel.

JUROR:  Good afternoon.

THE COURT:  As I indicated to you the other day, I would have to ask each of you a number of questions.  Once again, let me emphasize that we were not trying to give you an quiz.  There are no pass and fails here.  Everybody passes, because all we want to know is your feelings

regarding certain matters.

Immediately in front of you is a microphone.  That allows us to record all of this.  So, if you would answer yes or no loudly enough so that all of the people in the room may understand you, I will be grateful.

Now, you are Ms. Patel.  And you were born in India.

JUROR:  Uh-uh.

THE COURT:  Yes or no.

JUROR:  Yes.  I'm sorry.

THE COURT:  How long have you lived in Georgia?

JUROR:  Eight years.

THE COURT:  Eight years.  What is your occupation? What do you do for a livelihood?

JUROR:  Motel business.

THE COURT:  I'm sorry.

JUROR:  Motel business.

THE COURT:  Motel business.  And where is your motel?

JUROR:  Hardeeville, South Carolina.

THE COURT:  But you live here in Chatham County.

JUROR:  Savannah, uh-uh.

THE COURT:  Yes.

JUROR:  Yes.

THE COURT:  Now, how many children do you have?

JUROR:  Two.

THE COURT:  What ages are they?

JUROR:  One is 21, and one is 17.

THE COURT:  What does the 21 year-old --

JUROR:  He is in college.

THE COURT:  Where is he going to college?

JUROR:  In Atlanta, Georgia.

THE COURT:  What is he studying?

JUROR:  Business.

THE COURT:  What school is he in?  Is he at Georgia State, Emory, Georgia Tech?

JUROR:  No.  He's in Metropolitan College.

THE COURT:  In where?

JUROR:  Metropolitan.

THE COURT:  Metropolitan.

JUROR:  Uh-uh.  Atlanta Metropolitan.

THE COURT:  All right.  Do you know?

MR. BELL:  Yes, sir.

THE COURT:  I was unfamiliar with it.

Do you have more than one hotel?  Do you own just one hotel; or, do you own more?

JUROR:  No.  More.

THE COURT:  How many hotels do you own?

JUROR:  Three.

THE COURT:  Three.  Where are they located?

JUROR:  One is Midtown Savannah, and another one is in Darien, Georgia.

THE COURT:  Darien.  Have you had people who rob the hotels?  Have you ever had any robberies?

JUROR:  No.

THE COURT:  No.  Have you ever served on a jury before?

JUROR:  I was in Chatham County.

THE COURT:  Chatham County.  Okay.  You know nothing about this case.

JUROR:  No, sir.

THE COURT:  Did you serve on that jury in Chatham County; or, did you have to go over to the courthouse, and were you selected or were you allowed to go home?

JUROR:  Selected.

THE COURT:  Selected.  What kind of case was it?

JUROR:  It was a property case.

THE COURT:  A property case, a civil case.

JUROR:  Yes, a civil case.

THE COURT:  Did jury come to an agreement as to what to do?

JUROR:  Yeah.

THE COURT:  And you returned a verdict.

JUROR:  Uh-uh.

THE COURT:  Yes.

JUROR:  Yes.

THE COURT:  Now, you have said you have no opinion regarding the death penalty.  In other words, you are not opposed to it.  You just simply do not know.  Is that correct.

JUROR:  I do not know.

THE COURT:  Wait.  Are you against putting people to death?  And do you think that is wrong?

JUROR:  No.

THE COURT:  You do not.

JUROR:  No.

THE COURT:  All right.  You understand the jury in this case would have to make two critically important decisions.  They would have to decide whether or not the defendant was guilty.  You understand that.

JUROR:  No.

THE COURT:  The government has to prove, in other words, they have to bring witness to give truthful testimony.  And the jury has to decide to whether they believe the witnesses.  We call that proving someone guilty.  You understand that.

JUROR:  Yes.

THE COURT:  Now, so, do you have any questions?  The jury would have to decide whether the defendant was guilty.

JUROR:  Yes.

THE COURT:  If you don't understand it, I will explain it to you further.  Do you understand?

JUROR:  No.

THE COURT:  You don't.  Okay.  You remember that case that you served on where the property was involved.

JUROR:  Yes.

THE COURT:  They called witnesses; did they not, and you had to listen to the witnesses.  You don't remember that?

JUROR:  No, I remember.  But there was not many witnesses, no.

THE COURT:  There were not many what?

MR. DARDEN:  Judge, we would move to jointly strike.  I don't think she understands --

THE COURT:  All right.  I will release you.  Thank you.  And you are to free to go.

JUROR:  Thank you.

[Juror Left the Room.]

MR. DARDEN:  You will spent all day trying to get her to understand.

THE COURT:  Yes.  I don't where to begin.

MARSHAL:  Ms. Becton will be next.

THE COURT:  Ms. Becton, glad to have you.  I remind you that you are under oath and immediately in front

of you is a microphone. We are recording all of the answers. If you don't understand anything I ask of you, don't be bashful. I will try to explain it further. Do you understand? And answer yes or no.

JUROR: Yes.

THE COURT: Ms. Becton, you were randomly selected here to come at a potential juror in this case. Do you understand that the defendant is a black male?

JUROR: Yes.

THE COURT: And that the victim in the case is alleged to have been a white female. You understand that.

JUROR: Yes.

THE COURT: Would those facts weigh or make any difference to you in deciding the guilt or innocence of the defendant?

JUROR: No, sir.

THE COURT: Would those facts standing alone make any difference in assessing punishment?

JUROR: No, sir.

THE COURT: All right. The jury would have to make two critically important decisions. The government, first of all, under our system of justice as I explained the other day, must convince a fair and impartial jury that the defendant is guilty of the offenses charged or an offense charged in the indictment. If the government proves its

case, can you vote for the verdict of guilty?

JUROR:  Yes, sir.

THE COURT:  If the government does not prove its case beyond a reasonable doubt, could you acquit the defendant?

JUROR:  Yes, sir.

THE COURT:  Now, you have indicated that you had a brother who was murdered.

JUROR:  Yes, sir.

THE COURT:  How long ago was at that?

JUROR:  Five years.

THE COURT:  Where did that occur?

JUROR:  In Mississippi.

THE COURT:  In Mississippi.  Did you know anything about it?

JUROR:  I know it was a domestic dispute, and the ex-husband killed my brother and his ex-wife.  And then he shot himself.

THE COURT:  Okay.  And your home was robbed.

JUROR:  Yes, sir.

THE COURT:  Anybody ever arrested for that?

JUROR:  No, sir.

THE COURT:  Now, the jury would have to make another decision.  If the defendant were found guilty, the jury would consider whether or not to put him to death or to

execute him.  If there were sufficient aggravating circumstances, and you felt him guilty, and there were aggravating circumstances, would you consider those aggravating circumstances in deciding whether or not to vote to put him to death?

JUROR:  You're asking me if I would have a problem with --

THE COURT:  Imposing a death penalty.

JUROR:  No, sir.

THE COURT:  Could you, if you felt that even though he was guilty of the crime, but there were particular mitigating or lessening things, decide that the more appropriate sentence would be life imprisonment without parole?  Could you consider that also?

JUROR:  Yes, sir.

THE COURT:  Would you be locked in to either one, either death or life imprisonment without possibility of parole?

JUROR:  No, sir.

THE COURT:  Is there anything in your background that you wish to explain or any question that you would like to amend on those that were asked of you the other day?

JUROR:  No, sir.

THE COURT:  The fact that there is race involved -- well, not race.  The races, the protagonists,

the people involved are of two different races.  Would that have any difference, make any difference whatsoever to you?

JUROR:  No, sir.

THE COURT:  You would follow law as I instruct it, and listen to the evidence, and based upon that alone make your decision.

JUROR:  Yes, sir.

THE COURT:  Ms. Becton, I'm going to qualify you.  I am going to allow you to go home.  You are required to come back tomorrow at 1:00 o'clock.  Hopefully we will make the final selection.

Do not tell anyone the questions I have asked of you or any responses you have made.  Remember all of the limitations I placed upon you the other day.

JUROR:  Yes, sir.

THE COURT:  You are excused.

JUROR:  Thank you.

[Juror Left the Room.]

MARSHAL:  The next one will be 207, Ms. Marshall.

THE COURT:  How are you, Ms. Marshall?

JUROR:  Good.  How are you?

THE COURT:  You've lived at this address a month.

JUROR:  We just moved.

THE COURT:  Did you?

JUROR:  Yes.

THE COURT:  Ms. Marshall, you were selected to serve or to stand for jury selection in this case.  The law requires that we ask you certain questions out of the presence of the other members of the jury.  We are not trying to embarrass you or trick you in anyway.  If you will listen to questions and answer appropriately, there is a microphone in front of you.  And everything has been to be recorded.  The court reporter is taking answers.  If you will answer loud enough so that everyone in the room can hear, I would be grateful.

JUROR:  Okay.

THE COURT:  You are a physical therapist employed by the Effingham County Board of Education.

JUROR:  Yes, sir.

THE COURT:  How long have you had that position?

JUROR:  Around five years.

THE COURT:  Where were you born and reared?

JUROR:  Savannah.

THE COURT:  Savannah.

JUROR:  I was born in Savannah, and raised in Pooler.

THE COURT:  Well, that is near enough.  We'll accept that.  Now, are you married?

JUROR:  Yes, I am.

THE COURT:  Your husband's occupation?

JUROR:  He is a nurse practitioner.

THE COURT:  Employed by?

JUROR:  Georgia Skin and Cancer Clinic.

THE COURT:  That is here in Savannah.

JUROR:  Out by St. Joseph's.

THE COURT:  Okay.  Do you have any children?

JUROR:  One.

THE COURT:  How old is that child?

JUROR:  He is right at one year.

THE COURT:  One year.

JUROR:  One year.

THE COURT:  All right.  Now if you are selected to serve on the jury, there are areas that you will to make some decisions.  The government, as I explained to you the other day, will have to convince a fair and impartial jury that the defendant committed the crimes alleged in the indictment, and the proof must remove all reasonable doubt. If the proof called for it, could you vote for a guilty verdict?

JUROR:  If the proof called for it, yes.

THE COURT:  And if the government did not have sufficient proof, even though you though that maybe he did it, could you vote for an acquittal?

JUROR:  Yes.

THE COURT:  Now, if you and the jury find the

defendant guilty, then you have another decision you have to make.  You have to decide whether under the law and the facts of the case that death is the appropriate sentence, could you vote for death, if there were such sufficient aggravating circumstances?

JUROR:  Yes.

THE COURT:  Would you consider life imprisonment without parole if according to your belief after hearing the evidence, there were sufficient mitigating circumstances to warrant not giving the death sentence and making life without parole the sentence?

JUROR:  Yes.

THE COURT:  Now, you heard something about, and read something about, this in newspaper at or about the time it occurred, I would assume.

JUROR:  On the news and in the newspaper.

THE COURT:  Did you form any opinion as to the guilt of the defendant?

JUROR:  No.

THE COURT:  Could you go into the courtroom and base any decision upon what is produced in the courtroom, or the failure to produce the evidence in the courtroom?

JUROR:  Could I make a decision, yes.

THE COURT:  Based upon -- putting all of that other aside.

JUROR:  Right, yes.

THE COURT:  Now, you've had a long weekend to think about the answers you gave.  Is there any change you would make to the answers you gave in the affidavit or the questionnaire?

JUROR:  No, sir.

MR. DARDEN:  May I ask one question?

THE COURT:  Sure.

MR. DARDEN:  Ms. Marshall, you indicated that you strongly support the death penalty.  Is that correct?

JUROR:  Uh-uh.

MR. DARDEN:  As you sit here today, do you think you would be more inclined to give the death penalty than consider life in prison without parole?

JUROR:  It would really be what was presented, I would think.

MR. DARDEN:  Okay.  You think you can listen to all of the evidence, both the aggravating and the mitigating circumstances, and make a decision based on all of the evidence presented.

JUROR:  Yes.

MR. DARDEN:  Okay.  Thank you.

THE COURT:  I am going to have ask you to come back tomorrow at 1:00 o'clock.  You are on the final cut.

JUROR:  Okay.

THE COURT:  Don't let anyone know the questions that were asked of you, or the responses you made, or even the fact that you have to come back.  So, you are free to leave now.

JUROR:  Tomorrow at 1:00 o'clock.

THE COURT:  Yes.

[Juror Left the Room.]

THE COURT:  Come here a minute, Marshal.

How many have we brought in?

MARSHAL:  That was number 17, Your Honor.

THE COURT:  We have eleven qualified.

MR. DARDEN:  Yes, sir.

THE COURT:  Did everybody show up?

MARSHAL:  Yes.  Everyone did.  Every one else is in the basement.  They are all here, except for the ones -- Mr. Nobles was excused.

THE COURT:  Yes.  I want you to have them bring up about another eleven out of that, put them in this courtroom.  And tell the others -- I want you to go down there and do it -- tell them that they are free to go.  That I cannot get to them this afternoon.  And to call the code-a-phone -- we will know about 6:30 how we're doing -- by 11:00 o'clock or 10:30 when they are to come back.

MARSHAL:  You want them to call the code-a-phone at 10:30 tomorrow morning, and that will tell them whether

to come back.

THE COURT:  Right.  But bring the first eleven up here.

MARSHAL:  No problem, sir.

THE COURT:  All right.

MARSHAL:  Ms. Hill will be a next one.

THE COURT:  All right.  Good afternoon, Ms. Hill.

JUROR:  Yes, sir.

THE COURT:  This is not the Spanish Inquisition. We just want to ask you a few questions.  I want you to relax.  Speak into that microphone that is in front of you. The court reporter is recording everything.  And if you will speak loudly enough so that everyone in the room can hear you.

As I explained to you the other day, the law requires that I ask you some questions out of the presence of the other members of the jury.  We are not trying to trick you, and we certainly don't you to feel ill at ease. If you don't understand anything, you let us know, and we'll keep explaining it until you understand.

Now, you've lived here in Savannah for a little less than two years or how long?

JUROR:  No.  I've been in Chatham County since 1980.

THE COURT:  Where were born and reared?

JUROR:  Walton County, Georgia.

THE COURT:  Okay.  That is Winder, Georgia or Monroe.

JUROR:  It is between Atlanta and Athens, yes.

THE COURT:  Monroe.  Okay.  And you are working as a legal assistant.

JUROR:  That's correct.

THE COURT:  To whom.

JUROR:  Howard Spiva.

THE COURT:  Howard Spiva.  They do a lot of civil cases.

JUROR:  A lot of personal injury.

THE COURT:  Wilbur Owens, Jr. and a group of those are over there.  So, I would assume -- how long have you been employed by them?

JUROR:  Five and a half years.

THE COURT:  What was your employment before that time?

JUROR:  Paralegal with Jim Lang.

THE COURT:  Jim Lang, as I recall, Jim Lang didn't have a criminal practice to speak of.

JUROR:  That's correct.

THE COURT:  Before that, how long were you in the legal --

JUROR:  I was with Jim Lang eight years.  And then

before that, I was with -- used to be Jones, Hill & Mercer Insurance.

THE COURT:  All right.

JUROR:  And it went on from there.

THE COURT:  Your husband is a warehouse manager.

JUROR:  That's correct.

THE COURT:  Employed by whom?

JUROR:  Paper Chemical Supply.

THE COURT:  What is the Avalanche Club, a skiing club?

JUROR:  No.  It's a truck, my Chevy truck.

THE COURT:  Okay.  I thought it was a skiing club. Okay.  Now, you understand, do you not, that the defendant in this case is a black male.  The alleged victim was a white female.  Would that make any difference in deciding the guilt or the punishment?

JUROR:  Not at all.

THE COURT:  Not at all.

JUROR:  Not at all.

THE COURT:  Now, you heard something about this case or this incident when it occurred.  Do you ever remember hearing who the defendant was?

JUROR:  Not really.  It didn't stick with me.

THE COURT:  It did not.  So, you didn't think about it again until you came into court the other day.

JUROR:  That's correct.

THE COURT:  May I properly assume then that you have no opinion regarding the guilt or innocence of the defendant?

JUROR:  Correct.

THE COURT:  Could you and would you listen to the evidence in courtroom and the instructions that I would give you and make your decision from that alone?

JUROR:  Yes.

THE COURT:  Now, if you are selected to serve on this jury, there are some decisions that have to be made. That is whether the government has proven the defendant guilty beyond a reasonable doubt.  If the government proves his guilt beyond a reasonable doubt, could you vote for a guilty verdict?

JUROR:  Yes.

THE COURT:  Now, the other question is, if you find him guilty, there well would be a choice; that is, a death sentence, that is he would be executed; or, he would under certain circumstances, mitigating circumstances, would be considered for life imprisonment without parole.

Now, you have said this in answer to Question 29, Do you religiously, morally, personally, or otherwise oppose the death penalty?

You say I'm uncertain.  Religiously, I do not

believe God has charged me with the ability to aid in taking someone's life.

Now, I want to examine that with you.  There are no right or wrong answers.  And I'm not trying to get you to change your mind.  But the answer is a bit ambiguous, at least legally it is.

Now, there are some bad things that have occurred. There has been multiple killings and deaths, and incidents in very recent memory that you read and hear about, and sometimes observe scenes on television that depict a lot of bad stuff.

Could you, Ms. Hill, or do you believe that you could impose the death penalty if the facts warranted it; or, are you so opposed that you simply could not do it? That you are so opposed to the death penalty you could not do it?

JUROR:  It would be real hard for me to say absolutely not after hearing all the facts.  So, I didn't want to say absolutely not.  It would be easier to give a person life than death, and because many people get saved in prison.  And they have that option.  But I don't know after I heard all the facts if I would not sit here and say that I would not.

THE COURT:  So, you would consider the imposition of the death penalty, meaning he would be executed, if you

felt the facts warranted it.  Is that right?  I'm not trying to trick you or push you.  They want to know.  And the Court has a duty to try to help you get to the point.  Take your time, because the question is critical.

JUROR:  I guess I would have to say I don't believe in capital punishment.

THE COURT:  Well, you have that right.  We're not arguing with you.  But under no circumstances, are you telling me that under no circumstances could you, Ms. Hill, vote to impose the death sentence?

JUROR:  I guess I would really have to hear the facts.

THE COURT:  Well, if you say the facts would make the determination, then you are telling me, or at least I'm understanding you to say under certain circumstances, I could vote for the death sentence.

JUROR:  That's correct.

THE COURT:  You could vote --

JUROR:  I could.

THE COURT:  -- and you assure the parties, the government and the defendant, under certain circumstances you could vote for the death sentence?

JUROR:  I could.

THE COURT:  All right.  Any questions from the government?

MR. NEWMAN:  One moment, Your Honor.  We have nothing, Your Honor.

THE COURT:  All right.

MR. DARDEN:  Nothing from the defendant, Your Honor.

THE COURT:  I'm going to ask that you return tomorrow at 1:00 o'clock for jury selection.  This process is ongoing.  You are free to leave now.  But do not tell anyone the questions I have asked or the responses you've made.  And remember all of the instructions that I gave you on Thursday about how to conduct yourself.  Would you do that?

JUROR:  Yes, sir.

THE COURT:  You are free to leave.

JUROR:  Thank you.

[Juror Left the Room.]

THE COURT:  Call the next one.

MARSHAL:  Mr. Klenke, Your Honor.

THE COURT:  How are you, Mr. Klenke.  Won't you have a seat here.

JUROR:  Yes, sir.

THE COURT:  Where is Coldwater, Ohio.  It sounds like a place I don't want to be in the winter time.

JUROR:  It is about 50 miles north of Dayton.

THE COURT:  Is it?  Tire country.  Dayton makes

all of the automobile tires; doesn't it?

JUROR:  No.  Cleveland does, Cleveland and Akron.

THE COURT:  Cleveland, okay.  I believe that is right.  You are an electronic technician with the Georgia Air National Guard.

JUROR:  No.  I'm an electronic technician with Savannah Communications, but I was in the Georgia Air National Guard.

THE COURT:  Okay.  With whom, Savannah?

JUROR:  Savannah Communications.

THE COURT:  What is business of Savannah Communications?

JUROR:  We work and repair Motorola radios and stuff for police departments, EMS.  Business radios.

THE COURT:  I recall you said that the other day. Your wife is an import manager for whom?

JUROR:  ABX Logistics.

THE COURT:  What do they do?

JUROR:  They import cargo and process it through Customs in Georgia.

THE COURT:  Okay.  Are either of your children employed?

JUROR:  My son works as a cook at Carrabas and my daughter is part time -- has a part time job at a warehouse, but I don't know where it is at.  And she's a student at

Armstrong Atlantic State.

THE COURT:  Right.  Now, you understand your selected on the jury that the defendant is a black male.

JUROR:  Yes, sir.

THE COURT:  The victim in the case is alleged to have been a white female.

JUROR:  Yes, sir.

THE COURT:  Would that make any difference, however slight to you.

JUROR:  No, sir.  No, sir.

THE COURT:  It would make no decision in the guilt or innocence phase or the penalty phase.  Is that correct?

JUROR:  That's correct.

THE COURT:  All right.  Now, the jury must make two very important decisions.  Based upon the evidence presented by the parties and particularly the government -- the defendant does not have to prove his innocence.  You understand that.

JUROR:  Yes, sir.

THE COURT:  You must decide whether the government has met its obligation or responsibility, or burden to prove the defendant guilty beyond a reasonable doubt.  If the government meets that responsibility, could you vote for a guilty verdict?

JUROR:  Yes, sir.

THE COURT:  If the government fails to convince you beyond a reasonable doubt, even though you think well, he probably did it, could you vote for innocence or a not guilty verdict?

JUROR:  Yes, sir.

THE COURT:  Now, if the verdict is guilty, then the jury must make another decision.  The jury has an option to grant the death penalty, which means he will be executed.

JUROR:  Yes, sir.

THE COURT:  Or provide that he will be sentenced to life without the benefit of parole.

Now, the government has a right to present factors that the jury might consider in deciding whether to put him to death.  We call those aggravating circumstances.  Would you listen to those and make your decision?

JUROR:  Yes, sir.

THE COURT:  Now, the defendant or the facts themselves might have mitigating circumstances that might warrant not imposing the death sentence, and making a life without parole sentence the appropriate judgment.  Could you do that?

JUROR:  Yes, sir.

THE COURT:  Is there anything in this questionnaire that you filled out on last Thursday that you would like to change.

JUROR:  No, sir.

THE COURT:  Do you feel like you answered it truthfully and completely in every respect?

JUROR:  Yes, sir.

THE COURT:  Is there anything in your background or experience that you think that the Court and these parties should know before the decision is made to select you?

JUROR:  No, sir.

MR. DARDEN:  Mr. Klenke, in open court yesterday you indicated that you know all of the detectives in this case.  Is that correct?

JUROR:  I know by working --

MR. DARDEN:  On a professional level.

JUROR:  A professional level, that is about it.

MR. DARDEN:  Given that circumstance, would you be more inclined to believe their testimony in relation to any other witness?

JUROR:  No, sir.

MR. DARDEN:  Okay, you could put that matter aside and decide this case based strictly on the evidence presented in court.

JUROR:  Yes, sir.

MR. DARDEN:  You don't think you would have to go to them after this case and explain to them your decision or

make any excuse for what you do here.  Is that correct?

JUROR:  No, sir.

MR. DARDEN:  Thank you, sir.

THE COURT:  You are to be back tomorrow at 1:00 o'clock for hopefully final jury selection.  Give your phone number to the marshal, if we have to delay it because we can't cover as much ground as I hope we can.  But you are on the panel for final selection.

Now, do not discuss anything about this case with anyone.  Do not -- you leave the courthouse.  And don't tell anyone the questions I have asked or you were asked in this jury room or any answers you made.  Will you do that, Mr. Klenke?

JUROR:  Yes, sir.

THE COURT:  You are free to leave.

[Juror Left the Room.]

THE COURT:  Next Ms. Mary Jones, I believe.

Ms. Jones, would you come here.  Ms. Jones, have you lived here?  You were born up in Millen, Jenkins County, Georgia.

JUROR:  Yes, I was.

THE COURT:  Now you understand that the law requires that I ask you a number of questions regarding jury service and the issues that will be involved.

JUROR:  Yes, I do.

THE COURT:  There is a microphone in front of you. If you will speak into it, the court reporter will take your answer.  If you do not understand anything I ask, just ask and I will explain it.  We're not trying to trick or in any way mislead you or embarrass you.

Did you understand from what I said the other day that the defendant is a black male, and the alleged victim was a white female.  Would those facts make any difference, however slight to you?  Would that persuade you one way or the other, or shift your opinion as to the guilt or innocence or the punishment of this defendant?

JUROR:  No, it won't.

THE COURT:  Now, you are nurse.  And you have been employed by the Chatham County Sheriff's Department.

JUROR:  Yes, I have.

THE COURT:  How long have you been employed by the Chatham County Sheriff's Department?

JUROR:  Since 1981.

THE COURT:  You work with police officer, prisoners, and nurses and doctors in the medical community throughout that time.

JUROR:  Yes, sir, I did.

THE COURT:  Are you still employed in that position?

JUROR:  I'm still employed at that -- I am retired

now, but I'm still employed at that position part time.

THE COURT:  All right.

JUROR:  I work on the weekends, and sometimes during the week.

THE COURT:  All right.  And have you served on a jury previously without me looking back?

JUROR:  No.

THE COURT:  The jury in this case would have to make a couple of decisions.  You understand the government has the obligation to convince a fair and impartial jury that the defendant is guilty of the crime, and they must produce evidence that removes all reasonable doubt from your mind.  You understand that.

JUROR:  I understand that.

THE COURT:  Now, if the government should produce enough evidence to remove all reasonable doubt from your mind, could you vote for a guilty verdict?

JUROR:  Yes, I can.

THE COURT:  If the government should fail to convince you beyond a reasonable doubt that the defendant is guilty, could you vote for a not guilty verdict?

JUROR:  Yes.

THE COURT:  Now, if the verdict of the jury is guilty, the jury is called upon to make another choice, that is to find him guilty and to impose a death sentence so that

he would be executed, and they may decide that he is guilty but impose a sentence of life without parole.  Now, if the government -- if he is found guilty and there are sufficient aggravating circumstances in the killing or death, murder, could you vote for the death sentence?

JUROR:  I don't think so.

THE COURT:  I've got to ask you some more questions.

JUROR:  Go ahead.

THE COURT:  Is this a conviction that is based upon your religious beliefs, your moral beliefs, your philosophy; or, do you know where it comes from?

JUROR:  It is based on my religious belief.

THE COURT:  Religious belief.  Now, you understand and I told you the other day, there are no right or wrong answers.  And we're not trying to convince you one way or the other.

JUROR:  I understand.

THE COURT:  But you have worked around law enforcement now for almost a quarter of a century.

JUROR:  That is true.

THE COURT:  You probably have seen some pretty bad things and heard the lot of bad things.

JUROR: Yes.

THE COURT:  I assume that you probably would say

I'm not in favor of the death penalty or the death penalty may be all right, but I couldn't do it, which one of those?

JUROR:  It may be all right, but I can't do it.

THE COURT:  All right.  Now, let's take that and pursue that.

JUROR:  Okay.

THE COURT:  I told you the other day that a jury sits in judgment just as much as I do.  In this case, maybe their role is even greater, because they not only decide guilt or innocence, but they decide the proper punishment.  You remember I told you that last Thursday.

JUROR:  Yes, I do.

THE COURT:  Are there -- you are against the death penalty or you could not impose -- I don't think you are against the death penalty *per se*, but you cannot do it.

JUROR:  I don't think I can.

THE COURT:  Well, are there no circumstances, Ms. Jones -- let me withdraw that.  Would you be against the death penalty in every case, that if you had to impose it as a member of the jury, you could not vote to take someone's life?

JUROR:  No, I can't.

THE COURT:  You could not.

JUROR:  I could not.

THE COURT:  As I said, you've been around probably

more things than I have, and I've been at it 45 years.  But you have been closer to the criminal side of the court and seen that side of it in more detail than I have.

JUROR:  Yes.

THE COURT:  Is there no circumstances you could think of that you could vote to impose a death sentence?

JUROR:  No.

THE COURT:  You cannot think of any circumstances where you, Mary Jones, could vote to impose a death sentence.

JUROR:  No, sir.

MR. DARDEN:  No, sir.

THE COURT:  I'm to going to excuse you, Ms. Jones.  Thank you for your candor, thank you for your honesty.

JUROR:  Okay.

THE COURT:  Do not tell anyone out there that you are excused or don't tell anyone the questions I have asked of you.  You are free to go.

JUROR:  Thank you.

THE COURT:  Thank you.

[Juror Left the Room.]

MARSHAL:  Ms. Cota.

THE COURT:  Hey, Ms. Cota, how are you?

JUROR:  Good afternoon.  I'm fine, thank you.

THE COURT:  This is not a lion's den.  We simply

have to pursue some of the areas.  And the law says that I must do that out of the presence of the other people on the jury.  You remember what I told you the other day, there are no right answers, no wrong answers.  You still under oath, and all we want is a truthful answer.  I'm sure that is what you plan to do.

You were born in St. Albans.

JUROR:  St. Albans, Vermont.

THE COURT:  That is up near the Canadian border.

JUROR:  It certainly is.

THE COURT:  I have driven through there two or three times.  Well, it is a little warmer here; isn't it?

JUROR:  That is why I'm here.

THE COURT:  Well, he, too.  What was your husband's employment?

JUROR:  He had a sheet metal shop doing structural work for an aeronautical business.

THE COURT:  What was the name of his business?

JUROR:  Alcott Manufacturing Company.

THE COURT:  Where was that located?

JUROR:  That is in Vernon, Connecticut.

THE COURT:  Your children are 37 and 29.

JUROR:  Correct.

THE COURT:  What are their occupations, if any?

JUROR:  My son works at Gulfstream.  And my

daughter is an associate executive at John Hancock in Boston, Massachusetts.

THE COURT:  The building that has the falling windows.

JUROR:  Pardon?

THE COURT:  You know the windows kept falling for twenty years.

JUROR:  Yes.  That was before she went there.

THE COURT:  Right.  I always hurry by it, even now.

The defendant is a black male.  The victim of this case is alleged to be a white female.  Would those facts make any difference to you whatsoever in any decision you are called upon to make?

JUROR:  Not at all.

THE COURT:  Not at all.

JUROR:  No.

THE COURT:  Now, the jury is called upon to make two very important decisions.  They must decide based upon the evidence or the insufficiency of the evidence whether to return a guilty verdict or a not guilty verdict.  If you found that the evidence removed all reasonable doubt, could you vote for a guilty verdict?

JUROR:  Yes, I could.

THE COURT:  If you had a doubt, a reasonable doubt

as to the defendant's guilt, could you vote for a verdict of not guilty?

JUROR:  Yes, I could.

THE COURT:  Now, if the verdict of the jury is guilty, there comes another fork in the road.  The jury may, if there are aggravating circumstances, impose a death sentence.  If that is imposed, the defendant will be executed.  You understand that.

JUROR:  Yes, sir, I do.

THE COURT:  Could you vote for that?

JUROR:  Yes.

THE COURT:  The jury may consider mitigating factors, that there was something that made the death sentence not the appropriate sentence, but life without parole.  If you felt there was the appropriate punishment, could you vote for that?

JUROR:  Yes, I would.

THE COURT:  Ms. Cota, the Court finds that you have to come back tomorrow at 1:00 o'clock for final jury selection.

MR. BELL:  Judge, could we ask her one question?

THE COURT:  Sure.

MR. BELL:  The group, the One Hundred Allocations, what is that?

JUROR:  That is a group of mostly women that are

interested in raising funds for the Backus Children's Hospital.

MR. BELL:  Thank you.

JUROR:  You're welcome.  And I get to spend that money.

THE COURT:  Thank you.  You come back tomorrow at 1:00 o'clock.  Give him your phone number, because if this process does not go as fast as we anticipate, we might have to delay calling you back.  So, if you will call us in the morning about 10:00 o'clock -- no, we will call you.

JUROR:  You will call me.

THE COURT:  We'll call you.

JUROR:  Thank you.

THE COURT:  Good enough.

[Juror Left the Room.]

MARSHAL:  The next one will be 176, Mr. Shields. We've jumping up --

THE COURT:  Mr. Shields has got to go see his daughter.  She's got a baby or something.  So, I'm going to pull him up.

Mr. Shields, have a seat.  I understand that your daughter is waiting for you at the hospital.

JUROR:  Memorial Hospital.  I dropped her off on the way here.

THE COURT:  I am going to take you out of turn, so

I can let you get out of here.

JUROR:  Okay.

THE COURT:  Mr. Shields, we have to ask you some questions regarding this case.  And I'm required to ask you these questions out of the presence of the other people on the jury.  You understand that.

JUROR:  I understand.

THE COURT:  In front of you is microphone that will record your answer.  So, if you will speak loud enough so that everyone in the room is able to understand you.

The defendant is a black male.  The alleged victim was a white female.  Would those facts weigh one way or the other in your judgment, ever so slight?

JUROR:  No, sir.

THE COURT:  Would it make any difference at all, the race of the defendant or the race of the victim?

JUROR:  No, sir.

THE COURT:  Tell us about your employment.

JUROR:  I work for Kerr-McGee.  I have been with them for eighteen years.  I'm a digest operator.  That means what I do, my job is controlling explosions.  That is what I do for a living.

THE COURT:  Right.  You have three children, 19, 11, and 9.  What does the 19, still a student?

JUROR:  Yes.  She's a student at Voc-Tech.

THE COURT:  Voc-Tech.  Is your wife employed?

JUROR:  Yes.

THE COURT:  She's employed by Gateway.

JUROR:  Gateway Child and Adolescents.

THE COURT:  What is her position with Gateway?

JUROR:  She's a supervisor over the secretaries.

THE COURT:  All right.  The government has brought charges against the defendant.  You understand them, I went over those charges with you the other day.

JUROR:  Yes, sir.

THE COURT:  The government then is an opportunity given the opportunity to bring evidence; that is, witnesses, exhibits, and whatever to prove those charges.  If they prove those charges beyond a reasonable doubt to your satisfaction if you are on the jury, could you vote for a guilty verdict?

JUROR:  Yes.

THE COURT:  If they failed to prove those charges beyond a reasonable doubt, could you vote to acquit the defendant?

JUROR:  Yes.

THE COURT:  Now, if the jury finds the defendant guilty, then the decision arises whether or not to impose the death penalty, which means he would be executed or to sentence him to life imprisonment without possibility of

parole.  Now, in considering whether or not to impose a death sentence, the jury is authorized to look at aggravating circumstances or factors.  Would you look at those aggravating circumstances in making the decision whether or not to impose a death penalty?

JUROR:  Yes.

THE COURT:  Are you conscientiously opposed to the death penalty in all cases?

JUROR:  No.

THE COURT:  If there were mitigating circumstances that the Court instructed you to consider, that the defendant produced some evidence about mitigating and ask that you sentence him to life without possibility of parole, could you consider those mitigating circumstances?

JUROR:  Yes.

THE COURT:  Now, Mr. Shields, is there anything in this questionnaire that you completed the other day that you would like to change or retract in any way?

JUROR:  No.

THE COURT:  Is there anything about you or anything that the Court and the people should know about you that I have not covered?

JUROR:  That is about it.  Right now, at this moment, I've served on jury duty about three other times before with state, but no federal.  And at this time, it has

been kind of a hard time for me, because Saturday I buried an aunt.  Tomorrow, I'm burying another aunt.

THE COURT:  What time is that funeral?

JUROR:  It is 2:00 o'clock tomorrow afternoon, Ms. Wilhelmina Adams, Floyd Adams' mother.

MR. DARDEN:  Floyd Adams' mom.

JUROR:  Her funeral.  That was my aunt.  Other than that --

THE COURT:  Well, in jury selection will go forward tomorrow, and you want to go to her funeral.

JUROR:  Yeah.  She helped raised me, you know.  I mean, that's kind of a sticky situation.

THE COURT:  Well, I could force you, but I'm not going to force you.  I would like for you to serve.  But I'm not going to make you serve.  You've got an aunt that helped rear you.  I'm not going to make you serve.  But I've got to decide whether to excuse you right now or not.

MR. DARDEN:  Judge, perhaps it would be appropriate if he could be here at 3:30 or 4:00 o'clock tomorrow.

THE COURT:  No, I plan to start that tomorrow at 1:00 o'clock.

JUROR:  At one, well, I will like to go to her funeral.  That would be a last time I will get to see her.

THE COURT:  There might be other situations that

arise, and I've got to.  I am going to excuse you.

JUROR:  Okay.

THE COURT:  Don't let anyone know what I have asked of you, or any responses you made.  You are excused.

JUROR:  Okay.  Thank you.

[Juror Left the Room.]

MARSHAL:  The next one will be Ms. Williams, 235.

THE COURT:  How are you, Ms. Williams?

JUROR:  Okay.  How are you?

THE COURT:  If you will remember that you are still under oath, and we'll try to make this as brief and as painless as we can.  If you would speak loud enough for everyone to hear, I would be grateful.

You are Glynis Stewart Williams.

JUROR:  Correct.

THE COURT:  And you have lived in Savannah most of your life or all of your life.

JUROR:  All of my life.

THE COURT:  And you are a member of the Pentecostal Holiness Church.

JUROR:  Correct.

THE COURT:  Now, the law says I must ask you some questions out the presence of the other members of the jury.  Now, the defendant is a black male.  You saw that the other day.

JUROR:  Yes.

THE COURT:  Did you understand that I said that the alleged victim was a white female?

JUROR:  Yes.

THE COURT:  Would that make any difference to you whatsoever, the race of the victim, the race of the defendant or the race of any witness or anybody else?

JUROR:  No.

THE COURT:  Not in the slightest.

JUROR:  No.

THE COURT:  Now, the government has the obligation or the burden to prove the defendant guilty beyond a reasonable doubt.  That evidence would have to be brought forth in court.  Could you listen to that evidence and if the evidence warranted it, find the defendant guilty or not guilty based upon the evidence?

JUROR:  I could listen to it, yes.

THE COURT:  Could you find him guilty if you felt like the evidence was sufficient?

JUROR:  Yes.

THE COURT:  Could you find him not guilty if you thought the evidence was not sufficient?

JUROR:  Yes, I could.

THE COURT:  Now, if the jury were to find him guilty, then there comes to be another issue.  You heard

something about this on television, I believe.

JUROR: Yes, I did.

THE COURT: Now, could you put aside anything -- do you remember exactly what you heard?

JUROR: What I heard was that there was a shooting at the Post Office in Fleming, and a death occurred.

THE COURT: Right. You didn't remember the name of the victim or didn't know the name of the defendant.

JUROR: I didn't remember. I don't remember.

THE COURT: You know nothing about the case other than what you heard.

JUROR: What I heard, and, you know, we talk in the office.

THE COURT: Yes. So, could you put all of that aside and make your decision based upon what you hear here in courtroom?

JUROR: Yes.

THE COURT: You are positive?

JUROR: Yes.

THE COURT: Now, in Question 29, you say, you were asked *do you religiously, morally, personally or otherwise oppose the death penalty.*

You say yes. You said *I feel that I have not right religiously to set or appoint anyones to death.*

JUROR: Yes.

THE COURT:  Or sentence anyone to death.

JUROR:  Right.

THE COURT:  And you say *I strongly support the death penalty as punishment.*

Is that an error?  You strongly oppose the death penalty.

JUROR:  That is what I meant.

THE COURT:  That is what you meant to put down.

JUROR:  Yes.  That is what I meant.

THE COURT:  All right.  And you said *would your opinion regarding the death penalty influence you in deciding the guilt of the defendant.*

You say *yes, I would have to really think ask struggle with that.*

JUROR:  Yes.

THE COURT:  Now, let's go through that again.  You said here -- there are two different questions.  You said if he were guilty, you could find him guilty.  Is that right?

JUROR:  Yes.

THE COURT:  But your problem with come if you found him guilty, then imposing the death penalty.

JUROR:  Right.

THE COURT:  Because you strongly oppose the death penalty.

JUROR:  Right.

THE COURT: That is based upon your belief, your religion, your feeling morally as a human being.

JUROR: Yes.

THE COURT: Now you recall there have been bad things that have happened in this country, a lot of people have been killed, big things. I won't go into them. Under any of these circumstances can you imagine a time if you sit in judgment as Glynis Stewart Williams that you could impose the death penalty?

JUROR: No, I don't.

THE COURT: You just couldn't do it.

JUROR: I don't believe I could -- I really don't.

THE COURT: Now, that is a fixed opinion.

JUROR: Yes.

THE COURT: And you will not change.

JUROR: No.

THE COURT: You will not change.

JUROR: It has to do with the way I was raised.

THE COURT: Well, look, you have every right to that belief. You don't have to explain or apologize. All I'm wanting to do -- and you can't think of any circumstances whereby you would change and vote for a death sentence.

JUROR: No.

THE COURT: Okay. I'm going to excuse you. You

appreciate your candor, Ms. Williams.  You are excused.  Do not mention to anyone out there that you are excused are or the questions asked or your responses.

JUROR:  All right.

THE COURT:  Any questions, gentlemen?

MR. DARDEN:  No, sir.

THE COURT:  All right.  Thank you.

JUROR:  Thank you.

[Juror Left the Room.]

MARSHAL:  This is going to be 185, Heather Ferguson.

MR. DARDEN:  Judge, this next juror, I represented her son in a criminal case.

THE COURT:  Yes.  You know, I practice in an area where three quarters of the people knew me.  Or is this the one, I excused one of them?

MR. DARDEN:  I thought you excused -- were there two Ferguson.

MR. BELL:  No.  There's another lady with a similar situation.

THE COURT:  Wait.  Would you go back out just a minute, Ms. Ferguson?

JUROR:  Yes, sir.

[Juror Left the Room.]

THE COURT:  That woman that stood up and said you

represented her --

MR. DARDEN:  There were two of them.

THE COURT:  She was hostile to you.

MR. DARDEN:  She was, and that lady was excused.

THE COURT:  I excused her.

CLERK:  She was excused.

MR. DARDEN:  I'm just letting the Court know that I represented this lady's son.

THE COURT:  Okay.  I thought maybe this was the same person, and I had already excused that one.

MR. DARDEN:  I think you excused the one that was hostile.

THE COURT:  Yes.  Bring her back now.

[Note:  Juror Ferguson returned.]

THE COURT:  Thank you, Ms. Ferguson.  Have a seat. Ms. Ferguson, you recall the other day that I said I would have to ask you some questions out of the presence of the other members of the jury.

JUROR:  Yes, sir.

THE COURT:  In front of you is a microphone.  If you will speak loud enough so that everyone in the jury room will hear your answers, I will be grateful.  The court reporter is recording your answers.

JUROR:  Okay.

THE COURT:  You have lived in Savannah most of

your life.

JUROR:  Yes.  I spent about five years in Boston, Massachusetts.

THE COURT:  Keep in mind there is no right or wrong answers.

JUROR:  Okay.

THE COURT:  None of us want to grill you or embarrass you in any way.  We just simply have to, pursuant to our legal duties, ask you some questions.  You have every right to every belief you want.  And nobody is going to try to impose our beliefs on you.

JUROR:  Okay.

THE COURT:  Are your children employed?  I note that you have one 22 and 23 years of age.

JUROR:  Yes.  Only one is employed.

THE COURT:  Who?

JUROR:  The baby boy, Isaac Davis.

THE COURT:  What is he doing?

JUROR:  We works as a -- he just got a job actually yesterday.  He parks cars.

THE COURT:  He parks cars, where now.

JUROR:  The hotel on Martin Luther King and Liberty/Oglethorpe, the new one just built.

THE COURT:  Yes, I know there is one down there. Okay.  Now, your oldest son was convicted of an assault.  Is

he still serving time?

JUROR:  No, sir.

THE COURT:  Do you feel that he was mistreated?

JUROR:  No, sir.

THE COURT:  You felt like he got justice.

JUROR:  Yes, sir.

THE COURT:  All right.  And you have a first cousin who is detective with the City of Savannah.

JUROR:  Yes, sir.

THE COURT:  Mr. Darden has represented your son.  Is that correct?

JUROR:  Yes, sir.

THE COURT:  Would that influence your decision in this case?

JUROR:  No, sir.

THE COURT:  Do you dislike Mr. Darden?

JUROR:  No, sir.

THE COURT:  Do you still consider him your lawyer?

JUROR:  If the need arise, yes, sir.

THE COURT:  But notwithstanding that, you could judge this case and put aside your feelings regarding Mr. Darden as your lawyer?

JUROR:  Yes, sir.

THE COURT:  Now, the defendant is a black male, and the alleged victim was a white female.  Would that make

any difference to you in making any decision you are called upon to make?

JUROR:  No, sir.

THE COURT:  Now, the government would have to prove that the defendant committed the acts alleged in that indictment, and their proof must remove all reasonable doubt.  If the government has that proof, could you vote for a verdict of guilty?

JUROR:  Yes, sir.

THE COURT:  The government's proof does not convince you beyond a reasonable doubt, and you say well, he probably did it, could you acquit him under those circumstances?

JUROR:  Yes, sir.

THE COURT:  Now, if the jury were to find him guilty, if you were on that jury and you found him guilty, you would meet another crossroads.  You may find him guilty and sentence him to death.  The death penalty meaning he would be executed.  Could you do that?

JUROR:  Yes, sir.

THE COURT:  There are two sets of circumstances the law says you are to consider.  You are to consider any aggravating circumstances in deciding the death penalty.  And if there is something good or mitigating about him that might make the best sentence life in imprisonment without

the benefit of parole, could you do that, if the facts warranted it?

JUROR:  Yes, sir.

THE COURT:  Ms. Ferguson --

MR. NEWMAN:  Your Honor, if I may?

THE COURT:  Yes.

MR. NEWMAN:  Good afternoon, Ms. Ferguson.  I'm Joe Newman, one of the prosecutors.  This is Mr. Frentzen. He is the lead prosecutor for the government.

When your son had this criminal matter problem arise, did you yourself hire Mr. Darden?

JUROR: No, sir.  It was court appointed.

MR. NEWMAN:  Okay.  So, you have never paid Mr. Darden any money in connection with his representation of your son?

JUROR:  No, sir.

MR. NEWMAN:  Did you ever meet just yourself in Mr. Darden's office with him?

JUROR:  No, sir.

MR. NEWMAN:  Did you ever meet in Mr. Darden's office with your son and Mr. Darden?

JUROR:  No, sir.

MR. NEWMAN:  Have you referred other people who have talked to you about a legal issue and say "I recommend you go see Mr. Darden?"

JUROR:  No, sir.

MR. NEWMAN:  But you feel that if you or your sons had some type of legal matter, you might well consider going back to Mr. Darden, because you thought he did a good job in representing your son.  Is that right?

JUROR:  Yes, sir.  I hope that doesn't happen again.  But yes, sir.

MR. NEWMAN:  Certainly.

THE COURT:  You would listen to Mr. Newman and Mr. Frentzen, and wouldn't let the fact that Mr. Darden had represented your son influence your decision?

JUROR:  No, sir.

MR. NEWMAN:  Nothing further, Your Honor.

THE COURT:  All of that is under your oath.

JUROR:  Okay.

THE COURT:  Ms. Ferguson, I'm going to have ask you to come back tomorrow at 1:00 o'clock.

JUROR:  Okay.

THE COURT:  Give the marshal your phone number. If we don't make the progress to have you back at 1:00 o'clock, we'll call you ask tell you to delay it.  But we'll tell you when to return.  Otherwise, return, unless you hear from us.

JUROR:  Okay.

THE COURT:  Thank you.  And don't tell anybody

anything I have asked of you or what you responded or any other questions, or what went on here.

JUROR:  Yes, sir.

THE COURT:  Just walk on out.

[Juror Left the Room.]

MARSHAL:  The next one is 14, Mr. Hilderbrandt.

THE COURT:  Good afternoon, Mr. Hilderbrandt.  You live up in Effingham County, I see.

JUROR:  Yes, sir.

THE COURT:  Wasn't there a newscaster whose name was the same as yours?

JUROR:  In Metter.

THE COURT:  Any relative?

JUROR:  No, sir.

THE COURT:  Sounds like an German name.  Is that right?

JUROR:  Yes, sir.

THE COURT:  What is your employment, Mr. Hilderbrandt?

JUROR:  Savannah Electric & Power.

THE COURT:  What is your, what do you do every day?

JUROR:  I work on the line crew.  We go around and change poles.

THE COURT:  Right.  Your wife is a teacher.

JUROR:  Yes, sir.

THE COURT:  You understand that I'm required to ask you some questions out of the presence of other people, and you are still under oath.  Answer yes or no.  That is a mic, and she's having to record everything.

JUROR:  Yes, sir.

THE COURT:  Is that right?  You understand that?

JUROR:  Yes, sir.

THE COURT:  Now, you understand that the defendant is a black male.

JUROR:  Yes, sir.

THE COURT:  The victim, alleged victim was a white female.  Would that make any difference to you, any difference at all in making a decision as to guilt or the punishment?

JUROR:  No, sir.

THE COURT:  Absolutely.  You could swear under your oath it would make no difference.

JUROR:  Yes, sir.

THE COURT:  Now, you say that you strongly support the death penalty.  You believe it is appropriate then.  Is that correct?

JUROR:  Yes, sir.

THE COURT:  Now, the government would have to prove that the defendant was guilty.  And the proof must

come in the courtroom.  And the jury must weigh the evidence, and the instructions which say that in order to convict this defendant, the government must prove his guilt beyond a reasonable doubt.  If the government proved him guilty beyond a reasonable doubt, could you vote for the guilty sentence?  If they prove him guilty, could you vote him guilty?

JUROR:  Yes, sir.

THE COURT:  If you felt like there was a question, you were not convinced beyond a reasonable doubt, could you vote a not guilty verdict?  Do you understand the question?

JUROR:  Yeah, I understand it.  I don't know what -- repeat it again now.

THE COURT:  If you felt like he was guilty, you said you would vote him guilty.  Is that right?

JUROR:  Uh-uh.

THE COURT:  Yes?

JUROR:  Yes, sir.

THE COURT:  If you felt that there was a question, that the government had not proven its case, could you find him not guilty?

JUROR:  Yes, sir.

THE COURT:  All right.  Then if you found him guilty, I mean, you and other members of the jury, you say based upon the evidence we feel that this man did commit the

crime as alleged and the government has proven its case, then the must consider the punishment.  You understand that?  Answer?  I can't --

JUROR:  Oh, yes, sir.  Yes, sir.

THE COURT:  That is a microphone there.  Pull up that chair.  Now, let's assume -- and we're not judging his guilt or innocence here, because we have not heard the proof.  But let's assume that the government has proven him guilty and the jury has found him guilty, then the decision has to be made whether or not to impose a death sentence or a sentence of life without possibility of parole.

Now, there are two factors that may be considered.  You may consider that there was bad circumstances, what we call aggravating circumstances, that would warrant the death penalty; or, there may be circumstances, what we call mitigating circumstances, that should be considered so that the death penalty would not be imposed, but life without possibility of parole would be the best sentence.  You understand that is the choice.

JUROR:  Yes, sir.

THE COURT:  Did you understand it?  Do you want me to repeat it?

JUROR:  You're going to have to repeat it, because I don't --

THE COURT:  All right.  Let's assume that the

jury, you are on the jury, and the defendant was found guilty.

JUROR:  Uh-uh.

THE COURT:  Not uh-uh.  Yes?

JUROR:  Yes, sir.

THE COURT:  Now, then the jury has to decide what the punishment should be.  You understand.

JUROR:  Yes, sir.

THE COURT:  And the jury has a choice, but it is a controlled choice.

JUROR:  Yes, sir.

THE COURT:  That choice is either death or life imprisonment without parole.

JUROR:  Yes, sir.

THE COURT:  So either death or life imprisonment without parole.  Now, you would hear evidence regarding which sentence it should be.  You've heard the word *aggravating* all your life; haven't you?

JUROR:  Yes, sir.

THE COURT:  Aggravating means bad or something more than usual; right?

JUROR:  Yes, sir.

THE COURT:  There may be aggravating circumstances that the jury would have a right to consider in deciding to put him to death.  You understand that?

JUROR:  Yes, sir.

THE COURT:  But there would not be an automatic death sentence.  You understand that.

JUROR:  Yes, sir.

THE COURT:  The jury must consider whether or not there are aggravating circumstances.  You understand that?  Answer.

JUROR:  Yes, sir.

THE COURT:  Then the jury -- there might be something in this person's background or something that happened that even though he did it some degree of leniency should be shown to him that would mean life without benefit of parole.  You understand those are two options?

JUROR:  Yes, sir, I understand that.

THE COURT:  Now, if he were found guilty, would you automatically vote for the death sentence; or, would you consider all of facts and circumstances?

JUROR:  You've kind got me throwed, looking on the background.

THE COURT:  Well, would you look, what I'm talking about, would you look at the background?

JUROR:  No.

THE COURT:  You would not.  You would impose a death sentence?

JUROR:  If he was guilty?

THE COURT:  Yes.

JUROR:  If he killed that lady.

THE COURT:  You would do it.  And all you would have to know is that he committed the crime, and you would vote for the death penalty.

JUROR:  If they -- yes, sir.

THE COURT:  Okay.

MR. BELL:  We move to remove --

THE COURT:  Yes, I understand.

MR. NEWMAN:  Could I ask just a couple of questions?

THE COURT:  Sure.  I will let you ask him.

MR. NEWMAN:  Mr. Hilderbrandt, if the Judge were to instruct you at the trial that the jury has to consider facts and circumstances about the case, about the defendant before voting a sentence of death, that they shouldn't do it automatically, you have to consider imposing a life sentence, could you follow the Judge's instructions that you would not automatically impose a death sentence?

JUROR:  I mean, if he killed that lady, I mean, I think punishment should be the same.

MR. NEWMAN:  But if the law were that punishment could be either life or death, and the Judge instructs you that you have to consider whether a life sentence is appropriate in view of the facts of the case or facts about

the defendant's background, could you follow the Judge's instructions?

JUROR: I don't know. I mean, I don't how to answer that.

THE COURT: Mr. Hilderbrandt, you are going to be excused. Now, you are free to leave. Don't tell anybody any of the questions that were asked of you or the responses you made.

JUROR: Yes, sir.

THE COURT: You may leave now.

[Juror Left the Room.]

MARSHAL: The next one is Ms. Ann Smith.

THE COURT: Mr. Newman, I feel the juror was disqualified.

MR. NEWMAN: I agree, Your Honor. Probably on more grounds than --

THE COURT: I was not sure he understood my questions.

MR. NEWMAN: Yes, sir.

THE COURT: But I couldn't make it any more clearly.

Hi, how are you?

JUROR: Hello, fine.

THE COURT: Ms. Smith, how are you doing today?

JUROR: Fine.

THE COURT:  Ms. Smith, you recall the other day that I said I would have to ask each of you some questions. We have a microphone there in front of you.  If you would, answer so that this lady can hear and record your answers, and let everybody in the room understand you.

The law requires, of course, as I just said, that I ask you a number of questions.  What has been your longest term of employment?

JUROR:  Twenty-seven years.

THE COURT:  By whom are you employed?

JUROR:  Well, right now, I'm played at Penney's. But I worked for Belks for twenty-seven years.

THE COURT:  Which store did you work at?

JUROR:  The Oglethorpe Mall, and the Crossroads Shopping Center.

THE COURT:  Crossroads is where now?

JUROR:  Over on Victory Drive.  It is closed now.

THE COURT:  That is what I thought.  The Piggly-Wiggly has reopened there.

JUROR:  They reopened.  Yes.

THE COURT:  Tell us about those three children 45, 43 and 34, what they do?

JUROR:  I have two daughters.  One, she teaches -- she does the preschool at our church.  She has three children.  And then the other one lives in Florida, and she

works for Home Depot.  And my son lives in Minneapolis, and he is in the restaurant business.

THE COURT:  What is your husband's occupation?

JUROR:  He's a brick mason.

THE COURT:  By whom is he employed?

JUROR:  Well, he's retired right now.

THE COURT:  Okay.  You had a purse stolen, a car broken into, and a car stolen.

JUROR:  Well, my mother had hers stolen.  I had to deal with that.

THE COURT:  Okay.  You heard something about this on television.

JUROR:  I did.

THE COURT:  Do you remember very much about it, other than a post office employee was dead?

JUROR:  No, I can't remember the after part of it. I just remember that part.

THE COURT:  Is there anything about what you heard that would prevent you from serving as a fair and impartial judge of the facts in this case?

JUROR:  I don't think so.

THE COURT:  All right.  Now, the jury has to decide whether the defendant is guilty or not.  The government has to bring in proof.  I say the government, the prosecutor, and that is Mr. Frentzen seated next to you is

going to be the lead prosecutor, I'm told. And they would call witnesses. Then I will give you the law that you must follow. Then you have to come back in this very room, hopefully, and decide whether the government has proven its case; that is, whether they have convinced all of you beyond a reasonable doubt that the defendant is guilty of the crimes charged in the indictment.

Now, if the government proves the defendant guilty beyond a reasonable doubt, could you vote for a guilty verdict?

JUROR: Yes, sir.

THE COURT: And if the government does not satisfy its obligation and remove all reasonable doubt, could you vote to find him not guilty?

JUROR: Yes, sir.

THE COURT: Now, if the jury finds him guilty, then another decision must be made. The jury must decide whether to impose a sentence of death or a sentence of life imprisonment without parole. In making that decision, the jury should consider all of the facts and circumstances. If there are aggravating circumstances, anything bad or really bad or heinous, they would be called aggravating circumstances, and they may warrant the death penalty. If you found that there were aggravating circumstances, could you voted for a death penalty?

JUROR:  Yes, sir.

THE COURT:  If you felt there were mitigating circumstances, there was something about his background or the case -- and I don't know; I have not heard it -- that you thought that should lessen the punishment, mitigate the punishment, could you vote for life imprisonment without possibility of parole?

JUROR:  Yes, sir.

THE COURT:  Now, you have filled out this questionnaire.  The lawyers and I have it, and I have read it.  And you say you feel like the death penalty is applied unfairly against minorities.

JUROR:  Yes, sir.

THE COURT:  And that discrimination is a problem in this country.

JUROR:  Yes, sir.

THE COURT:  Now, is there anything else that we need to know that we have not asked you that the Court and the lawyers should know in making their judgment in your background?

JUROR:  I can't think of anything.

THE COURT:  I think you are qualified.  I will allow you to go home and come back tomorrow at 1:00 o'clock.  Hopefully, we will be able to proceed with the selection and it will go hurriedly.  Leave your phone number with the

Marshal.  And if we can't start at 1 o'clock, we will call you.  And don't tell anybody any questions asked of you or answers you gave.  Just come back tomorrow, and eat lunch before that.  Hopefully we believe able to start the case tomorrow.

JUROR:  Yes, sir.

[NOTE:  Juror Left the Room.]

MARSHAL:  No. 16, Ms. Alexander.

THE COURT:  Ms. Alexander, how are you this afternoon?

JUROR:  All right.

THE COURT:  Welcome back.

JUROR:  Thank you.

THE COURT:  Have you lived around Savannah all or most of your life?

JUROR:  Yes, sir.

THE COURT:  Where did you attend college?

JUROR:  Armstrong.

THE COURT:  Armstrong.

JUROR:  Yes, sir.

THE COURT:  You are in advertising and property management.

JUROR:  I was.  I'm currently not employed.

THE COURT:  Okay.  Where were you last employed?

JUROR:  Lamar Outdoor Advertising, billboards.

THE COURT: Okay. I see the signs.

JUROR: Yes.

THE COURT: Your husband is a golf course superintendent.

JUROR: Yes, sir.

THE COURT: Where is he --

JUROR: At Hunter Army Airfield.

THE COURT: All right. And you have two children.

JUROR: I do.

THE COURT: And you had an uncle who retired from the Chatham County Police Department as a captain. What was his name?

JUROR: Sonny Lowery.

THE COURT: Okay. And you vaguely remember hearing something about this at the time it occurred.

JUROR: I remember hearing about, you know, just nothing specific about the case.

THE COURT: And there's nothing about what you heard that in any way would influence your decision here today; is there?

JUROR: No. I just remember hearing the story; not really anything about the defendant.

THE COURT: Right. Now, the Court has to ask you these questions. I'm not trying to change your belief. We just simply want to know.

JUROR:  Certainly.

THE COURT:  The jury will decide whether or not the defendant is guilty.

JUROR:  Uh-uh.

THE COURT:  That will be based upon evidence that the government must produce in the courtroom, and the evidence must convince a fair and impartial jury, and an individual on that jury, that the defendant is guilty of the crime charged in the indictment, and the proof must remove all reasonable doubt from that fair and impartial person. You understand that.

JUROR:  Yes, sir.

THE COURT:  Now, if the government convinces you with its proof that the defendant indeed is guilty, could you vote for a guilty verdict, find him guilty.

JUROR:  Yes, sir.

THE COURT:  Now, if the government's proof should leave a doubt in your mind, a reasonable doubt, could you vote not guilty?

JUROR:  Yes, if there's a doubt.  Yes.

THE COURT:  Sure.  Now, if the jury, that means every one on the jury finds the defendant guilty, then the question arises what is the proper punishment.  The punishment in this case on a guilty verdict should be either death, the death penalty, which means he will be executed,

or life imprisonment without benefit of parole.

Now, in making that decision, that fair and impartial jury and each individual must look at aggravating circumstances. And if there were aggravating circumstances, they might consider putting him to death or executing him. You understand that.

JUROR: Uh-uh.

THE COURT: Could you do that?

JUROR: Yes, sir.

THE COURT: If you thought there were mitigating evidence, something that while he was guilty, nevertheless made you wonder that maybe something less than executing him, like imprisonment without possibility of parole would be the best sentence, would be the best alternative, could you vote for that?

JUROR: I could.

THE COURT: Now, you say that you strongly support the death penalty as a punishment. And that's completely all right. The law calls for it. But you would not automatically vote for the death sentence, would you, simply because --

JUROR: No.

THE COURT: -- you found him guilty?

JUROR: No.

THE COURT: You would consider --

JUROR:  I would consider what the events leading up to the action --

THE COURT:  And you would consider both aggravating and mitigating circumstances.

JUROR:  Yes.

THE COURT:  And you feel that race discrimination is an occasionally a problem in this country.

JUROR:  Certainly.

THE COURT:  And that the death penalty is applied fairly.

JUROR:  I would think so.

THE COURT:  As far as you know.

JUROR:  Uh-uh.

THE COURT:  I think you are qualified.  Tomorrow, come back at 1:00 o'clock hopefully, we'll get this process over.

JUROR:  Okay.

THE COURT:  Do not tell anyone about or mention anything to anybody, have no discussions.

JUROR:  Okay.

THE COURT:  Don't tell anybody the questions you've been asked in this room or any answers you made.  If we are running late tomorrow, we'll try to call you and tell you to delay coming downtown again.

JUROR:  Okay.

THE COURT:  Thank you, very much, Ms. Alexander.

[Juror Left the Room.]

THE COURT:  Marshal, we're going to take five minutes.

[NOTE:  Brief Recess.]

THE COURT:  Marshal, bring in the next one.

MARSHAL:  Ms. Colson.

THE COURT:  Ms. Colson, how are you this afternoon?

JUROR:  I'm fine.

THE COURT:  Ms. Colson, you recall the other day I told you I would have to meet with you individually, each of you, and ask you a few questions.

JUROR:  Yes, sir.

THE COURT:  You are under oath.  If you will answer -- pull that mic back in front of you.  Answer so that everyone can here you.

JUROR:  Okay.

THE COURT:  Now, you're working as an office manager where?

JUROR:  It is for St. Joseph Candler Hospital, but it is Garden City.  It is one of our outpatient clinics.

THE COURT:  Your husband is a journeyman.

JUROR:  Yes.

THE COURT:  In what --

JUROR:  He works for Great Dane Trailers.

THE COURT:  You have a 19 and a 17 year-old.

JUROR:  Correct.

THE COURT:  I assume they are in school.

JUROR:  One of them is.  The other one is not.

THE COURT:  Right.  You have a brother-in-law who is with the Pooler Police Department.

JUROR:  Correct.

THE COURT:  You have not heard anything about this case before you were brought in court.

JUROR:  No, sir.

THE COURT:  Now, if you are selected, the jury must decide the guilt or not guilt of the defendant.  You do not have to find him innocent.  That is a word we use, but it is really not correct.  The government, as I indicated the other day, has the burden or responsibility to prove the defendant guilty beyond a reasonable doubt to the satisfaction of a fair and impartial jury.

If the government should prove the defendant guilty, could you vote for a guilty verdict?

JUROR:  If there was proof, yes.

THE COURT:  Sure.

JUROR:  Yes.

THE COURT:  And if they did not -- if you thought

well, maybe he is guilty, maybe he did it, but I'm not convinced beyond a reasonable doubt, could you acquit him?

JUROR:  Yes.

THE COURT:  Now, let's assume for purposes of this discussion that the jury finds the defendant guilty, you understand.

JUROR:  Yes.

THE COURT:  Then the jury must make a decision whether or not to impose the death penalty, that means that he would be executed; or, to find him guilty and sentence him to life imprisonment without possibility of parole.  In making that decision, the jury would consider aggravating circumstances surrounding the death, and all of the surrounding circumstances.  And they should consider mitigating circumstances.  In other words, if there was something that even though the defendant were guilty that maybe the most appropriate sentence would be life imprisonment without possibility of parole.

Now, could you weigh those factors, aggravating and mitigating circumstances?

JUROR:  Yes, sir.  Yes, sir.

THE COURT:  So, you would not automatically vote for the death sentence, even though you found him guilty?

JUROR:  No, sir.

THE COURT:  Nor would you automatically sentence

him to life imprisonment because you didn't want to or were conscientiously opposed to the death sentence?

JUROR:  No, sir.

THE COURT:  You would follow the law and the instructions, and listen to the evidence.

JUROR:  Yes, sir.

THE COURT:  Is that correct?

JUROR:  That is correct.

THE COURT:  Is there anything in this affidavit that you would change if you had to answer it again?

JUROR:  No, sir.

THE COURT:  There's nothing you could tell us -- is there anything you wish to tell us that you think the parties and the Court ought to know in making a decision regarding your qualifications?

JUROR:  No, sir.

THE COURT:  I think you are qualified.  I'm going to have to ask you to come back tomorrow at 1:00 o'clock. We'll begin the final selection.  You are free to leave.  Do not tell anyone what questions you were asked or the answers you made, or even the fact that you are coming back. Hopefully, we'll get under way tomorrow at one.  If we see that we're going to be delayed an inordinate amount of time, I will try to get in touch with you to delay your appearance here.

JUROR:  Okay.

THE COURT:  You are free to go.

JUROR:  Thank you, sir.

[Juror Left the Room.]

THE COURT:  Helen McClinton, hi, how are you?

JUROR:  Okay, fine.

THE COURT:  You were born down in the Panama Canal Zone.

JUROR:  Uh-uh.  Yes, sir.

THE COURT:  How long have you been in the upper 48?

JUROR:  Almost 35 years.

THE COURT:  Feels like home.

JUROR:  I am home.

THE COURT:  Okay.  You live down in Liberty County.

JUROR:  Yes, sir.

THE COURT:  Is your family associated with the military?

JUROR:  Yes, sir.

THE COURT:  How is that?

JUROR:  My daughter is an E-6 and my son is a an E-7, and I came to live with my daughter to help her with my grandkids.

THE COURT:  Right.  Were your parents in the

military, was your dad?

JUROR:  No.

THE COURT:  You were born a Panamanian citizen.

JUROR:  Yes.

THE COURT:  But you are an American citizen now.

JUROR:  Yes, sir.

THE COURT:  Two of them are sergeants.

JUROR:  Yes, sir.

THE COURT:  I call them that.  E-6 and E-7 are sergeants.

JUROR:  Yes.

THE COURT:  But you have two other children.  What do they do?

JUROR:  One is a secretary for Central Texas College, and other one is a physical therapist assistant.

THE COURT:  Okay.  Now, I will talk to you out of the presence of the other jurors.  If you don't understand the question, ask that I repeat it or explain it to you.

JUROR:  Okay.

THE COURT:  The jury in this case will make two real important decisions.  The government has the obligation to bring proof in the courtroom, and the jury would listen to that evidence.  And the government must produce evidence that convinces the jury, a fair and impartial jury, that the defendant is guilty of the crime charged beyond a reasonable

doubt.  You understand that.

JUROR:  Yes, sir.

THE COURT:  If the government's proof convinces you that the defendant is in fact guilty beyond a reasonable doubt, could you vote for the guilty verdict?

JUROR:  Yes, sir.

THE COURT:  If you have a doubt, even though you think that the defendant probably did the crime, but you are not convinced beyond a reasonable doubt, could you vote to acquit him?

JUROR:  No, sir.

THE COURT:  Well, let me go over that again.  If you say well, he might be guilty, but I'm not convinced beyond a reasonable doubt, could you find a not guilty verdict?

JUROR:  Yes, sir.

THE COURT:  All right.  I thought that is what you meant.  Now, had you heard anything about this case before?

JUROR:  No, sir.

THE COURT:  You understand that it occurred down there in Liberty County.

JUROR:  From hearing it here.  Yes, sir.

THE COURT:  All right.  Let's assume just for the this purpose that the defendant is found guilty.  The jury has a choice then under certain circumstances, they have a

choice.  They may vote for a death penalty so that the defendant would be executed.  You understand.

JUROR:  Yes, sir.

THE COURT:  They may vote for life imprisonment without possibility of parole.  You understand that.

JUROR:  Yes, sir.

THE COURT:  Now, in considering or making that decision, the jury must consider, if there are aggravating circumstances -- you know, something really bad or bad about something that the law will define as an aggravating circumstance -- then if there are aggravating circumstances, consider putting the defendant, giving him the death sentence.  You understand that.

JUROR:  Yes, sir.

THE COURT:  Then they may consider mitigating factors, that is something they consider that maybe a sentence of life imprisonment without possibility of parole would be the best sentence.  You understand that is a choice.

JUROR:  Yes, sir.

THE COURT:  Now, if there were sufficient aggravating circumstances, could you vote for a death sentence?

JUROR:  Yes, sir.

THE COURT:  If there were mitigating

circumstances, in other words, something about the defendant or the circumstances that you thought that should be considered, could you vote for a sentence other than death? In other words, life imprisonment without possibility of parole.

JUROR:  Yes, sir.

THE COURT:  Would you consider both aggravating and mitigating circumstances?

JUROR:  Yes, sir.

THE COURT:  Now, in Question 33 and 34, you said *If the defendant were found guilty of a capital count, would you automatically vote for the death penalty?*

What you said now, Ms. McClinton, is you would not automatically, you would consider both.

JUROR:  Yes, sir.

THE COURT:  Is that true?

JUROR:  Yes, sir.

THE COURT:  And you would change that, you would answer 33 no.  Is that correct now?

JUROR:  Yes.

THE COURT:  In other words, you would not do anything automatically.  You would consider all the facts and evidence.

JUROR:  All the facts and evidence.

THE COURT:  So, you wouldn't automatically do

anything.  You would base it upon the evidence.

JUROR:  On the evidence.

THE COURT:  And in Question 34, *If the defendant were found guilty of a crime and the evidence and mitigating factors convince you that life imprisonment without possibility of release or parole is the appropriate sentence, could you vote for it.*

You answered no.  And we're not trying to tangle you up.  It was all my fault that these questions maybe were not cleared up.  But all we want is to understand what your real answers would be.  I will go back through it.

If he is found guilty, would you automatically vote for the death sentence?

JUROR:  I would have to listen to all of the circumstances.

THE COURT:  That's right.  So, you wouldn't automatically vote for the death sentence.

JUROR:  No, sir.

THE COURT:  Would you vote for life imprisonment automatically because you didn't want to impose the death sentence?

JUROR:  The same would apply to that.

THE COURT:  You would look to all of the facts and circumstances, including mitigating and aggravating circumstances.

JUROR:  Yes, sir.

THE COURT:  Mr. Darden, any questions?

MR. DARDEN:  No, Your Honor.

THE COURT:  Mr. Newman?

MR. NEWMAN:  No, Your Honor.

THE COURT:  Ms. McClinton, am I saying that right?

JUROR:  McClinton.

THE COURT:  I'm going to ask you to come back tomorrow at 1:00 o'clock.

JUROR:  Okay.

THE COURT:  I do not want you to discuss the case with anybody or let anybody know the questions I have asked of you or the answers you made.  You simply go and you come back.  If we see that we're running late in this, we'll try to call you and delay it.  But you will be coming back.

JUROR:  Okay, sir.

THE COURT:  Thank you very much.

JUROR:  You are welcome.

[Juror Left the Room.]

MARSHAL:  Ms. Snipe, 221.

THE COURT:  Ms. Snipe, how are you this afternoon?

JUROR:  I'm fine, how are you?

THE COURT:  Good.  I notice you were born in Brooklyn.  How long have you been in Chatham County?

JUROR:  Since I was three.

THE COURT:  So, for all intents and purposes, you are a lifelong resident here.  Most all of your memory is here.

You are employed where?  Jobs Program?

JUROR:  Right now, I'm on a leave of absence from the Chatham County Education, Board of Education.

THE COURT:  Okay.  What was your job over there?

JUROR:  Paraprofessional at Southwest Elementary.

THE COURT:  How long were you working as a paraprofessional.

JUROR:  A year and a half, and then they did the layoff.  And then I worked as an afternoon teacher.

THE COURT:  So, you are on layoff waiting for recall?

JUROR:  No.  They called back me.  And I went for another year.  Now, I'm on leave to finish school.

THE COURT:  Okay.  So, you took this leave.

JUROR:  Yes.

THE COURT:  They did not furlough you.

JUROR:  No.

THE COURT:  All right.  Are you married?

JUROR:  No, sir.

THE COURT:  Okay.  You say your aunt was murdered by her boyfriend when you were three years of age.  Of course, you don't remember any of that; do you?

JUROR:  No, no details.

THE COURT:  And your brother was arrested for carrying a gun.  And he served some time.  Is that correct?

JUROR:  I don't know what exactly happened.  But he was -- he was young.

THE COURT:  Do you feel that he was mistreated for that, the law shouldn't have --

JUROR:  No.

THE COURT:  Do you have any hostility toward the government for having arrested and convicting him?

JUROR:  No.

THE COURT:  Now, the jury is called upon to make two real critical decisions in this case.  They must decide whether or not the defendant is guilty.  The government has an obligation to prove his guilt beyond a reasonable doubt to the satisfaction of a fair and impartial jury.  If you are selected, you would be one of those people.  Now, if you the government proves his guilt beyond a reasonable doubt, could you vote for a guilty verdict?

JUROR:  Yes.

THE COURT:  If you had a doubt, and you were to say well, I think he probably did it, but I'm not convinced beyond a reasonable doubt, could you vote a not guilty verdict?

JUROR:  Well, if I felt that I wasn't sure --

THE COURT:  No.  You were less than sure.  You weren't sure that he was guilty.  Could you vote to acquit him?  I think I know -- let me try again.  I said the government has to convince you that he's guilty beyond a reasonable doubt.  You understand that.

JUROR:  Yes, so far.

THE COURT:  And you said if you are convinced, you would vote to convict him.

JUROR:  Uh-uh.

THE COURT:  If you are not convinced, you would vote to acquit him; would you not?

JUROR:  Yes.  Yes.

THE COURT:  All right.  Now, let's assume that he has been -- that you are convinced beyond a reasonable doubt he is guilty.  You are on the same page with me.  Answer yes or no.

JUROR:  Yes, sir.

THE COURT:  All right.  Then you have to make another real big decision.  You may sentence him to death, and he would be executed.  You may sentence him to life imprisonment without possibility of parole.

Now, the jury has to make that decision on aggravating and mitigating circumstances or consider aggravating and mitigating circumstances.  There may be something about this that is particularly bad or

reprehensible.  That means really bad or bad.  Or, there may be something that even though he is guilty that makes life imprisonment without the possibility of parole the more appropriate sentence.

So, my question to you:  If you felt that he was guilty and there was something bad or evil, or particularly evil or aggravating, could you vote for the death sentence?

JUROR:  Yes, sir.

THE COURT:  If you felt there was something less than really bad, could you vote to sentence him for life imprisonment without parole?

JUROR:  Yes.

THE COURT:  Okay.

MR. DARDEN:  Nothing.

MR. NEWMAN:  Ms. Snipe, where do you go to school?

JUROR:  Armstrong Atlantic State University.

MR. NEWMAN:  What is your major?

JUROR:  Elementary education.

MR. NEWMAN:  You want to continue in the same field that you have been working in.

JUROR:  Yes.

MR. NEWMAN:  Thank you.

THE COURT:  I'm going to ask you to come back tomorrow at 1:00 o'clock.  You are going to be in this mix. We will be selecting the jury, finally, hopefully tomorrow.

Now, you may leave. But don't tell anybody the questions I have asked of you or any responses you've made. Just remember to be back at 1:00 o'clock. If we are going to be late, I will try to have you called to delay your coming. But otherwise, unless you hear from us, be here at 1:00 o'clock tomorrow.

JUROR: Yes, sir.

THE COURT: You are free to leave.

[Juror Left the Room.]

MARSHAL: The next one will be No. 5, Ms. Lee.

THE COURT: Hi, how are you?

JUROR: I'm fine.

THE COURT: Ms. Lee.

JUROR: Yes.

THE COURT: I'm going to cut to the chase.

JUROR: Okay. Good.

THE COURT: You said you strongly oppose the death penalty as a punishment.

JUROR: I do.

THE COURT: *I don't believe in taking anybody's life.*

JUROR: Right.

THE COURT: Now, if you felt that the defendant was guilty, is there no circumstance whereby you felt you could sentence him to death.

JUROR: Right.

THE COURT: You could not ever --

JUROR: No.

THE COURT: -- participate in that.

JUROR: No.

THE COURT: And your views are unalterable. They are fixed, and nothing will change.

JUROR: Have been that for a long time.

THE COURT: I will excuse you. Don't tell anybody out there the questions asked or the responses you made.

JUROR: Okay.

THE COURT: Thank you. I was in Copenhagen this summer. It was an expensive place to be.

JUROR: Well, it is nice though. It's worth it.

[Juror Left the Room.]

THE COURT: How are you, Mr. Weith?

JUROR: Weith, like in Keith.

THE COURT: Mr. Weith, have a seat.

JUROR: All right. Thank you.

THE COURT: You recall the other day I said I would have to call you back and ask you some individual questions out of the presence of everyone else.

JUROR: Yes, sir.

THE COURT: We have a microphone in front of you. You are still under oath. If you would speak loudly enough

so that everyone in the room can hear you, I will be grateful.

Would you describe what your life's work has been generally? I think I could describe it, but I would rather hear your description of it.

JUROR: Well, prior to taking early retirement, I was the technical director of chemical companies, companies like Sherwin Williams and Glidden. And as a technical director, you formulate the product according to specifications, and determine the requirements and so forth.

THE COURT: Very good.

JUROR: The area that I was involved in was not house paint but OEM Equipment Products. And since I've been retired, about twelve years, all I do is community service work.

THE COURT: Right. You have one child, 54 years of age.

JUROR: That's correct.

THE COURT: And his employment?

JUROR: He works for Colorado State Environmental Inspection of Military Bases.

THE COURT: I can't remember. You have served on a jury before or not?

JUROR: Yes, I have, but not federal, in Atlanta and in Cleveland, Ohio.

THE COURT:  All right.  As you understand this case, the defendant, let me tell you, is a black male.  The victim was a white female.  Would those facts make any difference, however slightly, in any decision you are called upon to make?

JUROR:  None whatsoever.

THE COURT:  All right.  The jury will be called upon to make two real critical decisions.  The government has the responsibility to prove the defendant's guilt beyond a reasonable doubt.  If the government proves convinces you as member of the jury beyond a reasonable doubt that the defendant indeed is guilty, could you vote for a guilty verdict?

JUROR:  Yes, I could.

THE COURT:  If you have a doubt, a reasonable doubt even though you say I think he is probably guilty, could you vote for an acquittal?

JUROR:  Yes, I could.

THE COURT:  Now, let's assume that the jury voted unanimously that he was guilty.  Then the second phase and another trial will immediately follow.  The jury would then decide punishment.  That punishment is either death, which means he will be executed, or life imprisonment without possibility of parole.  In deciding that issue, the jury will be, or can be, and likely will be given aggravating and

mitigating circumstances.

If there are sufficient aggravating circumstances that you hear, and the Court would give you the charge and tell you what those are or how to judge them, could you vote for a death penalty?

JUROR:  Yes, I could.

THE COURT:  If you considered that there were mitigating circumstances, the evidence supported it, would you consider mitigating the sentence to life imprisonment without possibility of parole?

JUROR:  Yes, I would.

THE COURT:  So, you are saying, Mr. Weith, that you would listen to the evidence, consider all of the circumstances and make your decision on what you heard or the insufficiency of the evidence?

JUROR:  That's correct.  I have no preconceived opinion.

THE COURT:  I consider you qualified.  I'm going to ask you that you return tomorrow at 1:00 o'clock.  We hopefully will have the final phase of this at that time. Do not discuss your questions and answers given by you here today.  You are free to go home.

JUROR:  Thank you very much.

THE COURT:  If we are going to be running late, we'll try to call you.  But this is a process that I have to

go through.  We'll making fairly good time at this time.
But we might reach a bump in the road.

JUROR:  Okay.  Thank you very much.

[Juror Left the Room.]

THE COURT:  Call the next.

MARSHAL:  177, Ms. Gillis.

THE COURT:  How are you, Ms. Gillis?

JUROR:  Fine.

THE COURT:  If you will have a seat.  Ms. Gillis.
Have you lived most of your life around Savannah?

JUROR:  Yes, I have.

THE COURT:  You understand that I have to ask you
a number of questions regarding jury competency and
qualifications, and I must do that out the presence of the
other members of the panel.

JUROR:  All right.

THE COURT:  We are not trying to trick you or
embarrass you.  But if you would -- that is a microphone,
and if you will talk into it.  She's recording the answers,
and everyone in the room needs to be able to understand you.

Now, what is your occupation?

JUROR:  Well, I have two jobs.  I'm a
paraprofessional, and that's a teacher's assistant for a
4-year program.  And I'm the Site Director for Prime Time.

THE COURT:  What is Prime Time?

JUROR:  Before and after school care.

THE COURT:  Okay.  What are you your duties as Site Director?

JUROR:  I'm to manage all of the group leaders that we have.  We have six in the morning, and six in the afternoon.

THE COURT:  Your husband is employed by General Motors.

JUROR:  Yes.

THE COURT:  Where does he actually perform his work?

JUROR:  Right now, he is on disability.

THE COURT:  Oh, he is.  How long has he been disabled?

JUROR:  It is going on two years right now.

THE COURT:  He worked on the assembly line.

JUROR:  Yes, he did.

THE COURT:  You have three children.  What are their occupations?

JUROR:  My son, he's a cook.  My daughter, she works in a bank, and my other daughter works in a doctor's office.

THE COURT:  You once worked as a radio dispatcher at the Savannah Police Department.

JUROR:  Yes, I did.

THE COURT:  I have forgotten.  How long ago was that?

JUROR:  Oh, it was about 25 years ago.

THE COURT:  So, all the people that were there when you were there probably have marched on.  Is that correct?

JUROR:  Yes, and everything has changed.

THE COURT:  Yes.  And your home was broken into and you had a car stolen.

JUROR:  Oh, yes.

THE COURT:  Your son had some problems with the law by using drugs.

JUROR:  Yes, he did.

THE COURT:  Did you feel like he was properly treated by the law?

JUROR:  Yes, he was.

THE COURT:  Do you have any resentment or hostility toward law enforcement?

JUROR:  No, I do not.

THE COURT:  Now, you understand that the defendant in this case, the accused, is a black male.

JUROR:  Yes.

THE COURT:  And the victim is said to be a white female.  Would those facts make any difference in any decision you are called upon to make?

JUROR:  No.

THE COURT:  Not at all.

JUROR:  No.

THE COURT:  Now, if you are selected for the jury, there are two decisions, at least two decisions that will have to be made.  The government will have to convince a fair and impartial jury, that means each one of them, that the defendant is guilty of the crimes charged in the indictment.  And their proof must remove all reasonable doubt.  If the proof should convince you beyond a reasonable doubt that the defendant is guilty, could you vote for a guilty verdict?

JUROR:  Yes, I could.

THE COURT:  If you are not convinced that he is guilty, in other words you have a reasonable doubt, could you vote to acquit him?

JUROR:  Yes, I could.

THE COURT:  Now, if the jury were to find him guilty of having committed the crime, they have another decision they have to make; that is, whether they sentence him to death whereby he would be executed; or, to sentence him to life imprisonment without possibility of parole.

Now, in making that decision, the jury must consider him and all of the circumstances.  We call certain circumstances aggravating circumstances or factors.  In

other words, something particularly bad or wrong.  And then sometimes there is something in the person's background or conduct, or whatever, that would call for some mitigation, some lessening, even though they are guilty.

Now, under your oath, Ms. Gillis, if you felt -- and let's assume that the jury found him guilty, if you felt that the aggravating circumstances and the facts warranted it, could you vote for the death penalty?

JUROR:  Yes, I could.

THE COURT:  If you felt that even though he was guilty, there were certain circumstances in his background or whatever, that you felt the most appropriate punishment would be life imprisonment without possibility of parole, could you vote for that?

JUROR:  Yes, I could.

THE COURT:  So you wouldn't automatically vote for death or for life imprisonment, but you would look at the whole picture, consider both aggravating and mitigating circumstances in making that decision.  Is that correct?

JUROR:  Yes, that's correct.

MR. DARDEN:  Nothing.

THE COURT:  Ms. Gillis, I'm going to have to ask you to come back tomorrow at 1:00 o'clock.  We hopefully will complete the jury selection process at that time.  Do not discuss the questions I have asked of you or your

responses. You are free to go home. But do come back by 1:00 o'clock. And we hopefully will have finished this. You will either be on it or off tomorrow afternoon by this time.

JUROR: All right.

THE COURT: Thank you.

[Juror Left the Room.]

MARSHAL: Ms. Fahey, Your Honor.

THE COURT: Hi, Ms. Fahey.

JUROR: That's correct.

THE COURT: Now, there is a St. Johns in New Brunswick, and there is a St. Johns in Newfoundland.

JUROR: It is Newfoundland.

THE COURT: I have spent some time in St. Johns, New Brunswick.

JUROR: Oh, in New Brunswick.

THE COURT: Yes. How long have you lived in the U.S.?

JUROR: Since I was three years old.

THE COURT: How long have you lived in the Savannah area?

JUROR: For almost eleven years.

THE COURT: Your employment is a Substance Abuse Consultant at Tidelands.

JUROR: No, sir. I am a Substance Abuse and

Mental Health Consultant for the Department of Family & Children Services.

THE COURT:  Okay.  How long have you been so employed?

JUROR:  Almost three years.

THE COURT:  Before that, by whom were you employed?

JUROR:  I was employed by Tidelands Community Service Board.

THE COURT:  How long were you there?

JUROR:  From '98 to 2000.

THE COURT:  Before that?

JUROR:  Charter Hospital of Savannah.

THE COURT:  Okay.  So, you have worked in that field for a long period of time.

JUROR:  Yes, sir.

THE COURT:  Your husband is in law enforcement.

JUROR:  That's correct.

THE COURT:  Currently, he is employed as --

JUROR:  Actually, he will begin new employment on November 17 as the United States -- it's U.S.I.S, United States Investigative Services, as an investigator.

THE COURT:  What do they do?

JUROR:  Basically top secret clearances and background checks.

THE COURT:  Okay.  So, it is not law enforcement. It is an investigative background.

JUROR:  It is.

THE COURT:  Where a person is up for a promotion or to be employed by the government, they make an inquiry into their background to see if they are fit for that duty.

JUROR:  That is correct.

THE COURT:  What has he done before that?

JUROR:  He has also worked as a detective in the Garden City Police Department, and a deputy with the Effingham County Sheriff's Department, and an officer with the Savannah Police Department.

THE COURT:  Where would be he employed if he receives -- will you remain here in Chatham County?

JUROR:  Oh, yes, sir.

THE COURT:  All right.  Now, have you served on a jury before?

JUROR:  No, sir.

THE COURT:  The jury will be called upon to decide some questions in this case.  The government under our system has to convince a fair and impartial jury that the defendant committed the crime charged in the indictment. And their proof must remove all reasonable doubt, except that of guilt.  You understand.

Now, if the government proves its case to your

satisfaction beyond a reasonable doubt, will you vote for a guilty verdict?

JUROR:  Yes, sir.

THE COURT:  If the government's proof should fail to convince you beyond a reasonable doubt, could you vote to acquit the defendant?

JUROR:  Yes, sir.

THE COURT:  Now, if the jury finds the defendant guilty, there is another decision that has to be made.  That is either impose a death sentence whereby the defendant would be executed, or provide for life imprisonment without possibility of parole.

Now, you say you have read every article in the *Savannah News Press* regarding this case.

JUROR:  That's correct.

THE COURT:  Have you come to any conclusion as to the guilt or innocence of this defendant?

JUROR:  No, sir.

THE COURT:  Could you put all of that aside and listen to the evidence in the courtroom, and on that alone make your decision as to whether to convict him or set him free?

JUROR:  Yes, sir.

THE COURT:  No problem with that.

JUROR:  No, sir.

THE COURT:  Now, you say here *Have you formed any opinion as to whether the defendant is guilty or not guilty, if yes, what is your opinion?*

You've got something here, *guilty and not sure.* Could you help me?  You don't know whether he is guilty or not guilty yet.  And you have said that you could put aside everything you have heard, and make your decision here in the courtroom.

JUROR:  Yes, sir.

THE COURT:  Is that your under-oath statement?

JUROR:  Yes, sir.

THE COURT:  So, this was in error when you say guilty or not guilty.

Now, you say *I personally oppose the death penalty in some cases.*

JUROR:  Yes, sir.

THE COURT:  Now, you write down here *I oppose the death penalty as a punishment.*

JUROR:  Yes, sir.

THE COURT:  Now, is that based upon your -- you say *I would have a difficult time rendering a guilty verdict knowing that there is a possibility the defendant could be sentenced to death.*

JUROR:  Yes, sir.

THE COURT:  So, you are afraid then that knowing

the consequences of finding him guilty, you would have to struggle because you know that is one step closer to making the decision you don't want to make.

JUROR: That's correct.

THE COURT: Okay. There are no right or wrong answers. And I'm not trying to convince you one way or the other. Would you say you are conscientiously opposed to the imposition of the death penalty, the law taking the life of anyone?

JUROR: Yes, sir.

THE COURT: Now, there are a lot of bad things that go on, of course. You are privy to some of them. And we read and hear about them. And some of them have been devastating and occurred in the last three or four years of really momentous.

Sitting in judgment, could you under any circumstances impose the death sentence?

JUROR: I'm not sure that I could, sir.

THE COURT: You say you are not sure. Could you be more definite?

JUROR: I guess I feel it depends on the case. It depends on the situation.

THE COURT: Well, if it depends on the case, then that is a different thing. Let me restate the question. Is your opposition so firm to the death penalty that under no

circumstances you could impose the death penalty?

JUROR:  No, sir.

THE COURT:  It is not that firm.

JUROR:  It is not that firm.  No, sir.

THE COURT:  There might be a circumstance that you could impose the death penalty.

JUROR:  Yes, sir.

THE COURT:  From what you know about this case, could you listen to the evidence and consider -- in other words, not rule out at the start the death sentence?

JUROR:  I'm not sure that I could, sir.  It seems to be a very, very difficult thing for me to have to decide.

THE COURT:  Okay.  I gather in this case that you could not or would have great difficulty imposing the death sentence.

JUROR:  Yes, sir.

THE COURT:  Assuming that he is guilty, is that correct?

JUROR:  That's correct.

THE COURT:  Would you rule out imposing the death sentence?  Take your time.  Think about it.

JUROR:  No.

THE COURT:  You would not.

JUROR:  No.

THE COURT:  Mr. Newman, do you care to examine the

juror?

MR. NEWMAN:  Ms. Fahey, it is Fahey?

JUROR:  That's correct.

MR. NEWMAN:  There seems to be some inconsistency in what you present to the Judge here this afternoon.  Could you help us out as to where, at what point you would begin to consider the imposition of a death sentence?

JUROR:  It is very difficult for me to answer.  I guess in my background as a psychotherapist, I have learned for so long to suspend judgment from people, to not judge anyone that it has become almost a habit.  So, it is very difficult to think about being placed in a position where I would have to make judgments and judge whether someone lives or dies.

MR. NEWMAN:  Well, then are you saying that you really might be unable to make such a judgment because of your previously held, and previously up to this point, still now maintain beliefs?

JUROR:  That's correct.

MR. NEWMAN:  Your Honor, we'll reassert our position without having to articulate it in the juror's presence.

THE COURT:  Would you like to examine?

MR. DARDEN:  Ms. Fahey, the way I understand your answer is that you have a lot of difficulty with the death

penalty.  Is that correct?

JUROR:  Yes, sir.

MR. DARDEN:  And I understand that, and I respect that.  But while you may have difficulty with it, there's some case out there or some set of circumstances when you would in fact, consider imposing a death sentence.  Is that a fair statement?

JUROR:  Yes, sir, that is correct.

MR. DARDEN:  There are just some crimes so horrendous and so awful that you would consider it.  Is that correct?

JUROR:  That's correct.

MR. DARDEN:  With respect to this case, you don't want to prejudge it.  You want to hear all of the evidence.  You want to hear both sides.  You want to hear the aggravating evidence, and you want the hear the mitigation.  Is that correct?

JUROR:  That's correct.

MR. DARDEN:  And then you will make a decision as to what you think would be an appropriate sentence in this case.  Is that correct?

JUROR:  That's correct.

MR. DARDEN:  And you have not ruled out the possibility of a death penalty in this case, and you have not decided on life imprisonment in this case; have you?

JUROR:  No, sir.

MR. DARDEN:  You want to hear everything?

JUROR:  Yes, sir.

MR. DARDEN:  Thank you.

THE COURT:  Let me ask you again now.  Under your oath, if you are selected, are you telling me and telling the parties here you would consider imposing the death sentence in this case?

JUROR:  I would have to.

THE COURT:  No -- if you are morally so that you couldn't do it, we want to know now.

JUROR:  I wouldn't say morally.

THE COURT:  Whatever reason.

JUROR:  I know I seem like I'm on the fence, and I am.  I'm very much on the fence.

THE COURT:  Yes.  There is nothing wrong.  We're trying to get a complete you understanding of your sentiments.

JUROR:  I understand.  I just think it would be incredibly difficult for me to be able to make that judgment and that decision.  It is one thing to watch, you know, crime television, and say oh, gosh, yeah.  You know, but very different when you're actually in the position.

THE COURT:  Okay.  I don't know of any other question to ask you.  And I still don't know what the answer

is.

MR. NEWMAN: Your Honor?

THE COURT: Yes.

MR. NEWMAN: Ms. Fahey, would you make your decision on the ultimate punishment in this case based on your internal set of values or on what the law is that Judge Edenfield will give you to apply, which by your oath as a juror you would be sworn to follow?

JUROR: I believe I would probably make the decision based upon my own internal values.

MR. NEWMAN: Even if those might conflict and be different than what Judge Edenfield is telling the jury to apply?

JUROR: Yes.

THE COURT: I am going to excuse you for the time being. I want to ponder. You may go home. I don't know of any other question to ask you.

Count on coming back tomorrow at 1:00 o'clock. But don't discuss your answers or the questions.

JUROR: Okay.

[Juror Left the Room.]

THE COURT: Wait a minute, Marshal.

I want to hear argument at this point on whether this juror is qualified or disqualified.

MR. FRENTZEN: Judge, we believe she's

disqualified. She may not be entirely prevented from imposing the death penalty, but I think under the case law, and under *Morgan,* she is substantially impaired on the basis that she would impose her own views and standards over the instructions of the Court. And if she cannot follow the Court's instructions, she is substantially impaired.

MR. DARDEN: Well, she indicated that she would consider all of the evidence, both mitigation and aggravation. Obviously, it is a difficult decision. I would hope it would be a difficult decision for anyone to impose the death penalty.

We don't want people just to come in here and say yes, it's easy.

THE COURT: Of course not. But the last question when she said -- and I think she's altogether candid -- I think we all agree, one, that here is a juror that is struggling. She is, by anybody's judgment, also at the point where she will say under no circumstances would she impose the death sentence. But she is not prepared to go quite that far, because she can imagine certain circumstances that she would go.

But then she says, again in total candor, that I would have to impose my standards and I could not necessarily follow the law or the instructions.

I want to look at the case law. And I want to go

back and study it.  I still at this point have grave concern that she is qualified.

MR. DARDEN:  Judge, the only comment I would make is when you get down to deciding whether to impose the death penalty or not, you do in fact impose your own standards. You listen to what the judge tells you, and it is entirely up to her and her own standards to determine whether this is so bad she should impose the death penalty.

This is not some mechanical process where you describe to them what it is they have to do.

THE COURT:  I understand that.

Bring the next one in.

MARSHAL:  Ms. Perry, 165.

THE COURT:  Richard, I'm not cutting you.

MR. DARDEN:  Judge, I know that.

THE COURT:  I think I know the arguments.

MR. DARDEN:  Yes, sir.

THE COURT:  How are you this afternoon, Ms. Perry?

JUROR:  I'm fine.

THE COURT:  Ms. Perry, as you recall the other day, I said I had to interview each one of you out the presence of the other people under oath.  And you are still under oath.  That is a microphone in front of you.  The parties are here.  I want to ask you some questions.

Again, there are no right and wrong.  There is

simply truthful.  No one is trying to probe unduly into your personal feelings.  And the only thing is to ascertain truthfully.

JUROR:  Okay.

THE COURT:  Now, I'm going to -- the jury in this case, more than almost any other case, sit in total judgment of the case.  They will make the decision whether or not the defendant is guilty or not.  And the government has to prove his guilt beyond a reasonable doubt.  If the government should prove his guilt beyond a reasonable doubt, could you vote for the guilty verdict?

JUROR:  If the government should prove beyond a reasonable doubt, if they could do that.

THE COURT:  Yes.

JUROR:  Yes.

THE COURT:  Now, if this proof should leave you with a reasonable doubt, could you vote for a verdict of acquittal?

JUROR:  If that was the other option that I was told to chose from, yes.

THE COURT:  And all of this would be based upon what occurred in the courtroom, either the sufficiency of the evidence or the insufficiency.  You understand.

JUROR:  I understand.

THE COURT:  Now, assuming that you are on the jury

and the jury votes unanimously, and finds him guilty.  There is the second phase.  And the second phase comes to this.  The jury can impose a death sentence, meaning that he would be executed.  His life would be over.  The jury may impose a sentence of life without parole.

Now, in making that decision, there are certain factors they have to consider.  I will come to that in a moment.  But from reading your answer, are you conscientiously opposed to death penalty?

JUROR:  I have concerns about death penalty and how it is applied in our country, particularly as it relates to minorities.

THE COURT:  But if you would answer the question --

JUROR:  Well, I don't know.  I don't know how to answer your question.  Am I conscientiously opposed to it?  Do I have the right to take someone's life?  I don't know.  It is very difficult to just say yes or no to that question, because there are so many factors that factor into it.

THE COURT:  No.  Let's talk about a hypothetical.  There are certain people who say, and we must believe them, that I am conscientiously opposed to the death penalty, I don't think that we should take anyone's life.

JUROR:  If the crime is heinous enough, then the person should be made to pay.

THE COURT: Okay.

JUROR: And if the payment is death, then so be it.

THE COURT: That answers the question. Now, so there are circumstances and facts whereby you could vote for a death penalty.

JUROR: If I was forced to.

THE COURT: Well, no one can force you to do that. We're asking you to sit in judgment in this case. We're trying to select 16 judges out there.

JUROR: In order for me to vote for the death penalty, the facts would have to be such that there's absolutely zero question in my mind. Otherwise, I couldn't do it.

THE COURT: Zero question of what now?

JUROR: As to whether this person actually committed the crime.

THE COURT: Well, let's assume that he did. Let's assume that you are convinced beyond a reasonable doubt that he committed the crime.

JUROR: And then the question would be is death the appropriate punishment?

THE COURT: Right. Exactly.

JUROR: And it was deemed that death was the appropriate punishment, then I imagine I could vote for

that.

THE COURT:  Could you vote for it, assuming, using your own words, that it was the appropriate punishment?

JUROR:  Grudgingly, I could.

THE COURT:  Reluctantly?

JUROR:  Yes.

THE COURT:  And you feel that race discrimination is definitely a problem in the country, and you feel strongly that the death penalty is applied unfairly against minorities.

JUROR:  Yes.

THE COURT:  But at the same time, if the facts, if you were convinced beyond a reasonable doubt that the defendant was guilty, you could consider aggravating circumstances that would warrant the death penalty and mitigating circumstances that would result in a sentence of life without parole.

Am I putting words in your mouth?

JUROR:  If the facts are presented beyond a reasonable doubt, I could analyze the issues and vote, and chose the options that are recommended, yes.  If death penalty is the option, that is the choice, and it fits with crime and punishment, then, yes.

THE COURT:  And the jury is called upon to make an analysis there.  They would consider both the aggravating

circumstances and the mitigating circumstances, not ruling out either one at this point. And from what I hear you saying, you could if the facts warranted, consider the aggravating circumstances and vote for a death penalty. You would consider the mitigating circumstances and vote for the life imprisonment without parole, depending upon the evidence.

JUROR: Depending upon the evidence.

THE COURT: Is that a fair statement, what I have said?

JUROR: Yes.

THE COURT: Do you have any questions, Mr. Newman?

MR. NEWMAN: Mr. Frentzen does, Your Honor.

MR. FRENTZEN: I do, Your Honor.

Ms. Perry, I believe you said a second ago that you could consider the death penalty in a case, but there would have to be zero question in your mind. Is that right?

JUROR: Yes.

MR. FRENTZEN: Ma'am, you understand that the burden on the government during the guilt/innocence part is proof beyond a reasonable doubt, and we have to prove our case beyond a reasonable doubt.

JUROR: So, then if you prove it beyond a reasonable doubt, I should zero question in my mind; right?

MR. FRENTZEN: That's what I'm asking, Ma'am.

Would you hold us to that burden, proof beyond a reasonable doubt.

JUROR: Yes. If you are asking me to put someone to death, yes, I would.

MR. FRENTZEN: Okay. But would you hold us to any higher burden, given the fact that the possible punishment, when we got to punishment phase, that there was the possibility of the death penalty.

JUROR: You're going to have to prove your case. Yes.

MR. FRENTZEN: Okay. But would you hold the government to a higher burden than proof beyond a reasonable doubt?

JUROR: What is the higher burden you are referring to?

MR. FRENTZEN: I don't know, Ma'am, that is what I'm asking. If the Judge instructs you for the guilt part of the case now, that the government has to prove their case beyond a reasonable doubt.

JUROR: Okay.

MR. FRENTZEN: Knowing in your mind that the death penalty is a possible punishment out there, would you be able to accept that and follow the Court's instructions; or, would you hold us to a higher burden knowing what the possible punishment could be?

JUROR:  Honestly, I'm not even following your -- I'm not sure what we're trying to get there, because if you are proving your case beyond a reasonable doubt, then I have no doubt.

MR. FRENTZEN:  Well, it is not no doubt, Ma'am. It is beyond a reasonable doubt.  You can still have a whimsical or fanciful doubt.

JUROR:  If you are asking me to convict this gentleman on -- if you are asking me to find guilt, I could do that.  If you are asking me to find guilt and potentially sentence this person to death, then I need to be sure at a high standard that there is no doubt before I could do that.

Does that answer your question?

MR. FRENTZEN:  Ma'am, all I'm asking is would you be able to follow the Court's instruction during the guilt person that we need to show proof beyond a reasonable doubt and not proof beyond all doubt?

JUROR:  To determine if he is guilty or innocence?

MR. FRENTZEN:  That's right.

JUROR:  To determine his guilt, you would need to show proof beyond a reasonable doubt.  To, to, to get a conviction for death versus life imprisonment, then it needs to be, you know -- it's needs to be very clear, very clear.

MR. FRENTZEN:  Some higher burden.

JUROR:  Yes.  Because again, there has been many

cases where people have been convicted and sentence to the death penalty, and as it has been proven, the later diagnosis indicates there were some doubt and some question as to whether that individual committed the crime.

THE COURT:  I will ask you to come back tomorrow at 1:00 o'clock for final jury selection.  Do not discuss your answer or the questions made.

JUROR:  Okay.

[Juror Left the Room.]

THE COURT:  Call the next one.

Considering Ms. Fahey, the Court understood her to say that the fact that she would have to make, knowing during the guilt/innocence that would be part of the consideration of finding him guilty, that also weighs on me. I think I would disqualify her subject, obviously, to the objection of the defendant.

MR. DARDEN:  We take exception to the ruling.

THE COURT:  Yes.

MR. FRENTZEN:  Judge, if we might be heard.  I heard or understood Ms. Perry there to be saying that for a -- to be considering the death penalty, she would be holding us to a higher standard than proof beyond a reasonable doubt.  And we think she should be stricken for cause.

THE COURT:  I understand that one may say that is

what she said.  But I think that through the questions and the interrogation that I made of her, obviously she would be reluctant to impose it.  But I got from all the questions we asked her that she could impose it under certain circumstances.

MR. FRENTZEN:  I agree.  Our fear is that she is going to hold us to higher burden than the law requires.

THE COURT:  I understand that.  But I'm going to rule her qualified.

Bring in the next one.

MARSHAL:  No. 98.

THE COURT:  You are Ms --

JUROR:  Swart.

THE COURT:  Ms. Swart, I'm going to go to your answers.  You say you are religiously and morally or in some way, honest, opposed to the death penalty.

JUROR:  Yes, sir.

THE COURT:  You say *because I don't feel it is a deterrent, and because I believe civilized society should not kill its criminals.*

JUROR:  Yes, sir.

THE COURT:  Now, we are certainly not arguing with your opinion.  You have every right to that opinion.

JUROR:  Right.

THE COURT:  I think you made error in the answer,

because you say here *I strongly support the death penalty as a punishment.*

JUROR:  Oh, yes.

THE COURT:  I think what you meant is *I strongly oppose the death penalty.*

JUROR:  I did.  Correct.

THE COURT:  All right.  So, you further say, if the defendant were found guilty of having --

JUROR:  Yes, sir.

THE COURT:  -- committing the crime, and the evidence and aggravating factors convince you that the death penalty is the appropriate sentence, could you vote for the death penalty, and your answer is no.  Is that correct?

JUROR:  Correct.

THE COURT:  Without trying to put words in your mouth, because we certainly want to understand you, is your opposition to the death penalty so firm, so fixed that you can conceive of no circumstances where you would vote to take someone's life?

JUROR:  Very few.

THE COURT:  Very few.

JUROR:  Uh-uh.

THE COURT:  Now, let's analyze that.  Then are you saying that in certain circumstances -- I understood from this *I oppose the death penalty.  I believe civilized*

*society should not kill its criminal.*

JUROR:  Right.

THE COURT:  Now, I understood from that at first reading that you were under all circumstances opposed to the death penalty.

JUROR:  Right.

THE COURT:  But you're saying --

JUROR:  Well, I mean, I think there is evil in the world, and I think that there are some people who are so horrible that if you were going to like think of anything that yes, but I think that is extremely rare, you know.

THE COURT:  Well, the death penalty is rare, of course, or should be rare.  No one is taking any exception to that.  The facts of this case alleged that the defendant killed a female postal employee.

JUROR:  Yes, sir.

THE COURT:  The jury is authorized, if it finds him having committed the crime, to consider the death penalty, and to consider aggravating circumstances that might require -- not require, but find that the death sentence is appropriate.  Could you do that?  Could you vote, if the aggravating circumstances in this case indicates to you that the death sentence is more appropriate sentence, could you so vote, if you are on the jury?

JUROR:  I don't think so.

THE COURT:  You do not think so.  I know you are not having to say yes or no.  But those answers just keep --

JUROR:  They're not helping you.

THE COURT:  Not very much.

JUROR:  Okay.  No.

THE COURT:  No.  Now, I don't want to disqualify you, and I don't want to qualify you.  I just simply, both sides are entitled, of course, to a jury that can follow the law.  If you find that in certain circumstances you can't, then, of course, this is the time to not to put those people to violate their oath.  And that is all we're trying to do.

You can conjure up something that though that you could sit -- well, I don't mean conjure up.  There are some crimes that you consider so vile and so horrible that you would not rule out the death penalty.  Is that correct?

JUROR:  Yes.

THE COURT:  Okay.  Mr. Newman and Mr. Frentzen.

MR. NEWMAN:  Yes, Your Honor.  Thank you.  First off, Ms. Swart, I see that you are appear to be with child.  Is that the case?

JUROR:  Yes, sir.

MR. NEWMAN:  How many months along are you?

JUROR:  Five and a half.

MR. NEWMAN:  Do you feel that you've got the physical wherewithal right now to stay with a three, four or

five day trial which would --

JUROR:  Yes, sir.

MR. NEWMAN:  -- involve some very long hours?

JUROR:  Yes, sir.

MR. NEWMAN:  When the Judge asked if you could imagine in your mind some criminal deserving of this ultimate punishment, what came into your mind?

JUROR:  Well, I'm thinking of like, you know, Jeffrey Dammar, and, you know, September 11 kind of crimes, and Oklahoma City, and those kind of things that are just huge.

MR. NEWMAN:  Mass killings, those are the three examples you've just given, or a serial killer.

JUROR:  Yeah, I mean things that are huge were.

MR. NEWMAN:  Would you say then that if the situation now before the Court, where you have one person charged with killing with other human being, in your mind is that the sort of every day common pedestrian, run-of-the-mill crime that would never allow you to consider the imposition of a lawful authorized punishment set by the Congress in the United States.

MR. DARDEN:  Judge --

THE COURT:  Answer the question.

JUROR:  I doubt that I would vote the death penalty.  I just really find it wrong in that case.  I think

that I will -- I don't know that I'm answering the questions as correctly.

THE COURT:  You replied *if the defendant were found guilty and the evidence and aggravating factors convince you that the death penalty is the appropriate sentence, could you vote for the death penalty.*

You answered no.

JUROR:  I did.

THE COURT:  Do you wish to answer a yes now, or is it still no?

JUROR:  No.  I still feel no.

THE COURT:  In question 35, you answered thus: *If the defendant were found guilty of a capital count --* that means a death count *-- would you automatically vote for life imprisonment without the possibility of release or parole regardless of facts and aggravating evidence.*

And you answered, *yes, I would automatically vote that way.* Is that still your answer?

JUROR:  I still feel that way.

THE COURT:  Mr. Darden.

MR. DARDEN:  I don't have any questions.

MR. NEWMAN:  Ms. Swart, one last question.  Can you consider imposing a death penalty if the trial gets to stage and the Judge Edenfield gives you the law that is to be applied, could you weigh and considers the imposition of

the death penalty in this case?

JUROR:  Could I weigh it?

MR. NEWMAN:  Yes.

JUROR:  Yes, I believe I could weigh all the things and decide.

MR. NEWMAN:  And can you, shall we say, imagine a set of circumstances wherein you would vote for the death penalty in this case?

JUROR:  I don't think so.

MR. DARDEN:  Question:  Can you follow the instructions of the Court --

JUROR:  Definitely.

MR. DARDEN:  -- when the Judge gives you instructions.

JUROR:  Definitely, yes.

MR. DARDEN:  And you can consider both the aggravating and mitigating circumstances of the case.

JUROR:  Yes, definitely.

MR. DARDEN:  And you can render a verdict based on the evidence, and applying the law as given you by the Court.  Is that correct?

JUROR:  Absolutely.

MR. DARDEN:  Thank you.

THE COURT:  You may step out for a moment.  Don't leave.

[Juror Left the Room.]

MR. NEWMAN:  Your Honor, we move that she be stricken for cause.  She has answered each question a couple of different ways each time.  But I think her presence on the jury would be unfair to the government, that she would not consider in any way --

THE COURT:  Well, her answers are all over the place.  I came back and read the answers to the written questions.  She said those were hers.  Yet she said that she would follow the law.  I don't know.  I simply don't know.

MR. DARDEN:  Judge, she indicated that she would absolutely follow the law.  She would absolutely consider mitigating and aggravating circumstances.

THE COURT:  Have her come back tomorrow at 1:00 o'clock.  I still will hear arguments on this.  The other one was more definite.  This one was far more equivocal than anyone so far.

She's on the list.

MARSHAL:  Are you ready for the one, sir.

THE COURT:  Yes.

MARSHAL:  No. 7, Randall Miller.

THE COURT:  How are you, Mr. Miller?

JUROR:  Hello.  How are you, sir?

THE COURT:  You recall the other day that said I would have to call you all back and ask you some questions.

JUROR:  Right.

THE COURT:  You are still under oath.

JUROR:  Yes, sir.

THE COURT:  If you would talk in that microphone.
You have a good voice.  We are recording everything.

Let's start at the beginning.  It is alleged that
the defendant, who is a black male, murdered a white female
postal employee.  Would the race of the defendant or the
victim make any difference in your deciding the guilt or
innocence of the defendant or the punishment?

JUROR:  No, sir.

THE COURT:  Now, you were born in Vidalia,
Georgia.  You've lived 19 years in here Savannah.

JUROR:  No, sir. I've lived 19 years in the house
we live in now.  I've lived here since I was six.  So, that
would be 55,56 years.

THE COURT:  So, you've lived all of your life.
And you are hydraulic engineer.

JUROR:  Yes, sir.

THE COURT:  Employed by whom?

JUROR:  The Corps of Engineers.

THE COURT:  Right across the street over there.

JUROR:  Yes, sir.

THE COURT:  You have two children.  How long have
you been with the Corps of Engineers.

JUROR:  Forty years next June.

THE COURT:  And you are not retired?

JUROR:  No, not yet.

THE COURT:  Okay.

JUROR:  Thinking about it.

THE COURT:  You have two children, 35 and 30.

JUROR:  Right.

THE COURT:  What are their employments?

JUROR:  My son, he runs a liquor store.  And my daughter is technical writer for Verizon.

THE COURT:  And you are in the Sons of the Revolution.

JUROR:  Yes.

THE COURT:  You have served on a jury before.

JUROR:  I've served in the state court.

THE COURT:  In the state court.

JUROR:  First time in Federal Court.

THE COURT:  Right.  Now, you vaguely remember something about this in the local newspaper.

JUROR:  Yes, sir.  I think it was about a year ago.

THE COURT:  Did that leave any impression on you so that you could not serve and render a fair and impartial verdict in the case?

JUROR:  No, sir.  I vaguely -- I barely remember

it.  I just happened to remember Fleming, Georgia.

THE COURT:  Do you know any of the lawyers?

JUROR:  I know Joe Newman.

THE COURT:  You were in the same health club or something with him.

JUROR:  Right.  We use the same gym over here before y'all got yours.  And we live in the same neighborhood.  And I see him occasionally.

THE COURT:  Right.  You've had no problem with him.

JUROR:  No, sir.

THE COURT:  Would his presence here sway you one way or the other?

JUROR:  No, sir.

THE COURT:  Now, if you are selected to serve on the jury, there will be two essential areas that the jury will be asked to make critical decisions.  The government has the obligation to prove the defendant guilty beyond a reasonable doubt before a conviction would be authorized. If the government's proof removes all reasonable doubt from you as a fair-minded individual, could you vote for the guilty verdict.

JUROR:  Yes, sir.

THE COURT:  If you had a doubt, a reasonable doubt as to whether or not the defendant was guilty, could you

vote a not guilty verdict?

JUROR:  Yes, sir.

THE COURT:  Now, if the jury were to find the defendant guilty, then another important decision must be made.  The jury will be a given a choice to find him going, and sentence him to death, and in the proper time, he would be executed.  You understand that?

JUROR:  Right.

THE COURT:  The jury has another choice, to sentence him to life imprisonment without benefit of parole. You understand that.

JUROR:  Yes.

THE COURT:  Now, in making that decision, the jury is to look at aggravating and mitigating circumstances.  If there are aggravating circumstances in this case, such that you feel that the death sentence is most appropriate, could you vote for the death sentence?

JUROR:  Yes, sir.

THE COURT:  If you felt that there were mitigating circumstances or other circumstances that you felt that life, a sentence of life imprisonment without the benefit of parole was the most appropriate sentence, could you and would you vote for that life imprisonment sentence?

JUROR:  Yes, sir, I would.

THE COURT:  Is there anything in this

questionnaire, if you had to complete it again, that you would change?

JUROR:  No, sir.

THE COURT:  Is there anything that these parties and lawyers or the Court should know about you that we have not asked that might bear upon selection or non selection?

JUROR:  Not that I can think of.

THE COURT:  Mr. Miller, I'm going to find you qualified.  And I want you back here tomorrow at 1:00 o'clock.  Do not discuss the questions asked of you or the responses made.  Give the marshal your phone number.  If we find that we're not making another progress, we might call you and ask you to delay your return.

JUROR: Okay.

[Juror Left the Room.]

THE COURT:  Call the next one.

MARSHAL:  Sixty-one.

THE COURT:  How are you, Ms. Metts?

JUROR:  Fine.

THE COURT:  You are Clay Metts' wife.

JUROR:  Yes, sir.

THE COURT:  Have you ever serve on a jury before?

JUROR:  No, sir.

THE COURT:  How long have you and clay been married?

JUROR:  Six years.

THE COURT:  Have children?

JUROR:  None together.

THE COURT:  None together, which I assume you are married prior to marrying him.  Was he married previously?

JUROR:  Yes, sir.

THE COURT:  And you have children by another marriage?

JUROR:  I have two girls and he has two girls.

THE COURT:  All right.  So, it is his and mine, but no his, mine, and ours.

JUROR:  Right.

THE COURT:  Now, when you went to work as a paralegal in Clay's office, had you ever served as a paralegal previously?

JUROR:  No.

THE COURT:  No.  What was your course of study in college?

JUROR:  I went to two years to South College to get my degree in paralegal.

THE COURT:  Right.  Now, Ms. Metts, you understand in this case that we're asking questions touching upon the qualifications of the jury to serve and render a verdict free of impartiality or bias or prejudice, and none of this is meant to embarrass you in anyway.  You understand that?

JUROR:  Yes, sir.

THE COURT:  Now, the defendant in the case is a black male.  The victim in this case is alleged, let's suppose, was a white female.  Would those factors influence any decision you are called upon to make in the slightest?

JUROR:  No, sir.

THE COURT:  Now, the jury will have to make at least two really important decisions.  You understand, of course, as a paralegal, and your husband practices criminal law; does he not?

JUROR:  Some.  Yes, sir.

THE COURT:  Yes.  You understand the government has the obligation or responsibility to prove the defendant guilty beyond a reasonable doubt.  You understand that.

JUROR:  Yes, sir.

THE COURT:  Would you or are you prepared to find the defendant guilty if the government meets its obligation; that is, its proof convinces you beyond a reasonable doubt that the defendant is in fact guilty?

JUROR:  Yes, sir.

THE COURT:  Could you vote for the guilty verdict?

JUROR:  Right.

THE COURT:  If you are left with the doubt, a fair-minded doubt, could you vote the defendant not guilty.

JUROR:  Yes, sir.

THE COURT:  Now, let's assume for purposes of your discussion that you find, that the jury finds that the defendant is guilty in a unanimous verdict, then I cross over to the issue of punishment.  The punishment as I explained to you previously may be a sentence of death, and the defendant in due time would be executed.  Or it could decide that the more appropriate punishment would be a punishment of life imprisonment without the possibility of parole.

In making that decision, the jury should examine any aggravating circumstances or mitigating circumstances. If the government proves that he is guilty and that are aggravating circumstances that would justify the taking of his life, could you vote for that?

JUROR:  Yes, sir.

THE COURT:  If the defendant has mitigating facts or circumstances in his background that convinces you the more appropriate sentence would be life imprisonment without benefit of parole, could you so find for that?

JUROR:  Yes, sir.

THE COURT:  Is there anything about this case that you feel would -- that has not been answered that you feel the parties should know or the Court?

JUROR:  Not that I am aware of.

THE COURT:  Now I believe you omitted to answer

one page.  Let me go over that with you.  Question 38: *Would the race of the defendant affect your opinion as to guilt.*

You have answered no.  Is that still your answer?

JUROR:  That is still my answer.

THE COURT:  I mean, that was answer you would have chosen.  Is that correct?

JUROR:  That's correct.

THE COURT:  The second, *would the race of the victim affect your opinion as to guilt.*

JUROR:  No.

THE COURT:  40, *would the race of the defendant affect your opinion as to whether or not to impose the death penalty or life imprisonment without the possibility of parole.*

Your answer?

JUROR:  No.

THE COURT:  Question 41: *Would the race of the victim affect your opinion as to whether or not to impose the death penalty or life imprisonment without the possibility of parole?*

JUROR:  No.

THE COURT:  So, I have read you those.  You are under oath.  So, those are your truthful answers.  Is that correct?

JUROR:  That's correct.

THE COURT:  Ms. Metts, the Court finds that you are qualified, and I'm going ask that you return tomorrow at 1:00 o'clock for final jury selection.  Don't discuss any questions that were asked of you, or any answers you made. You are free to leave the court at this time returning tomorrow at 1:00 o'clock.  We hopefully will be to complete the jury selection process.

JUROR:  Thank you.

[Juror Left the Room.]

MARSHAL:  236, Ruth Mayo.

THE COURT:  How are you, Ms. Mayo?

JUROR:  Fine, how are you?

THE COURT:  You were born up in Screven County. How long have you lived in Savannah?  All of your life mostly.

JUROR:  Right.

THE COURT:  And 50 years at the same address.

JUROR:  Right.

THE COURT:  It feels like home.

JUROR:  Yes, it is.

THE COURT:  What was your employment before you retired?

JUROR:  Occupational therapist tech.

THE COURT:  Where were you employed?

JUROR:  Savannah Rehab and Nursing Center.

THE COURT:  How long employed there?

JUROR:  17 years.

THE COURT:  What was your husband's occupation before he retired?

JUROR:  He was a custodial worker with the Board of Education.

THE COURT:  All right.  You have two children, 42 and 44.  What are their occupations?

JUROR:  One is an dietician.

THE COURT:  Where is she employed?

JUROR:  She's in Tacoma, Washington with the Armed Forces.

THE COURT:  And the other one?

JUROR:  He work for Miller Painting Company.

THE COURT:  Now, you had someone that was convicted of buying stolen goods.  Who was that?

JUROR:  That was my son.

THE COURT:  That is your son.  How long ago was that?

JUROR:  About five years.

THE COURT:  Where was that?

JUROR:  It was in Garden City.

THE COURT:  In Garden City.  Ms. Mayo, do you think he was treated fairly or unfairly?

JUROR:  Fairly.

THE COURT: Do you have any anger or resentment against the Garden City police or the people who accused him or the courts for having convicted him?

JUROR: No.

THE COURT: And you have no opinion as to whether this defendant is guilty or not; do you?

JUROR: No.

THE COURT: Now, the defendant is a black male and the person who got killed was a white woman. Would the fact that he is a black male or she was a white woman make any difference to you?

JUROR: No.

THE COURT: Now, you say you oppose the death penalty as a punishment.

JUROR: Right.

THE COURT: Is that part of your religious belief?

JUROR: Right. Yes.

THE COURT: Now, you oppose it. In other words you feel that people should not be put to death.

JUROR: Right.

THE COURT: Now, is that part of your religious belief, or just what you believe?

JUROR: What I believe.

THE COURT: What you believe. Now, if you were on the jury, could you vote for the death penalty?

JUROR:  No.

THE COURT:  Is that an absolute fixed position that you have, that under no circumstances could you vote for the death penalty?

JUROR:  Under no circumstances could I vote for it.

THE COURT:  Now, there are a lot of bad things that you have occurred.  You know that a lot of people have been called and all.

JUROR:  Yes.

THE COURT:  You were sitting in judgment, on none of those cases could you vote for a death penalty?

JUROR:  No.

THE COURT:  You could not.

JUROR:  I couldn't.

THE COURT:  So, your opinion is so fixed, that regardless of the facts you wouldn't go that far.

JUROR:  I wouldn't go that far.

THE COURT:  Mr. Darden?

MR. DARDEN:  No questions.

THE COURT:  Ms. Mayo, we appreciate your candor.  We're going to let you go.  You don't have to come back.  You've been honest.  And thank you.  And on some other occasion, maybe we can work together.

JUROR:  Sure.

[Juror Left the Room.]

THE COURT:  How are you, Mr. Miller?

JUROR:  Fine, sir.  How are you?

THE COURT:  Mr. Miller, I know that you've been sitting out.  We've still got a way to go.

JUROR:  Yes, sir.

THE COURT:  I'm required to ask you under your oath some questions out of the presence of the other members of the panel.  That is a microphone in front of you.  All of your answers are being recorded.  And all of the appropriate parties are present.

You have lived in Savannah most of your life.  Is that correct?

JUROR:  All of my life.

THE COURT:  All of your life.

JUROR:  Yes, sir.

THE COURT:  You know Mr. Williams through baseball?

JUROR:  Yes, sir.

THE COURT:  You coach the same team or opposing teams.

JUROR:  In the Patriots organization.  Yes, sir.

THE COURT:  All right.  You have a couple of children, 23 and 14?

JUROR:  Yes, sir.

THE COURT:  And what does the -- where is the 23 year-old?

JUROR:  He's back at home.

THE COURT:  Did you that mean he went to college and he's back home?

JUROR:  He went for a couple of years.  And we're trying to encourage him to finish.

THE COURT:  Does he have a job?

JUROR:  Yes, sir.

THE COURT:  What is his job?

JUROR:  He's working at his friend's business, Loco's.

THE COURT:  Right.  You heard that a postal worker was killed, but have you formed any opinion as to the guilt or innocence of this defendant in regard to that alleged crime.

JUROR:  No, sir.

THE COURT:  And you would put that completely aside; would you not, if you are selected to serve?

JUROR:  Yes, sir.

THE COURT:  Now, the jury would -- if you are selected, the jury has two big decisions.  The government has the obligation or burden to convince a fair and impartial jury that defendant is guilty beyond a reasonable doubt of the crime charged.  In other words, he did it.

If the government's proof should convince you beyond a reasonable doubt that the defendant in fact is guilty, could you vote for guilty verdict?

JUROR:  Yes, sir.

THE COURT:  If you had a doubt, a fair-minded doubt, even though you thought well, he probably did it, but I'm still not convinced beyond a reasonable doubt, could you vote to acquit him?

JUROR:  Yes, sir.

THE COURT:  Now, if the jury were to vote unanimously that he was guilty, in fact, did commit the crime as charged in indictment, they must reach another decision.  There's a punishment phase.  The jury may consider death.  And a death sentence means the defendant would be executed.  Or they may consider life imprisonment without possibility of parole.

I note from your answer that you are, *I feel we do not have the right to take a life.  However, since it is part of U.S. law, I could apply it.*

Let's talk a few minutes about that.

JUROR:  All right, sir.

THE COURT:  You recall that I said, and I tell you again, the jury in this case, more than the typical case, sit in judgment of the entire base, both the guilt/innocence and the punishment.

So, you will be a judge in the true and real sense. If you are convinced, as I said, and everybody in the jury, that he is guilty, you find him guilty, would your opposition to the death penalty, is it so strong that you could not vote for a death sentence?

JUROR: No, sir, I'm not saying that.

THE COURT: You are not saying that. You are saying that you would consider it if it were an alternative, imposing the death penalty.

JUROR: Yes, sir.

THE COURT: And if you felt that there were sufficient aggravating circumstances or the facts and circumstances warranted it, you could impose it.

JUROR: Yes, sir.

THE COURT: And if you felt that there were sufficient mitigating circumstances that the death penalty was not warranted, you could impose the lesser sentence of life without benefit of parole.

JUROR: Yes, sir.

THE COURT: Mr. Newman, Mr. Darden, any if you are questions?

MR. DARDEN: Nothing from the defendant, Your Honor.

MR. NEWMAN: No questions, Your Honor.

THE COURT: Mr. Miller, the Court finds that you

are qualified.  We will ask you to return tomorrow at 1:00 o'clock.  Do not discuss the questions asked of you or your responses.  You are free to leave the Court at this point, and come back tomorrow.

JUROR:  Yes, sir.

THE COURT:  I remind you of all restraints I have placed on you.

JUROR:  Yes, sir.

[Juror Left the Room.]

MARSHAL:  215, Maria Barnes.

THE COURT:  Hi, how are you?

JUROR:  Good.

THE COURT:  Would you help pronounce that name?

JUROR:  Marie Barnes.

THE COURT:  Barnes.  I thought that was a G.  So, it is Barnes.  Ms. Barnes, you live in Liberty County.

JUROR:  Yes, I do.

THE COURT:  You have lived there for 13 years.

JUROR:  No.  I have lived there for longer than that.

THE COURT:  Have you?  How long have you lived in this area?

JUROR:  About 22 years.

THE COURT:  Now, you have had some college, and you work as a management analyst with the Civil Service.

JUROR:  Uh-uh.

THE COURT:  What department do you work in?

JUROR:  Resource Management.

THE COURT:  That is at Fort Stewart?

JUROR:  Right.

THE COURT:  What does Resource Management?

JUROR:  We handle the budget, the installation budget, and management programs.

THE COURT:  Right.  You have a son 28 years old.

JUROR:  Yes, I do.

THE COURT:  What is his occupation?

JUROR:  He is the design studio manager at SCAD.

THE COURT:  Okay.  How long has he been employed over there?

JUROR:  A couple of years.

THE COURT:  What occupation did you former husband have?

JUROR:  He was Civil Service as well.

THE COURT:  What department was he working in?

JUROR:  Director of Logistics.

THE COURT:  How long have you and he been divorced?

JUROR:  One year.

THE COURT:  You have served on the criminal jury and a civil jury in state court.  Would you answer?

JUROR:  Oh, yes.

THE COURT:  Did the jury arrive at the verdict in all of those cases?

JUROR:  Yes, sir.

THE COURT:  What was the criminal case or cases concerned with?

JUROR:  It was child abuse.

THE COURT:  Child abuse.  Was the defendant found guilty or not guilty?

JUROR:  Non guilty -- not guilty.

THE COURT:  Not guilty.  Now, you state that your mother was murdered.  Was that in -- where was that?

JUROR:  In New Mexico.

THE COURT:  In New Mexico.  And how long ago was that?

JUROR:  That was in '97.

THE COURT:  You had a member of your family, an nephew, convicted of statutory rape.

JUROR:  Uh-uh.

THE COURT:  Where did that occur?

JUROR:  In North Carolina.

THE COURT:  How long ago was that?

JUROR:  I really don't remember.

THE COURT:  Were you -- did you know your nephew very well?

JUROR: No.

THE COURT: And you have no animosity at the government or law enforcement.

JUROR: No. I haven't seen him in 28 years.

THE COURT: How old was your mother when she was killed?

JUROR: She is 65, and she was terminally ill with cancer at the time.

THE COURT: And despite that, do you feel you could judge this case?

JUROR: Yes.

THE COURT: Now, the defendant is a black male. The deceased was a white female. Would that make any difference to you or affect judgment in the slightest?

JUROR: Not at all.

THE COURT: Not at all. Now, you heard about this case. You live in Liberty County. And this occurred in Liberty County.

JUROR: Right.

THE COURT: Did you know the woman?

JUROR: I sure didn't.

THE COURT: Do you know the defendant?

JUROR: No, I don't.

THE COURT: To the best of your knowledge, have you ever seen either of them?

JUROR:  No, I haven't.

THE COURT:  From what you have heard, and you heard the story on TV, have you formed any opinion as to the guilt or innocence of the defendant?

JUROR:  No, I have not.

THE COURT:  Could you put aside anything you may have heard from any other source?

JUROR:  Yes, sir.

THE COURT:  Now, the jury, as I have said, has to make a decision whether or not the government was able to convince you as a fair and impartial person that the defendant committed the crime alleged in the indictment. And the proof must remove all reasonable doubt before you are authorized to convict him.

If you are convinced beyond a reasonable doubt that in fact the government has proven his guilt, could you vote for the guilty verdict?

JUROR:  Yes, I could.

THE COURT:  If you had a doubt, even though you said well, I think he probably did it, but I've got the doubt, could you vote for the not guilty verdict.

JUROR:  Yes.

THE COURT:  And would you do that?

JUROR:  Yes, I would.

THE COURT:  Now, let's assume that you and the

other members of the jury found the defendant guilty.  Then another decision must be made.  That decision would result or could result in the death penalty.  In other words, the defendant would be executed.

And in making that decision on whether or not to impose the death sentence, or to impose life imprisonment without benefit of parole, the jury would consider all of the facts and circumstances, and are authorized to consider any aggravating circumstances about the death, the killing, the background and all.  They are also entitled to are consider mitigating circumstances.  Maybe there is something in the background that makes the death sentence not the appropriate choice.

If you were convinced that he was guilty of having committed the crime, could you consider, and you were convinced that the death sentence would be appropriate punishment, could you vote for the death sentence?

JUROR:  Yes, I could.

THE COURT:  If you were convinced that while he was guilty, that there were mitigating circumstances that made life imprisonment without the benefit of parole the more appropriate sentence, could you vote to do that?

JUROR:  Yes, I could.

MR. DARDEN:  Nothing, Your Honor.

MR. NEWMAN:  Nothing, Your Honor.

THE COURT:  Ms. Barnes, I'm going to ask that you return tomorrow at 1:00 o'clock for final jury selection. Now, you are free to leave.  Don't discuss the questions asked or your responses.  We hopefully will be selection of the jury by tomorrow evening sometime.  Thank you for your promptness.

JUROR:  Okay.  Thank you.

[Juror Left the Room.]

MARSHAL:  No. 200, Rose Mary Taylor.

THE COURT:  Ms. Taylor, how are you?  If you will have that seat there, as I explained the other day, I'm required to ask you some questions out of the presence of the other members of the panel.  You are still under oath, and there is a microphone in front of you.  Full answer these so that everyone in the room will understand them, we will be very grateful.

Now, you have lived at the current address for about 20 years.

JUROR:  Yes, sir.

THE COURT:  You were born up in North Carolina. How long have you lived in this area?

JUROR:  I removed here at one.  We did move away in the Navy, but we came back.

THE COURT:  But you consider yourself for all intents and purposes --

JUROR:  Yes.

THE COURT:  All right.  Now, where are employed?  You are self employed.

JUROR:  Yes.

THE COURT:  You do bookkeeping services for various clients.

JUROR:  Yes, sir.

THE COURT:  Is that business or individuals mostly?

JUROR:  Businesses.

THE COURT:  Businesses.  And you are married and your husband is a pharmacist.

JUROR:  Yes, sir.

THE COURT:  By whom he is employed?

JUROR:  Candler Hospital.

THE COURT:  How long has he worked or Candler Hospital?

JUROR:  I think it has been about eighteen years.

THE COURT:  Was he in private pharmacist before then?

JUROR:  Navy.

THE COURT:  Navy.  All right.  You have two children, 27 and 24.  Are they in school and where are they?

JUROR:  My daughter is here in Savannah.  She is married and she is a pharmacist.  And I have a son that is

in graduate school at Georgia Tech.

THE COURT:  All right.  Well, you understand from what you already know that the defendant is a black male. The victim was a white female.  Would those facts weigh in any regard, make any difference to you in any decision you're called upon to make to the guilt or innocence of the defendant, or the appropriate punishment?

JUROR:  No, sir.

THE COURT:  Now, you contribute to the Neighborhood Watch.  What neighborhood is that?

JUROR:  Wilmington Park.

THE COURT:  Wilmington park, and the Policemen's Fund.  Is that a general charity?  They call you and ask you to contribute something.

JUROR:  Just occasionally, not always.

THE COURT:  All right.  You read something about this in this newspaper.  You don't remember the details.  Is that correct?

JUROR:  Yes, sir.  That is correct.

THE COURT:  Are you completely fair and impartial, completely neutral in this case insofar as you know at this time?

JUROR:  Yes, sir, I pray for truth.

THE COURT:  Now, the jury will make the decision whether or not the defendant is guilty.  The government has

the responsibility, the obligation, the burden to prove to a fair and impartial jury that the defendant committed the crime as alleged in the indictment.  Their proof must remove all reasonable doubt, except that of guilt.  If after the hearing the evidence you are convinced that he is guilty, and that he has been proven guilty beyond a reasonable doubt, could you vote for his conviction or the verdict of guilty?

JUROR:  Yes, sir.

THE COURT:  If you have a reasonable doubt, you say well, he probably did it, but I have a doubt, could you vote for a not guilty verdict?

JUROR:  Yes, sir, if that was evident.

THE COURT:  Now, remember, he doesn't have to prove anything.  The government is the one who has to prove it.  The jury then, if they find him guilty, must make a decision as to the appropriate punishment.

There is death, which means he would executed; or, life imprisonment without possibility of parole.  But the jury could consider all of the aggravating circumstances; that is, things that are bad, evil, wrong.

There might be circumstances that we refer to as mitigating circumstances surrounding the defendant or the events that would indicate that some sentence less than death might be appropriate.

If you are on the jury, and you find that he is guilty, could you consider imposing the death penalty?

JUROR:  Yes, sir.

THE COURT:  If you are on the jury and you find him guilty, but you consider that there are certain mitigating circumstances that you think speak against the death penalty, could you find him guilty, but impose the lesser sentence of life without benefit of parole.

JUROR:  Yes, sir.

THE COURT:  Is there anything in this affidavit, if you had to complete it again, that you would change?

JUROR:  No, sir.

THE COURT:  You know Mr. Susan and Frank DiMarino as members of your neighborhood.  Is that correct?

JUROR:  Neighborhood and church.

THE COURT:  And church.  Would that have any effect on your decision?

JUROR:  No, sir.

THE COURT:  Is there anything else that these parties and the Court should know in your background that might affect your decision in this case?

JUROR:  Not to my knowledge.

MR. DARDEN:  No, sir.

MR. NEWMAN:  No, yes.

THE COURT:  I'm going to ask you to return

tomorrow at 1:00 o'clock.  We're making as much progress as we can.  Hopefully by then, we will begin the final selection process.

JUROR:  Yes, sir.

THE COURT:  Now, you are free to leave.  Do not discuss your answers.  Don't discuss the case.  And do not tell anybody the questions that were asked of you.  Thank you.

[Juror Left the Room.]

MARSHAL:  The next one will be 164, Paul Cooper.

THE COURT:  Mr. Cooper, how are you, Mr. Cooper?

JUROR:  Pretty good.

THE COURT:  Mr. Cooper, you were born out in California.  How long have you lived in Georgia or in this area?

JUROR:  About five and a half years.

THE COURT:  What is your occupation?

JUROR:  I run a drum factory.

THE COURT:  Where is that?

JUROR:  In Ridgeland, South Carolina.

THE COURT:  So you commute up 95 every day.

JUROR:  Yes, sir.

THE COURT:  What is the name of your drum factory?

JUROR:  It is Grestch Enterprises.

THE COURT:  Spell it?

JUROR:  Grestch, G-r-e-s-t-c-h.

THE COURT:  Okay.  Your wife is a plant technician.  Where is she employed?

JUROR:  A company called -- oh, I can't think of their name right now.  I'm a little nervous.

THE COURT:  Just relax.

JUROR:  It is Silk By Design, or something like that.  They maintain plants.

THE COURT:  Okay.  Just relax.  You are still under oath.  We're recording everything.  All of the appropriate parties are present.  You live down at Richmond Hill.  Did you remember anything about this occurrence, hearing about it?

JUROR:  No, sir, I have no knowledge of it.

THE COURT:  Now, the defendant is a black male.  The victim was a white female.  Would those factors in any way influence any decision you are called upon to make, and particularly the question of guilt or the appropriate punishment?

JUROR:  I don't believe they would, no.

THE COURT:  When you say you don't believe --

JUROR:  No, no, they wouldn't.  They wouldn't.

THE COURT:  I know we use that phrase.  But you can definitely say no.

JUROR:  Right.

THE COURT:  Now, you have served on the criminal jury before?

JUROR:  One time.  Yes, sir.

THE COURT:  Where was that, down in Fort Lauderdale?

JUROR:  In Fort Lauderdale.

THE COURT:  What was the case about?  I mean, what was the alleged --

JUROR:  There was a guy who was alleged to have stolen soap from a laundry mat.

THE COURT:  Was he clean?

JUROR:  I didn't get that close to him.  So, I don't know.

THE COURT:  Well, was he guilty or not guilty?

JUROR:  He was convicted.  Yes.

THE COURT:  Okay.  So, he didn't come clean.

JUROR:  No.

THE COURT:  I couldn't resist.  All right.  You bought raffle tickets for the policemen benefit.  Most of us have had to do that from time to time.

JUROR:  Yes, sir.

THE COURT:  All right.  Mr. Cooper, as you know, and let me say this again.  If you are selected for the jury, the jury must listen to all of the evidence.  The government has the burden of proof to prove that the

defendant committed the crime alleged in the indictment. The proof must convince you beyond a reasonable doubt that indeed the defendant did commit the crime.

Now, if the government's proof should convince you beyond a reasonable doubt that he in fact did commit the crime, could you vote for the guilty verdict.

JUROR:  Yes.

THE COURT:  If you have a reasonable doubt, you say well, maybe he did commit it, but I'm not convinced, could you vote a not guilty verdict?

JUROR:  Yes, sir.

THE COURT:  Now, let's assume for purposes of this discussion that you convinced that he is guilty, and all of the members of the jury are likewise convinced, then you must go after another hearing to the question of sentence. The choices of punishment are death, which means that he would be executed by the authorities or life imprisonment without the benefit of parole.

Now, in making that decision, the jury should look at aggravating circumstances and look at the crime, and other circumstances that might be appropriate, and mitigating circumstances, those things that while he is guilty would still direct you against execution and the sentence of life imprisonment.

With that as predicate, if he is found guilty, and

the Court charges that you may consider the death penalty, and you are convinced that the death penalty is the appropriate punishment, could you vote for the death penalty?

JUROR:  Yes.

THE COURT:  If you are convinced that he is guilty and that the most appropriate punishment would be life imprisonment without benefit of parole, could you vote that for that?

JUROR:  Yes.

THE COURT:  Any questions?

MR. NEWMAN:  Mr. Cooper, what other type of work have you done in your adult life?

JUROR:  I was, before I worked at Grestch, and worked with drums, I was a district manager for retail stores.  I did that for about 13 years.

MR. NEWMAN:  What type of retail?

JUROR:  It was CDs, tapes, and that kind of stuff.

THE COURT:  Did you finish?

MR. NEWMAN:  Yes, sir.

THE COURT:  Mr. Darden.

MR. DARDEN:  I have no questions, Your Honor. Thank you.

THE COURT:  Mr. Cooper, the Court finds you qualified.  I'm going to ask that you return tomorrow at

1:00 o'clock.

JUROR:  Okay.

THE COURT:  We're making as much progress was we can.  My view is we will have completed the work by that time.  If we can't, we'll try to call you in time to give a delayed time to come.  For goodness sakes, come as you are attired.  And do not discuss with those people out there the questions I have asked of you or that have been asked of you, or your answers.

Thank you, and you have a good evening.

JUROR:  Thank you.

[Juror Left the Room.]

MARSHAL:  No. 3, Patricia Taylor.

THE COURT:  Ms. Taylor, won't you come in and have a seat right here.  Ms. Taylor, relax.  No one is going to do anything bad to you at all.  So, I'm wearing this robe, but Halloween is over.

JUROR:  Okay.

THE COURT:  Now, I said the other day that the law requires that I ask you a few questions beyond those that you have been asked before, and beyond what you have completed.  There is a microphone there.  Everyone in the room is the appropriate person to be here.  So, if you will answer loud enough, I would appreciate it.

JUROR:  Okay.

THE COURT:  You have lived here in Chatham County about how long?  You were born here; were you not?

JUROR:  Yeah.

THE COURT:  Well, that's good enough.  And you work at Wal-Mart.

JUROR:  Yeah.

THE COURT:  How long have you worked at Wal-Mart?

JUROR:  Fifteen years.

THE COURT:  You have been in retail most of your life.

JUROR:  That's the only job I've had.

THE COURT:  Is that right?  What kind of work did your husband do?

JUROR:  He was in the insurance company, and he sold cars.

THE COURT:  Okay.  He has retired now.

JUROR:  Uh-uh.

THE COURT:  And you have four children, 46, 45, 43 and 41.

JUROR:  Uh-uh.

THE COURT:  What kind of work -- do they all live here in Chatham County?

JUROR:  One.

THE COURT:  What does he do?

JUROR:  She.

THE COURT: She.

JUROR: She sales Sun Com Phones.

THE COURT: Sun Com.

JUROR: Uh-uh.

THE COURT: What do the other three do and where do they live?

JUROR: My son lives in Orlando. And right now, he works for Chatham Steel for twenty years, and they let him go.

THE COURT: Okay.

JUROR: And I have a daughter that lives in Virginia. She is a housewife. A daughter that lives in Miami. She has her own cosmetic line.

THE COURT: All right. Very good. You served on the jury in the past.

JUROR: But I don't remember what it was about or anything.

THE COURT: That's all right. We won't ask you about it, if you don't remember. You had a daughter-in-law who was a policewoman down in Florida.

JUROR: She is not any more. She used to be. She still works there. But from an injury, she is not --

THE COURT: How did she get injured?

JUROR: She tripped on the curb, and hurt her ankle, and had to have surgery several times.

THE COURT: Right. Okay. And you didn't know anything about this matter before you got to Court.

Now, if you are selected to serve on this jury, there will be some important decisions that you have to come to. The government has filed these charges. The grand jury has returned an indictment. The government then must prove these charges beyond a reasonable doubt. In other words, that this defendant committed the crime.

If you are convinced beyond a reasonable doubt that he did commit the crime, could you vote for a guilty verdict?

JUROR: Yeah.

THE COURT: If you are convince --

JUROR: If I am convinced.

THE COURT: Yes. And if you are not convinced, you would vote not guilty?

JUROR: Uh-uh.

THE COURT: Is that correct?

JUROR: Uh-uh.

THE COURT: Answer yes or no.

JUROR: Yes.

THE COURT: Now, the defendant is a black male. The victim was a white female. Would that make a particle bit of difference in making that decision?

JUROR: No. No.

THE COURT:  Now, if the jury should decide that the government had proven him guilty beyond a reasonable doubt, then they have to decide the appropriate punishment. And punishment would be a death sentence, meaning that he would be executed, or life imprisonment without benefit of parole, without possibility of parole.

Now, in making that decision, that jury may consider aggravating circumstances, things that were bad, out of the ordinary bad; or, they may consider mitigating circumstances.  In other words, even though he is guilty, nevertheless, there was something they found good or not so bad, and that a death sentence should not be imposed.

Now, under your oath, would you listen to the evidence, and could you, if you felt that the appropriate sentence was death, could you vote for a death sentence?

JUROR:  If I had to, uh-uh.

THE COURT:  You mean if the facts warranted it.

JUROR:  Yeah.

THE COURT:  If you were not convinced, could you vote for life imprisonment without benefit of parole?

JUROR:  Yes, I could.

MR. DARDEN:  Nothing.

THE COURT:  Ms. Taylor, I'm going to ask you to come back tomorrow at 1:00 o'clock for final jury selection. Now, you are free to leave.  Do not discuss any question I

have asked of you, or any response.  You are still under oath and accountable.

JUROR:  Okay.

THE COURT:  You are free to leave.

[Juror Left the Room.]

MARSHAL:  226, Christina Miles.

THE COURT:  Hey, how are you, Ms. Miles?

JUROR:  Fine, thank you.

THE COURT:  You were born in Jamestown, New York.

JUROR:  Yes.

THE COURT:  Do you remember it?

JUROR:  No.

THE COURT:  I have a colleague that was born in Jamestown, New York, Judge Alaimo.  He got out of town, too.

JUROR:  Too cold.

THE COURT:  Yes.  How long have you lived in Georgia, let's say.

JUROR:  Thirty-two years.

THE COURT:  All right.  You recall the other day that I indicated that I would need to ask each of you some questions out of the presence of the other member of the panel.  You are still under oath.  That is the microphone there.  We're recording all of the answers, and all of the appropriate parties and people are here in the room.

Now, the defendant is a black male.  The victim

was a white female.  In deciding any questions of guilt or punishment, would that make any difference to you?

JUROR:  No.

THE COURT:  Are you currently employed?

JUROR:  Yes.

THE COURT:  Where are you employed?

JUROR:  Pediatrics Intensive Care Unit at the Backus Children's Hospital, Memorial.

THE COURT:  How long have you been employed?

JUROR:  Sixteen years.

THE COURT:  You omitted Page 2.  And I'm having to go through that.  You have how much education?

JUROR:  I'm a RN.  I have two years of college.

THE COURT:  All right.  You are married?

JUROR:  No, I'm divorce.

THE COURT:  Divorced.  How long have you been divorced?

JUROR:  Three years.

THE COURT:  What was your husband's occupation?

JUROR:  Civil engineer tech at Hunter Army Airfield.

THE COURT:  Do you have children?

JUROR:  Yes.

THE COURT:  How many?

JUROR:  Two living children.

THE COURT:  What are their ages?

JUROR:  Twenty-six and 28.

THE COURT:  Are they employed?

JUROR:  Yes.

THE COURT:  What is their employment?

JUROR:  They are both mechanics.

THE COURT:  Where are they employed?

JUROR:  One is in Rincon, at Highway 21 Auto.  And the other one has his own business, Bonaventure Auto in Savannah in Thunderbolt.

THE COURT:  You have served on a jury previously.

JUROR:  Yes.

THE COURT:  Where was that?

JUROR:  A civil court here, Chatham County.

THE COURT:  Chatham County.  Did you jury arrive at a verdict?

JUROR:  Yes.

THE COURT:  You are a member of the Neighborhood Watch.

JUROR:  I was at a previous address.  They don't have one where I am now.

THE COURT:  You have a purse stolen from the shopping car.

JUROR:  Yes.

THE COURT:  And your house broken into by your

ex-husband.

JUROR:  Yes.

THE COURT:  You had not heard anything about this case before you arrived in court.

JUROR:  No.

THE COURT:  Now, the jury will make some important decision.  The first would be to decide whether the defendant is guilty of the crimes charged in the indictment.  They must make that decision upon the evidence that is brought forth in court.  The government must prove the defendant committed the crime and the proof must remove all reasonable doubt from the minds from a fair and impartial member of the jury.  You understand that.

JUROR:  Yes.

THE COURT:  If you have a doubt, then, of course, the jury should acquit the defendant.

JUROR:  Yes.

THE COURT:  If the government meets its obligation, its proof obligation, could you vote the defendant guilty if you are convinced beyond a reasonable doubt that in fact that he is guilty?

JUROR:  Yes.

THE COURT:  If you have a doubt, even though you may think he is probably guilty, but you have a doubt, a reasonable doubt, could you vote not to convict and acquit

him?

JUROR:  Yes.

THE COURT:  Now, if the jury should find the defendant guilty, then they must turn to the second part. That is, decide the punishment.  The choices are death, which means he will be executed, or life imprisonment without benefit of parole.

In making that decision, jury should consider aggravating and mitigating circumstances.  If there were aggravating circumstances, something in the record about the defendant or the case, the jury is given an opportunity to consider that in setting the punishment.

Now, if after you hear -- let's assume that he is found guilty.  If after you hear the defendant, you consider that death is the appropriate sentence, could you vote for the death sentence?

JUROR:  Yes.

THE COURT:  If you consider that some punishment, a lesser punishment, life imprisonment without benefit of parole is the appropriate sentence, could you vote for that?

JUROR:  Yes.

THE COURT:  Is there anything in this affidavit other than that page we've already completed that you would change the answers?

JUROR:  No, sir.

THE COURT: Is there anything in your background or anything that you think ought to be disclosed to these parties or to the Court is not disclosed in this proceedings or anything that has been written in the affidavit.

JUROR: No.

MR. DARDEN: No, sir.

THE COURT: Ms. Miles, you are to return tomorrow at 1:00 o'clock. Do not discuss your views on anything, have no discussion with anyone, nor are you to relate any question asked of you or any answer you made. So, you are free to leave at this point. You may go on home.

JUROR: Thank you.

THE COURT: Thank you.

[Juror Left the Room.]

MARSHAL: 176, Nicole Blount.

THE COURT: Ms. Blount, how are you today?

JUROR: I'm excellent. Thank you.

THE COURT: Fine. Ms. Blount, the other day, I told you that I would have to interview each one of you separately. All of the appropriate parties are here. You are still under oath. That is the microphone. The court reporter is recording everything. And if you don't understand anything, don't hesitate to ask me to explain it.

JUROR: Thank you.

THE COURT: You were born in Atlanta. How long

approximately have you lived in Chatham County?

JUROR:  About thirteen or fourteen years.

THE COURT:  Are you married?

JUROR:  No, sir.

THE COURT:  Okay.  By whom are you employed?

JUROR:  Savannah State University.

THE COURT:  What is your position?

JUROR:  Director of Alumni Affairs.

THE COURT:  How long have you occupied that position?

JUROR:  I've been in the position a little shy of four years.

THE COURT:  All right.  And you are not sure whether you heard anything about this case or not?

JUROR:  No, not specifically.  I think it is probably the same.

THE COURT:  But do we have your word that anything that you may have heard would not affect any decision you are called upon to make?

JUROR:  No, not at all.

THE COURT:  All right.  Now, the jury is called upon to make all of the critical decisions in this case. The charges are that the defendant murdered someone.  The defendant is a black male.  The victim was a white female. Would those facts, assuming them to be true, make any

difference or affect any judgment you are called upon to make?

JUROR: No.

THE COURT: Not in the slightest?

JUROR: Not at all.

THE COURT: All right. Now, the jury would have to decide, based upon the evidence or insufficiency of the evidence, whether the defendant was guilty. The government, as I explained to you last Thursday, has the obligation to convince a fair and impartial jury that the defendant indeed committed the crime charged in the indictment. If the government proves beyond a reasonable doubt that he is guilty, could you vote for a guilty verdict?

JUROR: I can vote for the guilty verdict.

THE COURT: Now, if you are left with a doubt, a honest, reasonable doubt, could you vote for a not guilty verdict?

JUROR: Yes.

THE COURT: Even if you said well, he probably did it but I've still got a doubt, you would vote not guilty; would you not.

JUROR: That's correct. If I understand the process, if there's any doubt, then you can't --

THE COURT: Not any, but a reasonable doubt.

JUROR: Reasonable doubt, yes.

THE COURT:  Now, let's assume that there is a guilty verdict, that all of the jury says he did commit this crime that he is charged with, then the question of punishment arises.

JUROR:  Okay.

THE COURT:  In this instance, the choices are a death sentence, meaning he will be executed, or life imprisonment without parole.  You understand that.

JUROR:  Yes, I do.

THE COURT:  Now, I note from Question 29, *Do you religiously, morally, personally or otherwise oppose the death penalty.*

You said, and we are not trying to get you to change anything.

JUROR:  That's okay.

THE COURT:  *Religiously and morally, I oppose the death penalty or applying the death penalty on a human being.*

JUROR:  Correct.

THE COURT:  Is that a fair answer?

JUROR:  Yes, it is.

THE COURT:  You say *I oppose the death penalty as a punishment,* in regard to Question 30.

Then on Question 31, *Would your opinion regarding the death penalty influence you in deciding the guilt of the*

*defendant.*

You say no.  You can make decision.

Then in Question 32, *if the defendant were found guilty and the evidence and aggravating factors convinces you that the death penalty is the appropriate sentence, could you vote for the death penalty.*

And your answer is, yes.  Is that true.

JUROR:  Uh-uh.  That's correct.

THE COURT:  *Would you automatically vote for the death penalty,* and you said no.

Now, you are morally and religiously opposed to death penalty.  But you say you could impose it, or help me through this.  I'm not sure.

I have not discussed your answers, but I'm sure they are in the quandary, too.

JUROR:  The question, I believe, was relative to whether or not -- and I think I underlined it here -- if I could be convinced that the death penalty is appropriate. When I think about a massacre, you know -- I'm not so sure that I can't be convinced that somebody actually deserves to die.  If it is a murder charge, you know, it is a crime or something of that nature, that may not be so great to put somebody to death.  But I'm not so sure that I can't be convinced that somebody who has been involved in some type of serial killing or massacre, or just some inhumane act.

I'm not so sure I can't be convinced that they deserve to die.

THE COURT: Well, let me ask you. Could you vote for a death penalty if there were just one single killing, one death? Say there were no massacre. There was no explosion. There were not body parts flying around, just one death.

JUROR: It would depend on the death.

THE COURT: It would depend on the death.

JUROR: If it were a heinous --

THE COURT: But you would not rule out imposing the death penalty even though there was only one victim. Is that correct?

JUROR: No. That is correct. That is correct.

THE COURT: All right. Mr. Newman.

MR. NEWMAN: One moment, Your Honor. No questions, Your Honor.

MR. DARDEN: Nothing.

THE COURT: Ms. Blount, I'm going to ask you to return tomorrow at 1:00 o'clock. You are on the short list. Do not discuss the questions asked of you or the answers you made. In fact, do not discuss the case at all.

JUROR: Yes, sir.

THE COURT: If you will leave your telephone number and if we see that we're running late, we will try to

call you and delay your appearance here.

Hopefully, we will be ready to go at 1:00 o'clock to make the final selection.

JUROR:  Yes, sir.

THE COURT:  Thank you very much.

JUROR:  Thank you.

[Juror Left the Room.]

MARSHAL:  The next one will be 47, Steven Skinner.

MR. DARDEN:  Judge, could I just make a comment on the record?

THE COURT:  Yes.

MR. DARDEN:  I feel somewhat uncomfortable when the prosecutor and the Court narrows this down to a particular case.  It appears to me that is asking the person to prejudge a case when you ask if there were a single murder would you return it.  I don't think that is appropriate and I don't think that is what the law is.

THE COURT:  All right.

MR. DARDEN:  We object.

THE COURT:  So noted.

MR. NEWMAN:  Your Honor, I would just like to state on the record in that case, the previous juror brought that scenario up in her answer before the Court inquired about it.

THE COURT:  Yes.

MR. DARDEN:  I understand they can bring it up. I'm talking about you and the Court bringing it up.

THE COURT:  All right.  Bring the next one in.

MARSHAL:  Mr. Skinner.

THE COURT:  How are you, Mr. Skinner?

JUROR:  I can't complain.

THE COURT:  Well, I appreciate your patience. We're trying to get through this process all of the expedience consistent with the process.

Now, are at Savannah -- you are employed where?

JUROR:  By myself.

THE COURT:  By yourself.

JUROR:  Yes.

THE COURT:  You are a psychologist.

JUROR:  By education, yes.

THE COURT:  Where is your office located?

JUROR:  I'm not practicing psychology.  I'm actually a woodworker by occupation.

THE COURT:  Okay.  What kind of woodworking do you do?

JUROR:  Small jewelry boxes, boxes, tables, that kind of thing.

THE COURT:  How long have you been so employed?

JUROR:  Probably about eight years now.

THE COURT:  You have not served on a jury before;

have you?

JUROR:  No.

THE COURT:  Now, you have been a victim or someone in your family of an assault and robbery.

JUROR:  Right.  Yes.

THE COURT:  Who was that?

JUROR:  Well, I have been assaulted before.  And my brother was the victim of a robbery.

THE COURT:  Right.  You understand that the defendant in this case is a black male.  The victim was a white female.  Would that make any difference in any decision you are called upon to make?

JUROR:  No.

THE COURT:  Now, the jury must make two critical decisions.  That is, the government must prove that the defendant committed the crime.  The proof must remove all reasonable doubt from the minds of a fair and impartial juror.  Now, if the government's proof convinces that indeed he has been proven guilty, could you vote for a guilty verdict.

JUROR:  Yeah.

THE COURT:  And if you have a reasonable doubt, could you vote a not guilty verdict?

JUROR:  Yes.

THE COURT:  Now, you say *I strongly oppose the*

*death penalty as a punishment.  Ethically, murder of any sort is wrong, justifiable or not.  And I don't want blood on my conscience.*

Now --

JUROR:  Ethically, speaking, death is death.

THE COURT:  Right.  So, whether it is by the state or --

JUROR:  Court ordered or not, it is death.

THE COURT:  Well, does that mean -- and I think I know what you mean.  But I've got to make sure, because we're on the record.

JUROR:  Yeah.  Right.

THE COURT:  You are conscientiously opposed to administering the death penalty under all circumstances then.  Is that correct.

JUROR:  Pretty much, yes.  Yes.

THE COURT:  And that opinion is one you thought out.  And you are --

JUROR:  I'm pretty staunch on that.  Yes.

THE COURT:  Pretty staunch.  Are you absolutely staunch on it?

JUROR:  Yes.  Yes.

THE COURT:  All right.  So, there's no circumstances when you consider that the state is authorized to administer a death penalty.

JUROR:  Not according to my ethical beliefs, no.

THE COURT:  Sure.  And that's all.  We're not trying to change you.  Of course, we couldn't.

Then in this case and all other cases -- well, you've already answered.  You are firmly fixed in your opinion.

JUROR:  Yes.

THE COURT:  And unalterably opposed to the death penalty.

JUROR:  Yes, sir.

THE COURT:  Now, you keep saying pretty much, or --

JUROR:  Well, yes.  Infirmative.  Yes.

THE COURT:  Mr. Skinner, I appreciate your candor. I'm going to excuse you.  Thank you for your honesty.  Do not mention to anyone the questions asked or the answers given.

JUROR:  Okay.

[Juror Left the Room.]

MARSHAL:  111, Pamela Jenkins.

THE COURT:  Ms. Jenkins, if you will have a seat. Just relax, and we'll get through with this in a very short period of time, I assure you.  No one wants to embarrass you.  We just want, as I said the other day, I'm required to ask you some questions.

That is a microphone in front of you.  This is a court reporter taking down everything.  All of the parties in the room need to hear your answer.

JUROR:  Okay.

THE COURT:  You are still under oath.  You understand that the defendant has been charged with the murder of another human being.  Is that correct, you understand that.

JUROR:  Yes.

THE COURT:  Now, the defendant is a black male. The victim was a white female.  Would those facts make any difference in any decision as to the guilt or the punishment of the defendant if you are serving on the jury.

JUROR:  No.

THE COURT:  Not the slightest?

JUROR:  No.

THE COURT:  You are a dietary cook at the YMCA.

JUROR:  No.

THE COURT:  Where is that?

JUROR:  Okay.  Riverview Nursing Home.

THE COURT:  Riverview Nursing Home.

JUROR:  Uh-uh.

THE COURT:  How long have you been employed at Riverview Nursing Home.

JUROR:  Twenty-one years.

THE COURT:  Twenty-one years.  You were employed at YMCA once.

JUROR:  I'm still employed at YMCA.  That is my part time job.

THE COURT:  That is a part time job.  What do you do there?

JUROR:  I work with the kids.

THE COURT:  With the kids.

JUROR:  With Prime Time, uh-uh.

THE COURT:  You have two small children, five years, and one three months.

JUROR:  Right.

THE COURT:  Now, what is Thankful?  Is that a church?

JUROR:  That is my church that I'm member of, uh-uh.

THE COURT:  All right.  You didn't know anything about this case before you came to court the other day.

JUROR:  No.  I don't know anything about it.

THE COURT:  Now, if you are selected to serve on the jury, there are certain questions that the jury must decide.  It must decide whether the defendant is guilty.  That has to be based upon the evidence.  You understand that.

JUROR:  Uh-uh.

THE COURT:  Answer.

JUROR:  Yes.

THE COURT:  The government must prove that the defendant is guilty, and their proof must remove all of the reasonable doubt as a fair and impartial person.  You understand that.

JUROR:  Yes.

THE COURT:  Now, if the government were to prove that he is in fact guilty, you have no reasonable doubt, could you vote for the verdict of guilty?

JUROR:  Yes.

THE COURT:  If you have a question as to his guilt, you say I have really got a question, could you vote him not guilty, if you had a question, a bona fide question, a doubt.

JUROR:  If I have a doubt?

THE COURT:  Yes.

JUROR:  I can, yes.

THE COURT:  And would you.  I mean, if you were not convinced he was guilty, you would not want to convict him; would you?

JUROR:  No.

THE COURT:  Right.  Now, if the jury were to find him guilty, and you are on that jury, you must decide the punishment.  You understand.

JUROR:  Yes.

THE COURT:  The punishment is either death, meaning he will be executed, or he will be placed in prison for the rest of his life without parole.  You understand those are the choices.

JUROR:  Yes.

THE COURT:  Now, in making that decision, you said here, you gave me an answer I don't completely understand.  But I will come to it.

You should consider what the law calls aggravating circumstances.  Even though he is guilty, there may be aggravating circumstances that allows you to consider the death sentence.  There may be circumstances that we call mitigating, or lessening, that may allow you to consider life imprisonment without parole.

Now, would you, if you considered that he was guilty and all the people considered he was guilty and voted him guilty, could you consider, would you consider and could you under certain circumstances, vote for the death penalty?

JUROR:  That's kind of hard.

THE COURT:  It is hard.  But it is a decision that you might have to be called upon to make.  And that's why we have this private conversation, private in the sense that other people are not hearing it.  I can't answer that and only you, of all people in the world, can answer that.

JUROR:  I don't think I would vote for the death penalty.  That is just my opinion.

THE COURT:  Well, you have every right to your opinion.  But let's examine it further.

JUROR:  Okay.

THE COURT:  Do you know what conscientiously opposed to the death penalty means?

JUROR:  No.

THE COURT:  Well, some people say I'm against the death penalty, I'm conscientiously opposed to it and there are no circumstances under which I would impose or vote for death penalty.  That is one set of people out there.  You understand?

JUROR:  Okay.

THE COURT:  Then there are some people who say well, I'm generally against the death penalty.  I'm scare of it.  But under the right circumstances, I could vote for it and put somebody to death.  And then there are people who say, well, I think the death penalty is an appropriate punishment.

Now, you understand one, two, three, you understand I gave you three.

JUROR:  Yes.

THE COURT:  Now, let me run back through them.

JUROR:  Okay.

THE COURT: And don't answer until I complete it.

JUROR: Okay.

THE COURT: Are you conscientiously opposed to death penalty under all circumstances? Do you generally oppose the death penalty, but could impose it if the facts and circumstances warranted it? Are you in favor of the death penalty and could impose it without any problem? Where would you put yourself in those three scenarios?

JUROR: Number two.

THE COURT: Number two.

JUROR: Yes.

THE COURT: In other words, you could impose it if the facts and circumstances required it -- or didn't require it, but were sufficient to justify it.

JUROR: Yes.

THE COURT: Does the government wish to ask any questions?

MR. NEWMAN: We have some questions, Your Honor.

MR. FRENTZEN: We do, Your Honor. Ms. Jenkins, I just want to clarify. On your questionnaire, you were asked *if the defendant were found guilty of a capital count, would you automatically vote for life imprisonment without the possibility of parole regardless of the facts and aggravating evidence.*

There, you answered, yes. Is that still your

feeling?

THE COURT: Repeat it again. I should have done that. But since you've got it, you read it.

MR. FRENTZEN: Ms. Jenkins, the question was requested, and you responded.

THE COURT: Here, you may read off of mine, Ms. Jenkins. I've got it underlined.

JUROR: Uh-uh.

MR. FRENTZEN: Is that your feeling, knowing that you have the option of life imprisonment without the possibility of parole, would you automatically chose that option?

JUROR: Yes.

MR. FRENTZEN: So, you wouldn't consider --

JUROR: Well, I know I just answered him with this, but it is certain circumstances, you know.

MR. FRENTZEN: Well, I guess that is what I'm trying to figure out. If the Judge instructed you about the aggravating factors that you had to consider, would you be able to consider those; or, would you chose life without the possibility of parole, knowing that was an option?

JUROR: Yes.

MR. FRENTZEN: Yes, what? You would chose --

JUROR: Would I chose life without parole, yes, I would.

MR. FRENTZEN:  Automatically without considering all of the aggravating factors if the Court instructed you --

JUROR:  No.  Huh-uh.  I'm getting kind of confused now.

THE COURT:  I'm going to release -- I think we'll go through another ten.  I'm going to release the rest of them.

MR. FRENTZEN:  All right.

MR. NEWMAN:  We just stopped until the Court --

THE COURT:  I'm sorry.  Now, continue the questions.

MR. FRENTZEN:  Ms. Jenkins, I was just trying to clarify, because of how you answered the questionnaire.

JUROR:  Right.

MR. FRENTZEN:  You said you would automatically chose life imprisonment without the possibility of parole.  Are you now changing your answer?

JUROR:  Well, that is what I put down there then.

THE COURT:  Well, it doesn't make any difference what you put.  We want to ask what your feelings are today.

JUROR:  Okay.  I thought I answered it about the death penalty.

THE COURT:  Well, you said -- and you don't have to stick with anything.  All you've got to do is be truthful

now.

JUROR: Right.

THE COURT: Under certain circumstances in this case --

JUROR: Right. Under certain circumstances, yes, I could --

THE COURT: If you are convinced that the death penalty is the most appropriate, could you, under your oath, vote for it?

JUROR: Yes.

THE COURT: Ms. Jenkins, I need you to report back tomorrow at 1:00 o'clock for final jury selection.

JUROR: Okay.

THE COURT: Now, don't go out there and tell anybody any questions we've asked of you or any answers you have made.

JUROR: All right.

THE COURT: You are under oath.

JUROR: Okay.

THE COURT: Very good.

JUROR: All right. Thanks.

[Juror Left the Room.]

MARSHAL: Leah Cox.

THE COURT: Ms. Cox, how are you?

JUROR: I'm tired.

THE COURT:  Ms. Cox, how long have you lived around Savannah?

JUROR:  Six years.

THE COURT:  Six years, where did you live before that.

JUROR:  Minnesota.

THE COURT:  What part of Minnesota?

JUROR:  St. Paul.

THE COURT:  St. Paul, well, you have the snow festival up there, or ice festival, or something.

JUROR:  Something like that.

THE COURT:  Now, I told you the other day that I must ask you some questions out the presence of everyone else.  I know this is a tense thing.  Just relax.  We are not trying to trick you or make life difficult.  But I'm required to do this.

That is a microphone in front of you.  You are still under oath.  Everyone in this room here has a responsibility to be here.  And the court reporter is over here getting down all of answers.

You are a receptionist.  Where are you employed?

JUROR:  Summit Cancer Care.

THE COURT:  Summit Cancer Care, is that affiliated with a hospital.

JUROR:  All of them actually.  Our doctors go

there.

THE COURT:  Okay.  What does Summit Cancer Care do?

JUROR:  We treat cancer patients, administer chemotherapy.

THE COURT:  Who is the doctor or doctors in charge?

JUROR:  Doctors West, Taylor, Luskey, Robertson, Viola, Lebos.

THE COURT:  What is your job with them?  You are a receptionist.  You answer the telephones and book appointments and so forth.

JUROR:  Check them in, and check them out.  Yes.

THE COURT:  I didn't look.  Are you married?  Yes.

JUROR:  Separated.

THE COURT:  Separated.  What was your husband's occupation, or what is his occupation?

JUROR:  A mechanic.

THE COURT:  By whom is he employed?

JUROR:  Castro Car Care.

THE COURT:  In what location?  Victory Drive, Wilmington Island?

JUROR:  Wilmington Island, uh-uh.

THE COURT:  All right.  Now, how long have you been separated?

JUROR:  About two and a half to three years.

THE COURT:  Okay.  Some member of your family was assaulted.

JUROR:  I was.

THE COURT:  You were.  And when did that occur?

JUROR:  Three years ago.  At our separation.

THE COURT:  Who did that?

JUROR:  David.

THE COURT:  Your husband?

JUROR:  Uh-uh.

THE COURT:  Did you go to court over it?

JUROR:  Oh, yeah.  He did it with a gun.  So, it was big court.

THE COURT:  Oh, boy.  Was he convicted?

JUROR:  Uh-uh.

THE COURT:  Did he serve any time?

JUROR:  A few months.

THE COURT:  A few months.  So, I gather that is the very the turbulent relationship between you and your husband.

JUROR:  Yes.

THE COURT:  Now, Ms. Cox, what is his name?

JUROR:  David.

THE COURT:  David Cox.  Is he a native of Savannah?  Was he born and reared here?

JUROR:  Uh-uh.

THE COURT:  Answer yes or no, if you would.

JUROR:  Yes.

THE COURT:  You understand in this case the defendant is a black male.  He is charged with having killed, murdered a white female.  Would be the fact of the race of the defendant or victim make any difference to you in coming to any decision you are required to make if you are selected to serve on the jury?

JUROR:  No.

THE COURT:  No.  Any question in your mind regarding that?  It makes no difference at all.  Is that correct?

JUROR:  Correct.

THE COURT:  The jury would have to make certain decisions.  Sometimes people can't make decisions, you know. We are trying to make sure that of whoever is selected can make the appropriate decision.

In this case, the decision, first of all, it would be to decide whether the government had convinced you as a fair and impartial person that the defendant was guilty of the crime charged in the indictment.  Now, if he in fact -- if you are convinced that he is guilty, could you vote for the guilty verdict?

JUROR:  Yes.

THE COURT:  And if you have a duty, could you vote to acquit him or not convict him?

JUROR:  Yes.

THE COURT:  Now, if he is convicted, then the jury must decide the punishment.  You understand that.

JUROR:  Uh-uh.

THE COURT:  Answer.

JUROR:  Yes.

THE COURT:  And the punishment is, if he is convicted, either what we refer to as capital punishment or death by execution, or life imprisonment without benefit of parole.  Now, in making that decision, there are some factors that the jury must consider.  If there are aggravating circumstances, the jury may consider those in deciding to use its power to impose the death penalty.  You understand that.  Answer?

JUROR:  Yes.

THE COURT:  Now, if you are convinced that he is guilty and that the death sentence is appropriate sentence, could you vote for the imposition of the death sentence?

JUROR:  Yes.

THE COURT:  If he is guilty, but there's certain circumstances about him or the case or whatever, and you felt that mitigating circumstances would require or should require that the death sentence not be imposed, that he

should be sentenced to life imprisonment without benefit of parole, could you impose that sentence?

JUROR:  No.

THE COURT:  No.  You would automatically vote for the death sentence.  If you found him guilty, then you would vote to execute him and that would be the end of it.  Is that correct?

JUROR:  Yes.  Correct.

THE COURT:  Any questions from the government?

MR. NEWMAN:  Ms. Cox, if the Judge were to instruct you that after the jury find the defendant guilty you are to consider the death sentence and a life sentence, and that's the law, that you should not automatically vote for the death sentence, could you follow the Judge's instructions?

JUROR:  That's hard.

THE COURT:  Take your time.

JUROR:  Yeah.  Yes, because it is the law, it is what the judge says.

THE COURT:  But let's go through.  There is the law.  That is a fair statement.  But now you have written here that you would automatically impose the death penalty.

JUROR:  Right.

THE COURT:  Then you have told Mr. Newman that no, I wouldn't automatically impose it because if the Judge said

that I should consider mitigating circumstances and if the mitigating circumstances justified it, I could vote for life without parole.

Could you just tell us in other words which is the correct answer insofar as you are concerned?

JUROR: I don't believe in life without parole. I hold the same, you know, ideas that it is wasting taxpayers' money. I mean, if you are guilty of a crime, you're guilty of a crime.

THE COURT: And you should be executed?

JUROR: Uh-uh.

THE COURT: Well, there's nothing wrong with that opinion. But I'm going to excuse you. I appreciate, as they do, your candor, your honesty. Do not tell anyone what questions were or what your answers were. And thank you very much, Ms. Cox.

JUROR: Okay. So I don't come back tomorrow?

THE COURT: I don't have to come back. But don't talk to any of those out there.

JUROR: Okay.

[Juror Left the Room.]

MARSHAL: Next is 77, Ms. Hills.

THE COURT: How are you, Ms. Hills?

JUROR: Fine. Thank you.

THE COURT: Ms. Hills, it's getting a little late.

But we're still working, and I appreciate your patience.

JUROR:  You're welcome.

THE COURT:  How long have you lived in Savannah?

JUROR:  All my life.

THE COURT:  You were born in Philadelphia, though, I notice.

JUROR:  Yeah, but I was brought back as a baby.

THE COURT:  And you left town and came south as fast as you could.

JUROR:  Yeah.

THE COURT:  All right.  Now, what is your presence position?

JUROR:  I'm a sales associate at Rich's.

THE COURT:  And how about have you been with Rich's?

JUROR:  It will be four years this month.

THE COURT:  Before that, what you were doing?

JUROR:  I used to do day's work, housework.

THE COURT:  Housework.

JUROR:  Uh-uh.

THE COURT:  Your husband is or what a seaman?

JUROR:  Yes, retired.

THE COURT:  In the Merchant Marine.

JUROR:  Uh-uh.

THE COURT:  You have five children.

JUROR:  Five kids.

THE COURT:  Where do they live?

JUROR:  All in Savannah.

THE COURT:  What kind job or occupations so they have?

JUROR:  My daughter, the oldest one, is working with the cancer, whatever, research.  She is in the lab.  And my oldest son, he is a laborer.  The number three, she work at Savannah Bank.  Number four, she works at the Youth Detention in the food service department.  Number five is a correctional officer.

THE COURT:  Where is the correctional employed?

JUROR:  CCI.

THE COURT:  CCI; right.  You have served on the criminal jury before.

JUROR:  Yes.

THE COURT:  Where was that, over in the state courthouse?

JUROR:  Yes.  But it was a case that was brought from Augusta.

THE COURT:  Right.  Was that a death penalty case?

JUROR:  Yes.

THE COURT:  What was the verdict?

JUROR:  Guilty.

THE COURT:  Guilty.  What was the sentence?

JUROR:  Life without the possibility of parole.

THE COURT:  Now, how long did that case last?

JUROR:  I think we were sequestered from between eight and maybe ten days.

THE COURT:  All right.  Now, you understand that the government has to prove the defendant guilty beyond a reasonable doubt before there can be a conviction.

JUROR:  Right.

THE COURT:  If the government should prove him guilty beyond a reasonable doubt, would you vote for the guilty verdict.

JUROR:  Yes.

THE COURT:  If they did not prove it, if you had a doubt left, would you vote for the verdict of not guilty.

JUROR:  Not guilty, yes.

THE COURT:  Now, the defendant is a black male. The person who is alleged to have been murdered by him was a white female.  Would that make any difference in decision you are call upon to make?

JUROR:  No, because that was almost like the case I was on.

THE COURT:  Right.  In other words, it was a black female accused of --

JUROR:  No, no, a black male and the two that was killed was two females.

THE COURT:  All right.  Now, then if he is found guilty, then the question of punishment is for you to decide.  You said that you could vote for the death penalty under the proper circumstances.  Is that correct?

JUROR:  Yes.

THE COURT:  Now, in deciding whether or not to impose the death penalty, you must look at aggravating and mitigating circumstances.  You said you could vote for the death penalty if you felt it appropriate.

JUROR:  Yes.

THE COURT:  If you felt that life imprisonment was more appropriate, could you vote for that?

JUROR:  Yes.

THE COURT:  Now, in answer to Question 33, you have given somewhat of conflicting answers in 33 and 35.  You say, *if the defendant were found guilty of a capital count, would you automatically vote for the death penalty.*

You said yes.

JUROR:  Yes.  I was a little confused.

THE COURT:  And in Question 35, you said *if the defendant were found guilty of a capital count, would you automatically vote for life imprisonment without the possibility of parole, regardless of the facts and aggravating evidence.*

So you are saying that those you didn't

understand.

JUROR:  Right.  I got a little confused.

THE COURT:  You would listen, and if there were aggravating circumstances, you could and would vote for the death penalty.

JUROR:  Uh-uh.

THE COURT:  But you would not do that automatically.  Is that correct?

JUROR:  Right.

THE COURT:  You would not automatically vote for life imprisonment without the possibility of parole, but you would consider both the aggravating and mitigating circumstances.

JUROR:  Right.

THE COURT:  Mr. Newman, any questions?

MR. NEWMAN:  Ms. Hills, did you serve as the foreperson of that jury?

JUROR:  No, no, no.

THE COURT:  Mr. Darden.

MR. DARDEN:  No, sir.

THE COURT:  Ms. Hills, I'm going to ask you to return tomorrow at 1:00 o'clock.  We will complete hopefully by that time the jury selection.  Now, don't tell anybody the questions I have asked of you or the answers you have made.  You are free to go home.  Have a good evening.  And

give your telephone number.  If we find that we will be late, we'll try to get in touch with you.  But definitely be here at 1:00 o'clock unless you hear from us.

JUROR:  All right.  I will.

[Juror Left the Room.]

MARSHAL:  No. 76, Ms. Fogle.

THE COURT:  Hi, Ms. Fogle.

JUROR:  That's correct.

THE COURT:  You have lived in Chatham County most or all of your life.

JUROR:  Well, since 1990.

THE COURT:  Before that?

JUROR:  Beaufort, South Carolina, and Augusta, Georgia.

THE COURT:  You understand, do you not, that I have to ask you certain questions.  You are still under oath.  That is a microphone in front of you.  And everything is being recorded.

JUROR:  I understand.

THE COURT:  You are a lawyer?

JUROR:  I am.

THE COURT:  You have practice law how many years or been a lawyer how many years?

JUROR:  Since '89.

THE COURT:  '89.  You passed the bar in '88.

JUROR:  '88.

THE COURT:  Are you licensed in any other states other than that Georgia.

JUROR:  Just Georgia.

THE COURT:  You understand, of course, the government, in this case the federal government, has the responsibility to convince a fair and impartial jury that the defendant is guilty beyond a reasonable doubt.

JUROR:  That's correct, I understand.

THE COURT:  And if you are convinced beyond a reasonable doubt of his guilt, would you vote for the his guilt?

JUROR:  Yes.

THE COURT:  If you have a reasonable doubt, would you vote for his acquittal?

JUROR:  I would.

THE COURT:  You have served on state --

JUROR:  That's correct.

THE COURT:  What was the nature of the case?

JUROR:  It was a criminal case.

THE COURT:  Was there a verdict reached?

JUROR:  There was.

THE COURT:  What was the charge?

JUROR:  It was multiple misdemeanors.  I don't even remember.

THE COURT:  What is guilty or not guilty?

JUROR:  Guilty on some; not guilty on others.

THE COURT:  You have had some victims in your family.  Was that you or someone else?

JUROR:  No.  It was a relative.

THE COURT:  Theft, vandalism, kidnapping, and rape.

JUROR:  Vandalism and theft was me.  The kidnapping and rape was a cousin of mine.

THE COURT:  You are a prosecuting attorney in '89 to '95.

JUROR:  Yes, sir.

THE COURT:  You may contributions or work for Safe Shelter.

JUROR:  I do.

THE COURT:  You heard something about this case.

JUROR:  Well, are you referring to Mr. Darden telling me he had been appointed to a death penalty case?

THE COURT:  Yes.

JUROR:  That's right.  But I really -- I don't know anything else about it, except what was told us.

THE COURT:  So, you have no opinion as to guilt or innocence of the defendant.

JUROR:  I do not.  I do not.

THE COURT:  Would you consider yourself a close

friend of Mr. Darden?

JUROR:  No, colleague, but we don't socialize.

THE COURT:  Now, you understand that if the jury find the defendant guilty, then the question of punishment arises.

JUROR:  I do understand that.

THE COURT:  You have no opposition to death penalty imposition in certain cases.

JUROR:  In certain cases.

THE COURT:  Now, in this case, of course, the choice, if the defendant is found guilty would be a death sentence or life imprisonment without possibility of parole. Knowing what you know about the case now, if you felt there was sufficient aggravating circumstances, could you vote for death penalty?

JUROR:  Well, I don't know anything about the case now.  It would have to be a pretty extreme case for me to vote for the death penalty.

THE COURT:  Okay.  You would tend to vote for life imprisonment without benefit of parole.

JUROR:  I would.

THE COURT:  But if you were convinced that the death penalty is indeed the appropriate sentence, you have no -- you could do it.

JUROR:  If I was convinced that it was the

appropriate sentence, I could do it.

THE COURT: Mr. Newman.

MR. NEWMAN: Ms. Fogle, I'm Joe Newman, and this is Will Frentzen.

JUROR: Hi.

MR. NEWMAN: You wrote down in your answer to Question 21 that you *could only impose the death penalty where there was impending threat of violence to me or my family.* A personalized approach to it.

JUROR: Uh-uh. I think it is personalized approach that you have to take to it when you responsible for somebody's life.

MR. NEWMAN: Well, tell me my logic is wrong here. From your answer to that questionnaire, then in any case where your family was not threatened or you were not threatened by some murderous harm inflicted, then you could not impose the death sentence.

JUROR: I'm not mistaken, I think my answer was that I could not be the administrator of death unless my family or myself was threatened. I could not, with good conscience, be the person who threw the switch on the electric chair or gave the lethal injection.

In my opinion, when you sit on a death penalty case, you must be willing to do that or you have not dealt with the moral ramifications.

MR. NEWMAN:  So, then are you in some ways modifying or contradicting the answers you just give Judge Edenfield?

JUROR:  I don't see that they are a contradiction or modification at all.

MR. NEWMAN:  Well, in this case, where obviously the victim was not kin, relative, friend of yours, does that mean you would not consider the imposition of a capital sentence?

JUROR:  I don't know anything about the case.  I don't know the circumstances.

MR. NEWMAN:  I'm not asking you to prejudge it. But this voir dire process allows me to tell you that the victim was not a relative of yours in any way, shape, or fashion.

JUROR:  I think you can tell me that.

MR. NEWMAN:  All right.  So, given that, does that mean that you would not consider a capital sentence if followed that the government had proven beyond a reasonable doubt aggravating circumstances, and Judge Edenfield had instructed you and the other jurors that you should consider the imposition of a death sentence, are you saying that you would not go down that road because of the remoteness and the connection between you and the victim?

JUROR:  I think I might have gotten lost in your

question somewhere.  But I will tell you that if the law is, and the Court instructs me so, to consider aggravating circumstances, and the state proves to me aggravating circumstances that would warrant death, then I could, if so instructed, consider the death penalty, yes.

MR. NEWMAN:  And you will accept what the aggravating circumstances are as defined by the Court, and not by some pre-jury charge notion of what an aggravating circumstance is.  That is, you won't conjure up in your mind what you would consider an aggravating circumstance, but you would accept what Judge Edenfield charges you is an aggravating circumstance.

JUROR:  First of all, let me tell you, I haven't conjured anything in my mind about what an aggravating circumstance is.  It has been a very long thought-out process that has been going on years.

MR. NEWMAN:  So, you have given this matter a lot of thought.

JUROR:  I certainly have, for quite some time, and to be honest, for the last several days, since I came in Monday.

MR. NEWMAN:  Then I will ask you again.  Could you accept Judge Edenfield's definition of what an aggravating circumstance is in the final charge that he gives the jury.

JUROR:  I could accept what an aggravating

circumstance is, of course, yes.

MR. NEWMAN:  And will you agree to be bound by that?

JUROR:  Will I agree to be bound by what the Judge tells me is the law relating to aggravating circumstances, of course, it would be.

THE COURT:  All right.  Ms. Fogle, I'm going ask you to return tomorrow at 1:00 o'clock.  Hopefully, we will get down do the final selection process.

Do not relate to anyone else the questions asked or your responses.  If we see we're running late, I will try to have you contacted.  But do come back at 1:00 o'clock otherwise.

JUROR:  Thank you, Your Honor.

THE COURT:  Thank you.

[Juror Left the Room.]

MARSHAL:  The next one will be 131, William Boswell.

THE COURT:  This is out of order, but I'm making an exception since the juror has got a special request.

Hey, Doctor.  How are you?

JUROR:  Hi, Your Honor.

THE COURT:  The other day I told you that I would need to ask you some questions out the presence of others. I will try to make these brief, but still I have to remind

you that you are under oath.  The court reporter is here.  Everything is being recorded.

You have practice pediatrics.  You are a pediatric surgeon.  You have been in the community how long?

JUROR:  Since 1997.

THE COURT:  Since 1997.  Is your wife employed outside of the home?

JUROR:  No, she isn't.  She is a college student now.  She used to work for BellSouth.

THE COURT:  Where did you receive your MD degree.

JUROR:  The Medical College of Georgia.

THE COURT:  Where were you reared?

JUROR:  I grew up in Savannah.

THE COURT:  This is your first time on the jury, I believe.

JUROR:  Yes, sir, it is.

THE COURT:  I will say I have had to go over to state court any number of time, but I have never made it to the jury box.

JUROR:  I understand.

THE COURT:  Doctor, the defendant is a black male.  The victim was a white female.  Would either of those facts affect in the slightest any decision you are called upon to make in this case?

JUROR:  No.

THE COURT:  The jury will have two very important decisions to make, or more.  But let's discuss these two.  The defendant is accused of murdering the victim, an United States Postal employee, in a post office.  He is presumed to be innocent.  The only way he may be convicted is if the government brings sufficient proof to convince you as fair and impartial person that he indeed committed the crime, and you have no reasonable doubt except that he is the one guilty.  Under those circumstances, could you vote for the verdict of guilty?

JUROR:  Yes, sir.

THE COURT:  If you have a doubt, after hearing all of the evidence, you have a reasonable doubt, could you vote for the verdict of not guilty?

JUROR:  Yes, Your Honor.

THE COURT:  Now, assuming that the defendant is found guilty by all of the jury, unanimously, then another bridge has to be crossed.  That is to decide the appropriate punishment.  In this case, there were two choices, either death, which means execution by the government; or, life imprisonment without possibility of parole.

Now, in making that decision, the jury should consider aggravating circumstances, if any, and those it would be defined by the Court, by me, at the appropriate time in a charge, and mitigating circumstances, that is,

that is something that would dictate against capital punishment.

If he is found guilty, and you are convinced that there were sufficient aggravating circumstances to warrant the death penalty, could you vote for the death penalty.

JUROR: Yes.

THE COURT: If you are convinced that there were mitigating circumstances and that life imprisonment without the possibility of parole was the more appropriate sentence, could you vote for that.

JUROR: Yes.

THE COURT: And you are saying, Doctor, you would automatically vote for death or life, but you would listen to the evidence and instructions of the Court. Is that correct?

JUROR: That is correct.

THE COURT: Now, you note that you read the newspaper report regarding something about the facts.

JUROR: I just remember the newspaper clipping, the little spiel on the news about the woman at the post office.

THE COURT: From that, have you formed any opinion regarding the guilt of the defendant?

JUROR: No.

THE COURT: Are you completely fair and impartial

between the government and the accused?

JUROR:  Yes.

MR. NEWMAN:  No questions, Your Honor.

MR. DARDEN:  No, sir.

THE COURT:  Doctor, you have made a final cut. You've got to be back tomorrow at 1:00 o'clock.

JUROR:  Okay.

THE COURT:  Don't relate the questions asked her or the answers you gave.

JUROR:  Okay.

THE COURT:  If we are running late, I will try to have you called at your office to delay your appearance here.  But unless you hear from us, do come at that point.

JUROR:  Thank you tremendously, sir.

THE COURT:  Thank you.

[Juror Left the Room.]

MARSHAL:  No. 112, James Fielding.

THE COURT:  Mr. Fielding, how are you?

JUROR:  Fine, sir.

THE COURT:  You remember the other day I said that needed to ask you each of you questions out of the presence of the other potential jurors.  You are still under oath. The microphone is there in front of you.  The court reporter is recording all of the answers.  All of the parties here have a right it be here.

If you will answer the questions loud enough so that everyone can hear, I will be grateful.

JUROR:  All right.

THE COURT:  Now, you have lived here how long? When I say here, either Savannah or nearby.

JUROR:  I have lived in Georgia now for about twenty years.

THE COURT:  Okay.  You are married?

JUROR:  Yes, I am.

THE COURT:  Do you have any grown children?

JUROR:  No.  I have one seven and ten.

THE COURT:  All right.  What is your occupation?

JUROR:  Electrician for the Board of Education.

THE COURT:  How long have you been so employed.

JUROR:  Five years.

THE COURT:  Your wife is employed as a paraprofessional.

JUROR:  Yes, sir.

THE COURT:  With the Heard Elementary School.

JUROR:  Yes, sir.

THE COURT:  You served on a civil case.

JUROR:  Yes, sir.

THE COURT:  That was over in the state court?

JUROR:  Yes, sir, state court.

THE COURT:  Did the jury arrive at a verdict?

JUROR:  Yes, we did.

THE COURT:  You had a stolen motorcycle.  You were a victim to that extent.

JUROR:  Yes, sir.

THE COURT:  And you think you heard somebody discuss this case on or about the time that it occurred.

JUROR:  Right.  I'm not sure that it was this particular case, because there was a case out in the county.  And I'm not sure if it was exactly that one.

THE COURT:  But you have formed no opinion regarding the guilt or innocence of the defendant.

JUROR:  No, sir.  No, sir.

THE COURT:  The jury would need to make a decision as to the defendant's guilt, but only after they have heard the evidence.  And the evidence must be produced by the government.  And it must be sufficient to remove all reasonable doubt from the mind of a fair and impartial juror.  Could you vote a verdict of guilty if you were convinced that he was guilty beyond a reasonable doubt?

JUROR:  Yes, sir.

THE COURT:  If you had a reasonable doubt, and even though you thought well, he might be guilty, he probably is guilty, but I've got a reasonable doubt, could you vote for an acquittal.

JUROR:  I don't understand the question.

THE COURT: Okay. I said you've got to be sure he is guilty; I mean, you can't be in doubt about it.

JUROR: Yes, sir. I agree.

THE COURT: You said if you didn't have any doubt, you could vote for a verdict of guilty.

JUROR: Yes, sir.

THE COURT: But if you had a doubt, you wouldn't find him guilty; would you?

JUROR: No, sir.

THE COURT: All right. Now, if you are on the jury and everybody decides that he is guilty, then you've got to decide punishment. You understand that.

JUROR: Uh-uh.

THE COURT: The choices are execution, he would be put to death by the government; or, life imprisonment without the possibility of parole. Now, in making that decision, the law says that you are to look at the circumstances. If there are aggravating circumstances that could result in the death penalty, you should consider those; or, if there are mitigating circumstances, in other words while he is guilty, yet there is some reason to spare his life, because there is something mitigating something that you should consider.

Now, could you follow the instructions and mitigate or aggravate, according to the law and the

evidence?  Let me ask you in another way.

JUROR:  Okay.

THE COURT:  If you find him guilty, would you automatically vote to put him to death?

JUROR:  Yes, sir.

THE COURT:  Okay.  And that is the fixed opinion.

Any questions, Mr. Frentzen or Mr. Newman.

MR. FRENTZEN:  Mr. Fielding, if the Court instructed you that you had to consider mitigating factors, in other words, factors that might make the death penalty inappropriate and a sentence of life imprisonment appropriate, could you consider those in making your decision?

JUROR:  I could, but I wouldn't feel right about it, not nothing the facts, you know, some of the facts already.

MR. FRENTZEN:  Well, as we go into it, the Court is going to tell you -- and I think answered about it before -- that you wouldn't let the facts that you knew from the outside the courtroom affect what you heard in the courtroom.

JUROR:  No.  I'm referring to what I have heard in here, you know, that a party was already killed.

MR. FRENTZEN:  So, you couldn't follow the Court's instructions to consider mitigating factors and consider the

possibility that life imprisonment without parole would be the appropriate punishment?

JUROR:  If I was instructed to.

THE COURT:  Well, if I did instruct you, because I would say that even though he is guilty, it is not automatic that he should be put to death, that you consider whether there was aggravating circumstances sufficient to warrant a death penalty, but you should also consider mitigating evidence to see if life imprisonment without the possibility of parole is more appropriate.

JUROR:  Right.

THE COURT:  Would you follow those instructions?

JUROR:  If you instructed me, yes, I would.

THE COURT:  Assuming that I would instruct you that, or would you say well, I think he did it, and I'm going to sentence him to death?

JUROR:  If he did it and all the evidence showed that he did it, then I'm a firm believer in an eye for an eye, yes.

THE COURT:  Okay.  Now, you have confused us, Mr. Fielding.  I thought I understood you to say to Mr. Frentzen that you are in favor the death penalty.  And that is the law.  There's nothing wrong with that.  But you can't automatically impose the death penalty.  You understand that.

JUROR:  Yes, sir.

THE COURT:  And one answer you gave me is that I would automatically impose it.  Then you gave him an answer well, I would consider everything before I imposed it.  If there were some reason not to impose it, mitigating circumstances, I would vote for life without parole.

JUROR:  Right.

THE COURT:  Could you help us through this in your own words?

JUROR:  Okay.  In my own words, you know, knowing the fact that a person was already killed and the situation in this case, and if the defendant was found guilty, then I think that, you know, the death penalty would be the right thing.

THE COURT:  So you would not consider the other punishment?

JUROR:  Well, life imprisonment, I think there's a lot of life imprisonment now, and it costs the taxpayers, me, and you, and everybody in here a lot of money.

THE COURT:  A lot of people share your opinion.  And certainly I'm not trying to persuade you from it, because that is a justifiable concern.  But Mr. Fielding, I'm going to excuse you.

Don't relate the questions asked or the answers.  Thank you.  We will hopefully work with you on some other

case.  You have a good evening.

JUROR:  All right.  Thank you very much.

[Juror Left the Room.]

MARSHAL:  No. 45, Mark Wolfe.

THE COURT:  How are you, Mr. Wolfe?

JUROR:  Probably like everybody else in the room. It has been a long day.

THE COURT:  It has been a long day.  You recall the other day I told you that I would have to ask you questions.

JUROR:  Yes, sir.

THE COURT:  You are under oath.  The microphone is in front of you.  How long have you lived in this area?

JUROR:  I have lived in Richmond Hill for the last six years and in Garden City before that two years.  So, eight total.

THE COURT:  Now, you are a Crew Plan Captain in an aviation company.

JUROR:  Crew chief.

THE COURT:  Yes.  Who are you employed by?

JUROR:  Gulfstream.

THE COURT:  That's right.  I remember.  And you served on a civil case in Ozark, Alabama one time.

JUROR:  Yes, sir.

THE COURT:  Did the jury arrive at a verdict?

JUROR:  No, they settled it.

THE COURT:  Settled it.

JUROR:  Yes, sir.

THE COURT:  All right.  Now, in this case, the defendant is a black male.  The victim, the alleged victim was a white female.  Would those facts make any difference in your decision as to whether he is guilty or what punishment to impose, the race of the parties?

JUROR:  No, sir, not at all.

THE COURT:  Now, the jury has to make all of the important decisions in this case.  And the first one is whether or not the defendant is in fact guilty.  The government is required to produce the evidence, the proof.  And a fair and impartial jury must be convinced beyond a reasonable doubt that he is guilty of the crime alleged in the indictment.

Now, if they prove it beyond a reasonable doubt, could you vote for a verdict of guilty?

JUROR:  Yes, sir.

THE COURT:  If you have a doubt, if you think well, he's probably guilty, but I'm not certain, could you vote to acquit him?

JUROR:  Yes, sir.

THE COURT:  A vote of not guilty.  Now, if the jury is convinced and you return a verdict of guilty, then

the question of punishment arises.  In this case, there are two choices, death, which means he will be publicly executed or executed by the government, or life imprisonment without possibility of parole.

Now, in making that decision, the jury should look at all of the evidence.  And if there are aggravating circumstances, they may consider the death penalty.  Could you consider the death penalty in this case?

JUROR:  If proven guilty?

THE COURT:  Yes.

JUROR:  Yes, I can.

THE COURT:  If you are convinced that life imprisonment without benefit of parole, there were mitigating circumstances that make that the best choice, could you vote for that?

JUROR:  Yes, I can.

THE COURT:  Is there any question or answer that you would change if you had to change this again, this questionnaire.  As far as you can remember, you got it?  You don't have any changes?

JUROR:  No, sir, I do not.

THE COURT:  Is there anything in your background that this Court and the parties need to know that has been told that you are aware of?

JUROR:  Not that I am aware of.

MR. DARDEN:  No, sir.

THE COURT:  Mr. Wolfe, you have been selected for the short list.  Be back tomorrow at 1:00 o'clock. Hopefully, we will get the selection process and will begin the trial.

Do not relate the questions I have asked of you, or the answers you made.  Don't have any discussions.  If we are running late, we will try to get in touch with you and tell you to back it up a while.

Have a good evening.

JUROR:  Thank you.

[Juror Left the Room.]

MARSHAL:  218, Ms. Stevens.

THE COURT:  Hey, how are you, Ms. Stevens.

JUROR:  All right.

THE COURT:  Ms. Stevens, you live here in Savannah, and you've lived here most of your life; have you not?

JUROR:  Uh-uh, yeah.

THE COURT:  That is the microphone.  If you will talk into it, this lady over here is a reporter.  She's recording everything that is said.

JUROR:  Okay.

THE COURT:  And all of these people want to hear your answer also.  I told you the other day that you would

be under oath and you are still under oath.

JUROR: Right.

THE COURT: These questions have to be asked out of the presence of the other people. The defendant is a black male. The victim was a white female. In making your decision in this case as to his guilt or the proper punishment, would the race of the defendant or the race of the victim make any difference at all in any decision you are called upon to make?

JUROR: No.

THE COURT: All right. Now, you are employed by Good Will.

JUROR: Yes.

THE COURT: You have been employed by McDonald's, Church's, and Hardees in the past.

JUROR: Yes.

THE COURT: Now, you have a husband, and he is employed by Georgia Ports Temporary Service.

JUROR: Right.

THE COURT: This is your first experience with the jury.

JUROR: Right.

THE COURT: Your daughter's father stole something about six years ago.

JUROR: Yeah, he did.

THE COURT:  Did you have any resentment at the law?  Did you feel he was treated unfairly?

JUROR:  No.  I mean, I felt like if he did it, you know, he deserved.

THE COURT:  Right.  Your father's brother-in-law --

JUROR:  He is a police officer.  I don't know if he is a lieutenant or what.

THE COURT:  Down in Darien, Georgia.

JUROR:  Yes, for Darien, Georgia.

THE COURT:  All right.  And you didn't know anything about this case before you got here.

JUROR:  Huh-uh.

THE COURT:  You say that in answer to Question 29, help me through this.  You say you oppose the death penalty.  But I believe you explained that you really don't oppose the death penalty; or, do you?

JUROR:  Well, I really, I really don't.  But, you know, I kind of look at it like it is according to the crime that you did, you know.  And I mean, I feel like yeah, you should.  But, you know, it is just according to the, you know, the crime that it is that you did.

But it's according to the evidence and stuff, you know, if it points to you or whatever.

THE COURT:  Okay.  Now, the jury must decide

whether or not the defendant did commit the crime.  You understand that.

JUROR:  Uh-uh.

THE COURT:  Answer yes or no, if you would.

JUROR:  Yes.

THE COURT:  The government must bring witnesses in there to prove or through confession or whatever that he in fact did commit the crime.  You understand that.

JUROR:  Yes.

THE COURT:  Now, if you are convinced that he did commit the crime, could you vote a verdict of guilty.

JUROR:  Yes.

THE COURT:  If you are not convinced, could you vote a verdict of not guilty?

JUROR:  Yes.

THE COURT:  Now, if you and the other members of the jury were convinced that he did commit the crime, you have to decide the punishment.  You understand that.

JUROR:  Uh-uh, yes.

THE COURT:  Now, the punishment is either capital punishment, which means death.  He would be executed.  And if the facts and circumstances justified that, could you vote for the death penalty?

JUROR:  Yes.

THE COURT:  If you decided that even though he was

guilty, but there were certain mitigating evidence that would justify sparing his life, even he was guilty, could you vote for him to receive life imprisonment without parole?

JUROR:  Yes.

THE COURT:  So you would not automatically vote for life or death.  But you would listen to the evidence and the instructions that I will give you.  Is that correct?

JUROR:  Yes.

THE COURT:  Does the government have any questions?

MR. FRENTZEN:  No, sir.

THE COURT:  Mr. Darden.

MR. DARDEN:  Yes, sir.  Ms. Stevens, you indicated or the questionnaire that *if it was a huge crime such as killing someone* -- and that is what this case is all about -- *and you are found guilty, then, yes, you need it.* Referring to the death penalty.  Is that your position?

JUROR:  Really on that question, I really didn't you understand it after I did it.  But, you know, just like I was saying, you know, I look at it as if it is according to what crime you did, and whether how the evidence goes to say to point --

MR. DARDEN:  Well, there's no worse crime than murder.

JUROR:  Right.  That's true, too.

MR. DARDEN:  I think you would agree with that.

JUROR:  Yes.  That's true.

MR. DARDEN:  It can't get any worse.

JUROR:  Huh-uh.

MR. DARDEN:  That is a bad as it gets.

JUROR:  Yes.

MR. DARDEN:  So, given the fact that is worse crime you can commit, would you be inclined in that case to give a person the death penalty if they were convicted?

JUROR:  Yes.

MR. DARDEN:  Okay.  Let me ask you this:  Let's just assume for a minute that he is convicted.  Let's just assume for a moment that he killed that woman.  Sitting here today, you've already made your decision that the death penalty is the punishment.  Is that correct?

JUROR:  Yes.

MR. DARDEN:  Okay.  And you are not going to consider anything we tell you about his background or anything.  That doesn't make any difference to you; does it?

JUROR:  Well, I look at it like this.  Regardless of how a person's background is, but if they went and they did this, I mean, they already know in their mind, you know, what they are going to do when they go in there.  So, it's, I mean, as far as their background is, that shouldn't --

MR. DARDEN:  I respect your opinion.  I'm not trying to change your mind.

JUROR:  I understand.

MR. DARDEN:  I'm just to understand what your position is.

JUROR:  Yes, I understand.

MR. DARDEN:  Your position is if he is guilty of murder, you are going to vote for the death penalty.  Is that correct?

JUROR:  Yes.

MR. DARDEN:  Thank you.

THE COURT:  Any question, Mr. Newman or Mr. Frentzen?

MR. NEWMAN:  No questions, Your Honor.

THE COURT:  Ms. Stevens, I appreciate your long, hard day here.  I'm going to excuse you.

JUROR:  Okay.

THE COURT:  Don't tell anybody the questions you were or answers you made.

JUROR:  Okay.

THE COURT:  Thank you very much.

[Juror Left the Room.]

MARSHAL:  No. 21, Ms. Croy.

THE COURT:  Ms. Croy, how are you?

JUROR:  I'm fine.

THE COURT: I know it is getting late.

JUROR: Yes.

THE COURT: I apologize about it. But we're trying to save time in the long run. Ms. Croy, you recall that I told you the other day that I would have to ask you some additional questions out the presence of the other members of the panel. You are under oath. That is the microphone in front of you. This lady over here is recording the answers.

Now, you have lived in this area how long?

JUROR: About thirteen years.

THE COURT: Before that, where did you live?

JUROR: In Tallahassee, Florida.

THE COURT: You are an eighth grade teacher.

JUROR: Yes, sir.

THE COURT: You teach down at Richmond Hill.

JUROR: Uh-uh.

THE COURT: Your husband is Vice President of Coating Systems, Incorporated.

JUROR: That's right.

THE COURT: Where is that business located?

JUROR: In Garden City.

THE COURT: You are on a criminal case down in Tallahassee in a Federal Court.

JUROR: I don't know if it was a Federal Court.

THE COURT:  It doesn't make any difference.

JUROR:  I really don't remember.

THE COURT:  What were the charges; do you recall?

JUROR:  It was drug related.

THE COURT:  Was there one or more defendants?

JUROR:  Only one.

THE COURT:  Was a defendant found guilty or not guilty?

JUROR:  He was found not guilty.

THE COURT:  Was not guilty.  Were you foreman of the jury?

JUROR:  No, sir, I wasn't.

THE COURT:  You say *one of my students last year was a great nephew of the victim.*

JUROR:  Right.

THE COURT:  Now do you know any details of this case?

JUROR:  When he came back -- well, we sent, you know, a card to the family when we learned that it was his aunt.  When he came back to school, you know, we asked him what happened, of course.  And he said that his aunt has murdered in the post office.  And that he really didn't know any details.

THE COURT:  As you sit here, and under your oath, are you completely neutral between the defendant and the

government in this case?

JUROR:  I feel like I am at this point, yes.

THE COURT:  Okay.  Now, the jury, if you are selected, has to make some decisions.  The government has to prove the guilt.  There's a presumption of innocence.  You have already said you understood that and recognized that.  Is that correct?

JUROR:  Yes, sir.

THE COURT:  The government must prove the defendant guilty beyond a reasonable doubt.  You understand that.

JUROR:  Uh-uh.

THE COURT:  If you would answer yes or no.

JUROR:  Yes.

THE COURT:  Now, if the government convinces you of its proof in the courtroom that he is guilty beyond a reasonable doubt, could you vote for a conviction?

JUROR:  Yes, I could.

THE COURT:  If you are not convinced, if you have a reasonable doubt, even though you say well, he is probably guilty, but I'm not convinced beyond a reasonable doubt, could you vote for the acquittal or not guilty?

JUROR:  Yes, I could.

THE COURT:  Could you put aside all of the incidents and discussions you might have heard or in the

classroom, or whatever, and base your decision strictly, only on the evidence that comes forth in the courtroom?

JUROR: Yes, I could do that.

THE COURT: Okay. Now, if the jury unanimously decides that the defendant guilty, then the question of punishment must be decided by the jury. The choices are executing, that is capital punishment, death, or life imprisonment without the benefit of parole.

Now, in deciding whether to execute him, the jury may consider aggravating factors, particularly bad conduct. Or, if there is something in his background or circumstances, the jury may consider there's mitigating circumstances, and that executing him would not be the best sentence, but life imprisonment would be the more appropriate sentence. If there were aggravating circumstances, could you vote for the death penalty?

JUROR: Yes.

THE COURT: If there were mitigating circumstances, could you vote for life imprisonment without parole?

JUROR: Yes.

THE COURT: Would you listen to the evidence and the law that I will define for you, and make your decision upon that and nothing else?

JUROR: Yes, sir.

THE COURT:  Ms. Croy, you may return tomorrow at 1:00 o'clock.  You are on the short list.  And don't discuss your questions that were asked or the answers.  And give us your phone number, and if we are running late, we'll try to get to you to put it off.

JUROR:  Okay.

THE COURT:  I'm sorry to send you out to your car after dark.  But we'll still plugging along for a while.

JUROR:  All right.  Thank you.

THE COURT:  Thank you very much.

[Juror Left the Room.]

MARSHAL:  214, Mr. Maez.

THE COURT:  How are you, Mr. Maez?

JUROR:  Doing fine, sir.

THE COURT:  Well, you were born at Alamogordo.

JUROR:  New Mexico.  Yes, sir.

THE COURT:  I served in White Sands Proving Grounds down there.  That is a hot place.

JUROR:  Very hot.

THE COURT:  I was down there with Werner Von Braun, but we were not exactly living in the same locale, nor was I treated with the same respect.

I am going to pass over certain things and ask you.  You say in Question 29, you have religious and moral, and personal opposition to the death penalty.  Is that

correct?

JUROR:  Yes.

THE COURT:  You said further in explaining, *the Lord said thou shall not kill, so God only can give death.*

Is that true?

JUROR:  That's true.

THE COURT:  You strongly oppose the death penalty as a punishment.

JUROR:  Yes, sir.

THE COURT:  And if the defendant were found guilty, and the evidence and aggravating factors convince you that the death penalty is the appropriate sentence, you could not vote for the death penalty.

JUROR:  No, sir.

THE COURT:  This is a belief that you carry with, and could you change it or deviate --

JUROR:  No, sir.

THE COURT:  -- from it under any circumstances?

JUROR:  No, sir.

THE COURT:  Regardless of the facts, you could not vote to impose the death penalty.

JUROR:  No, sir.

THE COURT:  Any questions?

MR. DARDEN:  Mr. Maez, I notice you are wearing a tie tack.  Are you retired military?

JUROR:  I retired.  I was a Command Sergeant Major right here at Fort Stewart.

MR. DARDEN:  Out of the Army.

JUROR:  Yes, sir.

MR. DARDEN:  You were not a conscientious objector?

JUROR:  I am.  But when it comes to the death, I just can't do it.

MR. DARDEN:  That's all I have.  Thank you.

THE COURT:  Mr. Maez, I'm going to excuse you. Thank for your honesty and your candor.  Don't relate the questions you were asked and the answers you have given.

You are free to leave, and thank you.

JUROR:  Thank you.

[Juror Left the Room.]

MARSHAL:  No. 132, Mr. Polese.

THE COURT:  How are you, Mr. Polese.

JUROR:  Good.

THE COURT:  Sorry it is late.  But we're trying to make some progress.  Mr. Polese, how long have you lived around in the area?

JUROR:  Twelve years.

THE COURT:  You are retired.

JUROR:  Yes.

THE COURT:  What was your occupation before you

retired?

JUROR:  Forest products business, pulp and paper.

THE COURT:  All right.  You were employed by?

JUROR:  Scott Paper Company, a brokerage company in New York.

THE COURT:  You have a son.

JUROR:  Yes.

THE COURT:  What is his occupation?

JUROR:  He is an automobile salesman.

THE COURT:  Where is he employed?

JUROR:  Syracuse, New York.

THE COURT:  You were the victim of a burglary.

JUROR:  Yes.

THE COURT:  You remember something vaguely about this case from the newspaper account.

JUROR:  Vaguely.

THE COURT:  As you sit here or completely fair and impartial, that is neutral between the government and the accused?

JUROR:  Yes, I am.

THE COURT:  Now, the defendant is a black male. The victim was a white female.  Would the race of the victim or the defendant make the slightest difference to you in coming to the decision as to his guilt or not guilt, or as to the appropriate punishment?

JUROR:  No.

THE COURT:  All right.  Now, if you are selected for the jury, the jury must hear the evidence, and make a determination whether the government has proven the defendant guilty beyond a reasonable doubt.  If you are convinced after you hear all of the evidence and the instructions of the Court that the defendant is guilty beyond a reasonable doubt, could you vote for his conviction?

JUROR:  Yes.

THE COURT:  If you are not convinced, that is, you have a reasonable doubt, would you exercise your vote to vote not guilty?

JUROR:  Yes.

THE COURT:  Now, if the jury unanimously finds him guilty, then the question of punishment arises, of course.  The choices are death, that is, he would be executed by the government.  And secondly, would be life imprisonment without benefit of parole.

Now, in coming to that decision, the jury should listen to all of the evidence, consider all of the evidence, listen to any aggravating circumstances, such as records and whatever.  If you are convinced that death is the appropriate sentence, that there are sufficient aggravating circumstances to warrant a death sentence, could you vote to

impose a death sentence?

JUROR:  Yes, I could.

THE COURT:  If you are convinced that he is guilty, but there's something in the background, there is some circumstances that would be a mitigating circumstance, could you vote to spare him death, and give him a life sentence without benefit of parole?

JUROR:  Yes, I could.

THE COURT:  Would you automatically vote for death or life; or, would you listen to the evidence and the law as instructed by the Court in making that decision?

JUROR:  I would listen to the evidence.

THE COURT:  Even though you said you would automatically vote for life imprisonment without the possibility of parole, was that a mistake?  Did you mean to answer that no?

JUROR:  Let me see.

THE COURT:  Yes.

JUROR:  No.  I meant no.

THE COURT:  You meant no.  All right.  Any questions.

MR. FRENTZEN:  No, sir.

MR. DARDEN:  No, sir.

THE COURT:  Mr. Polese, we're making progress. I'm going to ask you to come back for the short list

tomorrow at 1:00 o'clock.  We hopefully will have finished this and get down to final selection.  Don't tell anyone the questions I have asked of you or the responses you have made.

We'll see you tomorrow at 1:00 o'clock.  If you will give him your phone number, if we are running late, we'll try to get in touch with you.

JUROR:  Thank you.

[Juror Left the Room.]

MARSHAL:  The next one, 210, Mr. Devegter.

THE COURT:  How are you?

JUROR:  Good.  How are you?

THE COURT:  Would you help pronounce your name, Devegter?

JUROR:  Devegter.

THE COURT:  Mr. Devegter, how long lived here? About 22 years or longer than that?

JUROR:  I have lived here all my life.

THE COURT:  All of your life.

JUROR:  Right.

THE COURT:  What is occupation?

JUROR:  I own and operate a cleaning company here in Savannah.

THE COURT:  What is the name of that?

JUROR:  Treat Your Feet.

THE COURT:  Treat Your Feet.  What kind of cleaning?

JUROR:  It is carpet cleaning.

THE COURT:  Okay.  I thought you were talking about dry cleaning.

JUROR:  No, sir.  Interior maintenance of buildings and apartments.

THE COURT:  Sure.  You have three children, 29, 26, and 16.  Are the two older ones employed?

JUROR:  My oldest son is in the Coast Guard in Puerto Rico, and my oldest daughter works for her father-in-law.

THE COURT:  You have never served on a jury before.

JUROR:  No, sir.

THE COURT:  The jury must decide the guilt or innocence of the defendant.  The defendant is presumed to be innocent.  I explained this the other day.

JUROR:  Yes, sir.

THE COURT:  The government has the obligation or responsibility to prove the guilt of the defendant beyond a reasonable doubt to the satisfaction of a fair and impartial jury.  If after listening to all of the evidence and the instructions the Court charges you are convinced that he is indeed guilty, and he is guilty beyond a reasonable doubt,

could you vote or return a verdict of guilty?

JUROR: Yes, sir I believe I could.

THE COURT: If you are not convinced, and you say well, he might be guilty, but I'm not totally convinced, I'm not sure, I have a reasonable doubt, could you vote for a verdict of acquittal in that case, a not guilty?

JUROR: I'm really not sure about that.

THE COURT: Listen to the question again.

JUROR: Okay. Ask me that again.

THE COURT: You said if you were convinced he was guilty, you could return a verdict of guilty.

JUROR: Okay.

THE COURT: If you are not convinced that he is guilty, could you vote for a verdict of not guilty?

JUROR: Yes, sir, I could.

THE COURT: I thought you misunderstood it. You had a son-in-law who was murdered in July of 2001 during a drug sale.

JUROR: Yes, sir.

THE COURT: Where did that occurred?

JUROR: It occurred on the east side of Savannah, off of Pennsylvania Avenue.

THE COURT: Has anyone ever been arrested for that?

JUROR: Yes, sir, the day of his funeral, a 16

year-old was arrested for the crime.

THE COURT:  Was your son-in-law a participant or a just bystander; or, do you know?

JUROR:  No, sir.  He was a participant.  He went there to buy drugs.

THE COURT:  All right.  And now, if the jury unanimously finds this defendant guilty, then the question of punishment must come up.  You understand that?

JUROR:  Yes, sir.

THE COURT:  The choices are two:  Death, which means he would be executed by the government, or life imprisonment without the possibility of parole.  Now, neither one of those are automatic.  The jury must decide those issues based upon my charge, that is the instructions of the law, and on the evidence.  There may be certain aggravating circumstances that the jury should consider and decide that there were aggravating circumstances sufficient to justify the death penalty.

If you were certain or sure that were aggravating circumstances, could you vote for a death penalty?

JUROR:  I believe so.  Yes, sir.

THE COURT:  If you were not, if you thought well, he's guilty, but there are certain things about this case that mitigate, and we should not put him to death, but sentence him to life imprisonment, could you do that?

JUROR:  Yes, sir.

THE COURT:  Now, you saw something on TV about this.  But you said the other day that would not affect your judgment or your decision, or influence your decision in any way.  Is that correct?

JUROR:  Actually I read something in the newspaper after it happened, and on TV news.  Yes, sir.

THE COURT:  But you could make your decision --

JUROR:  Yes, sir.

THE COURT:  -- in the courtroom on the evidence and on that alone.  Is that correct?

JUROR:  Yes, sir.

THE COURT:  Now, when you said *could you vote for the death penalty,* you put no, but that was mistake; wasn't it.

JUROR:  Yes, sir.

THE COURT:  You meant yes.

JUROR:  Yes, sir, I meant yes.  Yes, sir.

THE COURT:  Right.  So, under the evidence, if you felt like a death sentence was justified, you said you probably.  Could you vote for it?

JUROR:  I believe I could.  Yes, sir.

THE COURT:  Do you wish to ask?

MR. NEWMAN:  Yes, Your Honor, briefly.

Mr. Devegter, I have a copy of the letter that you

wrote to Judge Edenfield dated today in which you mentioned the circumstances of your brother, William.

JUROR: Right. That's correct.

MR. NEWMAN: He was prosecuted by the state.

JUROR: Yes, sir, I believe so.

MR. NEWMAN: Chatham County DA's office.

JUROR: No, sir, that was in Atlanta, Georgia.

MR. NEWMAN: Okay. Do you have any feelings that he was unfairly treated in any way?

JUROR: No, sir. No, sir, I do not.

MR. NEWMAN: Are you a relative in anyway to Mike Devegter?

JUROR: Yes, sir. That is my brother.

MR. NEWMAN: You know he was prosecuted by the U.S. Attorney's office in Atlanta.

JUROR: Yes, sir.

MR. NEWMAN: Has your brother, Mike, talked to you about his prosecution in Atlanta?

JUROR: Some. Yes, sir.

MR. NEWMAN: Would it be fair to say that he felt that the prosecuting authorities there maybe went overboard in their prosecution of him?

JUROR: Yes, I think there has been some mixed feelings there. Yes, sir.

MR. NEWMAN: On those mixed feelings, would you

say you have taken any of his view of that yourself in that you think maybe the U.S. Attorney's office up did there go a bit too far in --

JUROR:  A lot of that information was not shared with me by him.  So, I mean, I'm really in the dark on exactly what -- the only thing I know about what happened with him in that case is what I read in the paper.  And he shared some of it, you know, some of it by telling me that you know, he was innocent, in other words -- in so many words.

MR. NEWMAN:  All right.

JUROR:  But no details of the case.

THE COURT:  Mr. Devegter, under your oath here today, you said that if the evidence justified it, you could vote for a guilty sentence -- a guilty verdict, rather.

JUROR:  If the evidence justified it, yes, sir.

THE COURT:  If the evidence justifies, you could vote for the death penalty.

JUROR:  Yes, sir.

THE COURT:  But you would not automatically vote for the death penalty.  You would consider all of the evidence, and mitigating and the aggravating circumstances and the Court's instructions.

JUROR:  Right.  Absolutely.  Yes, sir.

MR. DARDEN:  Mr. Devegter, are you aware that I

represent the young man charged in the murder of your son-in-law?

JUROR:  No, sir, I didn't know that.

MR. DARDEN:  That's all I have.

THE COURT:  Knowing that, would that make any difference in this case?

JUROR:  No, sir, none whatsoever.

THE COURT:  Mr. Newman, did I interrupt you?

MR. NEWMAN:  No, Your Honor.

THE COURT:  Mr. Devegter, I'm asking you to come back tomorrow at 1:00 o'clock.

MR. DARDEN:  Judge, may we be heard jointly?

MR. NEWMAN:  After Mr. Devegter leaves.

THE COURT:  Yes.  Do not reveal any questions that were asked of you, or your answer.

Would you wait out with the marshal just a minute, while hear from these people?

JUROR:  Yes, sir.  Certainly.

[Juror Left the Room.]

MR. DARDEN:  Judge, I think we have agreed that we would both ask that he be excused.  I feel very uncomfortable being in this position.  I understand that he may not have ill feelings toward me or anything.  But I think it is an unfair situation --

THE COURT:  You know, under *Batson*, it is not

that.  The Court has to ensure that the juror has a right to serve.

MR. DARDEN:  I understand that.

THE COURT:  But I certainly when both parties are of the same mind, then I want to listen very carefully.

MR. DARDEN:  Yes, sir.  And I think he is pretty much in the same position I am.  His office in Atlanta is prosecuting his brother.

MR. NEWMAN:  Has prosecuted.

THE COURT:  Yes, Mr. Newman.

MR. NEWMAN:  Your Honor, I feel as uncomfortable or more uncomfortable than Mr. Darden does with his relationship to his brother.  This was a high profile case in Atlanta.  The U.S. Attorney's Office appealed to the Eleventh Circuit the trial judge's reinstatement of a dismissed count I believe that the magistrate had recommended dismissal of.  And I think there maybe some strong family ill feelings toward the federal government of which we are a part.

We've already got, by my count, 40 qualified.  We only need, I think, about 20 more.

THE COURT:  Well, I wanted to qualified 25 so that if somebody gets sick out there tomorrow that I have got more than that.  I have told them to return at 8:30.  And I meant to tell you accordingly.  I think things have gone

reasonably well, and expeditiously. And I think by 12:30 or 1:00 o'clock, we will have a chance to select.

Now, fellows, I will tell you this. You've got more information. You can consolidate your notes. But I'm going to push you tomorrow once we get them seated. I'm going to put you under a very tight limitation. I'm going to use the alternate way to strike. The last four people will be the alternates.

So tonight and in the morning is your time to ponder your strikes.

MR. NEWMAN: Yes, sir.

THE COURT: Does anybody have anything before we leave?

Tell Mr. Devegter to come back?

MARSHAL: All right, sir. We have 36 tomorrow.

THE COURT: Okay. I think had better get another 20 in here at 10:30, Mr. Clerk. With 40 qualified, we ought to get another 25 out of it. We ought to qualify 25 out of 50.

MARSHAL: They are to call the code-a-phone.

THE COURT: That's right. When they call, tell the first 20 to come in. I don't know that we will need them. But I certainly don't want to give out of jurors. I want to get to the end of it.

Any other observations, motions?

MR. DARDEN:  Is it my understanding from what the Court has indicated that after we get 65, I believe you said you wanted a few extra, that we will immediately go into the strikes?

THE COURT:  Right.

MR. DARDEN:  Would the Court consider -- I think we will have 65 by 12 or 1:00 o'clock.  Would the Court consider at that time taking a lunch break, and then coming back?

THE COURT:  Yes.  But it won't be a southern lunch break.  It will be an Edenfield lunch break, but we will.

MR. DARDEN:  Is that anything like the Nangle lunch break?

THE COURT:  I'm curious to know what it is.

MR. DARDEN:  I don't think -- I'm not going to say anything.

THE COURT:  I appreciate it.  I have not denied your motion about this fellow, this last one, Devegter.  I'm leaning toward accepting your motion.  But I want to sleep on it.

MR. DARDEN:  All right, sir.

MARSHAL:  All rise.

                    [*Proceeding adjourned for the day.*]

STATE OF GEORGIA,

CHATHAM COUNTY.

C E R T I F I C A T E


I, Lora H. Carter, do hereby certify that the above and foregoing pages is a true, complete, and accurate transcript of the evidence and proceedings adduced in the trial of the captioned matter.


This the 11th day of December, 2003.


_____

Lora H. Carter


*U.S. Court Reporter*
*Southern District of Georgia*
*Savannah Division*
*P.O. Box 8552*
*Savannah, GA  31412*
*(912)650-4065*