# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| **MEIER JASON BROWN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **4:07-CV-00085** |
| | ) | **4:03-CR-001** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PRE-HEARING MEMORANDUM

At the show cause hearing, Jeffrey Ertel will urge the court not to find him in willful contempt of court.   He will not deny that he contacted jurors who served in the Meier Brown case and supervised others who contacted jurors.  He will not deny that this violates the Local Rules of the Southern District.  He did not contact jurors in defiance of the Rule; he contacted jurors in ignorance of the Rule.

## Background of Jeffrey Ertel

In 1979, Jeff graduated with honors from the State University College of New York at Buffalo with a Bachelors degree in Criminal Justice.  He was employed as a Deputy Sheriff with the Erie County Sheriff's Department and attained the rank of Sergeant in 1985. In 1989, he took a leave of absence from the Sheriff's Department to attend law School.

1

In 1992, Jeff graduated from the State University of New York at Buffalo School of Law, Magna Cum Laude and immediately began working with the Georgia Appellate Practice and Educational Resource Center litigating capital post-conviction proceedings.  He remained there until September, 1995 when the Resource Center lost federal funding, at which time he was employed as a staff attorney with the Fulton County Public Defender.  Shortly thereafter, in December of 1995, Jeff took the position of staff attorney with the Georgia Multi-County Public Defender litigating capital trial and appeal cases.

In October of 1996, Jeff was hired as a staff attorney with the Federal Defender Program, Inc., of the Northern District of Georgia where, in addition to maintaining a capital habeas corpus practice, he also represented criminal defendants charged with federal crimes.  In 1998, Jeff took a brief leave of absence from the Federal Defender Program to assume the role of Interim Executive Director of the Georgia Resource Center, which is devoted to post-conviction death penalty litigation.  In 1999, after being diagnosed with Non-Hodgkin's Lymphoma, Jeff left the Resource Center and returned to a staff attorney position with the Federal Defender Program.

In February, 2006, Jeff was named to a supervisory position and assumed the responsibility of Senior Litigation Attorney with the Federal Defender Program, both positions he holds to this day.

## **Jeffrey Ertel Assumes Responsibility for Brown's Collateral Litigation**

In 2004, Jeffrey Ertel and undersigned counsel, Don Samuel, were appointed by the court to represent Meier Jason Brown in the direct appeal of his conviction of robbery and murder. Though Samuel had previously appeared in the Southern District in several trials, Ertel had never previously appeared in the district. Because the appeal was filed in the Eleventh Circuit and only limited "record-perfecting" matters were handled in the Southern District, local counsel was not retained or appointed in connection with the appeal.

Ultimately, the appeal resulted in the judgment of the lower court being affirmed. *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006). A petition for certiorari to the United States Supreme Court was denied. 127 S. Ct. 1149 (2007).

Once the proceedings on direct appeal were concluded this court appointed Ertel to represent Brown in the collateral proceedings. (Doc. # 327, # 328).

The job of counsel in a capital § 2255 proceeding is simple. No stone can be left unturned. There are no "second chances." Monday morning quarterbacking of counsel in a § 2255 case cannot be tolerated, because there is no further review of the post-conviction litigation. Indeed, the principle of exhaustion, the prohibition on filing successive habeas petitions, and the other prudential limitations on the

right to pursue remedies after direct appeal mandate that at each stage of the proceedings, *everything* that can be done must be done.[1]

Jeff Ertel's background and experience left no doubt in his mind that at each stage of the collateral proceedings, every conceivable basis for relief had to be investigated and pursued.   As this court is aware, the issues that give rise to habeas relief are often not found in the record of the trial.  Juror misconduct issues, *Brady* claims, ineffective assistance of counsel claims based on a failure to adequately investigate mitigation evidence, or evidence that would generate a reasonable doubt of the defendant's guilt , and other defects in the trial process  – defects that do not appear on the face of the trial record – provide the most fertile grounds for relief.

Cases in which death sentences, or other convictions, have been set aside (or further inquiry has been mandated by an appellate court) after the court has

---

[1] 28 U.S.C. § 2254; 28 U.S.C. § 2255; *Rhines v. Weber*, 544 U.S. 269 (2005); *Bell v. Cone*, 535 U.S. 685 (2002); *United States v. Frady*, 456 U.S. 152 (1982) (§2254's procedural default rules developed in *Wainwright v. Sykes*, 433 U.S. 72 (1977), apply with equal force to proceedings under 28 U.S.C. §2255); *McCleskey v. Zant*, 499 U.S. 467 (1991); *Dugan v. United States,* 18 F.3d 460, 464 (7th Cir.1994) ("Generally, a defendant challenging a ruling by the district court must raise his claim at the 'earliest feasible opportunity,' or risk waiving any later occasion to protest."); *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) (must develop all facts at earliest possible opportunity and failing to do so will only be excused upon establishing cause and prejudice or miscarriage of justice); 28 U.S.C. §2255 (h) (successive or subsequent application shall not be granted unless newly discovered evidence would establish by clear and convincing evidence that no reasonable factfinder would have found the applicant guilty of the offense).

discovered that some misconduct, or outside influence affected the deliberations are hardly anomalies. *See, e.g., Remmer v. United States*, 347 U.S. 227 (1954); *United States v. Heller*, 785 F.2d 1524 (11th Cir. 1986); *United States v. Rosenthal*, 454 F.3d 943 (9th Cir. 2003); *Wisehart v. Davis*, 408 F.3d 321 (7th Cir. 2005); *United States v. Rutherford*, 371 F.3d 634 (9th Cir. 2004); *Williams v. Price*, 343 F.3d 223 (3rd Cir. 2003); *United States v. Tucker*, 137 F.3d 1016 (8th Cir. 1998); *United States v. Keating*, 147 F.3d 895 (9th Cir. 1998); *Gaines v. State*, 274 Ga. App. 575 (2005); *Hammock v. State*, 277 Ga. 612 (2004); *Turpin v. Todd*, 271 Ga. 386 (1999); *Steele v. State*, 216 Ga. App. 276 (1995); *Bobo v. State*, 254 Ga. 146 (1985); *Moore v. State*, 172 Ga. App. 844 (1984); *Watkins v. State*, 237 Ga. 678 (1976).

Jeff Ertel did not realize that the Southern District Local Rules barred attorney contact with jurors. The reason why he was unaware of the prohibition is simple: he did not review the local rules – all of the local rules – with sufficient care. From the privileged perspective of the present, he should have reviewed the civil rules with greater care. Lawyers make mistakes.[2] Sometimes, as we get older and more experienced, we come to believe that we know the pertinent rules and don't need to check them every time we go to court. Occasionally, we cite cases

---

[2] As observed by one authority, whose credentials to make the observation are beyond cavil, "[M]any a lawyer overlooks something while representing clients before [the Southern District of Georgia] Court . . ." *Brown v. United States*, 4:07-cv-00085-BAE-GRS, Doc. # 72, page 2 (September 15, 2008).

that have been overruled and we fail to properly sherpardize the case before citing it in court. Citing cases without properly shepardizing the decision is negligent and disserves justice, but we do not hold attorneys in criminal contempt for such negligent behavior.  Judges make mistakes, too.  Sometimes they rely on a prosecutor's errant argument and commit reversible error.  It is not intentional.  It just happens now and again.

In the State of Georgia, and in habeas cases pursued in state court (the courts where Jeff learned the skill of post conviction advocacy), contacting jurors post trial is not just permissible.  Contacting jurors following a state court conviction is standard operating procedure.[3]  In fact, the AGA Guidelines for Death Penalty Counsel expressly require post-conviction counsel to investigate matters involving juror misconduct. Guideline 10.15.1 of the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (the ABA Guidelines"), titled "Duties of Post-Conviction Counsel", requires that post-conviction counsel "seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense representation" and to "continue an aggressive investigation of all aspects of the case." The Commentary to Guideline 10.15.1 instructs that "collateral counsel cannot rely on the previously compiled record but must conduct

---

[3] EXHIBIT "A":  Affidavits of John R. Martin; Brian Steel; Mildred Geckler Dunn, Robert H. Citronberg.

a thorough, independent investigation", because "the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case." "Jury Misconduct" is one of the specific non-record areas which post-conviction counsel has a duty to investigate. (ABA Guidelines Commentary, p. 1085-1086).[4] The United States Supreme Court has repeatedly relied upon the ABA Guidelines as a guide in judging whether counsel has provided competent representation in capital cases. *See, Wiggins v. Smith*, 539 U.S. 510, 522-525 (2003); *Williams v. Taylor*, 529 U.S. 362, 369 (2000); *Florida v. Nixon*, 543 U.S. 175, 191 & fn. 6 (2004); *Rompilla v. Beard*, 545 U.S. 374, 387 & fn. 7 (2005).

In federal courts, contacting jurors is not universally prohibited. In the Eleventh Circuit, for example, neither the local rules for the Northern District of Alabama nor the Middle District of Georgia, have a limitation on post-trial contacts. There is no prohibition in the District of South Carolina. The Northern District of Georgia, which currently prohibits post-trial contacts, enacted this rule in 2004; the Rule is located in the Criminal Local Rules.[5] Prior to 2004, contacting jurors post-trial was routine among the defense bar.[6]

---

[4]  EXHIBIT "B."
[5]  EXHIBIT "C"
[6]  EXHIBIT "D": Affidavits of Howard J. Manchel; Leigh Burton Finlayson; Mildred Geckler Dunn.

In an unscientific survey undertaken by counsel, we learned that numerous federal courts – and the vast majority of state courts – impose no restriction on counsel's right to contact and interview jurors post-trial.[7]

In short, contacting jurors after trial is not a *malum in se* offense; it is *malum prohibitum*.

Ertel does not contend that a prohibition on contacting jurors represents either a Sixth Amendment, or First Amendment violation. *United States v. Hooshmand*, 931 F.3d 725 (11th Cir. 1991); *United States v. Cuthel*, 903 F.2d 1381

---

[7] According to counsel who were contacted in other jurisdictions, there is no prohibition by local rule, or otherwise in any of the four U.S. Districts in California if the inquiry focuses on extraneous information that was brought to the jurors' attention, or some other misconduct issue that could lead to a post-trial motion for new trial. *But see Harris Corp v Independent Technologies*, 2002 WL 31006045 (C.D. Cal 2002). *See also United States v. Cleveland*, 128 F.3d 267 (5th Cir. 1997) (holding that press contacting jurors in that case was permissible, depending on what was being asked; only interrogation about the actual deliberative process were "off limits"). There is no prohibition in the Northern District of Alabama, except that jurors may not be contacted during their service (Local Rule 47.1 (N.D.Ala)). There is no prohibition in the Southern District of Ohio. According to a U.S. District Court judge in the Southern District of New York, there is no local rule in the district courts of New York that prohibit contacting jurors post-trial, but the Second Circuit appellate court has decided that such contacts are not permitted. *United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) (holding that opposing counsel and the court should be given "notice" before a party interviews jurors). There is no rule in the District Court of New Mexico. In undersigned counsel's brief informal survey of attorneys, we were able to find a rule in only one or two states that prohibits post-trial interviews of jurors. In Florida, according to one respondent, there is no prohibition in the Northern District of Florida federal district court rules that bars contacting jurors; but the local rules of the federal court require compliance with all of the State Bar Rules in Florida and contacting jurors after trial is prohibited by the State Bar rules.

(11th Cir. 1990); *United States v. Venske*, 296 F.3d 1284 (11th Cir. 2002).  Rather

he argues that some prohibitions – though constitutional – are nevertheless only

prohibitions because the legislature, regulators, or judges declare them to be such,

not because they are absolutely necessary to the orderly administration of justice

and therefore obvious to any lawyer.  In deciding whether "ignorance of the law" is

a viable defense, the fact that the law is not *malum in se* generally leads to the

conclusion that ignorance *is* a defense.  *Ratzlaf v. United States*, 510 U.S. 135

(1994); *Cheek v. United States*, 498 U.S. 192 (1991); *United States v. Grigsby*, 111

F.3d 806 (11th Cir. 1997).

Even "recklessness" is not a sufficient culpable state of mind with regard to

certain offenses. *United States v. Griffin*, 524 F.3d 71 (1st Cir. 2008).  But even if

recklessness were a basis for a finding of criminal contempt, Ertel's conduct does

not qualify as "reckless."  Recklessness, as opposed to negligence (when the issue

focuses on the person's state of mind), requires knowledge on the part of the

defendant of a high degree of likelihood of the fact about which he claims

ignorance. Recklessness, as a surrogate for actual knowledge, in other words,

requires proof akin to "deliberate ignorance."  Thus, if Ertel was actually aware

that there was a rule that focused on post-trial juror contacts, but intentionally

decided not to read the rule in order to validate a claim of actual ignorance, he

would be charged with "deliberate ignorance" and therefore recklessness.  But that

is not what happened in this case.  Ertel did not consciously avoid reading the applicable rule *in order to avoid knowledge* of the prohibited conduct.  He failed to read the rule because he was unaware that it existed and his initial examination of the criminal rules did not reveal any applicable prohibition.  *See United States v. Puche*, 350 F.3d 1137 (11th Cir. 2003) ("If a party has his suspicion aroused but then *deliberately omits to make further enquiries*, because he wishes to remain in ignorance, he is deemed to have knowledge"); *United States v. Alston-Graves*, 435 F.3d 331 (D. C. Cir. 2006) (deliberate ignorance instruction should only be given in cases where there is proof of an *affirmative effort to remain ignorant* in order to have a defense at trial); *United States v. Mendoza-Medina*, 346 F.3d 121 (5th Cir. 2003).

In this court's order setting the matter down for a hearing, the court noted that "recklessness" may be sufficient to establish the requisite mens rea for criminal contempt. (Doc. # 353, p. 5, n.3).  In support of that suggestion the court cited *Safeco Ins. Co. of America v. Burr*, 127 S.Ct. 2201, 2208 (2007).  That case, however, focused on the concept of "recklessness" in establishing *civil* liability for violating a statutory duty, not for establishing criminal culpablity.  In fact, the Court expressly rejected the notion that recklessness was equivalent to willfulness in the criminal context:

10

It is different in the criminal law. When the term "willful" or "willfully" has been used in a criminal statute, we have regularly read the modifier as limiting liability to knowing violations. See *Ratzlaf v. United States,* 510 U.S. 135, 137, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994); *Bryan v. United States,* 524 U.S. 184, 191-192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); *Cheek v. United States,* 498 U.S. 192, 200-201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). This reading of the term, however, is tailored to the criminal law, where it is characteristically used to require a criminal intent beyond the purpose otherwise required for guilt, *Ratzlaf, supra,* at 136-137, 114 S.Ct. 655; or an additional " 'bad purpose,' " *Bryan, supra,* at 191, 118 S.Ct. 1939; or specific intent to violate a known legal duty created by highly technical statutes, *Cheek, supra,* at 200-201, 111 S.Ct. 604. Thus we have consistently held that a defendant cannot harbor such criminal intent unless he "acted with knowledge that his conduct was unlawful." *Bryan, supra,* at 193, 118 S.Ct. 1939. Civil use of the term, however, typically presents neither the textual nor the substantive reasons for pegging the threshold of liability at knowledge of wrongdoing. Cf. *Farmer v. Brennan,* 511 U.S. 825, 836-837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (contrasting the different uses of the term "recklessness" in civil and criminal contexts).

*Safeco Ins. Co. of America v. Burr*, 127 S. Ct. 2201, 2208, n.9 (2007).[8]

Other prohibitions that are found in certain courts' local rules, such as the admonition that lying to the court is not permitted,[9] are so obvious – *malum in se* – that any claim that an attorney (or someone posing as an attorney) was unaware of the prohibition will certainly fall on deaf ears.  Neither deliberate ignorance, nor justifiable actual ignorance qualifies as a defense when the prohibition is so obvious, that failure to read the rule is simply irrelevant to a finding of guilt.

## The Court Should Conclude That Ertel Did Not Act in Willful Contempt

The following factors should lead the court to conclude that Jeffrey Ertel did not act in willful contempt of the court:

1.  The Local Rule that expressly prohibits contacting jurors post-trial is contained in this court's Civil Local Rules.  Local Rule 83.8.  The Title of

---

[8]  The term "recklessness" sometimes refers to a defendant's conduct as it sheds light on his *intent* and sometimes refers to a defendant's conduct as it sheds light on his *knowledge*.  Thus, one can claim that he did not intend to kill anybody, and thus is not guilty of murder, despite the fact that he drove his car at 90 mph through a crowded parking lot.  That type of behavior is labeled "reckless" and satisfies the intent element of the crime, despite the claimed lack of actual intent.  On the other hand, one can claim that he has not read a rule, or not read an injunction and thus had no knowledge of the rule, or the conduct that was enjoined.  In that context, the behavior (failing to read the rule or injunction) is offered as a substitute for actual knowledge.  In this latter context, the principle of "deliberate ignorance" is applicable.

[9]  *United States v. Payne*, 2004 WL 1879993 (N.D. Ill. 2004) (unpublished).

these Rules is Local Rules for Civil Cases and the Administration of the Court.

2. Though the introductory note to the Criminal Local Rules indicates that the criminal local rules are "supplemental in nature" to the civil rules, this introductory language is described in the West Handbook of Local Rules as an "Historical Note."[10]  Though counsel researching the law might be interested in the "history" of a rule – its legislative history – this is not required reading in all cases.  While Ertel does not suggest that the location of the jury contact prohibition in the Civil section absolves him of responsibility for reviewing all of the local rules, the line between "negligence or inadvertence" and "recklessness" should be drawn with this in mind.

In order to find a defendant in contempt of an order or Local Rule, there must be a finding that the Rule is sufficiently clear and specific and that the defendant willfully violated it.  *United States v. Burstyn*, 878 F.2d 1322 (11th Cir. 1989); *In re Brown*, 454 F.2d 999 (D.C. Cir. 1971) (applying rule of clarity and specificity to "standing court rule"); *United States v. Bernadine*, 237 F.3d 1279, 1282, n.2 (11th Cir. 2001) ("Willfullness" is a "deliberate or intended violation" rather than one that is "accidental, inadvertent or

---

[10] EXHIBIT "E": Georgia Court Rules and Procedure – Federal (2008), page 769.

negligent...." *United States v. Baldwin,* 770 F.2d 1550, 1558 (11th Cir.1985)).

3. In the Northern District of Georgia Local Rules, the jury contact prohibition is contained in the criminal local rules. LCrR 47.3 and was enacted in July 2004.[11] Prior to 2004, there was no limitation on post-trial contacts and, in fact, lawyers regularly contacted jurors to determine whether there was any extraneous influence that might have affected their deliberations (and to inquire about the jurors' views of counsel's ability).[12] In the Middle District of Georgia, there is no prohibition on juror contact in the Local Rules, civil or criminal.

4. Jeffrey Ertel obviously did not knowingly violate the rule. After all, he promptly filed an affidavit in court which documented his contact with a juror. Thus, Ertel's actions in contacting jurors was not some clandestine activity which was designed to surreptitiously gain an advantage in the litigation, or take advantage of the adversary. Rather, his effort, as reflected

---

[11] In other districts in the Eleventh Circuit, the prohibition – where one exists – is also contained in the Criminal Local Rules. *See, e.g.,* LCrR, 24.1 (M.D.Ala). In the Southern District of Alabama, there is only one set of Local Rules which explicitly contain both criminal and civil provisions. Similarly, in the Middle District of Florida, there is only one set of local rules and the prohibition on contacting jurors explicitly applies in all criminal cases (Local Rule 5.01(d) (M.D.Fla.).

[12] EXHIBIT "F": Affidavits of Nelson Tyrone, III; Lenny Franco. (See also Affidavits at EXHIBIT "D")

14

in the directions he provided to his staff, was to determine if any basis existed to challenge the integrity of the verdict.[13] What he learned he promptly brought to the court's (and government's) attention.  Ertel was obviously not engaged in an effort secretly to subvert justice, or impair the administration of justice.

5.  Jeffrey Ertel was not trial counsel in this case.  It is not unusual – indeed, it is the norm – that the judge will instruct the jury, at the conclusion of a trial, that they will not be contacted by any lawyers or parties and that if any such contact occurs, the court should be contacted.  Through this admonition, many lawyers learn of the prohibition on contacting jurors post-trial.  Ertel, however, was not trial counsel – and has never tried a case in the Southern District of Georgia – and therefore did not have the benefit of this "on-the-scene" warning.  In fact, a review of the record in this case shows that no statement was made by the court when the jury was discharged in the *Brown* case, so Ertel would not have learned about the prohibition when he reviewed the trial record.

6.  The court has available various means of addressing attorney misconduct, without having to resort to the drastic sanction of criminal contempt:

> In considering appropriate sanctions for attorney misconduct, the district court has an array of options, ranging from criminal contempt

---

[13]  EXHIBIT "G": Jordan Dayan affidavit.

to non-contempt measures. *See Eash v. Riggins Trucking, Inc., 757 F.2d 557, 564 (3d Cir.1985)* (en banc) (noting that district judges have "a wide range of tools to promote efficiency in their courtrooms"). Frequently, there will be sound grounds for not invoking the court's criminal-contempt power, especially since its potency necessitates that it be used "with restraint and discretion." *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123; *see Whitney Bros. Co. v. Sprafkin,* 60 F.3d 8, 13 (1st Cir.1995). Therefore, normally there is much to be said for deploying the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes. *See In re Oliver,* 333 U.S. 257, 274, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (contempt powers require the "least possible power adequate to the end proposed") (citation omitted); *Horn,* 29 F.3d at 760 ("[I]t is inappropriate for courts to attempt to use [inherent powers] to justify an extreme remedy when, short of such heroic measures, the means are at hand to construct a satisfactory anodyne more narrowly tailored to the objective."); *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3rd Cir.1994).

*United States v. Kouri-Perez,* 187 F.3d 1, 8 (1st Cir. 1999).

7. Jeffrey Ertel has never been cited for contempt. He has never been sanctioned by the State Bar for any misconduct. He is recognized throughout the north Georgia bar as one of the most conscientious and dedicated death penalty litigants.[14] "The purest treasure mortal times afford is spotless reputation."[15]

He is tenacious. He is thorough. He is zealous. But he is also a dedicated officer of the court. His conduct, in pursuit of justice for the underdog, is what makes lawyers proud of our profession. His zealous advocacy is not in pursuit of money, either for himself or some well-to-do

---

[14] EXHIBIT "H": Numerous character affidavits and letters.
[15] King Richard the Second, Act I, scene I, line 177.

client. He has never been in private practice, he has never received a fee from a client for his services. His sole goal is to save a person's life. But his efforts to achieve this goal have always been within the bounds of the law.

Counsel for Jeffrey Ertel urges the court to reach this conclusion: Jeffrey Ertel failed to adequately review the local rules. As a result, but without actual intent, he violated a Local Rule. He did not violate the Rule for his own benefit. He did not violate the Rule to spite the court. He did not violate the Rule in secrecy or in a clandestine manner. Given these findings, he did not act in willful contempt of court. The embarrassment (and cost) that he has endured is sufficient punishment to assure that this mistake will not happen again.

Respectfully submitted

s/Harry D. Dixon, Jr./w.permission
Harry D. Dixon. Jr.
Ga. State Bar No. 223375
DONNIE DIXON ATTORNEY AT LAW, LLC
7 East Congress Street, Suite 712
Savannah, Georgia 31401
912-644-6700

s/Donald F. Samuel
Donald F. Samuel
Ga. State Bar #624475
GARLAND, SAMUEL & LOEB, P.C.
3151 Maple Drive, NE
Atlanta, Georgia 30305
404-262-2225

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| **MEIER JASON BROWN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **407CV085** |
| | ) | **403CR001** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing *Pre-Hearing Memorandum* upon the following by electronic filing:

United States Attorney's Office
United States District Court
Southern District of Georgia
100 Bull Street
Savannah, Georgia  31401

This 26th day of September, 2008.

<u>s/Harry D. Dixon, Jr./w.permission</u>
Harry D. Dixon. Jr.
Ga. State Bar No. 223375

<u>s/Donald F. Samuel</u>
Donald F. Samuel
Ga. State Bar #624475

18