DECLARATION OF JOHN R. MARTIN

I, John R. Martin, do hereby state under oath as follows:

-1-

I have been a member in good standing of the State Bar of Georgia since 1973. Since 1976, I have practiced exclusively criminal defense law, at the trial and post-conviction levels, in both the state and federal court levels. I am a former President of the Georgia Association of Criminal Lawyers. I currently practice with my own law firm, Martin Brothers, P.C., 202 The Grant Building, 44 Broad Street, N.W., Atlanta, Georgia, 30303.

-2-

For over 20 years I have been involved in the defense of capital cases, both in the state and federal courts and both at the trial and post-conviction level. I have been appointed or retained as lead counsel in over thirty capital cases, including at least eight post-conviction collateral proceedings, and have attended or been a speaker at numerous continuing legal education seminars regarding the defense of capital cases, both at the trial and post-conviction level. As a consequence, I am aware of the standard of practice in both trial and post-conviction proceedings in capital cases.

-3-

Especially in post-conviction collateral proceedings, one of the primary duties of post-conviction counsel is to discover possible non-record constitutional violations, because most record issues have already been litigated on direct appeal and cannot be relitigated during habeas corpus proceedings. In my experience, the three areas where constitutional violations are most likely to be discovered in collateral proceedings are (1) ineffective assistance of trial or appellate counsel, (2) the failure of the prosecution to reveal exculpatory evidence, either as to guilt/innocence or sentencing, and (3) jury misconduct.

-4-

In order to discover possible juror misconduct it is absolutely essential to attempt to interview each and every juror who will talk to the defense about the case. This may be the only way to learn (1) whether the jury deliberations may have been tainted by the jury's consideration of extrajudicial matters, (2) whether there was improper contact between the jurors and court or law enforcement personnel, (3) whether jurors who should have been disqualified during the voir dire selection were not disqualified because the jurors may have been dishonest during voir dire or counsel had been ineffective in inquiring during voir dire or (4) whether the prosecution failed to reveal associations with jurors which may have been disqualifying.

-5-

Guideline 10.15.1 of the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (the ABA Guidelines"), titled "Duties of Post-Conviction Counsel", requires that post-conviction counsel "seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense representation" and to "continue an aggressive investigation of all aspects of the case." The Commentary to Guideline 10.15.1 instructs that "collateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation", because "the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case." "Jury Misconduct" is one of the specific non-record areas which post-conviction counsel has a duty to investigate. (ABA Guidelines Commentary, p. 1085-1086). The United States Supreme Court has repeatedly relied upon the ABA Guidelines as a guide in judging whether counsel has provided competent representation in capital cases. See, Wiggins v. Smith, 539 U.S. 510, 522-525 (2003); Williams v. Taylor, 529 U.S. 362, 369 (2000); Florida v. Nixon, 543 U.S. 175, 191 & fn. 6 (2004); Rompilla v. Beard, 545 U.S. 374, 387 & fn. 7 (2005).

-6-

Given the obligation of post-conviction counsel to investigate non-record issues in his client's case, such as juror misconduct, both because the ABA Guidelines say so and because juror misconduct can be a fertile area for relief for his or her client, it is standard procedure in any capital post-conviction collateral proceeding to attempt to interview each and every juror who will speak with the defense. Moreover, experience has taught post-conviction counsel—and this is taught in legal seminars for post-conviction counsel—to assemble a team of interviewers who will attempt to speak with each and every juror all on the same day, usually a weekend day, so that the jurors do not start talking among themselves, which can sometimes cause jurors to refuse to talk with post-conviction counsel or can cause jurors either consciously or unconsciously to conform their testimony.

-7-

There have been numerous occasions when such interviews have revealed possible juror misconduct. For example, in a recent case I handled before Judge Clarence Cooper in the United States District Court for the Northern District of Georgia, United States v. Jefferson, Case No. 1:96-CV-989-CC, we employed the normal strategy of using a team of lawyers and investigators to interview all jurors who would talk with the defense on a particular Saturday. During these interviews

one of the jurors revealed to one of the interviewing attorneys that when the jurors were asked to give their ultimate opinion as to the appropriate sentence toward the end of the jury deliberations, one of the jurors took from her purse a small Bible, opened it to a random passage, read from it and indicated that this randomly selected passage had given her "divine guidance" in reaching her conclusion that a death sentence should be imposed. The case law is replete with capital cases where jurors improperly consulted a Bible or made other efforts to obtain a Biblical basis for their decision, in violation of their duty to decide the case solely on the law and the evidence. E.g., Jones v. Kemp, 706 F.Supp. 1534, 1558-1560 (N.D.Ga. 1989)(Death sentence set aside because the jury was permitted to have a Bible to consult during jury deliberations); People v. Harlan, 109 P.3d 316 (Colo. 2005)(Death sentence reversed when jurors considered Bible verses in deciding sentence); Ex parte Troha, 462 So.2d 953, 954 (Ala. 1984)(Conviction reversed when juror consulted his brother, who was a minister, and asked for "scripture references" to "help him make his decision."); State v. Harrinton, 627 S.W.2d 345, 350 (Tenn. 1981)("Appellant also has called our attention to the fact that during deliberations in the sentencing phase of the trial, the jury foreman buttressed his argument for imposition of the death penalty by reading to the jury selected biblical passages. His action, of course, was error which would have required a

new sentencing hearing absent the error in excluding jurors for cause in violation of the <u>Witherspoon</u> standard.").

-8-

Although Judge Cooper ultimately decided that the incident in the <u>Jefferson</u> case did not require setting aside the death sentence under the particular facts of the case and instead vacated the sentence on other grounds (ineffective assistance of counsel), this very issue is before the Eleventh Circuit on a cross-appeal. But this potentially viable constitutional claim would have never been discovered by the defense without juror interviews.

-9-

Of course, there are other instances where jury deliberations may be tainted by the consideration of extra-judicial material. In each case, however the defendant has the initial burden of showing that the intrusion of extraneous information during jury deliberations posed a "reasonable possibility of prejudice" to the defendant. <u>United States v. Ronda</u>, 455 F.3d 1273, 1299 (11th Cir. 2006)("A mistrial or new trial is required only if the extrinsic evidence known by the jury posed a reasonable possibility of prejudice...The defendant has the burden to show that the jury has been exposed to extrinsic evidence or extrinsic contacts."). The Defendant can carry that burden only if he knows of the misconduct and that occurs almost always as a result of juror interviews.

-10-

Moreover, in the <u>Jefferson</u> case, the Attorney General argued that the potential juror misconduct claim there should have been found to be procedurally barred because counsel had not previously sought to interview the jurors during the state habeas corpus proceedings. The fact that the prosecution may argue procedural bar is just one more reason why counsel has a duty to attempt to interview jurors at the earliest possible occasion, lest the failure to discover juror misconduct during earlier proceedings be raised as a procedural bar to litigating this potential constitutional claim.

-11-

The standard of practice for post-conviction counsel in capital cases is <u>always</u> to attempt to interview each and every juror who will speak with the defense. This is the command of the ABA Guidelines and often the only way a potential meritorious constitutional claim can be discovered. Moreover, failure to attempt such interviews may be claimed to be a procedural bar from raising the claim in later proceedings. Counsel would be failing to live up to his professional and ethical duties to his client if he fails to attempt to interview each and every juror in a capital case.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT.

Executed on September 23, 2008.

_____
John R. Martin

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

MEIER JASON BROWN,           )         CASE NO:   407CV085

                                   )                    403CR001

v.                                  )

                                   )

UNITED STATES OF AMERICA   )

### Affidavit of Attorney Brian Steel

1.

I am Brian Steel and I have been a member of the bar of the Great State of Georgia since 1991. I have practiced criminal defense in State and Federal Trial Courts as well as State and Federal Appellate Courts throughout the United States of America.

2.

Working for the convicted person on direct appeal in the State of Georgia, it is routine to contact petit jurors to determine whether there are any viable issues for appeal. This procedure has been approved by the Highest Court of the State of Georgia as a necessary procedure to zealously and adequately prosecute an appeal. See Sears v. State,268 Ga. 759 (18), 493 S.E.2d 180 (1997); Sears v. State, 270 Ga. 834, 838, 514 S.E.2d 426 (1999) . See also Rogers v. State, 247 Ga. App 219 (1), 543 S.E.2d 81 (2000); Taylor v. State, 264 Ga. App. 665 (2), 592 S.E.2d 148 (2003).

3.

I write this affidavit with the hope that this Honorable Court will not hold the

Honorable Jeffrey Ertel, Esq. in willful contempt for violating the Local Rule for the Southern District of Georgia regarding the prohibition to contact petit jurors. I personally know Mr. Ertel and his reputation in the community. Mr. Ertel is an asset to the legal community and the State Bar of Georgia.

4.

If this Honorable Court wishes any further information, I would be honored to provide same. Further Affiant sayeth not.

Sworn to this 22nd day of September, 2008.

Brian Steel
Affiant
Georgia Bar # 677640

State of Georgia          )
                          ) s.s.
County of Fulton          )


## Affidavit of Mildred Geckler Dunn, Esquire

Personally appeared before the undersigned officer duly authorized by law to administer oaths, Mildred Geckler Dunn, J.D., who being duly sworn, states the following:

1)    My name is Mildred Geckler Dunn. I am over the age of 18 and competent to make this affidavit. I am an attorney who is duly licenced to practice law in the State of Georgia, and have so practiced in Georgia for over nineteen years. Upon my graduation from the University of Florida College of Law in December 1988, I began my practice with the law firm of Vincent, Chorey, Taylor and Feil, in Atlanta, Georgia. My major area of practice was complex commercial litigation, but I assisted in the CJA appointed representation of a death row inmate in Federal District Court, in the Northern District of Georgia. I left Vincent, Chorey, Taylor and Feil in April 1993 to become a staff attorney at the Federal Public Defender Program, Inc., where I remain employed.

2)    I was first admitted to the bar of the Northern District of Georgia on 1989. Based on my experience and my discussions with other attorneys in

criminal, civil and habeas corpus proceedings where guilt has been established by a trial, it is routine that attorneys and investigators interview jurors.

3)    Moreover, when seeking clemency, it is especially important to present information regarding the jurors' current feelings regarding the case as well as what they would have done had certain information been uncovered and presented at trial.

Signed this _22nd_ day of September, 2008 under penalty of perjury.

_____
Mildred Geckler Dunn, Esquire

Sworn to and subscribed before me
this _22nd_ day of September, 2008.

_____
Notary Public

Notary Public, Clayton County, Georgia
My Commission Expires Jan. 30, 2011

2

## AFFIDAVIT OF ROBERT H. CITRONBERG

I, Robert H. Citronberg, do hereby state under oath as follows:

-1-

I have been a member in good standing of the State Bar of Georgia since 1978. My first job was working for William W. Daniel, my good friend and mentor, from whom I would say I learned much if not most of the tenets through which I conduct myself both professionally and personally. I have always practiced criminal defense law, at both trial and post-conviction levels, in both the state and federal courts. I have taught law at Georgia State University (undergraduate, business and criminal justice departments) as well as at Woodrow Wilson Law School. My office is now at 100 Peachtree St., N.W., The Equitable Building, Suite 1950, Atlanta, Ga. 30303 .

-2-

For almost 25 years I have been involved in the defense of capital cases, both in the state and federal courts and both at the trial and post-conviction level. I have been appointed as lead counsel or associate counsel in over a dozen capital cases, including post-conviction collateral proceedings, and have attended or been a speaker at several continuing legal education seminars regarding the defense of

capital cases at the trial level. As a consequence, I am aware of the standard of practice in both trial and post-conviction proceedings in capital cases.

-3-

As this court is aware, counsel in post conviction collateral proceedings must aggressively investigate their client's case. I learned very early on that simply reading the record, while important, will not really be ultimately helpful. What should be done, and what MUST be done, is that every possible area of inquiry must be fully explored, in order to determine what, if any, Constitutional violations occurred. The broad requirement of a full inquiry by post conviction counsel is of course mandated by the ABA Standards (Section 10-15-1) that relate to post conviction representation. Generally, these violations, if they have occurred, will have occurred outside of the record, and, as such, are very difficult to discover. As I learned in my first post conviction representation of capital case, one of the most important areas of inquiry concern matters that occur amongst the jurors. My first involvement in post conviction proceedings in a capital case was in the state habeas case portion of the defense of Larry Romine, which culminated in Romine v. Head, in which the Defendant's conviction was reversed by the Eleventh Circuit (253 F.3d 1349, 11th Cir. 2001), wherein juror testimony from the state habeas proceeding was considered in the Court's decision. Although the Eleventh circuit did not reach the specific issue of juror misconduct, the issues raised and

2

discovered by interviewing the juror was cited by the Eleventh Circuit in their opinion.

-4-

Obviously, one of the best ways to determine if there was any juror misconduct (or, even if there was not juror misconduct, whether something untoward occurred during deliberations), is to speak with the jurors themselves, assuming they are willing to speak to you, which generally (but not always) they are. It is only then, unless there is a bailiff who has something of import to relate, that any Constitutional violations which may have occurred in the jury room might be discovered. It is my opinion that counsel, in representing a capital defendant in post conviction proceedings, should always attempt to interview willing jurors in order to determine if the Defendant's Constitutional rights were abridged in any way.

-5-

I have known Jeff Ertel for approximately fifteen years. I first met Jeff when he was working for the resource center in Atlanta. Since we had both attended S.U.N.Y. Buffalo Law School, we discovered we had much in common, including a love of the law, and, sadly, the love of some very unhealthy Buffalo food items (chicken wings, Sahlens hot dogs, beef on kimmelweck rolls, etc.)

3

Jeff has become a friend over the years, as well as an individual on whose judgment I rely concerning complex legal issues. His grasp of the law is extraordinary, as is his dedication to his clients. I have always known Jeff to be someone who not only cares about the law but respects it as well. I understand that Jeff may have made a mistake before this Court by failing to adequately read the civil rules, a task with which I as well am not used to engaging in.

Knowing Jeff, I can be sure that any conduct in contravention of the language or the spirit of such rule would have been unintentional. Jeff's respect for the law, as well as the Rule of Law, has never been anything but complete and unwavering.

I would also say that I would not hesitate to have my son, (who is a junior at Georgetown Law School) work under Jeff at any time or place, in order that my son could come to appreciate how a smart, zealous, dedicated, and caring lawyer should act. I say this in all honesty, and because of my true admiration for Mr. Ertel. Therefore, I would hope the court consider all the above when it considers the matters before it in this matter.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS

TRUE AND CORRECT.

Executed on September 25, 2008.

Robert H. Citronberg

Signed, sealed and delivered
In the presence of a Notary Public,
this 25th day of September, 2008.

My Commission Expires

5