## GUIDELINE 10.15.1—DUTIES OF POST-CONVICTION COUNSEL

A.    Counsel representing a capital client at any point after conviction should be familiar with the jurisdiction's procedures for setting execution dates and providing notice of them. Post-conviction counsel should also be thoroughly familiar with all available procedures for seeking a stay of execution.

B.    If an execution date is set, post-conviction counsel should immediately take all appropriate steps to secure a stay of execution and pursue those efforts through all available fora.

C.    Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense representation, including challenges to any overly restrictive procedural rules. Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review.

D.    The duties of the counsel representing the client on direct appeal should include filing a petition for certiorari in the Supreme Court of the United States. If appellate counsel does not intend to file such a petition, he or she should immediately notify successor counsel if known and the Responsible Agency.

E.    Post-conviction counsel should fully discharge the ongoing obligations imposed by these Guidelines, including the obligations to:

    1. maintain close contact with the client regarding litigation developments; and

DPGUIDELINES42003.DOC                                   2/12/04 10:29 AM

> 2. continually monitor the client's mental, physical and emotional condition for effects on the client's legal position;
>
> 3. keep under continuing review the desirability of modifying prior counsel's theory of the case in light of subsequent developments; and
>
> 4. continue an aggressive investigation of all aspects of the case.

## *History of Guideline*

This Guideline is based on Guideline 11.9.3 of the original edition. Subsections A, B, and D are entirely new. Subsection C includes new language regarding the manner in which post-conviction counsel must present all arguably meritorious issues. Subsection E includes new language emphasizing the ongoing obligations imposed by these Guidelines upon post-conviction counsel.

## *Related Standards*

ABA STANDARDS FOR CRIMINAL JUSTICE: DEFENSE FUNCTION Standard 4-8.5 ("Post-conviction Remedies") *in* ABA STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION FUNCTION AND DEFENSE FUNCTION (3d ed. 1993).

## *Commentary*

Almost all of the duties imposed by Guidelines 10.3 et seq. are applicable in the post-conviction context. Subsection E notes this by way of reminder. Post-conviction counsel should consult those Guidelines and accompanying commentaries.

DPGuidelines42003.doc                                                    2/12/04 10:29 AM

## The Paramount Duty to Obtain a Stay

No matter how compelling the client's post-conviction case may be, he faces the risk that his execution will moot it.[332] This is a phenomenon unique to capital litigation and one that must be uppermost in the mind of post-conviction counsel.

When states fail to provide post-conviction counsel entirely or in a timely manner,[333] or request the setting of an execution date to advance the litigation,[334] or impose short periods of time for filing substantive post-judgment pleadings, the result is emergency requests for stays of execution so that substantive pleadings will be considered.[335] Although

---

332. *See* Brooks v. Estelle, 702 F.2d 84, 84-85 (5th Cir. 1983) (dismissing appeal, which had received certificate of probable cause from district court, as moot since petitioner had been executed following the denial of a stay by *Brooks v. Estelle*, 697 F.2d 586 (5th Cir. 1982)).

333. There has been no right to state post-conviction counsel in Georgia. *See* Gibson v. Turpin, 513 S.E.2d 186, 188 (Ga. 1999). In August 1996, Georgia Supreme Court Justice Robert Benham noted that several persons under sentence of death in Georgia were in "immediate need of legal representation," and asked area law firms to volunteer. Bill Rankin, *When Death Row Inmates Go To Court Without Lawyers: In the Late Stages of Their Fight to Stay Alive, Some Must Represent Themselves*, ATLANTA J. & CONST., Dec. 29, 1996, at D5 (internal quotation marks omitted). One Atlanta civil firm that volunteered was assigned the case of Marcus Wellons. *See id.* Three days after the firm received a copy of the trial transcript, the trial court set an execution date for two weeks later. *See id.* The firm rushed to the Georgia Supreme Court and asked for more time to submit a formal post-conviction petition. *See id.* Hours before Mr. Wellons's scheduled execution, the Court denied the request by a 4-3 vote. *See id.* As guards were about to shave Mr. Wellons's head for that evening's electrocution, the federal district court granted a stay of execution. *See id.* State counsel and the federal defender were given ten months to prepare the federal petition. *See id.*

A similar instance of legal Russian roulette took place in Alabama in 2001 in the case of Thomas D. Arthur. *See* Arthur v. Haley, 248 F.3d 1302 (11th Cir. 2001) (affirming grant of stay on day before scheduled execution to inmate who had been unrepresented for more than two years following direct appeal); *Agency Claims Death Row Inmates Without Lawyers a Growing Problem*, CHATTANOOGA TIMES FREE PRESS, March 26, 2001, at B8 (describing *Arthur* case and absence of any state funding for post-conviction representation in Alabama). As suggested *supra* note 47, counsel should be aggressive in challenging such irresponsible behavior by the states as a federal constitutional violation.

334. For example, in Kentucky capital cases the Attorney General invariably requests an execution date at the end of direct appeal, and the Governor invariably signs the death warrant. No stay of execution may be granted until the state post-conviction petition is filed. As a result, in order to obtain a stay, counsel must often file a state post-conviction petition well before the time allowed under state law because there is an outstanding execution date. The practice is the same in federal habeas proceedings. *See, e.g., Execution of Killer Delayed*, CINCINNATI ENQUIRER, June 9, 2000, at D1B.

335. When a capital case enters a phase of being "under warrant"—i.e., when a death warrant has been signed—time commitments for counsel increase, "due in large part to the necessary duplication of effort in the preparation of several petitions which might have to be filed simultaneously in different courts." ABA POST-CONVICTION DEATH PENALTY REPRESENTATION PROJECT ET AL., TIME AND EXPENSE ANALYSIS IN POSTCONVICTION DEATH PENALTY CASES 10 (1987).

DPGUIDELINES42003.DOC                                                    2/12/04 10:29 AM

the ABA and other professional voices have repeatedly condemned this system,[336] defense counsel must make the best of it—by seeking stays or reprieves from any available source and challenging the unfairness of any overly restrictive constraints on the filing of substantive pleadings and/or stays.

And to the extent that counsel can responsibly reduce the stresses imposed upon the client by this often nightmarish system, counsel should of course do so (e.g., by reassuring the client of the unlikelihood of the execution actually occurring on its nominal date, notwithstanding the alarming preparations being made by the prison).[337]

## Keeping the Client Whole

Even if their executions have been safely stayed, however, the mental condition of many capital clients will deteriorate the longer they remain on death row. This may result in suicidal tendencies and/or impairments in realistic perception and rational decisionmaking.[338] Counsel should seek to minimize this risk by staying in close contact with the client.[339]

---

336. *See* ABA CRIMINAL JUSTICE SECTION, *supra* note 86, at 10-11 (calling for automatic federal stays throughout post-conviction period); *Legislative Modification, supra* note 12, at 855 ("We agree with the Powell Committee [appointed by Chief Justice Rehnquist to study reform of capital habeas corpus] that the current mechanisms for obtaining stays of execution are irrational and indefensible. At best, they lead to an enormous waste of legal effort by all participants in the system, and at worst they result in inconsistencies that have fatal consequences."); Ira P. Robbins, *Justice by the Numbers: The Supreme Court and the Rule of Four – Or is it Five?*, 36 SUFF. U. L. REV. 1 (2002); Eric M. Freedman, *Can Justice Be Served by Appeals of the Dead?*, NAT'L L.J., Oct. 19, 1992, at 13 (current situation respecting stays is "no way to run a judicial system").

337. *See, e.g.*, McDonald v. Missouri, 464 U.S. 1306, 1307 (1984) (Blackmun, J., in chambers).

> (I thought I had advised the Supreme Court of Missouri once before, in *Williams*, that . . . I . . . shall stay the execution of any Missouri applicant whose direct review of his conviction and death sentence is being sought and has not been completed. I repeat the admonition to the Supreme Court of Missouri, and to any official within the State's chain of responsibility, that I shall continue that practice. The stay, of course, ought to be granted by the state tribunal in the first instance, but, if it fails to fulfill its responsibility, I shall fulfill mine.)

Williams v. Missouri, 463 U.S. 1301, 1301-02 (1983) (Blackmun, J., in chambers) (executions scheduled for prior to the expiration of the time for seeking certiorari on direct appeal must be stayed "as a matter of course").

338. *See* C. Lee Harrington, *A Community Divided: Defense Attorneys and the Ethics of Death Row Volunteering*, 25 LAW & SOC. INQUIRY 849, 850 (2000) (noting that "[b]etween 1977 and March 1998, 59 [condemned] inmates had volunteered for execution compared to 382 executed unwillingly"); *see also infra* note 351.

339. *See supra* text accompanying notes 189-92.

DPGUIDELINES42003.DOC                                    2/12/04 10:29 AM

Counsel's ongoing monitoring of the client's status, required by Subsection E(2), also has a strictly legal purpose. As described *supra* in the text accompanying notes 188-92, a worsening in the client's mental condition may directly affect the legal posture of the case and the lawyer needs to be aware of developments. For example, the case establishing the proposition that insane persons cannot be executed[340] was heavily based on notes on the client's mental status that counsel had kept over a period of months.

## The Labyrinth of Post-conviction Litigation

### A. The Direct Appeal

Practice varies among jurisdictions as to the limits of the appellate process and the relationship between direct appeals and collateral post-conviction challenges to a conviction or sentence.[341] Issues that are only partially or minimally reflected by the record, or that are outside the record, should be explored by appellate counsel as a predicate for informed decisionmaking about legal strategy.

As Subsection C emphasizes, it is of critical importance that counsel on direct appeal proceed, like all post-conviction counsel, in a manner that maximizes the client's ultimate chances of success. "Winnowing" issues in a capital appeal can have fatal consequences. Issues abandoned by counsel in one case, pursued by different counsel in another case and ultimately successful, cannot necessarily be reclaimed later.[342] When a client will be killed if the case is lost, counsel should not let any possible ground for relief go unexplored or unexploited.[343]

---

340. *See* Ford v. Wainwright, 477 U.S. 399, 402 (1986).

341. In some states, there is a unitary appeal system in which direct appeal and collateral challenges such as ineffective assistance of counsel claims are raised simultaneously. *See, e.g.,* IDAHO CODE § 19-2719 (Michie Supp. 2002). In other jurisdictions, ineffective assistance of counsel claims generally may not be raised on direct appeal but are reserved for separate post-conviction proceedings. *See, e.g.,* Lawrence v. State, 691 So. 2d 1068, 1074 (Fla. 1997) (explaining that claims of ineffective assistance of counsel are not cognizable on direct appeal). The federal system follows the latter rule. *See* Massaro v. United States, 123 S. Ct. 1690 (2003) (unanimous).

342. For example, as described *supra* in note 235 in *Smith v. Murray,* 477 U.S. 527 (1986), the Supreme Court declined to address the merits of a petitioner's claim that his Fifth Amendment rights were violated by the testimony of a psychiatrist who had examined the defendant without warning him that the interview could be used against him. *See id.* at 529. Appellate counsel failed to assert this claim on direct appeal because the Virginia Supreme Court had rejected such claims at that time. *See id.* at 531. The Supreme Court subsequently found such testimony unconstitutional in *Estelle v. Smith,* 451 U.S. 454 (1981). In a "Catch-22" for the defendant, the Court concluded appellate counsel was not ineffective, because the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is

DPGuidelines42003.doc                                    2/12/04 10:29 AM

Appellate counsel must be familiar with the deadlines for filing petitions for state and federal post-conviction relief and how they are affected by the direct appeal. If the conviction and sentence are affirmed, appellate counsel should ordinarily file on the client's behalf a petition for certiorari review in the United States Supreme Court. Under the AEDPA, a client's one-year statute of limitations for filing a petition for federal habeas corpus relief generally begins to run upon the denial of certiorari or when the 90 days for filing a petition has elapsed.[344] Appellate counsel should therefore immediately inform successor counsel if he or she does not intend to file a petition for certiorari or when a petition for is denied; if successor counsel is not yet appointed, counsel should promptly advise the Responsible Agency of the need to designate successor counsel (Subsection D).

Appellate counsel should also advise the client directly of all applicable deadlines for seeking post-conviction relief and explain the tolling provisions of the AEDPA,[345] emphasizing that a state post-conviction motion should be filed sufficiently in advance of the one-year deadline to allow adequate time to prepare a federal habeas corpus petition. In states in which the direct appeal and state post-conviction review are conducted in tandem,[346] post-conviction proceedings may be concluded at the same time as, or even before, the direct appeal, effectively rendering the tolling provisions inapplicable.

In light of this mutual dependency among all the post-conviction legal procedures, it is of the utmost importance that, in accordance with Guideline 10.13, appellate counsel cooperate fully with successor counsel and turn over all relevant files promptly.

---

the hallmark of effective appellate advocacy." *Murray*, 477 U.S. at 536 (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). At the same time, the claim was not deemed sufficiently novel to constitute cause for the procedural default because "forms of the claim he [advanced] had been percolating in the lower courts for years at the time of his original appeal." *Murray*, 477 U.S. at 536-37. Mr. Smith was therefore barred from raising the issue in federal habeas proceedings, *id.* at 539, and was executed.

343. It is for this reason that Subsection C refers to "issues . . . that are arguably meritorious under the standards applicable to high quality capital defense representation." *See supra* Guideline 10.8, text accompanying notes 234-36; *see also supra* text accompanying note 28. For examples of such issues, see *supra* notes 231, 271, 276, 307, and *infra* note 352.

344. 28 U.S.C. § 2244(d)(1)(A) (2000); *see* LIEBMAN & HERTZ, *supra* note 28, § 5.1b.

345. *See* Clay v. United States, 123 S. Ct. 1042 (2003).

346. *See, e.g.*, CALIFORNIA SUPREME COURT, CALIFORNIA SUPREME COURT POLICIES REGARDING CASES ARISING FROM JUDGMENTS OF DEATH 3 (2002) (petitions for writ of habeas corpus to be filed within 180 days of final due date for filing reply brief on direct appeal); OKLA. STAT. ANN. tit. 22, § 1089(D)(1) (West Supp. 2003) (motion for post-conviction relief must be filed within 90 days from filing of reply brief on direct appeal).

DPGUIDELINES42003.DOC                                          2/12/04 10:29 AM

## B.  Collateral Relief—State and Federal

As described in the commentary to Guideline 1.1, providing high quality legal representation in collateral review proceedings in capital cases requires enormous amounts of time, energy, and knowledge. The field is increasingly complex and ever-changing. As state and federal collateral proceedings become ever-more intertwined, counsel representing a capital client in state collateral proceedings must become intimately familiar with federal habeas corpus procedures. As indicated above, for example, although the AEDPA deals strictly with cases being litigated in federal court, its statute of limitations provision creates a de facto statute of limitations for filing a collateral review petition in state court. Some state collateral counsel have failed to understand the AEDPA's implications, and unwittingly forfeited their client's right to federal habeas corpus review.[347]

Collateral counsel has the same obligation as trial and appellate counsel to establish a relationship of trust with the client. But by the time a case reaches this stage, the client will have put his life into the hands of at least one other lawyer and found himself on death row. Counsel should not be surprised if the client initially exhibits some hostility and lack of trust, and must endeavor to overcome these barriers.

Ultimately, winning collateral relief in capital cases will require changing the picture that has previously been presented. The old facts and legal arguments—those which resulted in a conviction and imposition of the ultimate punishment, both affirmed on appeal—are unlikely to motivate a collateral court to make the effort required to stop the momentum the case has already gained in rolling through the legal system.[348] Because an appreciable portion of the task of post-conviction counsel is to change the overall picture of the case, Subsection E(3) requires that they keep under continuing review the desirability of amending the defense theory of the case, whether one has been formulated by prior counsel in accordance with Guideline 10.10.1 or not.

For similar reasons, collateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation

---

347.  *See generally*, Goodman v. Johnson, No. 99-20452 (5th Cir. Sept. 19, 1999) (unpublished); Cantu-Tzin v. Johnson, 162 F.3d 295 (5th Cir. 1998). Spencer Goodman was executed by Texas in January 2000 and Andrew Cantu-Tzin was executed by Texas in January 1999.

348.  *See generally*, Russell Stetler, *Post-Conviction Investigation in Death Penalty Cases*, THE CHAMPION, Aug. 1999, *available at* http://www.criminaljustice.org/public.nsf/championarticles/99a ug06/.

DPGuidelines42003.doc                                                    2/12/04 10:29 AM

in accordance with Guideline 10.7 (Subsection E(4)). As demonstrated by the high percentage of reversals and disturbingly large number of innocent persons sentenced to death, the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case.[349] That may be because of information concealed by the state, because of witnesses who did not appear at trial or who testified falsely, because the trial attorney did not conduct an adequate investigation in the first instance, because new developments show the inadequacies of prior forensic evidence, because of juror misconduct, or for a variety of other reasons.

Two parallel tracks of post-conviction investigation are required. One involves reinvestigating the capital case; the other focuses on the client. Reinvestigating the case means examining the facts underlying the conviction and sentence, as well as such items as trial counsel's performance, judicial bias or prosecutorial misconduct. Reinvestigating the client means assembling a more-thorough biography of the client than was known at the time of trial, not only to discover mitigation that was not presented previously, but also to identify mental-health claims which potentially reach beyond sentencing issues to fundamental questions of competency and mental-state defenses.

As with every other stage of capital proceedings, collateral counsel has a duty in accordance with Guideline 10.8 to raise and preserve all arguably meritorious issues.[350] These include not only challenges to the conviction and sentence, but also issues which may arise subsequently.[351] Collateral counsel should assume that any meritorious issue not contained in the initial application will be waived or procedurally defaulted in subsequent litigation, or barred by strict rules governing subsequent applications.[352] Counsel should also be aware that

---

349. *See supra* text accompanying notes 47-58.

350. *See supra* Guideline 10.8 and accompanying commentary. As Subsection C emphasizes, the duty to investigate and present such claims applies to "all issues, whether or not previously presented." Until previously unpresented issues are fully explored, there is no way to determine whether or not any arguably applicable forfeiture doctrines may be overcome. *See* House v. Bell, 311 F.3d 767 (6th Cir. 2002) (en banc), *cert denied*, 123 S. Ct. 2575 (2003) (certifying to state courts issue of whether procedural vehicle existed to present evidence of innocence first uncovered during federal habeas proceedings).

351. For example, although the Justices disagree on the point, as shown most recently by their varying opinions respecting the certiorari petition in *Foster v. Florida*, 123 S. Ct. 470 (2002), it may well be that after a certain length of time continued confinement on death row ripens into an Eighth Amendment violation.

352. *See* Mason v. Meyers, 208 F.3d 414, 417 (3d Cir. 2000) (stating that as a result of the strict rules governing successive *habeas corpus* petitions enacted by the AEDPA and codified at 28

DPGUIDELINES42003.DOC                                                    2/12/04 10:29 AM

any change in the availability of post-conviction relief may itself provide an issue for further litigation.[353] This is especially true if the change occurred after the case was begun and could be argued to have affected strategic decisions along the way.

---

U.S.C. § 2244(b), "it is essential that habeas petitioners include in their first petition *all* potential claims for which they might desire to seek review and relief").

353. *See, e.g.*, Lindh v. Murphy, 521 U.S. 320, 322-23 (1997) (discussing the retroactive application of various procedural provisions in the AEDPA to pending cases).