County of Fulton

State of Georgia

### Affidavit of Howard J. Manchel

I provide this affidavit in support of Jeff Ertel, Esq. who has been charged as being in criminal contempt of the local rules of the Southern District of Georgia:

I have been practicing for almost 34 years and was first admitted to the bar of the Northern District of Georgia on or about 1975. Until 2004, it was my regular practice and the practice of members of the bar to interview jurors about their jury service in criminal cases. This was the norm, it was what we were taught in law school, it's how we learned what was successful and what wasn't. When the local rule was changed, I became aware of the change. I learned of it through experience and word of mouth. I found the practice of interviewing jurors to be helpful. Sometimes jurors questioned their verdicts sometimes they did not. Sometimes they would agree to be interviewed and sometimes they refused.

I swear that the above is true and correct.

Howard J. Manchel
Ga. Bar No. 468550

Sworn to and subscribed before me,
this 22 day of September, 2008.

Notary Public

DAVID B. KEITH
MY COMMISSION EXPIRES
JUNE
13
2009
DEKALB CO., GA.
NOTARY PUBLIC

COUNTY OF FULTON
STATE OF GEORGIA

## AFFIDAVIT

I, LEIGH BURTON FINLAYSON, do hereby swear and attest that the

following information is true and correct to the best of my ability:

1) I have been practicing law and criminal defense since graduating from the

University of Georgia School of Law in 1989.  I have been employed as a trial

attorney by both  state and federal public defender offices.  In 1990, I worked for

a small firm, Michael Mears and Associates, which handled several death penalty

cases.  I opened my own criminal defense practice in October of 1995.

2)  I was first admitted to the bar of the Northern District of Georgia in January of

1992. Until 2004, it was my regular practice and the practice of members of the

local bar, including prosecutors and defense attorneys,  to interview jurors about

their jury service after the trial was over.  This was the norm, not the exception.

Sometimes jurors would agree to be interviewed, sometimes they would not.  I

found the practice of interviewing jurors quite useful.  Sometimes jurors

questioned their verdict, sometimes they did not.   Sometimes jurors demonstrated

a completely incorrect interpretation of the law  (*"The defendant was 'just there'*

*but the judge told us we <u>could</u> convict someone for being merely present at the scene of a crime. One of our fellow jurors wrote it down."*)


3)  I understand the local (ND GA) rules were amended in 2004 to allow jury interviews only with permission of the presiding judge.   I became aware of this change long after it was implemented and learned of the new rule only through word of mouth.

So sworn, this 22nd day of September, 2008.


Leigh Burton Finlayson
Georgia Bar # 261460

LAW OFFICE OF
L. BURTON FINLAYSON
931 Ponce de Leon Avenue, NE
Atlanta, Georgia  30306
(404) 872-0560


Sworn Before:    _____
NOTARY PUBLIC

My Commission Expires: ___1/3/09___

State of Georgia      )
                      ) s.s.
County of Fulton     )

### Affidavit of Mildred Geckler Dunn, Esquire

Personally appeared before the undersigned officer duly authorized by law to administer oaths, Mildred Geckler Dunn, J.D., who being duly sworn, states the following:

1)    My name is Mildred Geckler Dunn. I am over the age of 18 and competent to make this affidavit. I am an attorney who is duly licenced to practice law in the State of Georgia, and have so practiced in Georgia for over nineteen years. Upon my graduation from the University of Florida College of Law in December 1988, I began my practice with the law firm of Vincent, Chorey, Taylor and Feil, in Atlanta, Georgia. My major area of practice was complex commercial litigation, but I assisted in the CJA appointed representation of a death row inmate in Federal District Court, in the Northern District of Georgia. I left Vincent, Chorey, Taylor and Feil in April 1993 to become a staff attorney at the Federal Public Defender Program, Inc., where I remain employed.

2)    I was first admitted to the bar of the Northern District of Georgia on 1989. Based on my experience and my discussions with other attorneys in

criminal, civil and habeas corpus proceedings, up until 2004 when the Northern District Local Rule changed to prohibit contact with jurors without Court approval, it was the a common course of action that attorneys would interview jurors about their jury service in cases where a verdict of guilt was returned. This was the norm, not the exception. In cases where a substantial penalty would be imposed, interviewing jurors was expected.

3)    When the local criminal rule was changed, I became aware of the change based on the comments of Judge Orinda Evans to a jury after the return of an unfavorable jury verdict. The practice of interviewing jurors is very helpful. Sometimes jurors questioned their verdict, sometimes they did not. Sometimes they would agree to be interviewed, sometimes they would not.

4)    Moreover, I have found that most Judges in the Northern District of Georgia will readily allow access to jurors if asked. Indeed, the undersigned has tried cases in front of some judges who *sua sponte* instruct the jury and the attorneys that they are free to speak with each other, or not, without further

2

permission of the Court.

Signed this 22nd day of September, 2008 under penalty of perjury.

Mildred Geckler Dunn, Esquire

Sworn to and subscribed before me
this 22nd day of September, 2008.

Notary Public

Notary Public, Clayton County, Georgia
My Commission Expires Jan. 30, 2011

3