UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MEIER JASON BROWN

v.                    407CV085
                      403CR001

UNITED STATES OF AMERICA

## ORDER

### I. BACKGROUND

In *Brown v. U.S.*, 2008 WL 4411173 (S.D.Ga. 9/29/08) (unpublished), this Court denied Meier Jason Brown 28 U.S.C. § 2255 relief in a comprehensive opinion which reached, *inter alia*, a claim based on the manner in which his jury was selected. *Id.* at * 20-22. That claim related to a "missing record" claim (*i.e.*, that part of the record of Brown's case is actually missing), and the Court cited to potential jurors' written questionnaire responses. *Id.* at 21 n. 13.

Upon discovering that those responses were not in the record,[1] the Court directed "the Clerk ... to E-file, subject to appropriate privacy redaction protocols, the potential jurors' written questionnaire responses." *Id.* However, the Court did not elaborate on the precise extent to which those questionnaires should be blocked from public access. Hence, this Order.

### II. ANALYSIS

Fair trial principles guide the overall analysis here. In that regard, it is settled that the guarantees of open public proceedings in criminal trials include the voir dire phase.

---

[1] They have been stored in looseleaf binders in this Court's jury clerk's office. There is no court order directing that they be kept off the docket in this case, however. Rather, the clerk did so "bureaucratically" (*i.e.*, pursuant to long-standing practice). In effect, then, these records have been *de facto* sealed.

*Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501, 511-12 (1984). "No right ranks higher than the right of an accused to a fair trial," *id.* at 508, that Court explained, and such fairness is ensured by public access so that anything which might subvert due process can be exposed:

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Id.* Hence, jury selection is presumptively open to the public absent good cause to do otherwise:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with *findings* specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.* at 510 (emphasis added).

Even with such findings -- *e.g.*, that a potential juror has *in camera* disclosed "deeply personal matters that [she] has legitimate reasons for keeping out of the public domain" -- a trial court must "consider whether alternatives [are] available to protect the interests of the prospective jurors that the trial court's orders sought to guard." *Id.* at 511. Absent such findings, a court cannot constitutionally close *voir dire* from the public. *Id.* Illustrating a "deeply personal matter," *Press Enterprise* featured a rape-trial example:

For example a prospective juror might privately inform the judge that she, or a member of her family, had been raped but had declined to seek prosecution because of the embarrassment and emotional trauma from the very disclosure of the episode. The privacy interests of such a prospective juror must be balanced against the historic values we have discussed and the need for openness of the process.

*Id.* at 512; *see also* 76 AM. JUR. TRIALS 127 *Anonymity* § 7 (2008).

The *Press Enterprise* Court thus proffered an operating manual of sorts. Potential jurors should be informed that if they believe public questioning will prove damaging because of embarrassment, they may properly request a chance to present the problem to the judge *in camera* but with counsel present and on the record. 464 U.S. at 512. Requiring a prospective juror to make an affirmative request "can ensure that there is in fact a valid basis for a belief that disclosure infringes a significant interest in privacy. This process will minimize the risk of unnecessary closure." *Id.*

The trial judge then has the discretion to fashion a remedy. He can, for example, excuse such a juror. *Id.* And even where he orders limited closure, mitigating measures must be undertaken:

> [T]he constitutional values sought to be protected by holding open proceedings may be satisfied later by making a transcript of the closed proceedings available within a reasonable time, if the judge determines that disclosure can be accomplished while safeguarding the juror's valid privacy interests. Even then a valid privacy right may rise to a level that part of the transcript should be sealed, or the name of a juror withheld, to protect the person from embarrassment.

*Id.* For that matter, "[t]he trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected." *Id.* at 513.

Against those principles and with that interest-balancing, courts have supplied a variety of reasons for sealing off juror data from the public -- *during* a trial. *See generally* 50A C.J.S. JURIES § 490 (*Public access to names of jurors*) (2008). Chief among them are protecting juror privacy and encouraging candid answers to voir dire questions so that harmful bias can be sifted. *See U.S. v. King*, 140 F.3d 76, 83 (2d Cir.1998) (affirming a district court's order denying press access to transcripts of *in camera* voir dire of prospective jurors due to, in part, jurors' privacy interest in revealing "racial bias"); *U.S. v. Potter*, 394 F.Supp.2d 475, 479 (D.R.I. 2005) (Confidential nature of juror responses to questionnaire did not provide a legitimate basis for continued sealing of defendant's memorandum in support of their motion for change of venue which contained juror responses; subject matter of jurors' statements regarded opinions of corruption in state government and did not involve deeply personal matters; court thus released "memorandum with all references to actual statements from jurors redacted.").

*King* and *Potter* involved ongoing trials and thus the possibility of contemporaneous media attention, resulting disclosure of juror names and addresses, etc. Here, in contrast, the trial ended in 2003. And even though the jurors in this black-on-white capital murder case were asked racial-sensitivity questions on a written

questionnaire,[2] they were essentially asked the same in open court during the voir dire portion of the trial. *E.g.*:

> THE COURT: You are under oath. Do you understand that the defendant is a black man and is charged with the murder of a U.S. postal employee, a white woman, during an alleged post office robbery and is subject to being punished by death. You understood that; did you not?
>
> JUROR: Yes, sir.
>
> THE COURT: Would the race of either the defendant or the race of the victim make any difference whatsoever to you?
>
> JUROR: No.

403CR001, doc. # 290 at 25; # 365 (E-filed copy) at 25. Their names and answers are thus accessible -- they are in the *public transcript* of the case. Doc. # 365-66 (E-filed versions of doc. ## 290-91). Their names and addresses also were furnished to defendant Brown.[3]

Nevertheless, the juror questionnaires here are *de facto* sealed. *See supra* n. 1. And some evidently believe that something once sealed should remain that way absent good cause. *See Cooper v. U.S.*, 2007 WL 2110493 at * 7 (S.D.Ohio 7/16/07) (unpublished) ("Petitioner also requests that jury questionnaires, filed under seal, be provided to him, along with a copy of the jury selection plan, in connection with his claim that he was denied the effective assistance of counsel due to his attorney's failure to object to the absence of African Americans on the jury pool"); *id.* at * 9 ("The jury questionnaires, filed under seal, have been reviewed by this Court. They provide petitioner no basis for relief"); *Blanton v. Quarterman*, 489 F.Supp.2d 621, 683 n. 93 (W.D. Tex. 2007); *compare* D. Kihara, *Judge keeps questionnaires secret*, Las Vegas Rev. J., 9/12/08, *available at* http://www.lvrj.com/news/28279354.html ("District Judge Jackie Glass refused Thursday to release copies of completed juror questionnaires in O.J. Simpson's armed robbery and kidnapping case") (site as of 10/14/08); *with* K. Hennessey, *O.J. judge shifts position on jury questionnaires*, Examiner.com, 9/30/08, http://www.examiner.com/a-1615422~O_J_judge_shifts_position_on_jury_questionnaires.html) ("The judge in the O.J. Simpson armed robbery-kidnapping case plans to release redacted versions of completed jury

---

[2] *E.g.*: "40. Would the race of the defendant affect you[r] opinion as to whether or not to impose the death penalty or life imprisonment without the possibility of release or parole?" and "41. Would the race of the victim affect you[r] opinion as to whether or not to impose the death penalty or life imprisonment without the possibility of release or parole?"

[3] Congress has so provided:

> A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each venireman and witness, except that such list of the veniremen and witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person.

18 U.S.C. § 3432. No "jeopardization" finding was sought in this case. Brown's postconviction counsel, incidentally, impermissibly used that name/address data to contact some of the petit jurors after the trial. *See U.S. v. Brown*, 2008 WL 2811890 (S.D.Ga. 7/21/08) (unpublished) (he violated this Court's Local Rule banning such contact absent Court permission). Otherwise, all defendants have the right to inspect jury selection records. *See* 28 U.S.C. § 1867(e); *U.S. v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996).

3

questionnaires once the trial is over, and is defending her decision not to release the full surveys immediately") (site as of 10/14/08).

Others, in contrast, seal or block off access to court proceedings or records only for so long as is reasonably necessary. *See U.S. v. Koubriti*, 252 F.Supp.2d 424, 436 (E.D.Mich. 2003) (To ensure that defendants had a trial before a fair and impartial tribunal, individual juror voir dire would be closed to the public and the media in the first post-9/11 case involving allegations of international terrorism to go to trial, given the substantial potential for juror taint and chilling juror responses presented in the case; however, the court would open jury selection proceedings once all "for cause" challenges had been resolved and the process reached the peremptory phase, would release a transcript of the closed voir dire once the jury was empaneled, and would make available to the media basic demographic information about the empaneled jury).

Eleventh Circuit precedent upholds the *Press Enterprise* presumption against keeping court proceedings and thus court documents from the public, thus requiring that good cause be shown to overcome it. *U.S. v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005) (quotes and cite omitted); *see also id.* at 1029-30 (The press and public enjoy a qualified First Amendment right of access to criminal trial proceedings that extends not only to the criminal trial itself, but also to other integral parts of the trial process such as voir dire proceedings and preliminary hearings); *U.S. v. Bradley*, 2007 WL 1703232 at * 3 (S.D. Ga. 6/11/07) (unpublished); 2 SMOLLA & NIMMER ON FREEDOM OF SPEECH § 25:8 (2008).

This Court finds good cause to -- for the moment -- docket but redact the personal identifying information from the juror questionnaires in this case. The Court's juror-questionnaire cover sheet that was sent to each prospective Brown juror promised that "Your answers are confidential and will be available only to the Court and to counsel in this case."[4] That obviously was designed to elicit honest and candid responses from potential jurors. Undoubtedly some relied upon that promise, as the record indicates that this fostered much in the way of useful candor. *See Brown*, 2008 WL 4411173 at * 21 n. 13 (Court noted that potential juror Traci Amick's questionnaire responses led Brown's counsel to object to her for cause).

It may be that the law does not authorize what this Court promised and thus its decision to honor that promise by redacting juror-identifying information here (*i.e.*, while useful candor is a verifiable benefit, the "crowd-sourcing" benefit discussed *infra* n. 5 may just outweigh it). But no one is currently litigating this issue before the Court and the judgment call here is close enough to, for the moment, err on the side of redaction and reserve the issue for another day.

Note, in that vein, the 3/08 Federal Judicial Conference Policy on Privacy and Public Access to Electronic Case Files:

I. Documents in criminal case files for which public access should not be provided

The following documents in a criminal case shall not be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access:

\* \* \*

documents containing identifying

---

[4] The Clerk shall file, *un*sealed, a copy of that generic cover sheet, which contains no personal information.

4

information about jurors or potential jurors....

U.S. COURTS, JUDICIAL CONFERENCE POLICY ON PRIVACY AND PUBLIC ACCESS TO ELECTRONIC CASE FILES (2008), http://www.privacy.uscourts.gov/privacypolicy_Mar2008Revised.htm (site as of 10/14/08).[5]

---

[5] This broad-based sealing of *all* identifying information is legally questionable. As noted *supra*, a core reason for the existence of common law, First Amendment and Sixth Amendment based, public access to *all* portions of a criminal proceeding is the needed "wisdom of the crowd" (hence, public access) to spot and call attention to perversions of the trial process: "[T]he sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press Enterprise*, 464 U.S. at 508; *see also* WRIGHT & MILLER, 9A FED. PROC., L. ED. § 22:1412 (Sept. 2008).

Suppose that "X" somehow winds up being picked as a juror to judge "Y," who owes X a lot of money. X would have a financial incentive to keep Y out of prison and might vote to acquit Y -- even if X would otherwise find from the evidence that Y in fact is guilty beyond a reasonable doubt. If X fails to disclose that creditor/debtor connection and voir dire fails to expose it, a member of the public in the know (*e.g.*, having read/heard about X via press coverage which reported the jurors' full names, including X's) may just alert the court in time to take corrective action. *See U.S. v. Wecht*, 537 F.3d 222, 240 n. 33 (3rd Cir. 2008) (reversing district court's ruling that barred disclosure of jurors' names in an impending criminal trial, appellate court noted: "The District Court appears to believe that no good can come from any story published about a juror. [H]owever, press investigation of jurors might be beneficial in some cases by, for example, revealing possible sources of juror bias or deterring misrepresentation during voir dire"); *ABC, Inc. v. Stewart*, 360 F.3d 90, 102 (2d Cir. 2004) ("openness acts to protect, rather than to threaten, the right to a fair trial"). All of this, of course, can be trumped by compelling reasons and weightier rights. But a showing must be made first. *Id.*

## III. CONCLUSION

Accordingly, the Clerk is directed to file on the docket in this case all of the voir dire juror questionnaires, but the jurors' names and addresses and any other identifying data must be redacted until further Order of this Court. To ease this process and ensure against erroneous document/data destruction, the Clerk shall file:

(1) *sealed*, the original juror questionnaires in their entirety, in one docket entry;

(2) *un*sealed, and in a separate docket entry, a *copy* of the questionnaires, with the jurors' names and addresses and any other personal identifying information digitally or manually redacted;

(3) *un*sealed, a copy of the generic cover sheet referenced *supra* n. 4.

Until further Order, the Clerk shall follow this procedure for all future criminal cases before the undersigned. Finally, the Clerk shall forward a copy of this Order to all other district and magistrate judges in this district.

This __14__ day of October, 2008.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA