.   **UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

**MEIER JASON BROWN**

v.                    407CV085
                      403CR001

**UNITED STATES OF AMERICA**

## ORDER

## I. INTRODUCTION

After convicting Meier Jason Brown of robbing and murdering a federal employee within federal jurisdiction, a jury (and thus this Court) sentenced him to death. 403CR001, doc. # 276, *aff'd*, *U.S. v. Brown*, 441 F.3d 1330 (11th Cir. 2006). Following his unsuccessful 28 U.S.C. § 2255 motion, 407CV085 doc. ## 74, 83, he filed a Notice of Appeal (doc. # 84 (NOA)) and now -- over the Government's opposition -- applies for a Certificate of Appealability (COA). Doc. ## 86, 90.[1] Given Brown's indigence and failure to pay the appellate filing fee, the Court will construe his NOA as an implied motion for leave to appeal *in forma pauperis* (IFP). *See U.S. v. McCloud*, 2008 WL 4960428 at * 1 (S.D.Ga. 11/19/08) (unpublished).

## II. GOVERNING STANDARDS

### A. COA

The issuance of a COA is jurisdictional. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Applicants must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); F.R.App.P. 22(b). Hence, they must demonstrate that jurists of reason could disagree with the district court's

---

[1] Unless otherwise specified, the Court refers solely to the record from Brown's § 2255 civil file, 407CV085.

resolution of their constitutional claims, or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 336. However,

> "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000).

*Muhammad v. Sec'y, Dep't of Corr.*, ___ F.3d ___, 2009 WL 50199 at * 4 (11th Cir. 1/9/09). On most issues, then, this Court need inquire only whether "[j]urists of reason ... would ... debate the reasonableness of the decision...." *Id.* at * 7. Judges granting a COA application must state specifically the issue(s) for which the applicant has made the required "substantial showing." 28 U.S.C. § 2253(c)(3); *Radford v. Walker*, 2009 WL 54508 at * 2 (N.D.Ga. 1/2/09) (unpublished).

### B. IFP

No filing fee is required to file a § 2255 motion, only to appeal its denial. *See, e.g.*, *Anderson v. U.S.*, 241 Fed.Appx. 625, 627 (11th Cir. 2007) ("We initially denied *in forma pauperis* status, holding that the appeal was frivolous, but Anderson later paid the requisite filing fee."). Courts examine appellate IFP motions under the pre-Prisoner Litigation Reform Act (PLRA) version of 28 U.S.C. § 1915, *see Anderson v. Singletary*, 111 F.3d 801, 805 (11th Cir. 1997); *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998), though in practice little analytical difference is seen between pre- and post-PLRA judicial treatment. Those granted IFP at the inception of a case may proceed IFP on appeal *unless* the district judge certifies that it

is not taken in good faith. F.R.App.P. 24(a)(3).

Since no IFP was required here (a § 2255 motion is just that -- a *motion* in a criminal case, rather than a whole new case, *see* doc. # 5), Brown cannot exploit Rule 24(a)(3). Thus, he must show that he is unable to pay the 28 U.S.C. § 1913 appellate filing fees and "claim[] an entitlement to redress," by "stat[ing] the issues that [he] intends to present on appeal." F.R.App.P. 24(a)(1)(A)-(C).

Brown's IFP motion, then, can be denied if this Court certifies in writing that it is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see also Drummond v. U.S.*, 2008 WL 5381290 at * 3 (S.D.Ala. 12/19/08) (unpublished). Subjective good faith for appealing is not relevant. Rather, the inquiry is whether, objectively speaking, Brown has presented a non-frivolous issue to be litigated on appeal. *Id.* Typically, an IFP motion is denied when a COA motion is denied. *See, e.g., Nunez v. U.S.*, 2009 WL 64415 at * 2 (M.D.Fla. 1/9/09) (unpublished) ("Finally, because Petitioner is not entitled to a [COA], he is not entitled to appeal [IFP]").

## III. BACKGROUND

The facts of the crime in this case are comprehensively detailed in *Brown*, 441 F.3d at 1337-43. Familiarity with them is presumed here. In a nutshell, Brown murdered postal employee Sallie Gaglia at a post office so he could steal some postal money orders that he had asked her to prepare while posing as a customer. *See id.* As is the practice with capital cases, the trial proceeded in two phases (*i.e.*, guilt-innocence liability, then penalty). In the first, the jury convicted him of violating 18 U.S.C. § 1111 (murder within the U.S. territorial jurisdiction), 18 U.S.C. § 1114 (murder of a federal employee), and 18 U.S.C. § 2114 (robbery of federal property). *Id.* at

1342. In the second, it sentenced him to death after hearing aggravating and mitigating evidence. *Id.* at 1342-43.

## IV. ANALYSIS

### A. Procedural Default

As this Court explained in *Brown v. U.S.*, 583 F.Supp.2d 1330 (S.D.Ga. 2008) (denying Brown's § 2255 and ancillary motions), *as reconsidered,* 2008 WL 4822542 (S.D.Ga. 11/4/08) (unpublished), Brown alleged that appointed counsel provided him with ineffective assistance of counsel (IAC), and thus imposition of the conviction and sentence against him violates his Sixth Amendment right to counsel. Doc. # 51.

Brown enmeshed his IAC allegations in almost every claim that this Court reached. That has complicated much of the Court's § 2255 analysis because of what is, in hindsight, this Court's troublesome decision to allow one of Brown's appellate lawyers (J.L. Ertel) to continue as § 2255 counsel. *See U.S. v. Brown*, 2007 WL 1812632 (S.D.Ga. 6/18/07) (unpublished) (order appointing § 2255 counsel to represent Brown).

Some background: Brown's two trial lawyers were replaced by two new lawyers (J.L. Ertel and D.F. Samuel) on appeal. *Brown*, 2007 WL 1812632 at * 2. After that appeal was denied, Brown moved this Court for statutory (18 U.S.C. § 3599) compensation for two lawyers to represent him. Doc. # 1. The Court authorized compensation for only one -- J.L. Ertel or Mark Olive, with counsel free to "switch ... if they so choose...." *Brown*, 2007 WL 1812632 at * 4 (noting that Brown had failed to show "good cause," as required by § 3599, for two, so the two proposed lawyers could decide who would represent him).

Ertel stepped forward. Doc. # 3. He has done a masterful and unflinching job of advocating Brown's § 2255 and related motions, and also has been able to "gum up the works" by exploiting not only the "cause and prejudice" exception to the procedural default doctrine, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("Ineffective assistance of counsel, then, is *cause* for a procedural default") (emphasis added); *Massaro v. U.S.*, 538 U.S. 500, 509 (2003), but also Ertel's own conflict of interest.

Put another way, Ertel has insisted that if he failed to raise (and thus has procedurally defaulted for Brown) an issue on appeal, then he (Ertel) is advocating Brown's § 2255 motion while laboring under a conflict. *See* doc. # 51 at 10 ("Current appointed counsel was also appointed counsel on appeal and this may pose a conflict if counsel must raise and litigate his own ineffectiveness").

This has added obvious background tension to the adjudication of Brown's claims (Ertel never did move to withdraw from this case, and the Government remained silent about this aspect), as Courts in some instances must *sua sponte* inquire into conflicts of interest. *See Moss v. U.S.*, 323 F.3d 445, 470 (6th Cir. 2003).

The Court could have resolved that conflict by ejecting Ertel from this stage of the case and bringing Olive back. Olive, after all, would not have been faced with arguing his own appellate errors when claiming ineffective assistance of counsel as cause to excuse a defaulted issue. But swapping out Ertel for Olive obviously would have injected "replacement delay" (*i.e.*, with Ertel out, Olive presumably would have demanded more time to familiarize himself with this case) into these § 2255 proceedings. That, in turn, would have adversely impacted finality.

Clearly, then, the Court should have selected

Olive up front and not left it up to these lawyers to choose Ertel. Having been left in this case, Ertel has since had Brown oppose the Government's procedural default arguments by citing precedent from a variety of circuits, *e.g., Barker v. U.S.*, 7 F.3d 629, 634 (7th Cir. 1993) ("We do not usually expect lawyers to raise the issue of their own ineffectiveness at trial on appeal"), plus *Ertel's* direct-appeal involvement, to amplify his "cause" showing. This granted Brown an extra edge when he argued that Ertel's ineffective appellate assistance relieved him of a procedural default. *See* doc. # 8 at 101 ¶ 34; *id.* at 115 n. 35; *id.* at 116 n. 36; doc. # 51 at 10.

It is in that light that Ertel (hence Brown) now insists that this Court should grant Brown's COA application "on all of the default issues because reasonable jurists could disagree about whether the claims were, in fact, procedurally defaulted and/or whether Movant established cause and prejudice to excuse any default." Doc. # 86 at 5-7. Again, the Court's outright appointment of Olive would have prevented this artificially augmented "cause" argument.

At bottom, however, the issue is not COA-worthy because in the few instances that the Court applied procedural default, it also rested its ruling on alternative (merits-based) grounds, and Brown simply does not show those rulings to be debatable among jurists of reason. *See Brown*, 583 F.Supp.2d at 1341 ("Even were the claim not procedurally barred, however, it nevertheless fails on the merits because no such victim impact evidence is admissible in the penalty phase of a capital trial"); *id.* at 1346 (same analysis with Brown's investigative-report based, *Brady* claim). There is one exception -- the "Rentz" issue discussed *infra*, for which the Court is granting Brown a COA on the merits in any event, so the procedural default issue is moot.

## B. Section 2255 Representation

That same vexing, representational twist figures into Brown's next COA argument -- that this Court's denial of his motion to appoint him two § 2255 motion lawyers[2] was sufficiently erroneous that it is debatable among jurists. Doc. # 86 at 7-9. This Court, he now reminds, rejected his two-lawyer request in part by citing "no independent confirmation" of Brown's earlier assertion that it was "the norm" to appoint two lawyers in capital § 2255 cases. *Id.* Brown now cites data showing that 93% of all such defendants have been appointed two lawyers under § 3599(a)(2). *Id.* at 8-9.

As this Court previously noted, however, Brown has been served by one of Georgia's finest attorneys -- easily exceeding the talent and output of many two-lawyer teams. *Brown v. U.S.*, 2008 WL 4822542 at * 3 n. 4 (S.D.Ga. 11/4/08) (unpublished) ("The Court does reaffirm, however, that current counsel (J.L. Ertel) is one of the top lawyers in the State") (quotes and cite omitted). Again, his work has been both masterful and unflinching.[3]

---

[2] Brown moved for such relief under what is now 18 U.S.C. § 3599(a)(2), which states:

> In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with [this section].

18 U.S.C. § 3599(a)(2).

[3] During these § 2255 proceedings the Court reminded Ertel that for those who violate this Court's Local Rules

Nor does the fact that "everyone's doing it" (*i.e.*, that other courts routinely appoint two lawyers for capital § 2255 proceedings) automatically mean that it is an error, much less a debatable one, not to follow the crowd. To that end, Brown cites no other cases disagreeing with this Court's statutory interpretation (that the appointment statute did not *automatically* mandate two lawyers for every § 2255, capital case, *Brown*, 2007 WL 1812632 at * 2-4), and he never did accept this Court's invitation to demonstrate that his case was sufficiently "unique and complex" to justify two lawyers. *Id.* at * 4 ("Is this case 'unique and complex'? Brown's brief makes no such showing. Until he does, his motion for the appointment of two lawyers thus is denied").

For that matter, § 3599 did not expand capital defendants' right to counsel. Section 2255 movants, facing the death penalty or not, are still not *constitutionally* entitled to effective assistance of counsel. *Van Adams v. Schriro*, 2009 WL 89465 * 5 (D.Ariz. 1/14/09) (unpublished) ("No court has held that there is a statutory right to competent performance by habeas counsel...").

Meanwhile, F.R.Civ.P. 61 requires Brown to show judicial error that *prejudicially* affects his rights. Brown's proposed appellate issue on this point fails to indicate how he will show that, so no COA is warranted on this ground either.

---

(Ertel had contacted jurors without first obtaining leave from this Court, thus violating S.D.Ga.Loc.Civ.R. 83.8), punishment shall be swift in coming and painful upon arrival. *See U.S. v. Brown*, 2008 WL 2811890 (S.D.Ga. 7/21/08) (unpublished) (directing the U.S. Attorney, following Ertel's filing of Brown's § 2255 motion, to investigate Ertel for possible criminal contempt charges). Ertel later resolved the matter, *see* doc. # 76 (he apologized and paid some prosecution costs), and to this day, as evidenced by the 48-page COA/IFP motion that he just recently filed, has commendably litigated Brown's case.

### C.  Ertel's Withdrawal Motion

Brown next contends that jurists would find reasonably debatable his claim that this Court erred in denying Ertel's motion to withdraw from this case while advocating Brown's § 2255 motion.  Doc. # 86 at 9-10.

Again, during these § 2255 proceedings the Court raised criminal contempt charges against Ertel for violating a local rule barring post-trial contact with jurors absent leave of Court.  *See supra* note 3.  In response, Ertel moved to withdraw from this case.  Doc. # 68.  This Court denied the motion, concluding that Ertel, who has since satisfactorily resolved the charges against him, *see supra* note 3, failed to demonstrate how his interests were in conflict with Brown's (*i.e.*, both held the same interest in challenging the Local Rule's interdiction of their quest for any jury-taint information helpful to Brown's § 2255 claims).  Doc. # 72.

Brown fails to illuminate any *overt* conflict warranting his withdrawal from representing Brown, much less one that would question the effectiveness of his performance.  It is in that sense that this issue is not COA-worthy.  *See U.S. v. Seguame*, 1995 WL 115559 at * 4-5 (9th Cir. 3/16/95) (unpublished).

But Ertel also argues, and had argued, that this Court's initiation of a criminal prosecution against him created a conflict in the sense that he was then forced to "appease" the very prosecutorial arm against whom he advanced Brown's interests (*i.e.*, it would at least subconsciously cause him to pull punches in litigating Brown's rights for fear of inflaming those who wielded criminal contempt-based, prosecutorial power over him).  Doc. # 86 at 10; doc. # 68 at 2.

Would Jurists of reason would find this COA issue debatable?  GA.BAR.R. 1.3 required Ertel to zealously advocate Brown's rights:

A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and *with zeal* in advocacy upon the client's behalf. However, a lawyer is not bound to press for every advantage that might be realized for a client. A lawyer has professional discretion in determining the means by which a matter should be pursued....

GA.BAR.R. 1.3, available, along with other bar rules cited *infra*, at gabar.org (site as of 2/9/09) (emphasis added).  GA.BAR.R. 1.7, meanwhile, reminds that

(a) A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's *own* interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client....

GA.BAR.R. 1.7 (emphasis added).  Comment 4 to that rule states:

Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's *other* competing responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will *materially interfere*

with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

*Id.* (emphasis added). And Comment 6 reminds that "[t]he lawyer's personal or economic interests should not be permitted to have an adverse effect on representation of a client." *Id.*

Nevertheless, relief has been denied in somewhat analogous cases. *See, e.g., Skinner v. Duncan*, 2003 WL 21386032 at * 43 (S.D.N.Y. 6/17/03) (unpublished) ("[p]rosecution or investigation [of defense counsel] by the same office, standing alone ... is not grounds for finding an actual conflict"), *cited in Corniel v. N.Y.S. Div. of Parole*, 2007 WL 1649895 at * 4 (S.D.N.Y 7/6/07) (unpublished) ("Corniel has failed to demonstrate that [his lawyer's] ongoing criminal prosecution [in another proceeding] created an actual conflict").

But other jurists could reasonably debate the existence of Ertel's claimed conflict (*i.e.*, whether a reasonable advocate would have genuinely flinched out of self-preservational instinct here), along with mitigation options that went unselected (*e.g.*, whether this Court should have waited until the end of the current § 2255 proceedings before pursuing Ertel, etc.), and point out that *Skinner* and *Corniel* denied relief under the "Antiterrorism and Effective Death Penalty Act" (AEDPA) deference standard, which does not apply here. And in neither *Skinner* nor in *Corniel* did an attorney like Ertel face an actual criminal prosecution against him *in the same case*. Too, the Seventh Circuit has illuminated the debatability of this issue:

The mere fact of being under investigation by the prosecutors of the lawyer's client

does not create a fatal conflict, we have held, *United States v. Hubbard*, 22 F.3d 1410, 1418 (7th Cir.1994) ... though the Eleventh Circuit appears to differ. *See United States v. McLain*, 823 F.2d 1457, 1464 (11th Cir.1987) (acknowledged, on other grounds, as defunct, in *United States v. Watson*, 866 F.2d 381, 385 n. 3 (11th Cir.1989)).

*U.S. v. Montana*, 199 F.3d 947, 949 (7th Cir. 1999), *cited in* 1 FED.JURYPRAC.& INSTR. § 5:7 (6th ed. 2008) ("a conflict may arise where counsel is under indictment, being investigated for a crime or subjected to disciplinary review by the bar") (collecting cases). Hence, relief can be based on both the appearance of a conflict as well as the possibility that the conflicted lawyer *may* pull punches to avoid inflaming prosecutors. And it is undisputed here that, while duty-bound to zealously advocate Brown's rights, Ertel was criminally prosecuted *within the very same case*.

Still, at this stage of the process Brown held only a *statutory*, not *constitutional*, right to counsel. *Van Adams*, 2009 WL 89465 at * 5. And Ertel could have interlocutorily appealed this Court's order denying his withdrawal motion, *see generally* 15B WRIGHT & MILLER: FEDERAL PRAC. & PROC. § 3914.21 (*Finality--Orders Prior To Trial--Orders With Respect to Attorneys*) (2009) ("Collateral-order doctrine permits appeal from an order denying leave to withdraw as counsel"), so no infinite-unreviewability-based, judicial black hole exists here.

Hence, it is doubtful that Brown could convince any jurist that any error this Court made in failing to grant Ertel's withdrawal motion constitutes "the substantial showing of the denial of a *constitutional* right" 28 U.S.C. § 2253(c)(2) (emphasis added). Therefore, the Court denies Brown a COA on these grounds.

6

## D. Dorothy Rentz

The gist of Brown's "Dorothy Rentz" claim is this: Since any one juror had the power to spare his life (one sentencing phase hold-out could hang an otherwise death-prone jury and thus spare him),[4] it was of paramount importance that each potential juror be properly "*Witherspooned*" to screen out unduly biased jurors.[5] Dorothy Rentz sat as a juror in Brown's trial and thus joined in his verdict of death. Brown contends that he is entitled to a new trial because either Rentz was never *Witherspooned* or, if she was, he was denied (due to the lack of a transcript covering her voir dire) a meaningful appellate review of same. Doc. # 86 at 45 n. 45.

The Government stands on its prior responses to this issue. Doc. # 90 at 7, 21. That is, it conceded that Brown was entitled to an evidentiary hearing wherein it would try to demonstrate, via reconstruction of the prosecution's trial notes, that Rentz in fact had been properly *Witherspooned*. Doc. # 50 at 16; doc. # 54 at 1, 101, 151-52.

Some recapitulation is warranted here. In attempting to raise *Witherspoon*-type issues on direct appeal, Brown was unable to obtain from

---

[4] If a jury cannot unanimously agree on a sentence of death, the defendant receives a life sentence. *See, e.g., McKoy v. North Carolina*, 494 U.S. 433, 439-42 (1990). And under the Federal Death Penalty Act, 18 U.S.C. §§ 3591-98, which applied here, a jury recommendation of life imprisonment is binding on the sentencing judge. 18 U.S.C. § 3594. Thus, any one juror who disagrees with a death-deciding jury may prevent a death verdict and spare a capital defendant's life. This Court illuminated that fact for Brown's jury:

> Because you have found the Defendant guilty of two capital offenses, Counts One and Two of the indictment, you must now decide two questions as to his punishment:
>
> > *First*: is the Defendant eligible for the death penalty; and
> >
> > *Second*: is imposing the death penalty upon him justified in this case?
>
> If you fail to *unanimously* answer either one of these questions in the affirmative, then the Court *must* impose a sentence of life imprisonment without the possibility of release or parole. This means that the Defendant would remain in prison for the rest of his life. If, however, you unanimously find that defendant is eligible for the death penalty and that it is justified here, the Court will be bound by your decision to impose a sentence of death.

403CR001, doc. # 270 at 1 (emphasis added).

---

[5] As an encyclopedist explains:

> A trial court properly excuses for cause, in death qualification of a jury in a capital murder prosecution, all jurors who either expressed views suggesting that they would *always or almost always* impose the death penalty, or who made it clear beyond cavil that they could not impose the death penalty under any circumstances and could not put aside such view and follow the law as given to the jury by the court.

50A C.J.S. JURIES § 411 (Dec. 2008) (emphasis added); *see also U.S. v. Fields*, 516 F.3d 923, 936-37 (10th Cir. 2008) (In federal murder proceedings, excusal of potential juror for cause based on his inability to consider imposition of the death penalty "except in very extreme cases" was proper under the *Witherspoon-Witt* death qualification standard; the court explicitly asked the juror whether he could follow the court's instructions and approach the case on a "clean slate" separate from his personal moral criteria for the death penalty, or if he had a "definite impression" that his views "would substantially impair his ability to follow the law," and the juror admitted he would be substantially impaired.).

7

the Court Reporter that part of the transcript covering this Court's *Witherspoon-Witt* inquiry of Rentz. *See Brown v. U.S.*, 2008 WL 4822542 (S.D.Ga. 11/4/08) (unpublished). Brown thus complained about this to the Eleventh Circuit:

> It appears that a juror who actually sat and rendered a verdict on both guilty [sic] and punishment, Dorothy Rentz, was never questioned as to here [sic] beliefs on the death penalty. If this is true, Mr. Brown's sentence must be reversed. However, if this Court believes further factual development on this issue is in order, Mr. Brown herein requests this Court stay the instant proceedings and remand to the trial court for a determination on whether Ms. Rentz was, in fact, never death qualified.

Doc. # 50, exh. A (Brown's direct appeal brief) at 17 n. 6. Yet, that court's *Brown* opinion bears no mention of this "Rentz" claim, and Brown points to no effort to urge that court to reconsider on the grounds that it overlooked it. That court thus denied the claim *sub silentio*.

Subsequently, Brown re-raised the "Rentz" issue -- through the lens of a *Witherspoon-Witt* claim -- in his § 2255 motion here. The Government conceded that (apparently due to Court Reporter error) there is no transcript covering Rentz, so Brown is entitled to an evidentiary hearing where the Government could proffer a reconstruction of Rentz's voir dire. Doc. # 54 at 1, 101, 151-52.

Brown also argued to this Court that there was no record covering trial counsel's exercise of peremptory strikes, thus depriving him of meaningful review of whether his trial counsel were ineffective in protecting his *Batson v. Kentucky*, 476 U.S. 79 (1986), rights. *Brown*, 2008 WL 4822542 at * 2.

The Court denied the *Batson* claim on the

merits -- while Ertel had reasonably assumed that off-the-record activity had occurred, in fact it had not. *Brown*, 583 F.Supp.2d at 1356 n. 14; *Brown*, 2008 WL 4822542 at * 2 n. 3 (explaining why there was no transcript documenting counsels' *Batson* challenges).

Citing, *inter alia*, *De Luca v. U.S.*, 243 F.Supp.2d 982, 985 (E.D.Mo. 2003) ("Petitioner's Reporter's Act claims are properly dismissed without an evidentiary hearing because a naked violation of 28 U.S.C. § 753(b) cannot be raised in a collateral proceeding under § 2255"), the Court also denied Brown an evidentiary hearing and § 2255 relief on his "Rentz" claim. *Brown*, 583 F.Supp.2d at 1357.

To that end, the Court cited the Eleventh Circuit's denial of the "Rentz" issue without comment. Such ruling, this Court concluded, should be respected on collateral review. *Brown*, 2008 WL 4822542 at * 3-4 (analogizing to precedent commanding federal courts to accord due deference to state court "implicit" rulings).

Brown insists that this ruling is "COA-debatable." Doc. # 86 at 111-12. He attacks the analytical path that this Court took. In "respecting" the Eleventh Circuit's implicit ruling on the Rentz issue, this Court cited AEDPA law requiring federal courts to similarly respect "implicitly reasoned," state court rulings. *Brown*, 2008 WL 4822542 at * 3; 28 U.S.C. § 2254(d)(1)-(2). This analogy is inappropriate, Brown argues, so this issue is debatable among jurists of reason. Doc. # 86 at 46.

Brown's argument is persuasive. In *Blankenship v. Terry*, 2007 WL 4404972 (S.D.Ga. 12/13/07) (unpublished), this Court concluded that no § 2254(d) deference should be

accorded to a summary, three-paragraph-long[6]

---

[6] As recounted by the Eleventh Circuit, it read:

> Petitioner has also raised ineffective assistance of counsel as a ground for relief in his petition. He alleges numberous [sic] areas in which he contends his attorneys were ineffective. Petitioner's claim is without merit.
>
> Petitioner was represented by two competent attorneys who hotly and ably contested the state's case at every phase of Petitioner's trials. In fact, the Petitioner seeks to have two attorneys declared ineffective notwithstanding the fact that they secured reversals of *two prior* sentences of death entered against Petitioner.
>
> The Court finds on review of the record and consideration of the evidence presented in this Habeas proceeding that Petitioner was afforded effective assistance of counsel. Petitioner seeks to hold his attorneys to a standard of perfection which is impossible to attain for any man or woman. He was entitled to and received effective assistance of counsel as mandated by the Constitution.

*Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) (emphasis added). What the above reasoning lacked, this Court concluded, was a reasoned explanation as to why Blankenship's lawyers were not ineffective as to the *third* Blankenship trial (by that point in the process, the prior reversals were not in issue -- thus rendering the first two excerpted paragraphs above largely irrelevant -- as it was the *third* trial that resulted in his death sentence and thus what was done at the third trial was what then mattered). And it was with respect to that third trial that the state habeas court employed only conclusory reasoning ("The Court finds on review of the record and consideration of the evidence presented in this Habeas proceeding that Petitioner was afforded effective assistance of counsel"), instead of *supportive* reasoning (*i.e.*, *why* each IAC allegation failed).

Compare that ruling with the Eleventh Circuit's lengthy, comprehensive analysis that deeply mined the decades-long, state court record to supply the very explanation that

Georgia state habeas court opinion that denied comprehensively presented IAC claims in a state habeas petition. Much of the evidence supporting those claims went unrebutted, and a "[c]ircular-logic based review, as opposed to a reasoned, principled analysis explaining why Blankenship did not receive ineffective assistance, can fetch no deference here." *Id.*, 2007 WL 4404972 at * 15. Still, the Court ultimately denied Blankenship 28 U.S.C. § 2254 habeas relief on the merits. *Id.* at * 43.

The Eleventh Circuit affirmed but paused to insist that the state court's reasoning warranted respect: "In this case, the district court erroneously afforded no AEDPA deference to the state court's adjudication of Blankenship's ineffective assistance of counsel claim." *Blankenship*, 542 F.3d at 1272.[7]

At least in *Blankenship*, however, there was an *actual* and *explicit* prior-court ruling coupled with the comity concerns. Here, in contrast, the Eleventh Circuit did not articulate *any* ruling on the Rentz issue. All that can be said is that it was presented with the issue and at best implicitly denied it (and at worst overlooked or ignored it).

---

the state habeas opinion lacked. 542 F.3d at 1256-80.

[7] *Blankenship* is the majority rule. *See Boland v. Sec'y, Dep't of Corr.*, 278 Fed.Appx. 876, 879 (11th Cir. 2008) (even summary state court dispositions are to receive § 2254(d) respect). But in the mixed, fact/law IAC context at least, that point is debatable among jurists of reason. *See Garner v. Mitchell*, 502 F.3d 394, 403 (6th Cir. 2007) ("Given the one-sentence, *unreasoned* disposition of Garner's ineffective-assistance-of-counsel claim, it is impossible for us to determine what the Ohio Court of Appeals decided regarding the merits of Garner's underlying *Miranda* claim-or even if it made any decision at all-much less for us to give deference to that decision") (emphasis added), *vacated for reh'g en banc* (1/3/08); *see also Martin v. Warden Forcht Wade Corr. Ctr.*, 289 Fed.Appx. 682, 683 (5th Cir. 2008) ("Because it is not apparent that the state court adjudicated the merits of the federal constitutional claims, review is *de novo*.").

Nor, of course, do the AEDPA, federal-state comity considerations apply here.

Brown, for that matter, quotes this passage from an Eleventh Circuit case applying AEDPA deference:

> While we typically give deference to state court decisions in this context, we have declined to do so if the state court failed to address the merits of a claim as asserted by the defendant. *See Davis v. Sec'y for the Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir.2003). When a state court fails to address an issue raised by the defendant, its decision is reviewed *de novo. Espy v. Massac*, 443 F.3d 1362, 1365 (11th Cir.2006).

*Grissett v. Sec'y, Dep't of Corr.*, 223 Fed.Appx. 846, 848 (11th Cir. 2007), *cited in* doc. # 86 at 46. Here, likewise, the Eleventh Circuit failed to explicitly address the Rentz issue. Yet, this Court refused to engage in *de novo* review of the Rentz claim. It also denied Brown an evidentiary hearing, even though the Government agreed that he was entitled to one. *Brown*, 583 F.Supp.2d at 1358.

While Brown fails to cite a contrary, *on point* case to show that this issue is debatable among jurists of reason (that should ordinarily be the litmus test for a COA), that is not surprising given the relative uniqueness of the facts here. On balance, then, Brown has shown the "Rentz" ruling to be sufficiently debatable to authorize a COA on issue K of his COA application, plus the relevant portion of issue D (evidentiary hearing claim). Doc. # 86 at 11-12, 45-46.

### E. Brown's Remaining Issues

The "Rentz" issue is a good example of what qualifies for a COA. Brown cited to the record, this Court's ruling, then at least *some* case law

to show that this Court's ruling is debatable among of jurists of reason. He did *not* simply reargue his § 2255 claims and then, citing nothing to the contrary, circularly conclude "therefore, this claim is COA-worthy."

In contrast, Brown has failed to do that for his remaining COA issues. Instead, he has simply rehashed his original (and reconsideration-motion) § 2255 arguments before insisting that this Court's ruling is "wrong" (though he couches each such insistence in the COA, "debatable among jurists of reason" language). That, of course, does not satisfy the COA requirements, much less F.R.Civ.P. 59(e) reconsideration requirements.

There is one "almost" exception worth noting here. Prior to trial, a U.S. Postal Inspector's Report was furnished to the defense. It revealed that several of Gaglia's family members, including her widow, did not want the death penalty for Brown. Doc. # 51 at 12. On direct appeal, Brown unsuccessfully argued that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose to him that Gaglia's husband was opposed to a death sentence against him. Such "pro-life" victim testimony is inadmissible in any event, the Eleventh Circuit concluded. *Brown*, 441 F.3d at 1350-52.

Brown re-raised that issue in his § 2255 motion. *Brown*, 583 F.Supp.2d at 1341. The Government argued that, because Brown raised that claim on direct appeal, procedural default bars him from presenting essentially the same claim now, repackaged as an IAC claim. Doc. # 54 at 26.

This Court reasoned that, even were the claim not procedurally barred, it nevertheless fails on the merits because -- again -- no such victim impact evidence is admissible in the penalty phase of a capital trial. *Brown*, 583 F.Supp.2d at

10

1341; *see also* Ann., *Victim impact evidence in capital sentencing hearings--post-Payne v. Tennessee*, 79 A.L.R.5th 33 § 11[b] (2000) (collecting cases). Therefore, counsel was not ineffective on those grounds. *Brown*, 583 F.Supp.2d at 1341.

In his COA application Brown provides, as proof that this issue is debatable among jurists of reason, this citation:

> *Young v. Mullin*, 2005 WL 1828542 at * 30 (W.D.Okla. 2005) ("This Court has held that a victim impact witness' opinion as to the appropriateness of the death penalty is admissible, but is limited to the simple statement of the recommended sentence without amplification. Conversely, we must also hold that a victim impact witness' opinion the defendant should not get the death penalty would also be admissible. To that extent, the trial court's refusal to allow the testimony was error").

Doc. # 86 at 18-19.

However, Brown has omitted from that passage two *state law* citations that belong within that quote. He also fails to note that the federal district court in that case was quoting a *state court* opinion, and not settled federal law that was also cited within *Young*. The federal case cited in *Young* held that under *federal law* "it would have been improper for the trial court to have allowed the victim's family representative to testify during the penalty phase of trial regarding her opinion of the appropriate sentence." *Young*, 2005 WL 1828542 at * 31 (citing *Hooper v. Mullin*, 314 F.3d 1162 (10th Cir. 2002)). Thus, Brown has failed to show that this issue is debatable among jurists of reason, so the Court denies him a COA on this issue.

## V. <u>CONCLUSION</u>

Accordingly, the Court *GRANTS* in part and *DENIES* in part defendant Meier Jason Brown's COA application. Doc. # 86. Because he has met the COA criteria for at least one issue on appeal, the Court *GRANTS* his implied IFP motion. Doc. # 84.

This __9__ day of February, 2009.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA